# TABLE OF CONTENTS

**Page**

I. Introduction ................................................................................................ 1

II. Background ............................................................................................... 2

    A. Relevant Jurisdictional Facts ..................................................... 3

        1. Mr. Forrest's Role in the Flashpoint Companies ........................ 3

        2. Mr. Forrest's Contacts With Pennsylvania ................................. 4

        3. Mr. Rogers' Factual Presentation ............................................... 4

            a. Section (I)(A) .............................................................. 4

            b. Section (I)(B) .............................................................. 5

III. Argument ................................................................................................. 6

    A. Summary of the Argument ......................................................... 6

    B. This Court Lacks In Personam Jurisdiction Over Mr. Forrest Because Lexington Has Failed to Plead and Establish the Requisite Minimum Contacts Between Mr. Forrest and the Commonwealth of Pennsylvania .............. 7

        1. Lexington Has Not Met the General Standard for Asserting Personal Jurisdiction ................................................................. 8

            a. The Quantity, Quality, and Nature of Mr. Forrest's Contacts with Pennsylvania Do Not Warrant This Court's Exercise of Personal Jurisdiction ................................................ 9

            b. The Nature and Extent of Mr. Forrest's Alleged Role in the Alleged Tortious Conduct Does Not Warrant This Court's Exercise of Personal Jurisdiction Over Mr. Forrest ...................... 11

            c. Pennsylvania Has Little Interest in Protecting Its Citizens in this Action ...................................................................... 12

        2. Traditional Notions of Fair Play and Substantial Justice Favor Dismissal For Lack of Personal Jurisdiction Over Mr. Forrest .................. 13

i

3.    Lexington Also Has Failed to Allege Any Facts That Would Permit the Court to Pierce the Corporate Shield, Which Protects Directors and Officers Acting Within Their Corporate Capacity....................................15

C.    This Court Lacks Subject Matter Jurisdiction Because Lexington's Claims Do Not Present an Actual Case or Controversy for Adjudication.......................17

D.    The Doctrine of Forum Non Conveniens Warrants Dismissal.............................18

E.    The Court Should Abstain From Adjudicating Lexington's Suit in Deference to the English Proceedings....................................................19

F.    To the Extent Lexington's RICO Claims Seek Damages in the Form of Legal Expenses, They Fail to State a Claim for Relief.........................................19

G.    Lexington's RICO and Common Law Fraud Claims With Respect to "Award" and "Regent I" Should Be Dismissed for Failure to Adhere to the Heightened Pleading Requirements of Fed. R. Civ. P. 9(b)..................................20

IV.    Conclusion.....................................................................................................23

PH2\683022.3

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

---

| | | |
|---|---|---|
| LEXINGTON INSURANCE COMPANY, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 02-CV-4435 |
| | : | |
| DAVID FORREST AND | : | |
| T. BEAUCLERC ROGERS IV, | : | |
| | : | |
| Defendants. | : | |

---

### FORREST'S MEMORANDUM OF LAW IN SUPPORT
### OF HIS MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR,
### ALTERNATIVELY, STAY THESE PROCEEDINGS PENDING
### CONCLUSION OF PARALLEL PROCEEDINGS IN ENGLAND[1]

### I.    Introduction

Defendant, David Forrest, submits this Memorandum in Support of his Motion to Dismiss

the Complaint of Lexington Insurance Company ("Lexington") on the grounds that:

1. the Court lacks personal jurisdiction over Mr. Forrest and subject matter jurisdiction over Lexington's claims;

2. even if jurisdiction were proper, the doctrine of *forum non conveniens* warrants dismissal;

3. in the alternative, and in deference to pending parallel proceedings in England, the Court should either dismiss or stay these proceedings pending the outcome of the U.K. proceedings; and

4. Lexington's RICO claims fail to state a claim for relief.

---

[1]    In this Memorandum Mr. Forrest adopts a number of the arguments of co-defendant T. Beauclerc Rogers IV with the permission of Mr. Rogers and his counsel, Conrad O'Brien Gellman & Rohn, P.C..

1

## II.     Background[2]

The Flashpoint Companies, a group of now insolvent entertainment financing companies, acted as venture capitalists and assisted others in raising financing for the film, television, merchandising, and multi-media industries from approximately 1995 to early 2001.  Flashpoint's principal achievement was raising funds for the production of more than 40 films, as well as a television series, through the sale of future revenues to various Special Purpose Vehicles ("SPV's"), known as Hollywood Funding Numbers 1, 2, 3, 4, 5, and 6, which were wholly owned subsidiaries of Credit Suisse First Boston.  These SPV's in turn raised funds through the sale of notes issued by and enforceable against them.  Pecuniary Loss Indemnity Policies, such as those issued by Lexington, covered the purchasers of the notes against any shortfall between the balance due on the notes and the assets of the SPV's.  (Forrest Affidavit, ¶ 2.[3]

In late 2000, Lexington obtained an injunction against Flashpoint due to the failure of Flashpoint to comply with the terms of certain collateral agreements for Hollywood Funding Numbers Four, Five, and Six by failing to maintain approximately $9 million in cash in specific bank accounts, rather than as a combination of cash and other assets.[4]  The court in England directed Flashpoint to place the cash into designated accounts.  Flashpoint's inability to meet this requirement rendered it insolvent and resulted in the institution of Administration proceedings

---

[2]      Mr. Forrest respectfully refers the Court to the detailed background provided by Mr. Rogers in his Memorandum of Law in support of his Motion to Dismiss.  For the ready reference of the Court, Mr. Forrest attaches a copy of Mr. Rogers' Memorandum as Exhibit "B."  Mr. Forrest will supplement or amend Mr. Rogers' factual assertions early in so far as they apply to his own motion.

[3]      Mr. Forrest's affidavit attached to this motion is not sworn to, but his U.K. counsel is taking the appropriate steps to forward a sworn affidavit, which will be identical to the one attached, within the next few days.  Counsel will substitute the verified affidavit for the current copy when received.  A copy of this affidavit is attached hereto as Exhibit "A."

[4]      See Lexington Ins. Co. v. Flashpoint Ltd. & Flashpoint UK Ltd., No. 2000 Folio 1410 (Q.B.), attached hereto as Exhibit "C."

2

(the English equivalent of U.S. Chapter 11 bankruptcy proceedings) against Flashpoint in early 2001.  (Forrest Affidavit, ¶ 3).

Mr. Forrest ran the day-to-day operations of the Flashpoint U.K. entities, Flashpoint (UK) Ltd., Flashpoint Investments Ltd., and Flashpoint (Jersey) Ltd.  (Forrest Affidavit, ¶ 4)  Mr. Forrest may have been a director of CIGA (UK) Ltd, which existed for the sole purpose of holding the lease to Flashpoint offices in London, and Icestorm Entertainment, Inc., the Canadian operation based in Montreal.  (Forrest Affidavit, ¶ 5)  At no time, however, did Mr. Forrest serve as a director of any of the United States companies in which Flashpoint invested.  (Forrest Affidavit at ¶ 5)

## A.    Relevant Jurisdictional Facts

### 1.    Mr. Forrest's Role in the Flashpoint Companies

Until June 2000, Mr. Forrest served as a director of the principal Flashpoint companies situated in the U.K., but not as a director of the U.S. companies in which Flashpoint invested. (Forrest Affidavit, ¶¶ 4, 5)  In March 2001, Mr. Forrest agreed to re-join the board of directors of one of the Flashpoint Companies, Flashpoint Structure, to assist the lone remaining director with certain administrative proceedings in England.  No formal paperwork was filed with Companies House in England, reinstating Mr. Forrest to Flashpoint's Board, however, so it is unclear whether, under English law, Mr. Forrest served as a director at any point after June 2000.  (Forrest Affidavit, ¶ 6).

Co-defendant, Mr. Rogers, asserts that Mr. Forrest was the former Chief Executive Officer of Flashpoint (UK).  (Rogers' Mem. at 3).  Flashpoint (U.K.) never appointed Mr. Forrest to this

position, however, nor to the position of Managing Director more commonly found in U.K.

companies, nor did it pay Mr. Forrest in connection with such positions.  (Forrest Affidavit, ¶ 7).

Mr. Forrest was also a disclosed shareholder in Flashpoint Ltd., Flashpoint (UK) Ltd.,

Flashpoint Investments, Ltd., and Icestorm Entertainment Ltd.  (Forrest Affidavit, ¶ 8).

### 2.    Mr. Forrest's Contacts With Pennsylvania

Mr. Forrest has never traveled to Pennsylvania for any Flashpoint business.  (Forrest

Affidavit, ¶ 9).  The only contact Mr. Forrest had with Pennsylvania with regard to Flashpoint

was by telephone and facsimile between Mr. Forrest, from outside this district and most often

from England, and Mr. Rogers, who resides in this judicial district.  (Forrest Affidavit, ¶ 10).[5]

### 3.    Mr. Rogers' Factual Presentation

Mr. Forrest adopts Mr. Rogers' factual presentation in his Memorandum of Law in

Support of his Motion to Dismiss, with the following supplemental information and

modifications:

#### a.    Section (I)(A)

In this Section, Mr. Rogers details Hollywood Funding Numbers Four, Five, and Six, for

which Flashpoint and its directors signed collateral agreements with Lexington, outlining the

parties' rights and duties for those film financing transactions, the method for managing the

funding for the transactions, and the method for resolving disputes in England under English law.

(Rogers' Mem. at 5)

---

[5]    Before Mr. Forrest worked for Flashpoint, he did business with parties in Pittsburgh and visited Pittsburgh for his London-based underwriting and insurance broker businesses from time to time for business reasons from 1973 to 1995.  (Forrest Affidavit, ¶¶ 11(a), (b)).  In approximately 1995 or 1996, Mr. Forrest visited Philadelphia to attend a preparatory meeting with lawyers to prepare for a proceeding in New York in which Mr. Forrest served as an expert witness.  (Forrest Affidavit, ¶ 11(d)).  Since 1995, Mr. Forrest's only visits to Pennsylvania have been personal in nature to visit the godparents of his children in Pittsburgh.  (Forrest Affidavit, ¶ 11(c)).

4

Although Mr. Rogers asserts that he does not have access to any of those collateral agreements (Rogers' Mem. at 5 n.5), Mr. Forrest does have in his possession a copy of the collateral agreements with respect to the Regent Projects.

**b.    Section (I)(B)**

In this Section, Mr. Rogers details the suit against Lexington by the Law Debenture Trust, in England, to recover sums owed on the Pecuniary Loss Indemnity Policies Lexington issued with respect to Hollywood Funding Numbers Four, Five, and Six.  <u>See</u> Ex. C.  In that suit, Lexington has raised the defense of fraud in the inducement by Mr. Rogers and Mr. Forrest.  Mr. Rogers produced the few related Flashpoint documents remaining in his possession.  Mr. Rogers had previously forwarded the originals of all other related Flashpoint documents to the Flashpoint Administrator.  (Rogers' Mem. at 5-6).

All of the computers previously belonging to the Flashpoint companies and to which Mr. Forrest may have had access were left in the offices of Flashpoint after Mr. Forrest finally left those offices and Flashpoint was put into Administration.  (Forrest Affidavit, ¶ 12).  Upon information and belief, those computers are now in the possession of the Administrators of those companies.  (Forrest Affidavit, ¶ 14).  Before Flashpoint had offices in London until late 1997, and subsequently when Mr. Forrest occasionally worked from home, he used his personal computer to transmit or receive documents related to Flashpoint.  In the English actions, Lexington pressed Mr. Forrest to give it access to his personal computer and, despite its efforts to force him to give access to the machine as it dictated, Mr. Forrest offered a voluntary undertaking that the court in England accepted.  Soon thereafter,  however, it became clear that Lexington was seeking to instigate the instant proceedings against Mr. Forrest, a fact that Lexington omitted to

disclose to Mr. Forrest and, more surprisingly, to the court in England.  Upon further application to the court in England, the Court released Mr. Forrest from his undertaking.  (Forrest Affidavit, ¶ 13).  As far as Mr. Forrest is aware, all other documents are in the possession of the Flashpoint Administrator in England.  (Forrest Affidavit, ¶ 14).

Mr. Forrest is informed that Lexington is not permitted to use documents obtained in discovery in the actions in England to support its Complaint in this action, nor will Lexington be permitted to divulge documents obtained in the actions in England in an attempt to prove its allegations in this action.  (Forrest Affidavit, ¶¶ 13, 15).

### III.    Argument

### A.    Summary of the Argument

Lexington has brought a complaint against Mr. Forrest, a citizen of England who resides in England, notwithstanding:

- the lack of personal jurisdiction over Mr. Forrest or subject matter jurisdiction over Lexington's claims;

- the lack of an existing case or controversy between it and Mr. Forrest;

- its lack of standing to bring its claims;

- the inconvenience of this forum when all the physical evidence and witnesses are located in England;

- its blatant violation of the principles of international comity and judicial efficiency in light of the parallel proceedings in England involving the same parties, issues and evidence; and

- its complete failure to properly plead its RICO and fraud claims.

For any or all of these reasons, the Court should dismiss with prejudice or, at the very least, stay these proceedings as to Mr. Forrest.

**B.     This Court Lacks In Personam Jurisdiction Over Mr. Forrest Because Lexington Has Failed to Plead and Establish the Requisite Minimum Contacts Between Mr. Forrest and the Commonwealth of Pennsylvania**

Mr. Forrest has borne his initial burden of raising lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).  This accomplished, "the burden [now] shifts to the Plaintiff to prove that jurisdiction exists," D & S Screen Fund II v. Ferrari, 174 F. Supp. 2d 343, 345 (E.D. Pa. 2001), "with reasonable particularity" supported by "appropriate affidavits and other competent evidence," Irons v. Transcor America, No. 01-4328, 2002 U.S. Dist. LEXIS 14149, at *8 (July 9, 2002 E.D. Pa.) (citing Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987).

This Court will apply the law of Pennsylvania, the forum state, to determine whether personal jurisdiction is proper in this Court.  Vetrotex Certainteed Corp. v. Cons. Fiber Glass Prod. Co., 75 F.3d 147, 150 (3d Cir. 1996).  To obtain personal jurisdiction over a foreign defendant, the defendant's contacts with Pennsylvania must satisfy the requirements of Pennsylvania's long-arm statute, 42 Pa. Const. Stat. Ann. § 5322, and the Constitution of the United States.  See, e.g., World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1987); Perry v. Markman Capital Mgmt., Inc., No. 02-744, 2002 U.S. Dist. LEXIS 19103, at*9 (E.D. Pa. Oct. 4, 2002).  Since the Pennsylvania long-arm statute reaches to the full extent permitted by the U.S. Constitution, 42 Pa. Const. Stat. Ann. § 5322(b), the "two-step inquiry 'is collapsed into a single step,' requiring the court to determine if personal jurisdiction is consistent with the dictates of due process," Perry, 2002 U.S. Dist. LEXIS, at *10 (quoting IMO Indus., Inc. v. Liekert AG, 155 F.3d 254, 259 (3d Cir. 1998).

1.    **Lexington Has Not Met the General Standard for Asserting Personal Jurisdiction**

This Court can properly exercise personal jurisdiction over Mr. Forrest only if it is satisfied that Lexington has demonstrated either "specific jurisdiction, meaning that the cause of action upon which the suit is based arose from the defendant's activities in the forum state, or [has made a] showing of general jurisdiction, meaning that the defendant had 'continuous and systematic' contacts with the forum state." Nagele v. Holy Redeemer Visiting Nurse Agency, Inc., 813 F. Supp. 1143, 1145 (E.D. Pa. 1993) (citing Bane v. Netlink, Inc., 925 F.2d 637, 639 (3d Cir. 1991)). For the Court to assert general jurisdiction over Mr. Forrest, Lexington must show that his contacts with Pennsylvania are "continuous and systematic." Lautman v. Loewen Group, No. 99-75, 2000 U.S. Dist. 8241, at *10 (E.D. Pa. June 15, 2000). Alternatively, for the Court to exercise specific jurisdiction, it must find that Lexington has alleged sufficient "minimum contacts" between Mr. Forrest and Pennsylvania and that Mr. Forrest "'purposely directed' his activities at a resident of the forum and the [alleged] injury arises from or is related to those activities." Perry, 2002 LEXIS 19103, at *16 (citation omitted). See also Lautman, 2000 U.S. Dist. 8241, at *13.

To determine the propriety of personal jurisdiction, Pennsylvania courts balance three factors: (1) the quantity and nature of the defendant's contacts with Pennsylvania; (2) the defendant's connection with the cause of action; and (3) the interest of Pennsylvania in protecting its citizens. See Shaffer v. Heitner, 433 U.S. 186 (1977). Even if a plaintiff demonstrates sufficient minimum contacts, it must also demonstrate that the court's exercise of personal jurisdiction over the defendant would comport with "traditional notions of fair play and

substantial justice." See, e.g., Id.; Burger King Corp. v. Rudzewicz, 471 U.S. 462, 485-86 (1985);

Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); IMO Indus., 155 F.3d at 259 (citing

Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414 n.9 (1984)).  As set forth in

detail below, Lexington has completely failed to allege facts sufficient to permit the Court to

assert personal jurisdiction over Mr. Forrest.

> **a.    The Quantity, Quality, and Nature of Mr. Forrest's Contacts with
> Pennsylvania Do Not Warrant This Court's Exercise of Personal
> Jurisdiction**

Lexington does not allege, nor can it demonstrate, sufficient contacts between Mr. Forrest

and Pennsylvania to establish personal jurisdiction.  Without reference to Mr. Forrest's specific

contacts with *Pennsylvania* or any harm caused to Pennsylvania or its residents, Lexington asserts

that

> substantial portions of defendants' conduct occurred *in the United
> States* and/or had effects *in the United States*, including without
> limitation in the financing of motion pictures in this country and the
> harm to plaintiff herein.  A portion of the Flashpoint enterprise was
> physically and permanently present *in the United States*, and
> misappropriated proceeds of the financing transactions were
> invested *in this country*.

(Compl. at ¶ 9) (emphasis added).  Simply alleging Mr. Forrest's contact with this country does

not establish sufficient contact with Pennsylvania for purposes of establishing in personam

jurisdiction over Mr. Forrest in this district.

Instead, Lexington's only allegations of contact between defendant Mr. Forrest and

Pennsylvania relate to alleged telephone calls and facsimiles between Mr. Forrest in England and

Mr. Rogers in this district (Compl. at ¶ 39(d)), contacts which Mr. Forrest admits. [6]  (Forrest

---

[6]    Mr. Forrest does not admit, however, that these contacts were for the purpose of coordinating and

Affidavit, ¶ 10).  In its only specific reference to communication between England and Pennsylvania, Lexington alleges that, "on information and belief, numerous faxes and telephone calls [were made] between defendant Mr. Forrest in the United Kingdom and defendant Mr. Rogers in this District for the purpose of coordinating and implementing this scheme." (Compl. at ¶ 39(d)).

For purposes of evaluating contacts with the forum, communication by telephone, facsimile, and mail, however, does not constitute sufficient minimum contacts to exert personal jurisdiction over a defendant.  See, e.g., Quandel Group v. Chamberlin, No. 98-5762, 1999 U.S. Dist. LEXIS 8822, at *9 (E.D. Pa. June 11, 1999) (telephone, telefax, and mail communication with plaintiff in forum state did not constitute minimum contacts sufficient to exert personal jurisdiction over defendant where contract performance was to be in other state, the alleged breach occurred in that other state, and contract payments were sent to another state) (citing Vetrotex 75 F.3d 147, 152 (3d Cir. 1996) (communications by telephone and letters between resident and nonresident in developing a contract are insufficient to establish personal jurisdiction)); D & S Screen Fund II, 174 F. Supp. at 347-48 (telephone conversations and faxes are not sufficient to confer personal jurisdiction over a foreign defendant); Nagele, 813 F. Supp. at 1145 (that communication with plaintiff's doctor in Pennsylvania was not enough to establish general personal jurisdiction over defendant who provided nursing care in New Jersey, which was the subject of the suit).

Instead, a court must examine "the relationship among the defendant, the forum and the litigation."  Chamberlin, 1999 U.S. Dis. LEXIS 8822, at *4 (citing Shaffer, 433 U.S. at 204).

---

implementing any scheme Lexington alleges.

Lexington does not and cannot allege any specific conduct, other than alleged and admitted

telephone and fax communications, to demonstrate contact between Mr. Forrest and Pennsylvania

with respect to Flashpoint.  Mr. Forrest has never traveled to Pennsylvania for any business

connected in any way with Flashpoint.  (Forrest Affidavit, ¶ 9).  Indeed, the only contact between

Mr. Forrest and Pennsylvania with regard to Flashpoint consists of the telephone conversations

and facsimiles between Messrs. Forrest and Rogers, co-directors of Flashpoint, which are

insufficient to establish personal jurisdiction.  (Forrest Affidavit, ¶ 10).  Any other contact Mr.

Forrest had with Pennsylvania related either to other businesses for which Forrest ceased working

approximately seven years ago, or to personal matters in Pittsburgh, outside of this judicial

district.  (Forrest Affidavit, ¶ 11).  Lexington simply cannot attribute defendant Mr. Rogers'

residence and contact with Pennsylvania to Mr. Forrest.  "That a court has personal jurisdiction

over an alleged conspirator does not confer jurisdiction over an alleged co-conspirator which does

not itself have sufficient minimum contacts with the forum."  Royal Gist-Brocades N.V. v. Sierra

Products Ltd., NO. 97-1147, 1999 U.S. Dist. LEXIS 12414, at *8 (E.D. Pa. Aug. 11, 1999).

> **b.**     **The Nature and Extent of Mr. Forrest's Alleged Role in the Alleged
> Tortious Conduct Does Not Warrant This Court's Exercise of Personal
> Jurisdiction Over Mr. Forrest**

Lexington's Complaint is replete with conclusory allegations against defendants.  For

example, Lexington alleges that Mr. Forrest conspired with others to provide sales estimates he

knew "had no basis in fact, were not reasonable or professionally prepared, and were created for

the sole purpose of inducing insurers to issue" policies.  (Compl. at 23(c)(iv)).  Lexington further

alleges that "defendants, acting through Flashpoint UK and Flashpoint Jersey, caused . . . funds

that had been raised for and were dedicated to" one project to be used for other productions.

(Compl. at ¶¶ 29(a)(i), 29(b)(i), 29(c)(i)-(ii), 29 (c)(i)).  Conclusory statements alleging involvement of a director or officer in alleged wrongful conduct are not sufficient to pierce the corporate shield.  Instead, a plaintiff must provide evidence and factual support for his allegations.  See Lautman, 2000 U.S. Dist. LEXIS 8241, at *21 n.9 (declining to consider a conclusory allegation that the defendant high-ranking corporate official was "personally . . . involved in the [allegedly wrongful] decision to terminate [plaintiff's] employment and . . . personally concluded that [plaintiff] was not entitled to compensation . . ." as evidence that defendant director participated in any wrongful conduct without any factual support).

Lexington offers no factual support whatsoever for its conclusory allegations that either defendant, and specifically Mr. Forrest, caused funds to be used in an improper manner or knowingly misrepresented sales estimates.  Moreover, as discussed above, Lexington offers no evidence that these alleged wrongful acts had any connection to Pennsylvania.

Lexington would ask the Court to make the leap between Mr. Forrest's activities as a director who ran the daily activities of the main Flashpoint entities located in the U.K., to a fanciful conclusion that Mr. Forrest somehow participated in alleged wrongdoing in Pennsylvania.  The Court should decline the invitation.

c.    **Pennsylvania Has Little Interest in Protecting Its Citizens in this Action**

As discussed in more detail below, nearly all of the alleged wrongful conduct purportedly took place in England, not in Pennsylvania.  Moreover, as discussed above, Lexington alleges only that defendants financed motion pictures in the United States, caused harm to Lexington in the United States, and invested misappropriated proceeds of the financing transactions in the

12

United States (Compl. at ¶ 9).  Lexington makes no allegation whatsoever that any of these alleged acts took place within *Pennsylvania* or that any of the alleged harm affected Lexington or caused any other injury in *Pennsylvania*.  Accordingly, this Court has little to no interest in exercising jurisdiction over Mr. Forrest or, for that matter, over Mr. Rogers.

Additionally, to establish personal jurisdiction over Mr. Forrest under the theory that Mr. Forrest caused harm or tortious injury in Pennsylvania by an act or omission outside the state, Lexington must demonstrate that Mr. Forrest "'expressly aimed his tortious conduct at the forum' such that the forum was 'the focal point' of that conduct."  Royal Gist-Brocades, 1999 U.S. Dist. LEXIS 12414, at *23 (citing IMO Indus., 155 F.3d at 265-66).  Significantly, this Court has recognized the "important distinction between intentional activity which foreseeably causes injury in the forum and intentional acts specifically targeted at the forum."  Royal Gist-Brocades, 1999 U.S. Dist. LEXIS 12414, at *23 (citation omitted).  Lexington has not made one allegation that Mr. Forrest "aimed his [alleged] tortious conduct at [Pennsylvania]".

Given Mr. Forrest's very limited relationship with Pennsylvania with respect to Flashpoint, via telephone and facsimile, the conclusory nature of Lexington's allegations that Mr. Forrest participated in any alleged wrongful conduct, and the slight interest of Pennsylvania in adjudicating this case, the exercise of personal jurisdiction over Mr. Forrest would be improper.

### 2.    Traditional Notions of Fair Play and Substantial Justice Favor Dismissal For Lack of Personal Jurisdiction Over Mr. Forrest

Even if the Court were to find that Lexington had satisfied the other factors in support of the exercise of personal jurisdiction, the exercise of personal jurisdiction over Mr. Forrest would not comport with traditional notions of fair play and substantial justice.  The interest of Mr.

Forrest and the international interest in not subjecting an alien to jurisdiction in this Court in an action adjudicating nearly identical facts and issues as two pending actions in England weighs heavily in favor of dismissal.  See Asahi Metal Indus. Co. v. Super. Ct. of Cal., 480 U.S. 102 (1987) (a United States court did not have jurisdiction over an alien corporation where the foreign manufacturer plaintiff and the forum state had only a slight interest in exercising jurisdiction over a defendant who had merely put the product at issue into the stream of commerce and the international interest in not subjecting an alien corporation to U.S. jurisdiction was great).

Nearly all of Mr. Forrest's potential defense witnesses are residents of England and, more than likely, not easily subject to compulsory process in this district.  Since the English courts have ordered that all discovery obtained in the English actions be used only for the purposes of those actions, (Forrest Affidavit, ¶ 15), if the Court were to allow this case to proceed, the parties would have to duplicate the time and expense of their discovery efforts.  Moreover, unlike other cases where this Court has permitted the exercise of personal jurisdiction despite parallel litigation in a neighboring state, the parallel litigation is in England.  Accordingly, Mr. Forrest cannot use the same counsel in the English actions and this action to mitigate costs.  Compare Worldcom v. Intelnet, No. 00-2284, 2002 U.S. Dist. LEXIS 15892, at *17-18 (E.D. Pa. Aug. 22, 2002) (the exercise of personal jurisdiction in the Eastern District of Pennsylvania would comport with traditional notions of fair play and substantial justice, even though the parties were engaged in parallel litigation in New Jersey state court, because (1) the parties agreed to use the same depositions in both cases and defendants therefore would not be forced to undergo additional deposition expenses; and (2) defendants were represented by the same counsel in both actions).

14

As this Court has noted, "it is not prudent to proceed in a forum where there is even significant doubt about personal jurisdiction.  Regardless of the effort or resources expended, any judgment rendered in the absence of personal jurisdiction would be void."  <u>Chamberlin</u>, 1999 U.S. Dist. LEXIS 8822, at *10-11 (citations omitted).  Where, as here, significant doubt exists as to the propriety of exercising personal jurisdiction over a foreign businessman with only telephone and telefax contact with Pennsylvania, this Court should dismiss Lexington's claims for lack of personal jurisdiction over Mr. Forrest.

    **3.**      **Lexington Also Has Failed to Allege Any Facts That Would Permit the Court to Pierce the Corporate Shield, Which Protects Directors and Officers Acting Within Their Corporate Capacity**

Pursuant to Fed. R. Civ. P. 4 and 42 Pa. Const. Stat. Ann. § 5322(a)(7)(4), this Court may exercise personal jurisdiction over a person "who acts directly or by an agent, as to a cause of action or other matter arising from such person" who has exercised powers under the authority of the Commonwealth of Pennsylvania as a director or officer of a corporation.  In addition to the general factors for determining the propriety of exercising personal jurisdiction discussed above, when a court attempts to exert personal jurisdiction over a director of a corporation, it must also consider the implications of the "corporate shield" doctrine, which "protects officers and directors by limiting the extent to which their corporate actions may be used to exercise jurisdiction over them individually."  <u>Perry</u>, 2002 U.S. Dist. LEXIS 19103, at *17.  Under the general rule, "actions of corporate employees and officers that are conducted *within* their corporate capacity do not constitute contacts with the forum that support jurisdiction over them."  <u>Id.</u> (citing <u>D & S Screen Fund II</u>, 174 F. Supp. at 347; <u>TJS Brokerage & Co., Inc. v. Mahoney</u>, 940 F. Supp. 784, 789 (E.D. Pa. 1996).

Although the corporate shield doctrine does not provide absolute protection to corporate directors, there are only two exceptions to the doctrine: (1) where the corporate "agent commits a tort in the forum state in his corporate capacity"; or (2) the agent "is charged with violating a statutory scheme that provides for personal as well as corporate liability." Lautman, 2000 U.S. Dist. LEXIS 8241, at *16-17 (citation omitted). Unquestionably, the first exception does not apply here because Lexington has not even alleged that Mr. Forrest committed a tort in Pennsylvania.

Even if the second exception arguably were to apply, the Court must still examine three factors to determine whether its exercise of personal jurisdiction is proper: (1) the director's role in the corporate structure; (2) the quality of the director's contacts with Pennsylvania; and (3) the nature and extent of the director's role in the alleged tortious conduct. See, e.g., Worldcom, 2002 U.S. Dist. LEXIS 15892; Lautman, 2000 U.S. Dist. LEXIS 8241, at *19. Since the second and third factors of the corporate shield balancing test mirror the first two factors of the general Shaffer v. Heitner minimum contacts balancing test discussed above, the Court must additionally consider Mr. Forrest's role in the Flashpoint corporate structure in the context of the other three general minimum contacts factors.

Mr. Forrest was a former director of Flashpoint (UK) Ltd., Flashpoint Investments, Ltd., and Flashpoint (Jersey) Ltd. (Forrest Affidavit, ¶ 4). Even if Mr. Forrest's position as a director and shareholder could be considered significant, however, Lexington has failed to plead, and cannot establish, sufficient contacts with the forum. Without sufficient contacts with the forum, a significant directorship role will not suffice to pierce the corporate shield and subject Mr. Forrest to this Court's in personam jurisdiction. See, e.g., D & S Screen Fund II, 174 F. Supp. at 347-48

16

(even where it was "clear that [defendant President and owner had] the most significant role in [a company's] corporate structure and that the plaintiff alleged that the defendant had a direct role in the alleged tortious conduct, the court will not exercise personal jurisdiction where the only contacts defendant, a California resident, had with Pennsylvania consist of several telephone conversations and faxes"); Royal Gist-Brocades, 1999 U.S. Dist. LEXIS 12414, at *22 (dismissing for lack of personal jurisdiction plaintiff's claim against defendant president and "mastermind" of the corporate structure where plaintiffs could identify no meaningful contacts between defendant and Pennsylvania or that defendant caused any allegedly infringing product to be marketed in Pennsylvania).

The D & S and Royal Gist-Brocades courts were faced with the same level of individual involvement in company affairs and the same lack of Pennsylvania contacts as here.  Both Eastern District of Pennsylvania courts did not hesitate to dismiss the claims against the individual defendants.  This Court should do no less.

**C.    This Court Lacks Subject Matter Jurisdiction Because Lexington's Claims Do Not Present an Actual Case or Controversy for Adjudication**

Article III § 2 of the United States Constitution confers jurisdiction on federal district courts only for actual cases and controversies.  Phillies Tomato & Produce Corp. v. Veneman, No. 01-3502, 2002 U.S. Dist. LEXIS 12263, at *15 (E.D. Pa. Mar. 28, 2002).  Under this requirement, a plaintiff must establish that the case is both ripe for adjudication and that the plaintiff has standing to sue.  See Id. at 16-17.  Here, Lexington's claims are contingent on the outcome of the proceedings in England, and are therefore not ripe.  Moreover, even if Lexington's claims were ripe for adjudication now, its speculative, unclear, and indefinite claims for damages

17

would not confer standing in this action.  By way of further argument, Mr. Forrest incorporates and adopts the arguments of Mr. Rogers (Rogers' Mem. at 12-18) as to why no actual case or controversy is before the Court.[7]

Moreover, the Court should also consider that, in addition to the Ninth Circuit (Rogers Mem. at 13 n. 8), this Court has also held that dismissal, not a stay, is the appropriate remedy when a claim is not ripe for adjudication because the court lacks subject matter jurisdiction over an unripe claim.  Karp v. U.S. Billing, Inc., No. 99-4784, 2000 U.S. Dist. LEXIS 571, at *5 (E.D. Pa. Jan. 27, 2000) (citing Bernardi v. Swanson Mem. Lodge No. 48 of Fraternal Order of Police, 920 F.2d 198, 200 (3d Cir. 1990).

Finally, in addition to the Seventh and Fifth Circuits, (Rogers' Mem. at 13-14), the Third Circuit has also held that, as in this case, claims based on contingent events are not ripe for adjudication.  See Davis v. Thornburgh, 903 F.2d 212, 222 (3d Cir. 1990), cert. denied, Davis v. Cohen, 498 U.S. 970 (1990).

### D.    The Doctrine of *Forum Non Conveniens* Warrants Dismissal

Mr. Forrest incorporates all arguments made in the corresponding section of Mr. Rogers' Memorandum (Rogers' Mem. at 18-26).[8]

---

[7]    Mr. Rogers argues that the Court should dismiss Plaintiff's Complaint as unripe because the alleged injuries are prospective in nature and contingent upon the outcome of two parallel proceedings in the English Courts.  As Mr. Rogers argues, Lexington's alleged damages are limited to legal fees for pursuing creditors' remedies against Flashpoint in England and legal fees and payments under the Pecuniary Loss Indemnity Policies "if and to the extent" Lexington is forced to pay the Law Debenture Trust's claims in the English proceedings.  (Rogers' Mem. at 14 (citing Compl. at ¶¶ 46, 59, 64-64, & 69)).  Since these prospective damages are contingent on the outcome of the English proceedings, Lexington's claims are not ripe for adjudication.  Mr. Rogers further argues that Lexington has no standing in this matter because it has only alleged speculative, unclear, and indefinite alleged damages related to potential liability under the Pecuniary Loss Indemnity Policies.  (Rogers' Mem. at 12-18).

[8]    Mr. Rogers argues that this Court should dismiss Lexington's Complaint pursuant to the doctrine of *forum non conveniens*.  As Mr. Rogers asserts, England provides a more adequate forum, since both defendants are amendable to jurisdiction there and the subject matter of the parties' dispute can be, and is already being, litigated

Mr. Forrest notes, however, that unlike Mr. Rogers, he does have in his possession a copy of the collateral agreements for the Regent Projects.  Besides occasional transmittals sent and received from his personal computer, which have been disclosed to Lexington in the English actions, upon information and belief, all other documents are in the possession of the Flashpoint Administrator in England. (Forrest Affidavit, ¶¶ 12, 13, 14).

**E.      The Court Should Abstain From Adjudicating Lexington's Suit in Deference to the English Proceedings**

Mr. Forrest incorporates all arguments made in the corresponding section of Mr. Rogers' Memorandum (Rogers' Mem. at 27-34).[9]

**F.      To the Extent Lexington's RICO Claims Seek Damages in the Form of Legal Expenses, They Fail to State a Claim for Relief**

---

there.  Next, nearly all of the relevant witnesses are citizens of England, and nearly all of the relevant documents are located in England in the possession of the Flashpoint Administrator.  Moreover, Lexington conducts extensive business in England and would not be significantly inconvenienced by litigation there.  Lastly, Mr. Rogers argues that this Court has little interest in adjudicating this case.  The events at issue in this case took place in England between and among English citizens.  Moreover, English law may apply to Lexington's common law claims.  Given the United States' slight interest in the adjudication of this matter, this Court should not burden its docket or its jurors with this case.  (Rogers' Mem. at 18-26).

[9]      As Mr. Rogers notes, this Court has the power to dismiss or stay this action based on the pendency of the two parallel English proceedings.  Under this doctrine of "international abstention," the court considers "(1) the similarities of the parties involved in the foreign litigation; (2) the promotion of judicial efficiency; (3) the adequacy of the relief available in the alternative forum; (4) issues of fairness to and convenience of witnesses, parties and counsel; (5) potential prejudice to any of the parties; and (6) which action was filed first."  (Rogers' Mem. at 27-28 (citations omitted)).

As Mr. Rogers argues, this case parallels the two pending English suits, since Lexington's claims of fraud and damages are already being litigated in the Law Debenture Trust action against Lexington in England, and the defendants' alleged misappropriation is being litigated in both pending English actions.  Accordingly, dismissing or staying this action will promote judicial efficiency and economy.  Not only can the English courts provide adequate relief for Lexington's claims , but nearly all of the witnesses and relevant documents are located in England.  Accordingly, litigation of this matter in this Court would result in unfair prejudice to defendants.  Finally, the English proceedings are already well underway.  To avoid piecemeal litigation, Mr. Rogers argues that this Court should dismiss or stay this matter.  (Rogers' Mem. at 27-34).

Mr. Forrest incorporates all arguments made in the corresponding section of Mr. Rogers'

Memorandum (Rogers' Mem. at 36-38).[10]

**G.    Lexington's RICO and Common Law Fraud Claims With Respect to "Award" and "Regent I" Should Be Dismissed for Failure to Adhere to the Heightened Pleading Requirements of Fed. R. Civ. P. 9(b)[11]**

Plaintiff's RICO claims (Counts I and II), which are premised on mail and wire fraud, and

common law fraud claim (Count III), with respect to the "Award" and "Regent I" transactions,

fail to meet the particularity pleading requirements of Fed. R. Civ. P. 9(b).  Because these counts

fail to state claims against Forrest with respect to "Award" and "Regent I," the Court should

dismiss them pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) with respect to those transactions.

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances

constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  Thus, a

plaintiff must plead "with particularity the circumstances of the alleged fraud in order to put the

defendants on notice of the precise misconduct with which they are charged."  Seville Indus.

Mach. v. Southmost Machinery, 742 F.2d 786, 791 (3d Cir. 1984), cert. denied, 469 U.S. 1211

(1985).  Mere conclusory allegations will not suffice.  In re Prudential Ins. Co. of Am. Sales

Practices Litig., 975 F. Supp. 584, 598 (D.N.J. 1996).  Where a claim involves alleged multiple

wrongdoers, as here, a claimant must make specific and separate allegations against each party.

---

[10]    Mr. Rogers argues that a claim for damages in the form of legal fees is sustainable under RICO only where the intended consequences of defendants' alleged racketeering acts are Lexington's expenditure of legal fees.  Since Lexington's expenditure of legal fees does not stem directly from the alleged predicate acts of mail and wire fraud, but rather from Lexington's decision to defend against insurance claims and pursue creditors' remedies against Flashpoint in England, Lexington does not allege any facts from which a reasonable factfinder could find that defendants intended to cause Lexington to incur legal fees.  Accordingly, as Mr. Rogers asserts, Lexington's RICO claims fail to state a claim for relief under Fed. R. Civ. P. 12(b)(6) to the extent that they seek to recover damages in the form of legal fees.  (Rogers' Mem. at 36-38).  Mr. Forrest agrees with and adapts these and Mr. Roger's other arguments set out in footnotes 6, 7, and 8.

[11]    Mr. Forrest incorporates Mr. Rogers' arguments with respect to the "Award" and "Regent I" film financing transactions only.

20

"It is insufficient to attribute individual acts of fraud to all defendant's [*sic*] generally." <u>DePage Landen Fin. Servs. v. Cardservice Int'l, Inc.</u>, No. 00-2355, 2001 U.S. Dist. LEXIS 9692, at *9 (E.D. Pa. July 12, 2001) (dismissing claims for fraudulent inducement against multiple defendants for lack of specificity) (citing <u>Vicom, Inc. v. Harbridge Merchant Servs.</u>, 20 F.3d 771-78 (7th Cir. 1994)).

In the context of RICO claims predicated on allegedly fraudulent acts, a RICO plaintiff must meet the heightened pleading requirements of Rule 9(b). <u>See</u> <u>Warden v. McClelland</u>, 288 F.3d 105, 114 (3d Cir. 2002) (stating that alleged predicate acts of fraud are subject to Rule 9(b)'s heightened pleading standard); <u>In re Sumitomo Copper Litig.</u>, 995 F. Supp. 451, 455 (S.D.N.Y. 1998). Thus, the plaintiff must allege the specific person who made the misrepresentation; the time, place, and content of the misrepresentation; and the method by which the misrepresentation was communicated to the plaintiff. <u>Slaney v. Int'l Amateur Athletic Fed'n</u>, 244 F.3d 580, 599 (7th Cir. 2001); <u>Moore v. PaineWebber, Inc.</u>, 189 F.3d 165, 172-73 (2d Cir. 1999).

Lexington focuses its allegations of fraud in the estimation of projected revenues on five productions under Hollywood Funding Numbers Four, Five, and Six, including "Award" and "Regent I." Lexington's Complaint, however, fails to refer to any acts or misrepresentations specifically made by Forrest in connection with the estimates for "Award" and "Regent I," the presentation of those estimates to insurers, or the alleged misrepresentations in connection with misappropriation of funds earmarked for certain production slates.

For example, the only allegations of fraudulent transmissions involving Forrest are, "on information and belief, numerous faxes and telephone calls between defendant Forrest in England and defendant Rogers in this district for the purposes of implementing the scheme" to defraud.

(Compl. at ¶ 39(d)).  Lexington fails to identify the specific representations being transmitted, who actually made the misrepresentations, when the misrepresentations or their transmission occurred, or the content of the misrepresentations.  These allegations are clearly insufficient to state a claim for relief under RICO or any definition of common law fraud.  See, e.g., Russell v. Cooley Dickinson Hosp., Inc., 772 N.E.2d 1054, 1066 (Mass. 2002) (defining fraud as material misrepresentation made with knowledge of or recklessness as to falsity, with intent of inducing reliance, justifiable reliance, and resulting injury); Bortz v. Noon, 729 A.2d 555, 560 (Pa. 1999) (same); see also Three Rivers Dist. Council, [2001] UKHL 16 ¶ 53, 2001 WL 239757 (fraud claim must allege that defendant, intending to induce reliance, made misrepresentations to plaintiff which defendant knew to be untrue) (quoting Davy v. Garret, 7 Ch. D. 473, 489 (1878)).

As to "Award," Lexington alleges that "defendants" directed Lloyd Thompson to present the production to insurers and reinsurers and that "defendants" knew that the sales estimates used in the presentation were not derived from a "reasonable analysis."  (Compl. at ¶ 23(b).) Lexington makes no mention of any wrongful conduct specifically engaged in by Forrest with regard to "Award."  Finally, with regard to "Regent I," Lexington generally asserts that "the sales estimates prepared by or at the direction of defendants . . . were made up of whole cloth," but fails to allege any other details concerning this production.  (Compl. at ¶ 23(d).)

In summary, the Complaint is devoid of any specific allegations of wrongdoing by Forrest with respect to "Award" and "Regent I."  Accordingly, Lexington, in its general and cursory allegations of fraud by "defendants", fails to state RICO or common law fraud claims against Forrest with respect to those film financing transactions.

## IV.    Conclusion

After carefully considering the complete failure of Lexington to allege even a scintilla of the facts for this Court to exercise personal or subject matter jurisdiction over Mr. Forrest, or to fairly charge Mr. Forrest with RICO violations, one can only suspect that Lexington has engaged in blatant and impermissible forum shopping.  The apparent objective of Lexington's filing in a U.S. Court is to enable it to bring a RICO claim with its attendant potential for treble damages. The problem, of course, is that Lexington has no damages to treble and it has no basis for this Court's exercise of jurisdiction over Mr. Forrest.

Mr. Forrest respectfully requests that this Court dismiss Lexington's Complaint against him for lack of in personam jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), lack of subject matter jurisdiction due to lack of ripeness and standing pursuant to Fed. R. Civ. P. 12(b)(1), pursuant to the doctrine of *forum non conveniens*, or pursuant to principles of international fairness.

Alternatively, Mr. Forrest respectfully requests that this Court stay this action pending resolution of the two parallel English proceedings already under way and based on essentially the same facts.

Even if this Court were to permit Lexington's action to continue in this Court, Mr. Forrest requests that this Court dismiss Lexington's RICO claims against him for failure to state claims for relief pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, dismiss Lexington's RICO and common law fraud claims against Mr. Forrest with respect to the "Award" and "Regent I" film financing transactions for failure to plead fraud with specificity pursuant to Fed. R. Civ. P. 9(b).

23

Finally, in light of Lexington's failure to allege even arguable factual claims and to support its jurisdictional claims, Mr. Forrest requests such other and further relief as this Court may find appropriate.

Respectfully submitted,

**DUANE MORRIS LLP**


By:_____
     Edward M. Dunham, Jr.
     Identification No.  21550
     One Liberty Place
     Philadelphia, PA  19103-7396
     215.979.1148

     Counsel for Defendant
     David Forrest

Dated: _____

**EXHIBITS**

Exhibit A        Affidavit of David Forrest

Exhibit B        Rogers' Memorandum of Law in Support of his Motion to Dismiss

Exhibit C        <u>Lexington Ins. Co. v. Flashpoint Ltd.</u>, No. 2000 Folio 1410 (Q.B.).

25

## CERTIFICATE OF SERVICE

I hereby certify that on this date I caused a true and correct copy of the foregoing Motion to Dismiss, together with Memorandum of Law in Support thereof and all exhibits thereto, to be served by U.S. First Class Mail or international mail upon the following:

> Jeffrey R. Lerman, Esquire
> Montgomery, McCracken, Walker & Rhoads, LLP
> 123 South Broad Street
> Philadelphia, Pennsylvania 19109
> and
> Edward P. Krugman, Esquire
> Cahill, Gordon & Reindel
> 80 Pine Street
> New York, New York 10005
>
> Counsel for Plaintiff
>
> James J. Rohn, Esquire
> Conrad O'Brien Gellman & Rohn PC
> 1515 Market Street, 16th floor
> Philadelphia, PA  19102
>
> Counsel for Defendant T. Beauclerc Rogers IV

Dated: _____                    _____
                                           Edward M. Dunham, Jr.

26