IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEXINGTON INSURANCE COMPANY, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | NO. 02-CV-4435 |
| DAVID FORREST AND<br>T. BEAUCLERC ROGERS IV, | : | |
| Defendants. | : | |

**A F F I D A V I T**

I, David Forrest, being duly sworn according to law, depose and say that:

1. I am a defendant in this action.

2. The Flashpoint Companies, a group of now insolvent entertainment financing companies, acted as venture capitalists, as well as assisting others in raising financing for the film, television, merchandising, and multi-media industries from approximately 1995 to early 2001. Flashpoint's principal achievement was raising funds for the production of in excess of 40 films, as well as a television series, through the sale of future revenues to various Special Purpose Vehicles ("SPV's"), known as Hollywood Funding Numbers 1, 2, 3, 4, 5, and 6, which were wholly owned subsidiaries of Credit Suisse First Boston. The SPV's in turn raised funds through the sale of notes issued by and enforceable against them. Pecuniary Loss Indemnity Policies, such as those issued by Lexington, covered the purchasers of the notes against any shortfall between the balance due on the notes and the assets of the SPV's.

3. In late 2000, Lexington obtained an injunction against Flashpoint due to the failure of Flashpoint to comply with the terms of certain collateral agreements for Hollywood

Funding Numbers 4, 5, and 6 by failing to maintain approximately $9 million in cash in specific bank accounts, rather than as a combination of cash and other assets. The Court in England directed Flashpoint to place the cash into designated accounts, and Flashpoint's inability to meet this requirement rendered it insolvent and resulted in the institution of Administration proceedings (the English equivalent of U.S. Chapter 11 bankruptcy proceedings) against Flashpoint in March 2001.

4. From the inception of Flashpoint Ltd. (a Jersey company) in 1997 and subsequently Flashpoint (UK) Ltd and Flashpoint Investments, Ltd., until June 2000, I served as a director of each of these three companies and was involved in their day-to-day operations.

5. At no time have I served as a director of any of the United States companies in which Flashpoint invested. I may have been a director of CIGA (UK) Ltd., which existed for the sole purpose of holding the lease to Flashpoint offices in London, as well as Icestorm Entertainment, Inc., the Canadian operations based in Montreal.

6. In March 2001, I agreed to re-join the board of directors of one of the Flashpoint Companies, to assist the lone remaining director, Susan Wright, with certain administrative proceedings in England. No formal paperwork was filed with Companies House in England, reinstating me to the Board, so it is unclear whether, under English law, I served as a director at any point after June 2000.

7. I was not appointed to the position of Chief Executive Officer of any of the Flashpoint companies, nor to the position of Managing Director, a position more commonly found in U.K. companies, nor was I paid for such roles.

8. I was a named shareholder in Flashpoint Ltd., Flashpoint (UK) Ltd., Flashpoint Investments, Ltd., and Icestorm Entertainment Ltd.

9. I have never traveled to Pennsylvania for any business matter related to Flashpoint.

10. My only contact with Pennsylvania, with regard to Flashpoint, consisted of telephone conversations and telefaxes between me, from outside Pennsylvania and most often England, and T. Beauclerc Rogers in Pennsylvania.

11. My only other contact with Pennsylvania consists of non-Flashpoint business as follows:

(a) From 1973 to 1990, I worked in underwriting with various Lloyd's syndicates in London. I did business with various parties in Pennsylvania and visited Pittsburgh, Pennsylvania from time to time, but no more than approximately ten times in total – approximately five times for underwriting business, and approximately five times to visit friends.

(b) From 1990 to 1995, I worked as an insurance broker in England. I did business with clients and other brokers in Pittsburgh and visited Pittsburgh from time to time. During this time period, I visited Pittsburgh approximately five times. Each time, I stayed with friends, although I may have conducted some insurance broker work on each visit.

(c) I have visited the Eastern District of Pennsylvania only once, in approximately 1995 or 1996, when I attended a preparatory meeting with lawyers regarding a proceeding in New York for which I served as an expert witness.

(d) After the preparatory meeting, my only visits to Pennsylvania have been purely personal in nature, to visit the godparents of my children in Pittsburgh.

12. All the computers previously belonging to the Flashpoint Companies and to which I may have had access were left in the offices of Flashpoint after I finally left those offices and Flashpoint was put into Administration.

13. Before Flashpoint had offices in London, in late 1997, and subsequently when I occasionally worked from home on Flashpoint business, I used my personal computer to transmit or receive documents related to Flashpoint. In the English action, I was pressed by Lexington to give them access to that machine and, despite their efforts to force me to given them access to that machine as they dictated, I offered a voluntary undertaking that the Court in England accepted. However, soon thereafter, it became clear that Lexington was seeking to instigate these proceedings against me in the Eastern District of Pennsylvania, a fact that Lexington omitted to disclose to me and, more surprisingly, the Court in England. Upon further application to the Court in England, I have subsequently been released from my undertaking.

14. To my knowledge, all other Flashpoint documents are in the possession of the Flashpoint Administrator in England.

15. To my knowledge, Lexington is not permitted to use documents obtained in discovery actions in England to support its Complaint in this action, nor will Lexington be permitted to divulge documents obtained in the actions in England in an attempt to prove its allegations in this action.

The foregoing is true and correct based upon my personal information and recollection.

_____
David Forrest

Sworn to and subscribed before me

this ____ day of _____, 2002.

_____
NOTARY PUBLIC