IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEXINGTON INSURANCE COMPANY, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 02-CV-4435 |
| | : | |
| DAVID FORREST AND | : | |
| T. BEAUCLERC ROGERS IV, | : | |
| | : | |
| Defendants. | : | |

**T. BEAUCLERC ROGERS IV'S REPLY MEMORANDUM IN
FURTHER SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S
COMPLAINT OR STAY THE INSTANT PROCEEDINGS PENDING
CONCLUSION OF PARALLEL PROCEEDINGS IN ENGLAND**

**CONTENTS**

Summary of Argument                                                                 1

I.    ARGUMENT                                                                      3

    A.    Lexington has failed to establish subject matter
        jurisdiction because its claims remain contingent
        on the outcome of the English proceedings                          3

        1.    Lexington has not demonstrated that it will
            suffer any hardship, i.e., that it will face a direct
            and immediate dilemma, if the Court declines to
            adjudicate the instant matter at this time                 4

        2.    Lexington concedes that the damages it seeks
            that may result from a judgment of the English
            Courts in the English coverage action cannot
            establish ripeness or confer standing                      4

        3.    Lexington's suit is manifestly unfit for present
            review by this Court because the pendency of
            the English coverage action precludes Lexington
            from establishing a causal connection between its

|  |  | alleged damages and Defendants' alleged conduct | 5 |
|  | 4. | The caselaw relied on by Lexington cannot salvage its ripeness claim | 9 |
|  | 5. | Prudential concerns indicate that Lexington's suit is not presently fit for review by this Court | 10 |
| B. |  | The doctrine of *forum non conveniens* warrants dismissal | 12 |
| C. |  | The Court should abstain from adjudicating Lexington's suit in deference to the English proceedings | 12 |
| D. |  | Lexington fails to state claims under RICO and common law fraud against Rogers because its allegations of fraudulent statements by "defendants" collectively violate F.R.C.P. 9(b) and Lexington fails to use alternative means of injecting sufficient precision and substantiation into its fraud allegations to justify the lack of specific allegations of date, time and place | 12 |
|  | 1. | Rule 9(b) prohibits Lexington from generally alleging misrepresentations by "defendants" collectively | 13 |
|  | 2. | Lexington impermissibly pleads fraud "on information and belief" | 17 |
|  | 3. | Lexington's allegations of fraudulent sales estimates violate Rule 9(b) | 19 |
|  | 4. | The lack of specific allegations regarding representations by Rogers or the content and timing thereof, when combined with the infirmities described above, demonstrate that Lexington's Complaint fails to state a claim against Rogers | 19 |
| E. |  | Because the Complaint does not allege facts from which it can be inferred that the intended consequence of the alleged fraud was Lexington's expenditure of legal expenses, the RICO claims fail to state a claim for relief to the extent they seek such damages | 20 |

-ii-

II.    <u>CONCLUSION</u>                                                        22

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEXINGTON INSURANCE COMPANY, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 02-CV-4435 |
| | : | |
| DAVID FORREST AND | : | |
| T. BEAUCLERC ROGERS IV, | : | |
| | : | |
| Defendants. | : | |

**T. BEAUCLERC ROGERS IV'S REPLY MEMORANDUM IN
FURTHER SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S
COMPLAINT OR STAY THE INSTANT PROCEEDINGS PENDING
CONCLUSION OF PARALLEL PROCEEDINGS IN ENGLAND**

Defendant T. Beauclerc Rogers, IV ("Rogers") submits the instant Reply memorandum in order to point out and correct some of the numerous legal misrepresentations and inaccuracies propounded by plaintiff Lexington Insurance Company ("Lexington") in its attempt to stave off dismissal of its unfounded and insufficiently pled claims against Rogers.

First, the instant action is not ripe because Lexington has alleged no current damages that can presently be determined to have been proximately caused by the alleged wrongful conduct of Rogers and/or defendant David Forrest ("Forrest"). Any determination of proximate cause cannot be made unless and until a judgment in the English coverage action. Indeed, at least one federal court has held, in circumstances directly analogous to the instant case, that claimed damages in the form of presently incurred legal fees related to a still pending insurance coverage action are insufficient to confer standing in a RICO case premised on fraud claims. Terra Nova Ins. Co., Ltd. v. DiStefano, 663 F.Supp. 809 (D.R.I. 1987). Copies of the complaint in Terra Nova and of

the court's decision are attached hereto as Exhibits A and B, respectively. None of the cases cited by Lexington in support of its ripeness argument involve legal fees that related to still pending, separate litigation where the issue of proximate cause was dependent upon the results of that pending, separate litigation.

Second, Lexington's allegations of fraudulent conduct by Rogers utterly fail to comply with Federal Rule of Civil Procedure 9(b) and similarly fail to allege the requisite elements of RICO or common law fraud against Rogers specifically. For instance, despite the overwhelmingly number of cases specifically holding that allegations of fraudulent conduct by "defendants" collectively violate Rule 9(b), all of the claims against Rogers are premised such allegations. Indeed, some of that caselaw emanates from this Court, which has also specifically applied this requirement to cases involving only two or three defendants. Other infirmities in Lexington's pleading include alleging fraud based on "information and belief" without specifically identifying facts upon which that belief is based, and impermissibly alleging fraudulent sales estimates without corresponding allegations as to what method should have been used to come up with those estimates, how Rogers departed from that method, or that Rogers recognized or should have recognized the unreasonableness of the method used to calculate such estimates. These are only a sampling of the inadequacies in Lexington's allegations.

Third, Lexington has failed to refute the <u>federal</u> caselaw specifically holding that attorneys' fees are non-recoverable incidental damages under RICO except to the limited extent that the intended consequences of the defendant's racketeering acts are the plaintiff's expenditure of legal fees.

2

Fourth, for the reasons set forth in Rogers' memorandum of law in support of his motion to dismiss, as well as the reasons set forth Forrest's Reply Memorandum (which Rogers incorporates in full herein), this matter should be dismissed pursuant to the doctrines of *forum non conveniens* and/or international abstention.

## I.    ARGUMENT

### A.    Lexington has failed to establish subject matter jurisdiction because its claims remain contingent on the outcome of the English proceedings

In its Response Brief, Lexington concedes that its damages are prospective in nature and contingent upon the outcome of proceedings in the English courts. Moreover, it mischaracterizes cases in which RICO and fraud claims were held to be unripe in circumstances identical to the instant case. For these reasons, Lexington fails to demonstrate that its claims are ripe or that it has standing, and thus cannot establish that this Court has subject matter jurisdiction.[1]

Lexington does not dispute that it bears the burden of establishing ripeness, ABC Bail Bonds, Inc. v. Perkin, No. 02-1782, 2002 WL 1739551, at *3 (E.D.Pa. July 15, 2002) (citations omitted), or that ripeness involves weighing (1) the fitness of the issues for judicial review; and (2) the hardship to the parties of withholding court consideration. Whitman v. Am. Trucking

---

[1] As is often the case, ripeness and standing are closely related in the instant matter. Ripeness analysis involves when a proper party may bring an action and standing analysis involves who may bring it. Presbytery of N.J. of Orthodox Presbyterian Church v. Florio, 40 F.3d 1454, 1462 (3d Cir. 1994) (citing Armstrong World Indus., Inc. v. Adams, 961 F.2d 405, 411 & nn. 12-13 (3d Cir.1992) & Erwin Chemerinsky, Federal Jurisdiction 99 (1989)). "It is sometimes argued that standing is about who can sue while ripeness is about when they can sue, though it is of course true that if no injury has occurred, the plaintiff can be told either that she cannot sue, or that she cannot sue yet." Smith v. Wis. Dep't of Agric., Trade & Consumer Prot., 23 F.3d 1134, 1141 (7th Cir.1994); see also McInnis-Misenor v. Me. Med. Ctr., --- F.3d ---, 2003 WL 282402 (1st Cir. Feb. 11, 2003) (stating ripeness can be seen as time dimension of standing).

Ass'n, Nos. 99-1257 & 99-1426, 2001 U.S. LEXIS 1952, at *37 (U.S. Feb. 27, 2001); see Rogers'

Mem. of Law in Supp. of Mot. to Dismiss at 12-13 (citing caselaw setting forth ripeness

standard).

### 1.    Lexington has not demonstrated that it will suffer any hardship, i.e., that it will face a direct and immediate dilemma, if the Court declines to adjudicate the instant matter at this time

Lexington completely ignores the second ripeness factor - hardship - which focuses on

whether the plaintiff faces a direct and immediate dilemma, such that failure of the court to

adjudicate the issue presented will put the plaintiff to costly choices. N.E. Hub Partners, L.P. v.

CNG Transmission Corp., 239 F.3d 333, 341 n.8 (3d Cir. 2001).  Accordingly, Lexington

concedes that it will suffer no hardship as a result of this Court deciding not to adjudicate this

matter at the present time.  Terra Nova, 663 F.Supp. at 810-12 (holding plaintiff's incursion of

legal fees in defending state suits resulting from defendants' alleged RICO scheme to defraud

plaintiff did not constitute hardship).

### 2.    Lexington concedes that the damages it seeks that may result from a judgment of the English Courts in the English coverage action cannot establish ripeness or confer standing

Similarly, by failing to address the issue in its Response Brief, Lexington concedes that the

damages it seeks that may, but might not, result from a judgment of the English Courts in the LDT

coverage action are clearly contingent in nature and thus are insufficient to confer standing or

establish ripeness.  Those damages include payments to be made under the pecuniary loss

indemnity policies ("PLIPs") "if and to the extent" Lexington is forced to pay LDT's claims, and

the increase in the amount of loss for which Lexington may be liable as a result of Defendants'

alleged misappropriation of funds "if and to the extent" the PLIPs are enforceable.  (Compl. ¶¶

46(c) & (d), 51, 59(c) & (d) & 64).  Rather, for purposes of ripeness and standing, Lexington

relies entirely on its claim that it has suffered damages in the form of legal expenses expended in

defending the English coverage litigation.[2]  See Pl.'s Resp. Br. at 8 & 34 (purporting that

expenditure of fees defending coverage action establishes ripeness).

> **3.     Lexington's suit is manifestly unfit for present review by this Court because the pendency of the English coverage action precludes Lexington from establishing a causal connection between its alleged damages and Defendants' alleged conduct**

As to the fitness of the issues for judicial review, Lexington attempts to obscure the

ripeness analysis with its conclusory statement that it has already suffered injury resulting from

Defendants' alleged fraud, which has purportedly caused it to incur defense expenses in the

English coverage action.  The manifest flaw in Lexington's argument is its failure to recognize the

import of the law that it cites holding that its damages must be proximately caused by Defendants'

alleged conduct.[3]  See Pl.'s Resp. Br. at 33 (stating and citing caselaw concluding that injury must

be proximately caused by predicate acts, and citing caselaw providing that damages must flow

directly from fraud alleged); see also Presbytery of N.J., 40 F.3d at 1470 (stating plaintiff must

show, *inter alia*, causal relationship between injury and challenged conduct, i.e., that injury fairly

---

[2] Lexington concedes that the English injunctive proceedings it voluntarily instituted against Flashpoint have no connection with this action.  (Pl.'s Resp. Br. at 7.)  Regardless, its creditors claims against Flashpoint remain pending in England, and Flashpoint's Administrator Numerica has turned over its report on Flashpoint's operations to the U.K. Department of Trade and Industry, which has two years to bring action against any individuals who have committed wrongdoing with respect to Flashpoint.  To date, no such action has been taken against Forrest or Rogers.  Rogers' counsel has been informed that the affidavits appended to Forrest's reply brief will demonstrate these facts.

[3] As discussed *infra* at 21-23, Lexington's claimed damages of legal fees are not recoverable under RICO based on the allegations of the Complaint.

can be traced to defendant's action and not independent action of third party) (citing <u>N.E. Fla. Ch. of Assoc. Gen. Contractors of Am. v. City of Jacksonville</u>, 508 U.S. 656, 113 S.Ct. 2297, 2301-02 (1993)).

If Lexington loses the English coverage action, then necessarily its defense of fraud in the inducement of the PLIPS and collateral agreements thereto - the same operative factual dispute at issue in this litigation - will have been decided against it.  In such circumstances, Defendants' conduct cannot be said to have proximately caused Lexington's expenditure of legal fees.  Further, the doctrine of collateral estoppel/issue preclusion will clearly preclude Lexington from re-litigating this issue in this Court.  <u>See</u> <u>Leo Fiest, Inc. v. Debmar Pub'g Co., Inc.</u>, 232 F.Supp. 623, 624 (E.D.Pa. 1964) (holding that collateral estoppel requires federal court to recognize factual conclusions of English courts, and granting summary judgment on basis that English court's factual conclusion "would dispose of the litigation before" federal court); <u>Pony Express Records, Inc. v. Springsteen</u>, 163 F.Supp.2d 465, 473 (D.N.J. 2001) (stating once issue is decided by English court, determination is conclusive as against party to prior English litigation in subsequent federal suit based on different cause of action) (citing <u>Montana v. United States</u>, 440 U.S. 147, 153 (1979)).

The fact that Lexington has raised additional defenses in the English coverage action only confirms that Lexington's claims are unripe.[4]  Obviously, if those defenses succeed, Defendants' conduct cannot be the cause of Lexington's expenditure of legal fees.  Rather, those fees would necessarily be the result of claims by the insureds against the PLIPS that the English courts will

---

[4] In addition to its defense of fraud in the inducement, Lexington admits that its defenses in the English coverage action include breach of warranty, lack of insurable interest, broker's failure to procure reinsurance, and inevitability/lack of fortuity.  (Pl.'s Mem. of Law at 6.)

have determined to be without merit for reasons other than alleged fraud in the inducement. Thus,

even taking as true the factual allegations of the Complaint and the statements in the affidavits it

submitted, Lexington cannot presently establish that it has sustained an injury directly resulting

from the alleged predicate acts of Defendants.

Most importantly, and contrary to Lexington's misrepresentations, another federal court

has held that claimed damages in the form of legal fees related to a still pending insurance

coverage action are insufficient to confer standing in a RICO case premised on fraud claims. That

case, Terra Nova Ins. Co., Ltd. v. DiStefano, 663 F.Supp. 809 (D.R.I. 1987), is directly analogous

to the instant case. There, the plaintiff insurer asserted RICO claims against its insureds, whom

the plaintiff alleged engaged in a fraudulent scheme to defraud the insurer through, *inter alia*,

submitting false claims against policies issued by the plaintiff. The allegedly fraudulent claims

became the subject of state court lawsuits in which the insurer raised numerous defenses,

including fraud. In addressing ripeness, the court noted that the fitness of the issue for review

factor:

> . . . lead one to conclude that the viability of [the plaintiff's] RICO action is
> contingent upon the outcome of issues which may be decided in [the defendants']
> state court actions. If, for instance, [the defendants] succeed in recovering under
> the insurance policy from [the plaintiff] in the Providence County Superior Court,
> then any affirmative defense of fraud raised by [the plaintiff] . . . necessarily would
> have failed. This conclusion would eliminate the argued legal prerequisite to
> sustaining a cause of action under RICO: . . . [a] fraudulent act allegedly
> committed by defendants against [the plaintiff] . . .

Id. at 810. The court concluded that it was evident that the survival of the plaintiff's RICO action

rested upon the outcome of the state court proceedings. Id. at 811. Notwithstanding its

recognition that the plaintiff continued to incur legal fees in defending the state court actions and

the fact that the plaintiff sought to recoup such fees as an element of damages, the court found that

plaintiff's RICO claims were not ripe.  Id. at 812.  Thus, the circumstances presented in Terra

Nova are identical to those in the instant suit.  See Ex. A at 8, ¶29 (wherefore clause of Terra

Nova complaint); Ex. B (court's opinion in Terra Nova).

Similarly, Deck v. Eng'd Laminates, No. CIV. A. 99-2549-CM, 2001 WL 487940, at *1

(D.Kan. April 10, 2001), directly supports a conclusion that Lexington's claims are not ripe.  In

Deck, as here, the plaintiff alleged a conspiracy to induce plaintiff to enter an agreement and that

the defendants knew that the obligor under the agreement would not be able to fulfil its

obligations.  Id. at *3.  Lexington misrepresents that Deck involved only the existence, rather than

amount, of RICO damages.  (Pl.'s Resp. Br. at 38.)  However, the court in Deck assumed that the

plaintiff alleged presently incurred damages of legal expenses related to separate pending contract

litigation, and concluded that such damages (even if recoverable under RICO) could not be

determined to be proximately caused by the defendants' alleged frauds without first adjudicating

the breach of contract action.  Deck, 2001 WL 487940, at *3-*4.  As in Deck, even taking the

allegations of Lexington's Complaint as true, no determination of proximate cause can be made

until Lexington's defenses to coverage under the PLIPs are adjudicated by the English court.

On a related note, Lexington expressly recognizes the general rule under English law that a

successful party will recover his costs from his opponent, and that this general rule remains intact

notwithstanding recent changes to the English Civil Procedure Rules.  See Pl.'s Resp. Br., Dec. of

Michelle George ¶¶ 19 & 20 (citing, inter alia, Civil Procedure Rule 44.3(2)).  Although the court

"may" make a different rule, that result is clearly a contingency and, in any event, Lexington

presents no evidence - save a self-serving conclusory statement by Lexington's English counsel

8

lacking any factual support - that the English court will deviate from this general rule. Accordingly, if Lexington is successful in the English proceedings, it will most likely not have suffered any damages in the form of legal expenses. Regardless, Lexington's own evidence establishes that the existence of damages in the form of legal fees is contingent on the outcome of the English proceedings.[5]

### 4.   The caselaw relied on by Lexington cannot salvage its ripeness claim

Lexington's attempts to analogize the instant case to Dow Chem. v. Exxon Corp., 30 F.Supp.2d 673 (D.Del. 1998), are unfounded. As Lexington points out, the Dow court concluded that a RICO claim was ripe because although the underlying fraud at issue could be discharged in parallel patent proceedings, such an adjudication would not be binding in the RICO action. Id. at 691. In doing so, it specifically distinguished Terra Nova because that case involved a situation where the viability of the plaintiff's claims was entirely contingent upon the outcome of the proceedings in another court. Id. As discussed above, there can be no question that the conclusions of the English court in the LDT coverage action concerning the alleged fraud in the inducement of the PLIPs will have preclusive effect in the instant action.

Further, the case primarily relied on by Lexington for its argument that it has suffered a present RICO injury as a result of Defendants' alleged fraud, Stochastic Decisions, is inapposite. There, the relevant legal fees alleged as damages were incurred as a result of the defendants'

---

[5] Incredibly, George's affidavit states that a party may not recover all of its costs and cites a case that apparently holds only that costs are not recoverable to the extent "they were not reasonably incurred or reasonable in amount." See Pl.'s Resp. Br., Dec. of Michelle George ¶ 22 (citing Gen. of Berne Ins. Co. v. Jardine Ins. Mgt., Ltd., [1998] 2 All ER 301). Thus, Lexington implies that if it cannot recover costs in England to the extent that they were unreasonably incurred or unreasonable in amount, it should be able not only to recover those unreasonable expenses in this action, but to treble them as well.

fraudulent efforts to prevent the plaintiff from collecting on judgments already rendered.

Stochastic Decisions, Inc. v. DiDomenico, 995 F.2d 1158, 1167 (2d Cir. 1993).  The plaintiff was

apparently successful in collecting those judgments despite the defendants' fraud, the central

purpose of which the trial court determined to be the prevention of such collection.  Id. at 1166-

67.  Unlike the instant case, Stochastic Decisions did not involve legal fees that related to still

pending, separate litigation, where the issue of proximate cause was intimately intertwined with

the potential results of that pending, separate litigation.

Similarly, Lexington relies heavily on the unpublished decision in In re Found. for New

Era Philanthropy Litig., Civ.A.No. 96-3554, 1996 WL 585577 (E.D.Pa. Sept. 4, 1996) (Dalzell,

J.), which, without giving any factual background about the claims alleged, determined that the

plaintiffs' suit could proceed notwithstanding related bankruptcy proceedings in which the

plaintiffs could potentially be made whole.  However, unlike the instant case, in New Era the

damages alleged were not legal fees and the issue of proximate cause was not dependent on the

results of the separate litigation.

> **5.**     **Prudential concerns indicate that Lexington's suit is not presently fit for review by this Court**

In addition to constitutional concerns, ripeness analysis also encompasses prudential

concerns, such as the extent to which disposition of the issues before the court depends on facts

that may not yet be sufficiently developed.  McInnis-Misenor, 2003 WL 282402 (citations

omitted); see N.E. Hub Partners, 239 F.3d at 341 (discussing constitutional and prudential aspects

of ripeness).

Prudential concerns also dictate that Lexington's instant suit is not presently fit for review. Lexington cannot reasonably dispute that the various contingencies involved in its damages claims - including: 1) whether or not it will be forced to pay claims on the PLIPS; 2) if not whether it will be awarded costs; and 3) the particular defense on which the English court premises any potential judgment in Lexington's favor - will only be resolved by awaiting the results of the English coverage litigation. See ABC Bail Bonds, 2002 WL 1739551, at *3 (dismissing claim as unripe where further development would substantially aid decisionmaking process). These contingencies make Lexington's suit manifestly unfit for review at present. See Wright & Miller, 13A Fed. Prac. & Proc. Juris.2d § 3532 (stating ripeness turns on whether issues in dispute have matured to point warranting decision).

In summary, because the instant Complaint's allegations of proximate causation and injury are dependent on and intertwined with the potential results of the English coverage action, all of Lexington's claims in the instant matter rest on contingent future events that may not occur as anticipated or may not occur at all, and are thus unfit for adjudication at this time. In re Diet Drugs Prods. Liability Litig., MDL No. 1203, 2001 WL 283163, at *13 (E.D.Pa. Mar. 21, 2001) (Bechtle, J.); Deck, 2001 WL 487940, at *4; Josephthal & Co. Inc. v. John Phillips & Co., No. 00 CIV.3479(JSM), 2001 WL 286719, *2-3 (S.D.N.Y. Mar. 23, 2001); see also Lincoln House, Inc. v. Dupre, 903 F.2d 845, 848 (1st Cir. 1990) (stating it would be incongrous to entertain request for costs and attorneys' fees where plaintiff may lose state court action upon which those requests are based). When combined with Lexington's complete failure and inability to point out any hardship that it will suffer if this Court does not adjudicate its claims now, Lexington clearly has not met and cannot meet its burden of establishing ripeness or standing.

11

Accordingly, Lexington's Complaint should be dismissed for lack of jurisdiction.[6]

**B.**     **The doctrine of *forum non conveniens* warrants dismissal**

Rogers incorporates by reference co-defendant Forrest's argument in his reply brief demonstrating why the instant matter should be dismissed based on the doctrine of *forum non conveniens*.  See generally Forrest's Reply Br.

**C.**     **The Court should abstain from adjudicating Lexington's suit in deference to the English proceedings**

Rogers incorporates by reference co-defendant Forrest's argument in his reply brief demonstrating why the Court should abstain from adjudicating the instant matter in deference to the English proceedings.  See generally Forrest's Reply Br.

Additionally, it would be manifestly unjust to force Rogers, as an individual with limited financial means, to bear the substantial cost of litigating this matter in this Court against a multi-national corporation with virtually unlimited financial means, when it is undisputed that most of the discovery must necessarily take place in England, Lexington does substantial business there, and litigating this matter in England would be far more efficient because of the ongoing proceedings there.

---

[6] Unripe claims must be dismissed for lack of jurisdiction.  Taylor Inv. Ltd. v. Upper Darby Twp., 983 F.2d 1285, 1290 (3d cir. 1993); Arnett v. Myers, 281 F.3d 552, 562 (6th Cir. 2002); S. Pac. Transp. Co. v. Los Angeles, 922 F.2d 498, 502 (9th Cir. 1990).

**D.**    **Lexington fails to state claims under RICO and common law fraud against Rogers because its allegations of fraudulent statements by "defendants" collectively violate F.R.C.P. 9(b) and Lexington fails to use alternative means of injecting sufficient precision and substantiation into its fraud allegations to justify the lack of specific allegations of date, time and place**

13

Lexington cites to irrelevant *dicta* in the caselaw concerning Rule 9(b)'s particularity requirements in its desperate attempt to salvage its claims against Rogers, who is not specifically identified as making any of the alleged material misrepresentations set forth in Lexington's Complaint.  Lexington asserts that its reference to "defendants" collectively making such misrepresentations, without reference to the specific defendant making the misrepresentation or the circumstances surrounding that alleged misrepresentation, is somehow sufficient to state claims against Rogers under RICO and common law fraud.   For the reasons set forth below, Lexington's argument has been rejected by the federal courts, and should be rejected by this Court in order to effectuate Rule 9(b)'s purpose of  protecting a defendant's reputation by safeguarding him against spurious allegations of immoral and fraudulent behavior.  In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997) (noting Rule 9(b)'s purposes). Moreover, Lexington's Complaint is woefully deficient in other respects as to the claims against Rogers, including its lack of supporting factual averments for both its allegations based on "information and belief" and its blanket allegations of fraudulent sales estimates.  When these infirmities are combined with the lack of allegations concerning the specific representations to, from or involving Rogers, when the misrepresentations occurred, or the content thereof, it is apparent that Lexington's allegations are insufficient to state a claim for relief against Rogers under RICO or any definition of common law fraud, and are in gross violation of the federal pleading requirements.

> **1.**    **Rule 9(b) prohibits Lexington from generally alleging misrepresentations by "defendants" collectively**

As an initial matter, the clear edict of federal caselaw dictates that where, as here, a claim involves alleged multiple wrongdoers, the plaintiff must make <u>specific</u> and <u>separate</u> allegations

14

against each party, including the "<u>identity of the person who made the representation</u>, the time,

place and content of the misrepresentation, and the method by which the misrepresentation was

communicated to the plaintiff." <u>Vicom, Inc. v. Harbridge Merch. Servs.</u>, 20 F.3d 771, 778 (7th

Cir. 1994) (emphasis added); <u>accord</u> <u>Slaney v. Int'l Amateur Athletic Fed'n</u>, 244 F.3d 580, 599

(7th Cir. 2001); <u>Moore v. PaineWebber, Inc.</u>, 189 F.3d 165, 172-73 (2d Cir. 1999).  Allegations of

date, time and place (<u>not</u> the identity of the speaker) may be relaxed slightly in the rare

circumstances where the plaintiff uses alternative means of injecting sufficient precision and

substantiation into its allegations of fraud.  <u>Seville Indus. Mach. Corp. v. Southmost Mach. Corp.</u>,

742 F.2d 786, 791 (3d Cir. 1984).

      Importantly, the federal courts are particularly quick to dismiss allegations of fraud under

Rule 9(b) where, as here, the complaint merely alleges that the purported misrepresentations were

made by "defendants." <u>De Lage Landen Fin. Servs., Inc. v. Cardservice Int'l, Inc.</u>, Civ.A.No. 00-

2355, 2001 WL 799870, at *3 (E.D.Pa. July 12, 2001) (Waldman, J.); <u>Rosenbaum & Co. v H.J.</u>

<u>Myers & Co., Inc.</u>, Civ.A.No. 97-824, 1997 WL 689288, at *3 (E.D.Pa. Oct. 9, 1997) (Bechtle,

J.); <u>see</u> <u>Klein v. Gen. Nutrition Cos., Inc.</u>, 186 F.3d 338, 345 (3d Cir. 1999) (dismissing claim and

noting plaintiff must, at minimum, identify specific speaker of alleged misrepresentation); <u>Mills v.</u>

<u>Molecular Corp.</u>, 12 F.3d 1170, 1175 (2d Cir. 1993) (holding complaint failed to satisfy Rule 9(b)

where it attributed fraudulent statements to "defendants" generally); <u>accord</u> <u>Strange v. Nationwide</u>

<u>Mut. Ins. Co.</u>, 867 F.Supp. 1209, 1220-21 (E.D.Pa. 1994).  Rule 9(b) simply does not permit the

plaintiff to treat multiple defendants collectively -  the plaintiff must plead fraud with particularity

with respect to <u>each defendant separately</u> to inform each defendant of the nature of its alleged

participation in the fraud.[7]  See Saporito v. Combustion Eng'g, Inc., 843 F.2d 666, 657 (3d Cir.

1988) (finding violation of Rule 9(b) because complaint failed to identify specific speaker), vac'd

on other grounds, 109 S.Ct. 1306 (1989); Multitherm Corp. v. Fuhr, Civ.A.No. 89-6151, 1990

WL 161121, at *2-*4 (E.D.Pa. Oct. 22, 1990) (same); Odyssey RE (London) Ltd. v. Stirling

Cooke Brown Holdings Ltd., 85 F.Supp.2d 282, 293 (S.D.N.Y. 2000) (plaintiff must plead with

particularity by setting forth acts or omissions complained of by each defendant separately);

Budgetel Inns, Inc. v. Micros Sys., Inc., 8 F.Supp.2d 1137, 1150 (D.Wis. 1998) (plaintiff may not

treat two defendants as one for purposes of alleging fraud with particularity); accord Poling v. K.

Hovnanian Enters., 99 F.Supp.2d 502, 508 (D.N.J. 2000); In re Cendent Corp. Secs. Litig., 190

F.R.D. 331, 335 (D.N.J. 1999).

     As already described in Rogers' motion to dismiss, Lexington's Complaint, although

replete with allegations of wrongdoing by defendant Forrest and other specifically identified

alleged conspirators and agents that Lexington has not made parties to this suit, fails to refer to

any acts or misrepresentations specifically made by Rogers in connection with the estimates

concerning Hollywood Funding Numbers Four, Five and Six, the presentation of those estimates

to insurers, or the alleged misrepresentations in connection with misappropriation of funds

earmarked for certain production slates.  Indeed, every purportedly sufficient allegation of

---

[7] The cases addressing this requirement, even if limited only to those decided recently, are
legion.  See, e.g., Goren v. New Vision Int'l, Inc., , 156 F.3d 721, 730 (7th Cir. 1998); A-Valley
Eng'rs, Inc. v. Bd. of Chosen Freeholders of County of Camden, 106 F.Supp.2d 711, 718
(D.N.J.2000); Gunderson v. ADM Investor Servs., Inc., 85 F.Supp.2d 892, 906 (D. Iowa 2000);
Adams v. NVR Homes, Inc., 193 F.R.D. 243, 250 (D.Md. 2000); Naporano Iron & Metal Co. v.
Am. Crane Corp., 79 F.Supp.2d 494, 511 (D.N.J.1999); Greebel v. FTP Software, Inc., 182
F.R.D. 370, 374 (D.Mass. 1998); Pelfresne v. Vill. of Rosemont, 22 F.Supp.2d 756, 764 (N.D.Ill.
1998); Granite Partners, L.P. v. Bear, Stearns & Co., 17 F.Supp.2d 275, 286 (S.D.N.Y.1998).

misrepresentation by Rogers cited by Lexington in response to Rogers' motion to dismiss involves not an allegation against Rogers specifically, but a blanket allegation against "defendants" collectively. See, e.g., Compl. ¶¶ 20, 22-26, 28-29, 31-35, 44(c)(i). Thus, Lexington's Complaint, at least as to Rogers, is in clear violation of Rule 9(b) as interpreted and applied by the aforementioned caselaw.

Moreover, Lexington fails to use any adequate alternative means of injecting sufficient precision and substantiation into its allegations of fraud to justify the lack of and/or amorphous and vague allegations of date, time and place. In light of the undisputed facts that Forrest and Rogers live in different countries on different continents, and that Lexington is alleging a scheme that involved conduct in at least four countries (England, Russia, Canada and the United States), the need for specific allegations of date, time and place becomes even more acute. Simply alleging actions by "defendants" collectively is insufficient to put Rogers on notice of the alleged fraud when he was living and working in a locale thousands of miles from where most of the events referred to in the Complaint occurred.

For similar reasons and others, the case relied on by Lexington for the proposition that it should be permitted to merely allege misrepresentations by "defendants" is clearly distinguishable, in addition to being of questionable validity. See Pl.'s Br. at 29-32 (citing Regent Nat'l Bank v. K-C Ins. Premium Finance Co., Civ.A.No. 96-8615, 1997 WL 137309 (E.D.Pa. Mar. 21, 1997)).

First, to the extent this Court finds Regent analogous to the instant matter, Rogers submits that it should not be followed because despite its recognition of some of the caselaw discussed above, it fails to cite any authority that accords with its holding and cannot be reconciled with the

17

terms or purposes of Rule 9(b), the caselaw above and other decisions from within this federal district. For example, the suit in Rosenbaum & Co., as here, involved allegations of common law and securities fraud against only two defendants. 1997 WL 689288, at *1. Judge Bechtle dismissed the fraud claims against one of the defendants, stating that the complaint "simply blends the conduct and knowledge of the two defendants" making it "impossible for the court to evaluate Plaintiff's claim[s] regarding each defendant separately." Id. at *3-*4; see De Lage, 2001 WL 799870, at *3 (dismissing fraud claims asserted against only three parties because complaint attributed individual acts of fraud to defendants generally); In re Home Health Care of Am. Secs. Litig., Civ.A.No. 98-834, 1999 WL 79057, at *20-*21 (E.D.Pa. Jan. 29, 1999) (dismissing claims against one of three defendants where he was sued based on allegations against "defendants" collectively; allegations against other two were pled specifically and separately); see also Budgetel, 8 F.Supp.2d at 1150 (concluding that treating two defendants collectively violated Rule 9(b)); Haskin v. R.J. Reynolds Tobacco Co., 995 F.Supp. 1437, 1439-40 (granting three defendants' motion to dismiss for failure to differentiate among defendants).[8]

Second, Regent did not involve allegations of a geographically far flung conspiracy involving conduct in numerous countries on two continents with numerous participants, only two of which have been named as defendants by Lexington.

**2.      Lexington impermissibly pleads fraud "on information and belief"**

_____

[8] See also Saporito, 843 F.2d at 675-76 (four individual defendants); A-Valey Eng'rs, 106 F.Supp.2d at 718 (dismissing claims against three defendants); Adams, 193 F.R.D. at 253 (holding same as to four of five defendants treated collectively); Granite Partners, 17 F.Supp.2d at 286 (six defendants); Davies v. Genesis Med. Ctr., 994 F.Supp. 1078, 1091-92 (D. Iowa 1998) (same).

As a general rule, allegations of fraud based on information and belief violate the specificity requirements of Rule 9(b). HCB Contractors v. Rouse & Assocs., Inc., Civ.A.No. 91-5350, 1992 WL 176142, at *5 (E.D.Pa. Jul. 13, 1992); Kimmel v. Peterson, 565 F.Supp. 476, 482 (E.D.Pa. 1983); Cargo Partner AG v. Albatrans, Inc., 207 F.Supp. 86, 116 (S.D.N.Y. 2002); accord Saporito, 883 F.2d at 673-75. A limited exception to this prohibition exists only where the allegations are accompanied by adequate allegations of "'facts indicating why the charges against defendants are not baseless and why additional information lies exclusively within defendants' control.'" HCB Contractors, 1992 WL 176142, at *5 (emphasis added) (quoting In re Craftmatic Secs. Litig., 890 F.2d 628, 646 (3d Cir. 1990)). Lexington's lumping of the defendants together aside, its allegations of fraud based only upon information and belief are clearly impermissible under Rule 9(b) as they allege no supporting facts and, regardless, do not and cannot allege that the lacking information is exclusively within Rogers' possession.[9] A typical example of Lexington's conclusory allegations is its allegation of fraud related to Regent I, which states:

> On information and belief, the sales estimates prepared by or at the direction of defendants for the Regent I film slate (part of Hollywood 5) were made up of whole cloth.
> It is not possible to trace all of the individual components of these estimates back to source documents, which is itself an indication of fraud.
> Where it has been possible to trace back individual components, the components as presented exceeded a reasonable value for the component by a factor of between two and three.

(Compl. ¶ 23(d).) Lexington repeatedly asserts similar allegations "based on information and belief" (most of which mention only Forrest's conduct rather than Rogers' conduct) without

---

[9] Indeed, Lexington concedes that it possesses many if not most of the Flashpoint documents, which it copied from Flashpoint's Administrator. Rogers does not possess or even have access to those documents at this time.

19

sufficient factual allegations or allegations that the information is exclusively within "defendants'" possession.  See, e.g., Compl. ¶¶ 23(a)(iv), (c)(iv), (e)(ii) & (iii).  Lexington's attempt to "add the catalyst of alleged known falsehood, suspended in a thin elixir of 'information and belief'" should not be countenanced.  HCB Contractors, 1992 WL 176142, at *4; see Madonna v. United States, 878 F.2d 62, 66 (2d Cir. 1989) (affirming dismissal of conclusory allegations of fraud based on information and belief but not accompanied by sufficient supporting factual assertions).

### 3.    Lexington's allegations of fraudulent sales estimates violate Rule 9(b)

Where a complaint alleges fraud with regard to estimates of profits and similar financial data, Rule 9(b) requires that it also allege: (1) what method should have been used; (2) how the defendant departed from that method; and (3) that the defendant recognized or should have recognized the unreasonableness of the method used to calculate the estimates.  In re Trump Casinos Secs. Litig., 7 F.3d 357, 373 (3d Cir. ); Christidis v. First Pa. Mortgage Trust, 717 F.2d 96, 100 (3d Cir. 1983).

With regard to the two transactions in which Lexington alleges fraudulent conduct by "defendants," and not simply defendant Forrest, Lexington alleges that the "defendants" knew the sales estimates for the films were "without justification in fact or reasonable analysis" or "were made up entirely of whole cloth." (Compl. ¶ 23(b)(iii) & (d)(i).)  Thus, the Complaint fails to allege what method "defendants" should have used in allegedly making these estimates, how the "defendants" departed from that method, or facts from which it can be inferred that Rogers specifically recognized or should have recognized the unreasonableness of such a method.  Thus, the general allegations of fraudulent sales estimates utterly fail to satisfy Rule 9(b).

4.      **The lack of specific allegations regarding representations by Rogers or the content and timing thereof, when combined with the infirmities described above, demonstrate that Lexington's Complaint fails to state a claim against Rogers**

Lastly, as set forth in more detail in Rogers' memorandum of law in support of his motion to dismiss, the Complaint additionally fails to identify the specific representations being transmitted to, from or involving Rogers, when the misrepresentations or their transmission occurred, or the content of the misrepresentations.  These allegations are clearly insufficient to state a claim for relief against Rogers under RICO or any definition of common law fraud, and are in gross violation of the federal pleading requirements.

In summary, the Complaint is devoid of any specific or appropriately pled allegations of wrongdoing by Rogers.  Accordingly, Lexington's general, cursory allegations of fraud by "defendants" fail to state RICO or common law fraud claims against Rogers.[10]

E.      **Because the Complaint does not allege facts from which it can be inferred that the intended consequence of the alleged fraud was Lexington's expenditure of legal expenses, the RICO claims fail to state a claim for relief to the extent they seek such damages**

Lexington cites to numerous opinions, most of them from state cases not involving RICO, for the proposition that it has stated a claim for recovery of legal fees related to the English litigation.  These citations, and indeed Lexington's entire argument on this point, are misplaced.

First, as already discussed above, as a matter of law, Lexington cannot recover legal fees to the extent that, *inter alia*, they are not proximately caused by Rogers' conduct, and no such determination can be made in the absence of a judgment in the English coverage action.

---

[10] Alternatively, Rogers respectfully requests that the Court treat his motion to dismiss for lack of adequate allegations against him as a motion for a more definite statement under F.R.C.P. 12(e).

Second, Rogers has only moved to dismiss, on grounds of failure to state a claim, Lexington's RICO claims to the extent they seek attorneys' fees as damages. Rogers has not, at this stage of the litigation, sought dismissal of Lexington's common law claims to the extent that they seek such damages. Thus, the cases cited by Lexington addressing attorneys' fees as damages in connection with common law tort claims are irrelevant. See Seaboard Sur. Co. v. Permacrete Constr. Corp., 221 F.2d 366, 371-72 (3d Cir. 1955) (addressing recoverability of attorneys' fees in action based on common law fraud); N.J. Dep't of Envtl. Prot. v. Ventron Corp., 468 A.2d 150, 166-67 (N.J. 1983) (same); Cent. Trust Co. v. Goldman, 417 N.Y.S.2d 359, 361 (App. Div. 1979) (same); Seidel v. Gordon A. Gundaker Real Estate Co., 904 S.W.2d 357, 362-63 (Mo.App. 1995) (same); Nepera Chem., Inc. v. Sea-Land Serv., Inc., 794 F.2d 688, 695-97 (D.C.Cir. 1986) (addressing attorneys' fees as damages in negligence action).

Third, in applying the proximate cause requirement to RICO claims, the federal courts have specifically held that attorneys' fees are non-recoverable incidental damages except to the limited extent that the intended consequences of the defendant's racketeering acts are the plaintiff's expenditure of legal fees. Aramony v. United Way of Am., 969 F.Supp. 226, 232 (S.D.N.Y. 1997); Lemelson v. Wang Labs., Inc., 874 F.Supp. 430, 433 (D.Mass 1994); compare Capasso v. CIGNA Ins. Co.,765 F.Supp. 839, 842-43 (S.D.N.Y.1991) (stating it cannot reasonably be suggested that harm contemplated by fraudulent divorce proceedings was increase in plaintiff's attorneys' fees); Doe v. Roe, 756 F.Supp. 353, 359 (N.D.Ill.1991) (holding injuries incidental to racketeering acts not compensable under RICO). Lexington fails to address any of this caselaw. Moreover, the cases permitting recovery of legal fees as damages explicitly or implicitly recognize that the damages in those cases resulted from conduct specifically designed to

22

embroil the plaintiffs in costly litigation or to purposefully increase the costs thereof.  See, e.g., Stochastic Decisions, 995 F.2d at 1167 (incurring legal fees was RICO injury where predicate acts included preventing efforts to collect outstanding judgment); Bankers Trust v. Rhoades, 859 F.2d 1096, 1102 (2d Cir. 1988) (concluding plaintiff suffered RICO injury by incurring attorneys' fees defending frivolous suits designed to forestall collection of bankruptcy claim); Malley-Duff & Assocs., Inc. v. Crown Life Ins. Co., 792 F.2d 341, 354-355 (3d Cir.1986) (stating allegations of expense incurred prosecuting civil action, over defendants' obstructive tactics, sufficiently pled RICO injury); Hall Am. Ctr. Ass'n v. Dick, 726 F.Supp. 1083, 1097 (E.D.Mich.1989) (filing lawsuit as part of scheme to extort property may constitute predicate act).  Thus, attorneys' fees and costs that are merely incidental to, and not the intended consequence of, the alleged racketeering acts "do not rise to the type of proprietary damage for which RICO provides compensation."  Local 355, Hotel, Motel, Rest. & Hi-Rise Employees and Bartenders Union, 599 F.Supp. 761, 765 (S.D.Fla. 1984); accord Deck, 2001 WL 487940, at *4; Miller Hydro Group v. Popovitch, 851 F.Supp. 7, 13-14 (D.Maine 1994).

Lexington fails to set forth any allegations that the specific purpose of Rogers' alleged wrongful conduct was to embroil Lexington in coverage litigation - which Lexington recognizes involves numerous legal issues in addition to the specific issue of fraudulent inducement - and thereby cause the incursion of legal fees and expenses.  Thus, Lexington's RICO claims fail to state claims for relief to the extent that they seek to recover damages in the form of legal fees.

## II.    CONCLUSION

For all of the above reasons, Rogers respectfully requests that the Court dismiss the instant action for lack of ripeness and standing, pursuant to the doctrine of *forum non conveniens*, or pursuant to principles of international abstention.  Alternatively, Rogers respectfully requests that the Court stay the instant federal action in light of the parallel English proceedings.  Lastly, if this action is permitted to continue in this Court, Rogers requests that Lexington's RICO and fraud claims be dismissed for failure to state claims for relief and/or to plead fraud with particularity.

Respectfully submitted,

_____

James J. Rohn, Esquire, I.D. No. 21636
Nicholas M. Centrella, Esquire, I.D. No. 67666
Kevin Dooley Kent, Esquire, I.D. No. 85962
CONRAD O'BRIEN GELLMAN & ROHN, P.C.
1515 Market Street, 16th Floor
Philadelphia, PA  19102
(215) 864-9600

Dated: February 12, 2003          Attorneys for defendant T. Beauclerc Rogers IV

25

## CERTIFICATE OF SERVICE

I hereby certify that on this date I caused a true and correct copy of defendant T.

Beauclerc Rogers, IV's Reply Memorandum in Support of his Motion to Dismiss, together with

all exhibits thereto, to be served by U.S. First Class Mail upon the following:

> Jeffrey R. Lerman, Esquire
> Glenn F. Rosenblum, Esquire
> Montgomery, McCracken, Walker & Rhoads, LLP
> 123 South Broad Street
> Philadelphia, Pennsylvania 19109
>
> -and-
>
> Edward P. Krugman, Esquire
> Ira J. Dembrow, Esquire
> Scott M. Mory, Esquire
> Cahill, Gordon & Reindel
> 80 Pine Street
> New York, New York 10005
>      Counsel for plaintiff Lexington Insurance Co.
>
> Edward M. Dunham, Jr., Esquire
> Shannon Hampton Sutherland, Esquire
> Duane Morris & Heckscher, LLP
> One Liberty Place
> Philadelphia, PA 19103
>      Counsel for defendant David Forrest

Dated: February 12, 2003                  _____

                                          Kevin Dooley Kent