## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY,<br><br>                    Plaintiff,<br><br>- against -<br><br>DAVID FORREST and T. BEAUCLERC ROGERS IV,<br><br>                    Defendants. | Civil Action<br><br>No. 02-CV-4435 |

## DECLARATION OF ADRIAN MECZ

I, Adrian Mecz, declare under penalty of perjury under the laws of the United States of America as follows:

1.   I am a partner in the law firm of Denton Wilde Sapte, solicitors, located at 5 Chancery Lane, Clifford's Inn, London EC4A 1 BU, England. I am in overall charge of the conduct of various proceedings involving film finance issues in the United Kingdom on behalf of Lexington Insurance Company ("Lexington"). I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.   My partner, Michelle George, is on holiday this week and thus is not able to follow up on her Declaration of December 24, 2002. I have read Ms. George's Declaration and concur fully in the statements made therein. I make this Declaration to respond to the materials submitted on behalf of Mr. Forrest on March 3, 2003.

*The Declaration of Timothy John Langton*

3. I have read Mr. Langton's Declaration and, with respect, he is simply wrong to suggest that Lexington has any prospect at all of recovering all of the costs and expenses it has incurred or will incur in the litigation engendered by its issuance to Law Debenture Trust[1] of insurance policies in connection with the Hollywood 4, 5, and 6 transactions.

4. In the first place Lexington expended substantial sums pursuing its creditors' remedies against the UK Flashpoint entity and even obtained a costs order against Flashpoint in that litigation. Immediately thereafter, however, Flashpoint was placed into Administration (the equivalent of bankruptcy proceedings in the United States), and there is no prospect whatsoever of any substantial recovery — let alone full recovery — on the costs order. As to the costs order, Lexington is a general unsecured creditor, and Flashpoint UK is insolvent.

5. It is true, as Mr. Langton points out, that Numerica, Flashpoint's Administrator, is collecting some funds due the estate. Substantially all of such funds, however, are revenues from films produced under one or other of the Hollywood Funding transactions, and thus are subject to *secured* claims of whoever is entitled to the proceeds of the films. None of these proceeds, therefore, are available to satisfy the costs order.

6. Nor can Lexington recover these costs in the entirely separate litigation in which it is defending itself against LDT/HRT's claims on the Hollywood Funding policies. Costs in English litigation are only awarded in connection with the action immediately before the Court. Since the creditors' action against Flashpoint is entirely distinct from the insurance coverage litigation, the costs of the creditors' action cannot be recovered in the insurance litigation.

7. Mr. Langton also suggests that Lexington might be made whole through the recovery of "indemnity costs" in the LDT/HRT litigation. Here, too, he is wrong.

---

[1] LDT has now been succeeded by Hollywood Recovery Trust, another Jersey (Channel Islands) business trust.

-3-

8.   Awards of indemnity costs are extremely rare and are usually granted only if a party has in some way misbehaved in the litigation, such as by pursuing a clearly meritless claim or defense or by obtaining an injunction without making full disclosure to the Court of the surrounding circumstances. Regardless of whether Lexington prevails against LDT/HRT, those entities are doing nothing more than suing for recovery on insurance policies issued to them, and there is not the slightest chance that they will be liable for indemnity costs if they lose.

9.   The situation may be different as to the broker (JLT Risk Solutions, Ltd., an arm of Jardine Lloyd Thompson), for Lexington asserts that JLT committed fraud, and it is possible that Lexington might obtain an indemnity costs order against JLT if it establishes the fraud. We will certainly seek such an order in those circumstances; whether we obtain it will be discretionary with the Trial Judge, and indemnity costs remain very much the exception and not the rule.

10.  Even if we obtain an indemnity costs order against JLT, however, I am aware of certain costs and expenses that flow directly from Lexington's issuance of the Hollywood Funding policies that will not in any sense be costs of the action and thus will not be recoverable. I have in mind the substantial fees of Lexington's special entertainment counsel, the Los Angeles law firm of Loeb & Loeb, which has not only assisted us in the conduct of the LDT/HRT litigation but provided review and analysis of the Flashpoint/Hollywood Funding transactions before there were claims under the policies. The costs of the litigation assistance may well not be recoverable, notwithstanding the need for the special expertise that is only available from a firm such as Loebs; the costs of the pre-claim work done by Loebs is definitely not recoverable.

11.  I also have in mind the costs of Mr. Krugman and his firm. Lexington and we value his assistance in supervising the conduct of the LDT litigation on behalf of Lexington, but he does not have the kind of special expertise in a unique area of the law that Loebs has, and

-4-

Lexington would not recover his firm's fees even if we prevailed on every issue and got an indemnity costs order against JLT.

       This     day of March, 2003, I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

                                                             Adrian Mecz