## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEXINGTON INSURANCE COMPANY, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 02-CV-4435 |
| v. | : | |
| | : | |
| DAVID FORREST, et al., | : | (Hon. Anita B Brody) |
| | : | |
| Defendants. | : | |

### O R D E R

AND NOW, this _____ day of _____, 2004, upon consideration of

Defendant Martin Fink's Motion to Dismiss Plaintiff Lexington Insurance Company's Second

Amended and Supplemental Complaint or, Alternatively, To Stay All Proceedings as to Fink or,

Alternatively, To Sever Fink as a Defendant From the Litigation, and Plaintiff's response thereto,

it is hereby ORDERED that said motion is GRANTED and that Plaintiff's Second Amended and

Supplemental Complaint is DISMISSED as to Defendant Fink.

BY THE COURT:

_____
ANITA B. BRODY
United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LEXINGTON INSURANCE COMPANY, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 02-CV-4435 |
| v. | : | |
| | : | |
| DAVID FORREST, et al., | : | (Hon. Anita B Brody) |
| | : | |
| Defendants. | : | |

**MARTIN FINK'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED AND SUPPLEMENTAL COMPLAINT OR, ALTERNATIVELY, TO STAY ALL PROCEEDINGS AS TO FINK OR, ALTERNATIVELY, TO SEVER FINK AS A DEFENDANT FROM THE LITIGATION**

Defendant Martin Fink ("Fink"), by and through his undersigned counsel, hereby moves this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff Lexington Insurance Company's ("Plaintiff") Second Amended And Supplemental Complaint ("Complaint") against Fink in the above matter for the following reasons:

1. The Complaint fails to state a claim upon which relief can be granted because Plaintiff has waived its right to commence the present litigation against Fink pursuant to a November 2, 2001 Agreement between Fink and Plaintiff;

2. The Complaint fails to state a claim upon which relief can be granted because Plaintiff's right to bring the present lawsuit is expressly subject to conditions set forth in the November 2, 2001 Agreement, which conditions have not been fulfilled; and

3. The Complaint fails to state a claim upon which relief can be granted because Plaintiff failed to allege, as it is implicitly obligated to do under the November 2,

2001 Agreement, that no statement made by Fink to Plaintiff's counsel pursuant to the November 2, 2001 Agreement has been used by Plaintiff directly against Fink in preparing the Complaint against Fink or in making the allegations in the Complaint against Fink.

Alternatively, Fink requests that this Court stay all proceedings in this lawsuit against him based on interests of justice and judicial economy.

Lastly, if the court declines to dismiss the Complaint against Fink or to stay the instant litigation as to Fink, this Court is requested to sever Fink as a defendant from this litigation based on interests of justice and judicial economy.

The grounds in support of this Motion are more fully set forth in the accompanying memorandum of law, the affidavit of Martin Fink dated July 16, 2004 (Exhibit A) and the November 2, 2001 Agreement between Plaintiff and Fink (Exhibit B).

ECKERT SEAMANS
CHERIN & MELLOTT, LLC

By:_____

    Neil G. Epstein
    Attorney I.D. No. 09776
    1515 Market Street, 9th Floor
    Philadelphia, PA  19102
    (215) 851-8408

MICHELMAN & ROBINSON, LLP
Sanford Louis Michelman
Mora Z. Hanna
Jeffrey D. Farrow
4 Hutton Centre, Suite 300
Santa Ana, CA  92707
    (714) 557-7990

Attorneys for Defendant Martin Fink

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LEXINGTON INSURANCE COMPANY,   :::   CIVIL ACTION
                              :::
                   Plaintiff,    ::   NO. 02-CV-4435

    v.

DAVID FORREST, et al.,            (Hon. Anita B Brody)

           Defendants.

### AFFIDAVIT

I, Martin Fink, state and verify that:

1.     I am a defendant in this action.

2.     In early 2001, I was approached by The New Hampshire Insurance Company,

Lexington Insurance Company, and American International Group, Inc.

(collectively "Lexington"), through their legal counsel, Mr. Edward P. Krugman,

with a proposal that if I provided information to Lexington concerning any and all

aspects of my involvement with and knowledge of insurance-backed film financing

transactions that Lexington would agree to waive any and all claims, pending or

future, against me and Complete Film Company, relating to the insurance-backed

film financing transactions.

3.     After lengthy negotiations concerning that proposal, a written agreement was

reached between me on the one hand and  Lexington on the other, concerning the

scope of my cooperation in proving certain information and documents.  A true

and correct copy of that agreement, dated November 2, 2001 ("Agreement") is

### EXHIBIT A

attached to the pending motion as Exhibit "B".

4.    I signed that Agreement on or about November 7, 2001, and my signature appears on page 4 of that Agreement.  I also witnessed my legal counsel, Mr. Sanford L. Michelman, sign the Agreement in my presence on or about November 7, 2004.

5.    Since I executed the Agreement I have submitted to numerous interviews at the request of Lexington's legal counsel, including Mr. Edward Krugman.  At each of those interviews I provided detailed information concerning a broad range of topics concerning insurance-backed film financing transactions, and in particular, information related to the financing arrangements, development and/or distribution of films that are the subject of the claims alleged against me in the Complaint, and the relationship and associations by and between Flashpoint, New Beginnings, Prosperity Pictures, David Forrest and Beau Rogers.  As requested, I also provided and/or made available to Lexington's counsel various financial, banking and tax records related to the above matters, including approximately 100 boxes of files on or about December 6, 2001, which are, to my knowledge, still in Lexington's possession.

6.    During each and every of those interviews the only persons permitted in the interview room with me were my legal counsel, and legal counsel for Lexington.

7.    To my knowledge the interviews were not tape recorded; nor were they stenographically recorded.

8.    At all times during the interviews I gave honest, truthful and candid answers to all questions asked by Lexington's counsel, and I provided true and accurate records as requested by Lexington's counsel.

9.     I do not believe that Lexington's counsel has given me a good faith opportunity to cure any alleged default or breach of the Agreement, nor do I believe that Lexington's counsel has acted in good faith in determining that I did not provide candid, honest and truthful statements in the interviews and production of documents.

10.     To my knowledge I was the only witness that was cooperating with Lexington concerning insurance-backed film financing transactions as it relates to the claims alleged against me in the complaint.

The foregoing is true and correct based on my personal knowledge and recollection.

July 14, 2004.

Martin Fink

## **VERIFICATION**

I, Martin Fink, hereby verify and affirm that under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. § 1746.

Executed on:  July _16_, 2004

By: _____
        Martin Fink

# CAHILL GORDON & REINDEL

EIGHTY PINE STREET

NEW YORK, N.Y. 10005-1702

FLOYD ABRAMS
L. HOWARD ADAMS
ROBERT A. ALESSI
ROGER ANDRUS
HELENE R. BANKS
MICHAEL A. BECKER
LANDIS C. BEST
SUSAN BUCKLEY
KEVIN J. BURKE
P. KEVIN CASTEL
JAMES J. CLARK
BENJAMIN J. COHEN
CHRISTOPHER T. COX
W. LESLIE DUFFY
RICHARD E. FARLEY
PATRICIA FARREN
JOAN MURTAGH FRANKEL
BART FRIEDMAN
CIRO A. GAMBONI
WILLIAM B. GANNETT
CHARLES A. GILMAN
STEPHEN A. GREENE
ROBERT M. HALLMAN
WILLIAM M. HARTNETT
CRAIG M. HOROWITZ
DAVID G. JANUSZEWSKI
THOMAS J. KAVALER
LAWRENCE A. KOBRIN
IMMANUEL KOHN
EDWARD P. KRUGMAN

GEOFFREY T. LIEBMANN
WILLIAM T. LIFLAND
MICHAEL MACRIS
JONATHAN I. MARK
GERARD M. MEISTRELL
ROGER MELTZER
MICHAEL E. MICHETTI
JOHN F. MITCHELL
ATHY A. MOBILIA
DONALD J. MULVIHILL
KENNETH W. ORCE
ROY L. REGOZIN
DEAN RINGEL
JAMES ROBINSON
THORN ROSENTHAL
JONATHAN A. SCHAFFZIN
JOHN SCHUSTER
HOWARD G. SLOANE
LAURENCE T. SORKIN
LEONARD A. SPIVAK
GERALD S. TANENBAUM
JONATHAN D. THIER
JOHN A. TRIPODORO
ROBERT USADI
GEORGE WAILAND
GLENN J. WALDRIP, JR.
MICHAEL B. WEISS
GARY W. WOLF
JOHN R. YOUNG
DANIEL J. ZUBKOFF

WALTER G. CLIFF
DAVID R. HYDE
DENIS McINERNEY
MATHIAS E. MONE
IRWIN SCHNEIDERMAN
JOHN R. VAUGHAN
RALPH G. WINGER
SENIOR COUNSEL

CORYDON B. DUNHAM
PHILIP A. REINOWITZ
COUNSEL

WASHINGTON, D.C. OFFICE
666 K STREET, N.W.
WASHINGTON, D.C. 20006-1891

EUROPEAN OFFICE
AUGUSTINE HOUSE
6A AUSTIN FRIARS
LONDON EC2N 2HA

TELEPHONE 212-701-3000
FACSIMILE 212-269-5420

WRITER'S DIRECT NUMBER

(212) 701-3506

November 2, 2001

Re:   *Martin Fink*

Dear Mr. Michelman:

This letter sets forth the terms and conditions of an agreement between your client, Mr. Martin Fink (including Complete Film Company, of which you have informed me he is the principal owner, but not including any other entity), and The New Hampshire Insurance Company ("New Hampshire"), Lexington Insurance Company ("Lexington"), and other member or associated companies of American International Group, Inc. (collectively "AIG Companies"), for all of which we are counsel, pursuant to which Mr. Fink will make himself available for interviews with AIG Companies' counsel concerning any and all aspects of Mr. Fink's involvement with and knowledge of (a) the Flashpoint/Hollywood Funding transactions, (b) Flashpoint and/or its principals (including without limitation David Forrest and Beau Rogers) and/or any of their related entities, (c) any other aspect of insurance-backed film financing transactions.

You have indicated that Mr. Fink is willing to make himself available for an initial interview with AIG Companies' counsel in regard to Flashpoint/Hollywood Funding on a date and time and at a location convenient for you, Mr. Fink and AIG Companies' counsel. You have indicated further that at this initial interview, Mr. Fink is prepared to respond to questions about the following general subjects: Flashpoint accounting, how funds were distributed by Flashpoint, and New Beginnings Enterprises. With regard to these general subjects, Mr. Fink should be prepared at this initial interview to respond to questions, and to produce relevant documents in his possession, custody, or control (which phrase in this letter includes documents in the possession, custody, or control of any of Mr. Fink's related entities, including without limitation Assets and Rights Management), pertaining the following topics:

1.   All matters related to the delivery of "It Had to Be You."

2.   The sales estimates for the Regent and Prosperity slates in the Hollywood Funding 5 transaction, including without limitation any discussions with persons associated with Flashpoint, Lloyd Thompson, Merban Ltd., and Regent Entertainment.

3.   Accounting practices, books, and records at Flashpoint and its related entities (including without limitation New Beginnings Media and other New Beginnings entities, The Building LLC, Prosperity Pictures, New City, Icestorm, AKA Movies, and

# EXHIBIT B

CAHILL GORDON & REINDEL

-2-

New Standard Post), including without limitation the purposes of transfers of funds among them and how such transfers were recorded.

4.  The sale of The Building and the disposition of the funds derived therefrom.

5.  Allocations of films to Flashpoint slates, including timing of allocation.

As Mr. Fink's counsel, you may be present throughout the initial interview and all subsequent interviews, and he may consult with you in private whenever he or you so desire.

Unless AIG Companies' counsel determines (in good faith, but in its sole discretion) that Mr. Fink has not been truthful, candid, and (in the context of an initial interview) complete in this initial interview in responding to the questions posed to him by AIG Companies' counsel and in producing any relevant documents within his possession, custody, or control requested by AIG Companies' counsel (such production of documents to take place either at the initial interview or as promptly as practicable subsequent to said interview), AIG Companies agree that:

(i)  New Hampshire will dismiss Mr. Fink as a defendant in the lawsuit entitled *New Hampshire Insurance Company v. JL Risk Solutions, Ltd.*, et al., No. CV-00 13207RSWL (RCx), currently pending in the United States District Court for the Central District of California.

(ii)  AIG Companies will not name Mr. Fink or Complete Film Company as a defendant (or seek to implead, cross claim, or otherwise claim against them) in any current or future lawsuit relating to insurance-backed film financing transactions.

(iii)  AIG Companies will use their best efforts to persuade their co-insurers and/or reinsurers on any applicable insurance policies or reinsurance contracts relating insurance-backed film financing transactions not to name Mr. Fink or Complete Film Company as a defendant (or seek to implead, cross claim, or otherwise claim against them) in any current or future lawsuit relating to insurance-backed film financing transactions.

(iv)  AIG Companies shall not release any information obtained from Mr. Fink in the interviews described in this letter to any co-insurer or reinsurer without the express written undertaking and agreement of such co-insurer or reinsurer to abide by paragraph (iii) above.

(v)  After the initial interviews and immediate follow-ups AIG Companies will use their best efforts to limit the extent of Mr. Fink's time commitment to that reasonably necessary for AIG to investigate and defend claims related to the subject matter of this letter and pursue related litigation, it being understood that the judgment of counsel for AIG Companies will be determinative on the issue of reasonableness, provided, however, that the parties shall engage in good faith discussions to relieve any asserted burdens on Mr. Fink that are in excess of those reasonably contemplated by this agreement, and provided, further, (a) that if after the initial interviews and immediate follow-ups AIG requests substantial and concentrated amounts of Mr. Fink's time, it shall in good faith respond to a request for reimbursement of the excess attorneys' fees Mr. Fink incurs thereby, and (b) that if after the initial interview in New York on November 11 and 12 AIG requests that Mr. Fink travel outside the greater Los Angeles area for further interviews, then AIG will reimburse Mr. Fink and his counsel for their reasonable hotel charges plus business class airfare plus attorneys' fees for travel time only, calculated at the

CAHILL GORDON & REINDEL

-3-

regular hourly rate for one lawyer for actual in-the-air time plus two hours in each direction.

Each of the undertakings and agreements on the part of AIG Companies set forth above is, shall be, and shall remain, contingent upon (a) Mr. Fink's agreeing to make himself available, at reasonable dates, times, and locations, for further interviews by AIG Companies' counsel, the number and duration of which shall be solely within the discretion of AIG Companies' counsel, in regard to matters relating to Flashpoint/Hollywood Funding and/or any other aspect of insurance-backed film financing transactions; (b) Mr. Fink's being truthful, candid, and complete in such interviews; and (c) Mr. Fink's continued cooperation in making available to AIG Companies' counsel any and all documents in his possession, custody, or control relating to any of the subject matters set forth in this letter. If AIG's counsel determines that Mr. Fink has not complied with his commitment in regard to interviews and document production, it shall notify Mr. Fink's counsel of the reasons therefor and provide Mr. Fink, through his counsel, with the opportunity to rebut such determination. AIG's counsel shall consider such rebuttal in good faith, but the ultimate determination as to whether AIG is of the view that Mr. Fink has not been truthful, candid, and complete, remains in the discretion of AIG's counsel. If AIG's counsel adheres to such determination, AIG shall be relieved of its agreements and undertakings set forth in paragraphs (i) through (iii), above, but paragraph (iv) shall remain in effect. In no event, however, shall any statement made by Mr. Fink during the initial or any subsequent interview be used directly against him or Complete Film Company by AIG Companies in any legal proceeding, except that AIG Companies' counsel shall be free to examine Mr. Fink concerning such statements to the extent he testifies inconsistently therewith.

This agreement neither obligates Mr. Fink to testify in legal proceedings at the request of AIG Companies nor precludes AIG Companies from seeking to compel such testimony concerning any matter within the subject matter of this letter. Neither AIG Companies nor Mr. Fink will assert that interviews or production of documents pursuant to this agreement waives any privilege, protection, or evidentiary objection available to either of them.

If the terms and conditions of the agreement set forth in this letter are acceptable to Mr. Fink and accurately reflect the basis on which the initial and subsequent interviews of Mr. Fink by AIG Companies' counsel will be conducted, please acknowledge your acceptance of this agreement and have Mr. Fink acknowledge his acceptance of this agreement by both you and Mr. Fink signing the Acceptance below. Your signature and that of Mr. Fink below indicate acceptance of each of the terms and conditions of the agreement set forth in this letter.

This letter constitutes the entire understanding between AIG Companies and Martin Fink. You and Mr. Fink understand and confirm by your signatures below that Mr. Fink has not been made a promise of any kind, directly or indirectly, by AIG Companies or their counsel except as set forth in this letter.

Sincerely,

Edward P. Krugman
Counsel for New Hampshire Insurance Company,
   Lexington Insurance Company, and the member
   and associated companies of American International Group, Inc.

CAHILL GORDON & REINDEL

-4-

Sanford L. Michelman, Esq.
Michelman & Robinson, LLP
16255 Ventura Boulevard, Suite 320
Encino, California 91436

*Acceptance*

       I, Martin Fink, have read the above agreement in full; I have consulted with legal counsel of my own choosing regarding its significance, and I agree to the terms and conditions of the agreement between myself and AIG Companies set forth above.

Date:                                 Martin Fink

       I, Sanford Michelman, have read the above in full; I have consulted with my client, Mr. Martin Fink, and I have advised him to agree to the terms and conditions of the agreement between himself and AIG Companies set forth above.

Date:                                  Sanford L. Michelman

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LEXINGTON INSURANCE COMPANY, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 02-CV-4435 |
| v. | : | |
| | : | |
| DAVID FORREST, et al., | : | (Hon. Anita B Brody) |
| | : | |
| Defendants. | : | |

**MARTIN FINK'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION
TO DISMISS PLAINTIFF'S SECOND AMENDED AND SUPPLEMENTAL
COMPLAINT OR, ALTERNATIVELY, TO STAY ALL PROCEEDINGS AS TO
FINK OR, ALTERNATIVELY, TO SEVER FINK AS A DEFENDANT
FROM THE LITIGATION**

**I.     SUMMARY OF ARGUMENT.**

Plaintiff has brought this lawsuit alleging fraud and numerous RICO violations against

Fink stemming from a series of transactions concerning insurance-backed film financing

transactions.

Plaintiff recently filed the Second Amended And Supplemental Complaint ("Complaint")

adding Fink as a new defendant to this lawsuit and including him in five of the eight causes of

action.  The 32 page Complaint fails to state a significant and crucial fact:  **On November 2,**

**2001 Plaintiff executed an Agreement ("the Agreement") in which it agreed, among other**

**agreements, that it would not name Fink as a defendant in any then current or future**

**lawsuit relating to insurance-backed film financing transactions.**

The Agreement provides that Plaintiff can commence a lawsuit against Fink relating to insurance-backed film financing transactions if Plaintiff's counsel determines in good faith that Fink was not truthful, candid and complete in the interviews that Fink gave pursuant to the Agreement, notifies Fink's counsel of the reasons for such determination, provides Fink, through his counsel, with the opportunity to rebut such determination and considers such rebuttal in good faith. Plaintiff has not alleged the fulfillment of such conditions in its Complaint nor have such conditions been fulfilled, nor has Plaintiff alleged that the waiver provision in the Agreement is not in full force and effect, nor alleged that the information used to state a claim against Fink was obtained independent of information provided by Fink to Plaintiff during the interviews as required by the Agreement. Consequently, the Complaint fails to state a claim against Fink upon which relief can be granted.

Alternately, if the provisions in the Agreement are determined not to be a bar to the commencement and prosecution of the present lawsuit against Fink, then Fink respectfully requests the Court to stay the lawsuit as against him or to sever him as a defendant in this lawsuit in the interests of justice and judicial economy. In the present lawsuit, as it now stands, Plaintiff's lead counsel, Edward P. Krugman, Esquire, and perhaps other lawyers in Cahill Gordon & Reindel, is or are necessary witnesses at the trial of this action who will be called upon by Fink to prove, among other things:

    a)    Fink complied with his commitment in regard to interviews and document production and in all other respects under the Agreement,

    b)    Plaintiff's counsel did not provide Fink with the opportunity to rebut any determination to the contrary, and

c)   The allegations made against Fink in the present lawsuit were derived, in whole or in part, from the statements provided by Fink during the interviews required by the Agreement, in direct violation of the terms of the Agreement.

## II.   <u>FACTUAL BACKGROUND.</u>

In early 2001, Plaintiff approached Fink with a proposal whereby Plaintiff agreed not to proceed with or commence any litigation against Fink relating to insurance-backed film financing transactions in exchange for a promise to submit to interviews with counsel for Plaintiff concerning all aspects of Fink's involvement with and knowledge of the insurance-backed film financing transactions. (Fink Aff., ¶ 2).[1] On or about November 7, 2001, Fink and his counsel signed the Agreement with Plaintiff which was dated November 2, 2001.[2] (Fink Aff., ¶¶ 3, 4). The Agreement provides that in exchange for Fink proving truthful, candid and complete statements in interviews with Plaintiff's counsel, Plaintiff "will not name Mr. Fink or Complete Film Company as a defendant (or seek to implead, cross claim, or otherwise claim against them) in any current or future lawsuit relating to insurance backed film financing transactions." (Agreement, p. 2, § 5 (ii)). Under the Agreement, Fink agreed to submit to interviews concerning "any and all aspects of Mr. Fink's involvement with and knowledge of (a) the Flashpoint/Hollywood Funding transactions, (b) Flashpoint and/or its principals (including without limitation David Forest and Beau Rogers) and/or any of their related entities, (c) any other aspect of insurance backed film financing transactions." (Agreement, p. 1).

---

1  The Affidavit of Martin Fink, dated July 16, 2004, is attached to Fink's Motion as Exhibit A. References to the Affidavit are in the form "(Fink Aff., ¶ ___)."

2   The Agreement is attached to Fink's Motion as Exhibit B. References to the Agreement are in the form "(Agreement, p. ___)."

The Agreement further provides that if Plaintiff's counsel "determines in good faith, but in its sole discretion" that Fink has not been truthful and candid in regard to interviews and document production, AIG's counsel "shall notify Fink's counsel of the reasons therefor and provide Fink, through his counsel, with the opportunity to rebut such determination." (Agreement, pp. 2, 3). The Agreement also requires that AIG's counsel consider such rebuttal in good faith. (Agreement, p. 2, § 5). If Plaintiff's counsel adheres to such determination, then Plaintiff "shall be relieved of its agreements and undertakings" in the Agreement not to name Fink as a defendant in any current or future lawsuit relating to insurance-backed film financing transactions. (Agreement, p. 3).

Significantly, even if Fink was determined by Plaintiff's counsel to have breached the Agreement, Plaintiff agreed not to use, in any future litigation, any information against Fink that Plaintiff acquired from Fink during the interviews and in connection with the Agreement. The Agreement expressly provides:

> In no event, however, shall any statement made by Mr. Fink during the initial or any subsequent interview be used directly against him or Complete Film Company by AIG Companies [defined in the Agreement as including Plaintiff] in any legal proceeding, except that AIG Companies counsel shall be free to cross-examine Mr. Fink concerning such statements to the extent he testifies inconsistently therewith.

(Agreement, p. 3).

Since the execution of the Agreement, Fink has made himself available to Plaintiff's counsel for numerous interviews. (Fink Aff., ¶ 5). At each of those interviews, Fink provided detailed information concerning a broad range of topics concerning the insurance-backed financing industry and, in particular, information related to the financing arrangements, development and distribution of films that are the very subject of the claims alleged against Fink

in the Complaint. (Fink Aff., ¶ 5). During each of those interviews, the only persons permitted in the interview room were counsel for Plaintiff, Fink and Fink's legal counsel. (Fink Aff. ¶ 6). To Fink's knowledge, the interviews were not tape recorded nor were they stenographically recorded. (Fink Aff., ¶ 7).

Finally, if Fink remains a party in this lawsuit, it is respectfully submitted that Plaintiff's lead attorney, Edward Krugman, Esquire, will be a necessary witness on a number of material, contested issues, including what was allegedly stated, or not stated, by Fink during the interviews as the pretext for the asserted breach of the Agreement. Attorney Krugman's participation as a percipient witness will require his disqualification in this matter. This may also be true of other Cahill Gordon & Reindel attorneys.

**III.    THE WAIVER OF PLAINTIFF'S RIGHT TO PROCEED WITH ANY LITIGATION AGAINST FINK ARISING OUT OF INSURANCE-BACKED FILM FINANCING REMAINS IN EFFECT AND, THEREFORE, PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

**A.    The Court Can Take Notice Of The Agreement, Despite The Fact That It Was Not Mentioned In The Pleading.**

When adding Fink as a defendant to the instant litigation, Plaintiff ignored its obligations and commitments under the November 2, 2001 Agreement. As described above, the Agreement, by its very terms, was designed to permit Fink to provide information to Plaintiff concerning insurance-backed film financing transactions without the fear of having that information later used against him as a defendant in a lawsuit brought by Plaintiff on that same subject matter. The Agreement, by its express terms, was a covenant not to sue in exchange for truthful, candid, and complete answers to Plaintiff's questions concerning the topic of insurance-backed film

financing. The Complaint does not allege that the Agreement has been breached in any regard by Fink. In point of fact, the Agreement is not mentioned – it is totally ignored – in the Complaint.

Furthermore, nowhere in the 32 page Complaint is there any allegation whatsoever that the information and facts alleged against Fink are based on information acquired by Plaintiff independent of the information provided by Fink mandated by the Agreement. To the contrary, the Complaint alleges:

> With respect to the fraudulent sales estimates, plaintiff did not discover (and could not in the exercise of reasonable diligence have discovered) their existence until it gained access to . . . (b) Flashpoint and New Beginnings documents made available by a cooperating witness . . . . Plaintiff did not have access to any of these sources of information prior to January 2001.

(Complaint, ¶ 96). By its own pleading, Plaintiff's decision to add Fink as a defendant to this lawsuit was based, at least in part, on statements acquired from Fink, the cooperating witness,[3] during the interview process conducted pursuant to the terms of the Agreement. Plaintiff, by its own admission, has received the fruits of the Agreement with Fink and, contrary to the express terms of the Agreement, is now using that information to Fink's detriment. At the same time, Plaintiff has deliberately opted not to reference or include the Agreement in the Complaint, because to do so would blatantly draw reference to the Complaint's failure to state a claim against Fink upon which relief can be granted.

In deciding Rule 12(b)(6) motions, the court does not generally consider extraneous evidence in deciding if the motion should be granted. However, when a document is relied upon in the formation of a Complaint and it is deliberately not referenced or included in the pleading, the court may take notice of the document. As stated by the Court in <u>Pension Benefit Guaranty</u>

---

[3] Fink is not aware of any "cooperating witness" other than himself. (Fink Aff., ¶ 10).

Corp. v. White Consolidated Industries, Inc., 998 F.2d. 1192, 1196 (3rd Cir. 1993): "a court may consider an undisputedly authentic exhibit that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." The Agreement, attached to Finks Motion as Exhibit B, is undisputedly authentic – it has been signed by Plaintiff's counsel of record, Fink and Fink's counsel – and it has been relied on by all parties. To not take notice of such a document, as noted by the Court in Pension Benefit Guaranty Corp., would allow "a plaintiff with a legally deficient claim . . . [to] survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." (Id.)

The information obtained by Plaintiff pursuant to the Agreement was used and relied upon by Plaintiff in the formation of the present lawsuit and the allegations against Fink. As such, the court may consider this document when considering the Rule 12b(6) motion.

**B.      Plaintiff Has Failed To State A Claim Upon Which Relief May Be Granted.**

Federal Rule of Civil Procedure 12(b)(6) permits a trial court to dismiss a complaint or causes of action that fail to state a claim upon which relief can be granted.

Plaintiff knowingly entered into the Agreement with Fink in which it was agreed that in exchange for Fink's truthful, candid, and complete cooperation, Fink would not be subjected to any lawsuit by Plaintiff with respect to insurance-backed financing transactions. In executing the Agreement, Plaintiff expressly waives its right to sue Fink as follows: "AIG Companies [including Plaintiff] will not name Mr. Fink or Complete Film Company as a defendant (or seek to implead, cross complain, or otherwise claim against them) in any current or future lawsuit relating to insurance- backed film financing transaction." (Agreement, p. 2 § 5 (ii)). As such, the waiver precludes Plaintiff from bringing this action against Fink, since the Agreement expressly covers any claims relating to insurance-backed film financing transactions, the very subject of the

present lawsuit.  Plaintiff has failed to allege any facts that would relieve it from the waiver.

Consequently, its complaint against Fink fails to state any claim upon which relief can be

granted.

In addition, the Complaint fails to allege that the factual basis for the allegations against

Fink was obtained independent from any information provided by Fink to Plaintiff in connection

with the interviews given pursuant to the Agreement.  In fact, and as noted above, Plaintiff

admits that information acquired from Fink was important in commencing the present lawsuit.

(Complaint, ¶ 96).

In Three Rivers Motors Co. v. Ford Motors Company 522 F.2d. 885 (3rd Cir. 1975), the

Court of Appeals for the Third Circuit held that a release could be properly brought to the

Court's attention in a Rule 12(b)(6) motion.  The Court found that a release agreement barred the

plaintiff from asserting an anti-trust cause of action and, therefore, the cause of action would be

dismissed.  Three Rivers (a Ford franchise) and Ford had entered into an agreement in which

Ford would buy back the inventory of Three Rivers in exchange for a general release that was

executed by Plaintiff.  In holding that the release precluded the anti-trust claim, the Court stated:

"This language is as comprehensive as language can be. The general words 'all and all manner of

action and actions . . . ever had, now have or which they . . . hereafter can, shall or may have'

indicates a clear intent to leave nothing open and unsettled between the parties." (Id. at 895).

Likewise, the waiver crafted between Fink and Plaintiff leaves nothing to dispute as to its

scope and duration.  The waiver covers any current or future lawsuit related to insurance-backed

film financing transactions.  Plaintiff is not bringing an unrelated action against Fink; rather,

Plaintiff is bringing an action that falls squarely within the terms of the waiver.  Plaintiff has

alleged no facts which would release it from the waiver it gave to Fink in consideration of Fink's

disclosure of information.  Consequently, Plaintiff has failed to state a claim for relief against Fink, because the Agreement that both parties signed bars the claim.

In addition, the Complaint fails to state a claim upon which relief can be granted because even if the waiver provision in the Agreement is not in full force and effect, the Agreement provides that Plaintiff will not use directly against Fink any statement made by Fink to Plaintiff's counsel pursuant to the Agreement.  In this regard, the Complaint fails to allege that the present lawsuit and he claims against Fink were not based on information divulged by Fink during the interviews mandated by the Agreement and, instead, were based on information otherwise obtained.  Unless that threshold condition can be met, the Complaint fails to state a claim upon which relief can be granted against Fink.

## IV.    THE COURT SHOULD ISSUE A STAY OF ALL PROCEEDINGS RELATING TO FINK.

It is well settled that a court may issue a stay of proceedings as to any party in the interest of justice. Gold v. Johns-Manville Sales Corp., 723 F.2d 1068, 1077 (3rd Cir. 1983).  The power to stay proceedings is incidental to the power inherent in every court to schedule the orderly and efficient disposition of the cases on its docket. (Id.)  The exercise of that power will not be disturbed absent a patent abuse of discretion. (Id.)

In the present case, Fink was added as a defendant nearly two years after the litigation was filed.  While Fink is one of several defendants named in several causes of action, there are unique and novel issues, both factual and legal, affecting the Plaintiff's right, if any, to proceed with the litigation against Fink.  As such, if the pending litigation proceeds with Fink as a defendant, there is a substantial likelihood that the trial of this litigation will be substantially delayed and made even more complex than it already is.  The delay will be necessitated by the

fact that Fink has not commenced any discovery in this matter and that substantial discovery on

the part of Fink will involve oral depositions of Plaintiff's counsel and written discovery to

Plaintiff concerning the conditions precedent to a claim being stated against Fink, including (1)

whether a breach of the Agreement has in fact occurred, (2) whether Fink was given proper

notice of and the opportunity to rebut a claim of breach, and (3) whether any of the information

used by Plaintiff in its allegations against Fink in this lawsuit was obtained from Fink in the

interviews conducted pursuant to the terms of the Agreement and whether all such information

came from independent sources.

Finally, the interests of justice require that the present lawsuit not proceed against Fink at

this time because Plaintiff's lead counsel will be required to testify as a witness at trial if Fink

remains in this lawsuit, which will result in his disqualification as trial counsel and which may

cause further delay.  This may also be true of other attorneys of Cahill Gordon & Reindel.

Pennsylvania Professional Rule of Conduct Rule 3.7(a) (Lawyer as Witness) provides as

follows:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer
> is likely to be a necessary witness except where:(1) the testimony
> relates to an uncontested issue; (2) the testimony relates to the
> nature and value of legal services rendered in the case; or (3)
> disqualification of the lawyer would work substantial hardship on
> the client.

Rule 3.7(a) requires the disqualification of an attorney who is a necessary witness on a contested

issue from trying a case unless disqualification would work a substantial hardship on his client.

The disqualification of an attorney under Rule 3.7 "can arise whether the lawyer is called as a

witness on behalf of the client or is called by the opposing party."  (Comment to Rule 3.7).  The

difficulty of an attorney acting as advocate and fact witness is explained in the Comment to Rule

3.7 as follows: "[a] witness is required to testify on the basis of personal knowledge, while an

advocate is expected to explain and comment on the evidence given by others. It may not be

clear whether a statement by an advocate-witness should be taken as proof or as an analysis of

the proof." Further, it should also be noted that the Comment to Rule 1.7 (Conflict of Interest:

General Rule) provides "If the probity of a lawyer's own conduct in a transaction is in serious

question, it may be difficult or impossible for the lawyer to give a client detached advice."

In the case at bar, conditions precedent to bringing an action against Fink by the Plaintiff

include (1) a determination by Plaintiff's counsel in good faith that Fink was not "truthful, candid

and complete" in providing information to Plaintiff's counsel under the Agreement, (2) that Fink

was given the opportunity to rebut such determination, (3) that Plaintiff's counsel considered

such rebuttal in good faith, and (4) that the information provided to Plaintiff by Fink during the

interview process was not, in any way, a basis for naming Fink as a defendant in instant lawsuit.

The only persons who can provide information on behalf of Plaintiff on those issues are its legal

counsel who attended the numerous interviews with Fink. As noted above, there is no record of

what was said by Fink at those interviews. As such, only Plaintiff's counsel can provide

testimony as to what information, if any, was used to determine whether Fink breached the

Agreement, and only Plaintiff's counsel can provide testimony as to how, where and when

Plaintiff acquired the information to name Fink as a defendant in the instant action if such

information was not obtained from Fink during the interview process called for under the

Agreement.

Plaintiff counsel's active participation in this lawsuit as a key witness would require his

disqualification as trial counsel. In addition, Attorney Krugman's disqualification may also be

imputed to the entire Cahill, Gordon & Reindel firm pursuant to Rules of Professional Conduct

1.7 and 1.10 as Attorney Krugman's testimony will necessarily call for him (and all other attorneys at his firm) to waive all work product protections as to all matters relating to the basis for naming Fink as a defendant in the instant litigation, as well as to the foundational requirement that none of the information divulged by Fink pursuant to the Agreement has served as any basis for the allegations against Fink in the instant lawsuit.  In addition, disqualification may also be required because the Plaintiff would have to agree to waive its attorney-client privilege with Cahill, Gordon & Reindel as to all matters relating to the basis for naming Fink as a defendant in the instant litigation, as well as the foundational requirement that none of the information divulged by Fink pursuant to the Agreement has served as any basis for the allegations against Fink in the instant lawsuit.

Thus, in the interests of justice and the economical adjudication of this lawsuit, the case should proceed as to all parties except Fink, and that such claims proceed against Fink, if at all, after conclusion of the main action.

## V.   **THE COURT SHOULD SEVER FINK AS A PARTY TO THIS LAWSUIT.**

A district court has the discretion to order a separate trial of any claim or issue involving a party.  Federal Rule Civil Procedure Rule 21 provides as follows in relevant part:

> Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

For the reasons set forth above as the basis for the requested stay of the action as to Fink, which are incorporated hereat, the court is requested to sever Fink as a defendant to all claims, and that such claims should not proceed against Fink, if at all, until after conclusion of the main action.

12

## VI.    CONCLUSION.

Despite the express terms of the Agreement that Plaintiff will not proceed with any litigation against Fink concerning insurance-backed film financing transactions, the Plaintiff has done exactly that.

The motion to dismiss should be granted as Plaintiff has waived its right to proceed with the present litigation against Fink, Plaintiff has not fulfilled the conditions under the terms of the Agreement required to proceed with the instant lawsuit and Plaintiff has failed to meet its obligation under the Agreement to establish that none of the information provided by Fink to Plaintiff pursuant to the Agreement has been used as any basis for the allegations against Fink in the instant lawsuit.

In the alternative, the litigation should be stayed against Fink or Fink should be severed as a party to the lawsuit, in the interests of justice and judicial economy, based on the inevitable need for Plaintiff's counsel to provide sworn testimony with respect to issues relevant only to Plaintiff and Fink and the significant delay that will be occasioned by Plaintiff having to prove that it has not violated the terms of the Agreement in bringing the present lawsuit against Fink.

Respectfully submitted,

ECKERT SEAMANS
CHERIN & MELLOTT, LLC

By: _____

Neil G. Epstein
Attorney I.D. No. 09776
1515 Market Street, 9th Floor
Philadelphia, PA  19102
(215) 851-8408

13

MICHELMAN & ROBINSON, LLP
Sanford Louis Michelman
Mora Z. Hanna
Jeffrey D. Farrow
4 Hutton Centre, Suite 300
Santa Ana, CA  92707
 (714) 557-7990

Attorneys for Defendant Martin Fink

MO467411v2

## CERTIFICATE OF SERVICE

I, Neil G. Epstein, hereby certify that on July 16, 2004, one true and correct copy of the

foregoing Motion of Martin Fink to Dismiss Plaintiff Lexington Insurance Company's Second

Amended and Supplemental Complaint or, Alternatively, To Stay All Proceedings as to Fink or,

Alternatively, To Sever Fink as a Defendant From the Litigation and the Exhibits and

Memorandum in Support thereof was served via United States First-Class Mail, postage prepaid,

upon the following:

Edward P. Krugman, Esquire
Cahill Gordon & Reindel
80 Pine Street
New York, NY  10005
*Attorney for Plaintiff Lexington Insurance
Company*

Glenn F. Rosenblum, Esquire
Montgomery, McCracken, Walker
  & Rhoads, LLP
123 South Broad Street
Philadelphia, PA  19109
*Attorney for Plaintiff Lexington Insurance
Company*

Edward M. Dunham, Jr., Esquire
Duane Morris LLP
One Liberty Place
Philadelphia, PA  19103
*Attorney for Defendant David Forrest*

James J. Rohn, Esquire
Conrad O'Brien Gellman & Rohn PC
1515 Market Street, 16th Floor
Philadelphia, PA  19102
*Attorney for Defendant
T. Beauclerc Rogers, IV*

David L. Pennington, Esquire
Harvey, Pennington Ltd.
1835 Market Street, 29th Floor
Philadelphia, PA  19103
*Attorney for Defendant Tarlo Lyons*

Alexander Kerr, Esquire
McCarter & English, LLP
1735 Market Street, Suite 700
Philadelphia, PA  19103
*Attorney for Defendant New Beginnings
Enterprises LLC*

_____
Neil G. Epstein

MO467411v2

15