UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

LEXINGTON INSURANCE COMPANY,

Plaintiff,

- against -

DAVID FORREST, T. BEAUCLERC ROGERS IV,
STANLEY MUNSON, MARTIN FINK, all individually,
and NEW BEGINNINGS ENTERPRISES LLC, a California
Limited Liability Company, and TARLO LYONS, a
partnership,

Defendants.

Civil Action No. 02-CV-4435
(Hon. Anita B. Brody)

## LEXINGTON'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT MARTIN FINK'S MOTION TO DISMISS, SEVER, OR STAY

Edward P. Krugman
Kevin J. Burke
Ira J. Dembrow
CAHILL GORDON & REINDEL LLP
Eighty Pine Street
New York, New York 10005
(212) 701-3000

Jeffrey R. Lerman
Glenn F. Rosenblum
MONTGOMERY, MCCRACKEN, WALKER &
    RHOADS, LLP
123 South Broad Street
Philadelphia, Pennsylvania 19109
(215) 772-1500

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

STATEMENT OF THE CASE ........................................................................................ 2

ARGUMENT ................................................................................................................... 4

I. THE MOTION TO DISMISS SHOULD BE DENIED .............................................. 4

    A.    The Motion to Dismiss Is Based on Material Outside the Complaint,
           Which Cannot Be Considered on a Motion to Dismiss ............................. 4

    B.    Lexington Was Not Required to "Plead Around" the Litigation
           Agreement ................................................................................................. 7

II. FINK'S ALTERNATIVE MOTIONS TO STAY OR SEVER SHOULD BE
    DENIED ................................................................................................................... 10

    A.    The Motions to Stay and/or Sever Should Be Denied ............................. 10

    B.    Fink's Speculations Concerning the Possible Disqualification of
           Trial Counsel Do Not Provide a Basis to Stay or Sever This Action
           As to Fink ................................................................................................ 11

CONCLUSION .............................................................................................................. 14

# TABLE OF AUTHORITIES

**Page**

*Cases*

*American Original Corporation v. Legend Inc.*, 652 F. Supp. 962 (D. Del. 1986) ............................................................................  8-9

*Britland* v. *ACS Inc.*, 2004 WL 1615355 (E.D. Pa. July 16, 2004) ........................  4

*In re Burlington Coat Factories Securities Litigation,* 114 F.3d 1410 (3d Cir. 1997) ...............................................................................  6

*George* v. *Wausau Insurance Co.*, 2000 U.S. Dist. LEXIS 2748, (E.D. Pa. Mar. 13, 2000) ...........................................................................  13

*FDIC* v. *Beall*, 670 F. Supp. 279 (M.D. Pa. 1987) ................................................  7

*Fosburg* v. *United States District Court for the Eastern District of Pennsylvania*, 1999 U.S. Dist. LEXIS 2833 (E.D. Pa. Mar. 4, 1999)................................  5

*Killian* v. *McCulloch*, 850 F. Supp. 1239 (E.D. Pa. 1994) .................................  7n

*Louden* v. *Stewart,* 1989 U.S. Dist. LEXIS 9215 (E.D. Pa. Aug 2, 1989) ..............  13n

*Mid-Valley Candy Co.* v. *R. J. Reynolds Tobacco Company*, 2002 U.S. Dist. LEXIS 2104 (E.D. Pa. Feb. 8, 2002) ...................................................  10, 11

*Morganroth & Morganroth* v. *Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406 (3d Cir. 2003)..................................................................  4

*Pension Benefit Guaranty Corporation* v. *White Consolidated Industries, Inc.* 998 F.2d 1192 (3d Cir. 1993) ...........................................................  5, 6

*Rounick* v. *Fireman's Fund Insurance Co.,* 1996 U.S. Dist. LEXIS 6864 (E.D. Pa. May 20, 1996) .............................................................................  13

*Three Rivers Motors Co.* v. *Ford Motor Co.*, 522 F.2d 885 (3d Cir. 1975) ...........  7-8

*Vanguard Savings and Loan Association* v. *Banks*, 1994 U.S. Dist. LEXIS 8967 (E.D. Pa. June 27, 1994) ...........................................................  12

*Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.*, 210 F. Supp. 2d 552 (D.N.J. 2002) ...........................................................................  8

*Statutes and Rules*

18 U.S.C. § 1962(c) ...............................................................................  3

| | Page |
|---|---|
| **Cases** | |
| 18 U.S.C. § 1962(d) | 3 |
| Fed. R. Civ. P. 12(b) | 5 |
| Fed R. Civ. P. 12(b)(6) | 1, 2, 4, 5, 6, 8 |
| Pa. R. Prof. Conduct 3.7(a) | 13 |
| Pa. R. Prof. Conduct 3.7(b) | 13 |

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF PENNSYLVANIA

LEXINGTON INSURANCE COMPANY,

Plaintiff,

- against -

DAVID FORREST, T. BEAUCLERC ROGERS IV,
STANLEY MUNSON, MARTIN FINK, all individually,
and NEW BEGINNINGS ENTERPRISES LLC, a California
Limited Liability Company, and TARLO LYONS, a
partnership,

Defendants.

Civil Action No. 02-CV-4435
(Hon. Anita B. Brody)

## LEXINGTON'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT MARTIN FINK'S MOTION TO DISMISS, SEVER, OR STAY

Plaintiff, Lexington Insurance Company ("Lexington"), respectfully submits this Memorandum of Law in opposition to the motion of defendant Martin Fink to dismiss the Second Amended and Supplemental Complaint as to him or, in the alternative, to stay the action as to him or sever him from it.  Although ostensibly based on Rule 12(b)(6), Fink's motion is remarkable for what it does *not* say.  ***Nowhere does Fink assert that the claims pleaded against him do not state causes of action.***  He does not say Lexington has not correctly pleaded a RICO claim against him, that Lexington has not stated the elements of claims for fraud or tortious interference, or that Lexington has not set forth a claim that he owes Lexington money in respect of the film, "Beautiful."  Rather, Fink's entire motion to dismiss is based on his assertion that Lexington is barred from proceeding against him by reason of a November 2001 agreement (the "Litigation Agreement") in which he agreed to cooperate with Lexington in exchange for a covenant not to sue him.

-2-

The Litigation Agreement, however, is completely outside the scope of the Complaint, and it is thus not a proper subject for a motion under Rule 12(b)(6). Fink recognizes this by submitting a factual affidavit — *a factual affidavit* — in support of his motion. What he does not recognize is that Lexington has complied punctiliously with the Litigation Agreement and is relieved of the covenant not to sue because Fink breached his obligation to be "truthful, candid, and complete" in his interviews. That is, Fink lied, and Lexington retained the right to sue him if he did. The facts are set forth in the Declaration of Edward P. Krugman, submitted herewith.

Of course, this *is* a motion under Rule 12(b)(6), and the Court should not trouble itself with either the Fink Affidavit or the Krugman Declaration. If the Court does choose to look past the face of the Complaint, however, it will be clear that there are (at the very least) issues of fact as to whether Lexington is entitled to proceed under the Litigation Agreement. For that reason, too, the motion to dismiss should be denied.

## STATEMENT OF THE CASE

As set forth in the Second Amended and Supplemental Complaint (cited herein by paragraph number only) — the averments of which, of course, must be taken as true on this motion — Fink was one of the facilitators of a multi-year, multi-party, multi-transaction Ponzi scheme that has cost Lexington millions of dollars in direct, out-of-pocket loss (¶¶ 1, 10). The Ponzi scheme was effected through a cluster of related companies known generically as "Flashpoint" (¶ 2). On numerous occasions from 1996 to 1999, defendants, operating through Flashpoint, raised funds from various investors, purportedly to finance the production of motion pictures. To provide credit support for these transactions, insurance policies were procured from and issued by plaintiff and other insurance companies (*id.*).

Defendants' operation was corrupt from beginning to end. At the front end, defendants raised funds by lying to plaintiff and other insurers about the prospects of pictures whose

-3-

financing the insurers were backing (¶ 3).  After the funds were raised, defendants, including Fink, helped to fraudulently divert substantial proceeds of the transactions to real estate ventures, Russian movie theaters, and films other than the ones for which the proceeds were earmarked (*id.*).  As a result of defendants' frauds, plaintiff faced claims in England by the trustee for the investors in three of the six projects for which defendants raised funds, and expended over $15,000,000 in defending and settling these claims (¶ 5).

Fink was an active participant in the conduct of these affairs, in particular with regard to the obtaining of fraudulent sales estimates that formed the linchpin of defendants' schemes (¶ 27(e), (f)) and with the diversions of funds from the films for which they were intended (¶¶ 33, 35).  Accordingly, Fink is liable to Lexington for RICO offenses under 18 U.S.C. § 1962(c) and (d), as well as for common law fraud and tortious interference with contract (¶¶ 50-54, 60-72).  In addition, Fink, along with defendant New Beginnings Enterprises, which Fink controls, retain approximately $1,000,000 in revenues from the film "Beautiful" — the production of which was made possible by funds raised by defendants' Flashpoint enterprise.  These funds belong to Lexington, and Lexington is entitled to a declaratory judgment and injunctive relief that it is the rightful owner of such revenues (¶¶ 33(g), 88-92).

When this action was originally filed in 2002, Fink was not a party.  As Mr. Fink states in his motion, he had previously obtained from Lexington a covenant not to sue him in exchange for his cooperation in Lexington's defense of the English litigation concerning the Flashpoint films.  The Litigation Agreement conditions this covenant not to sue on Fink's ongoing obligations to be "truthful, candid, and complete" in providing documents and information (Motion, Ex. B at p. 3). During the time period of September 2003 to March 2004, Lexington concluded that Fink had violated this obligation by lying about his knowledge of one of the principal Flashpoint misappropriations of funds (Krugman Dec. ¶¶ 4-8 & Ex. D).  As a result, the Complaint was amended in April 2004 to add Fink as a defendant.

-4-

## ARGUMENT

Fink, one of six defendants in the action, seeks to dismiss the Complaint as to him on the ground that it fails to state a claim for relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fink does not assert that the complaint as pleaded is defective, and for that reason alone the motion should be denied. He relies on the Litigation Agreement, which is *not* properly before the Court under Rule 12(b)(6) and the proper interpretation of which Fink concedes can only occur after the conclusion of deposition and written discovery. As the interpretation and breach (by Fink or by Lexington) of the Litigation Agreement are factual matters *par excellence*, they could not be considered on this motion even if it were otherwise proper to do so. Fink's motion to dismiss is defective on its face and goes well beyond the bounds of Rule 12(b)(6). Fink's alternative motions to stay and/or sever — which focus almost entirely on the possible disqualification of Lexington's trial counsel — are not only ill-timed but are also deficient on their face. Accordingly, Fink's Motion should be denied in its entirety.

## I.

## THE MOTION TO DISMISS SHOULD BE DENIED

### A.    *The Motion to Dismiss Is Based on Material Outside the Complaint, Which Cannot Be Considered on a Motion to Dismiss*

It is axiomatic that, on a Rule 12(b)(6) motion, a court "must accept as true the allegations in plaintiffs' complaint and make all reasonable inferences in their favor." *Morganroth & Morganroth* v. *Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 408 (3d Cir. 2003). The inquiry on such a motion is confined to the "four corners of the complaint" as well as any exhibits annexed thereto. *Britland* v. *ACS, Inc.*, 2004 WL 1615355, at *1 n. 2 (E.D. Pa. July 16, 2004). Accordingly, additional evidence cannot be considered by a court on a Rule 12(b)(6) motion; when such additional evidence is submitted by a movant, it must either be excluded by the

-5-

court or, in the alternative, the entire motion must be "treated as one for summary judgment and disposed of as provided in Rule 56." Fed R. Civ. P. 12(b).

Courts do recognize a limited exception to this doctrine in the circumstance where there is "an undisputedly authentic document upon which the complaint is based that a defendant attaches as an exhibit to its motion to dismiss." *Pension Benefit Guaranty Corp.* v. *White Consolidated Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("*PBGC*"). This exception, however, has a "limited scope" and only extends to documents that are "specifically referred to in the Complaint." *Fosburg* v. *United States District Court*, 1999 U.S. Dist. LEXIS 2833, at *6 n. 5 (E.D. Pa. Mar. 4, 1999). If a document does not fall within this limited exception, it cannot be considered. *Id.* Fink's motion to dismiss is premised entirely on the Litigation Agreement and his own affidavit purportedly explaining this Agreement, but the Agreement (let alone Fink's affidavit) is neither incorporated in nor even referred to in the Complaint. (Motion to Dismiss, 1-2 and Exhibits A and B thereto)  Accordingly, it is not before the Court, and the motion to dismiss must be denied.

*Pension Benefit Guaranty Corp.* v. *White Consolidated Industries, supra*, the sole authority cited by Fink to support his claim that this Court should consider the Litigation Agreement on his motion to dismiss (Fink Mem. at 6-7), is noticeably inapposite. In *PBGC*, the PBGC sought to recover unfunded pension obligations from White Consolidated Industries ("WCI"), which had sold a group of unprofitable businesses and a number of unfunded pension plans to a new company, Blau Knox Corporation. *Id.* at 1194-95. The document that defendant wanted the court to consider was the purchase and sale agreement between WCI and Blau Knox. The Third Circuit ruled that this document could be considered on the defendant's motion to dismiss because "[t]he PBGC's complaint is based on this contract and describes some of its terms, but the PBGC did not attach the purchase and sale agreement to its complaint." *Id.* at 1196. Here, of course, Lexington's Complaint does not "describe[] some of [the] terms" of the Litigation

-6-

Agreement and is not based on the Litigation Agreement. Fink concedes that the Litigation Agreement is entirely separate from the Complaint: "[T]he Agreement is not mentioned — it is totally ignored — in the Complaint" (Fink Mem. at 6). This is not a situation where a court may consider material outside a complaint because a plaintiff brings an action based on a document. *Compare In re Burlington Coat Factories Securities Litigation,* 114 F.3d 1410, 1426 (3d Cir. 1997) (court considered annual report that contained allegedly misleading data that was cited in complaint) *with Fosburg,* 1999 U.S. Dist. LEXIS 2833, at *6 n. 5 (court refuses to consider correspondence not referenced in the pleadings).

Plaintiff boldly states, without any support whatsoever, that "[t]he information obtained by Plaintiff pursuant to the Agreement was used and relied upon by Plaintiff in the formation of the present lawsuit and the allegations against Fink" (Fink Mem. at 7). The Litigation Agreement, however, only forbids *direct* use of Fink's statements against him, and no such use was made (Krugman Dec. ¶ 11). In any event, Fink recognizes that any putative breach of the Litigation Agreement by Lexington raises a paradigmatic factual issue: In his alternative motions to stay the action as to him or to sever him from the action (*see* Point II, below), Fink notes that he will need "oral depositions . . . and written discovery to Plaintiff concerning the conditions precedent to a claim being stated against Fink, including . . . whether any of the information used by Plaintiff in its allegations against Fink in this lawsuit was obtained from Fink in the interviews conducted pursuant to the terms of the Agreement and whether all such information came from independent sources" (Fink Mem. at 10). None of this has any relevance to a motion under Rule 12(b)(6).

Fink also relies on *Three Rivers Motors Co.* v. *Ford Motor Co.*, 522 F.2d 885 (3d Cir. 1975), which according to Fink held that "a release could be properly brought to the Court's attention in a Rule 12(b)(6) motion" (Fink Mem. at 8). This case, however, is inapplicable to the issue presented in the instant case. In *Three Rivers*, in which the defendant raised the issue of a

-7-

release granted by the plaintiff, the interpretation of the release was placed in issue by plaintiff's "Petition to Set Aside a Release" which asserted that it had signed the release under duress and by the defendant's "Motion to Dismiss The Petition" which claimed that the plaintiff had failed to set forth a sufficient basis to avoid or set aside the release. *Id.* at 893. Here, in contrast, Fink admits that a determination of the meaning and scope of the Litigation Agreement and its effect on the action against him must await deposition and written discovery. In any event, "[r]elease is an affirmative defense. An affirmative defense may not be raised on a Rule 12(b)(6) motion unless the facts giving rise to the defense appear on the face of the complaint." *FDIC* v. *Beall*, 677 F. Supp. 279, 282 (M.D. Pa. 1987) (*citing Bethel* v. *Jendoco Construction Corp.*, 570 F. 2d 1168, 1174 n.10 (3d Cir. 1978)).

As Fink's Rule 12(b)(6) argument does not take issue with the allegations in the pleadings themselves, once the Litigation Agreement is excluded, the instant motion necessarily must be denied.[1]

**B.    *Lexington Was Not Required to "Plead Around" the Litigation Agreement***

Effectively conceding that the Litigation Agreement is not referred to in the Complaint and thus is not before the Court, Fink asserts that the Agreement *should* have been referred to. He states, without a shred of authority, that Lexington was required to make a number of representations about the Litigation Agreement in the Complaint. Specifically, Fink claims that the Agreement contains a number of "conditions precedent to a claim being stated against Fink" (Fink Mem. at 10), which he believes must be satisfied and referred to in any lawsuit against him

---

[1]    As a procedural matter, the Court may convert the instant motion to a summary judgment motion. However, as no discovery whatsoever has occurred as to Fink, this too should be denied and the result is the same. *See Killian* v. *McCulloch*, 850 F. Supp. 1239, 1256 (E.D. Pa. 1994) ("Summary judgment is appropriate only if plaintiff has had full opportunity to conduct discovery.") (internal quotations omitted). Even Fink recognizes that discovery is required to determine compliance by the parties with the Litigation Agreement (*See* Fink Mem. at 11).

-8-

relating to insurance-backed film financing transactions.[2] Fink then asserts that "Plaintiff has not alleged the fulfillment of such conditions in its Complaint nor have such conditions been fulfilled, nor has Plaintiff alleged that the waiver provision in the Agreement is not in full force and effect, nor alleged that the information used to state a claim against Fink was obtained independent of information provided by Fink to Plaintiff during the interviews as required by the Agreement." (*Id.*)  Based on this contention, Fink contends that the Complaint fails to state a cause of action against him.

Whatever obligations were imposed on Lexington by the Litigation Agreement, there is nothing in the Agreement, and Fink has cited no authority, that would require Lexington to make specific representations about the Agreement and its compliance with the Agreement in its Complaint.  Lexington's counsel *did* consider the Litigation Agreement before signing the Second Amended and Supplemental Complaint, of course, and he concluded consistent with Fed. R. Civ. P. 11 that Fink was in breach and Lexington could proceed (Krugman Dec. ¶ 10).  That is all that was required.

Fink's contentions in this regard simply cannot be decided on a motion to dismiss. Whether Lexington relied on or did not rely on information provided by Fink pursuant to the Agreement may be a proper subject for discovery; it is not, however, a proper basis on which to dismiss the complaint on a Rule 12(b)(6) motion.  See *Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.*, 210 F. Supp. 2d 552, 562 (D.N.J. 2002) (denying plaintiff's 12(b)(6) motion on counterclaim for failure to satisfy condition precedent, stating "[p]laintiff's blanket assertion that defendant has failed to satisfy this condition calls for consideration of facts extrinsic to the

---

[2] These "conditions," according to Fink are:  "Plaintiffs' counsel determines in good faith that Fink was not truthful, candid or complete in the interviews that Fink gave pursuant to the Agreement, notifies Fink's counsel of the reasons for such determination, provides Fink, through his counsel, with the opportunity to rebut such determination and considers such rebuttal in good faith." (Fink Mem. at 2)

-9-

pleadings and therefore beyond the scope of this Rule 12(b)(6) motion"); *American Original Corp. v. Legend, Inc.*, 652 F. Supp. 962, 968-969 (D. Del. 1986) (denying plaintiff's 12(b)(6) motion on counterclaim for failure to satisfy condition precedent, stating: "the defendants may be able to show that the circumstances surrounding the execution of the Contract indicate that neither party considered the timely shakedown of the defendants' vessels and quahog catch to be a condition precedent of the Contract. Furthermore, there are many factual issues surrounding the plaintiff's allegation that the defendants failed to perform this provision of the Contract. Based on this, the Court cannot grant plaintiff's Rule 12(b)(6) motion.")(citations omitted).

Fink concedes that discovery is necessary on this issue. In his alternative motions for a stay of all proceedings relating to him or to sever and order a separate trial of the claims against him (*see* Point II, below), Fink asserts that "discovery on the part of Fink will involve oral depositions of Plaintiff's counsel and written discovery to Plaintiff concerning the conditions precedent to a claim being stated against Fink, including (1) whether a breach of agreement has in fact occurred, (2) whether Fink was given proper notice of and the opportunity to rebut a claim of breach, and (3) whether any of the information used by Plaintiff in his allegations against Fink in this lawsuit was obtained from Fink in the interviews conducted pursuant to the terms of the Agreement and whether all such information came from independent sources." (Fink Mem. at 10).

Fink, therefore, concedes and recognizes that the construction and interpretation of the Agreement and any alleged "threshold" conditions that it imposes (Fink Mem. at 9) must await the conclusion of the discovery process and the development of a complete and appropriate factual record. Thus, the Court cannot rely on the Agreement to dismiss the Complaint as to Fink at this point in time, prior to the discovery that is conceded to be necessary by Fink. Fink's motion to dismiss should be denied by the Court.

-10-

## II.

## FINK'S ALTERNATIVE MOTIONS
## TO STAY OR SEVER SHOULD BE DENIED

*A.*      *The Motions to Stay and/or Sever Should Be Denied*

In his alternative motions, Fink seeks either to stay all proceedings as to him or to sever him from the proceeding. (Fink Mem. at 9-12)

"[A] stay of proceedings is an extraordinary measure and the burden rests upon the party requesting the stay to essentially make out a clear and convincing case of hardship or inequity which will result if a stay is not granted." *Mid-Valley Candy Co.* v. *R. J. Reynolds Tobacco Co.*, 2002 U.S. Dist. LEXIS 2104, at *4 (E.D. Pa. Feb. 8, 2002). Fink claims that a stay of all proceedings relating to him is necessary because there are "unique and novel issues . . . affecting the Plaintiff's right, if any, to proceed with the litigation against Fink," as a result of which "there is a substantial likelihood that the trial of this litigation will be substantially delayed and made even more complex than it already is" (Fink Mem. at 9). Fink ignores the fact that staying the action against him or severing him from the action, because of a purported "novel" issue (presumably the effect of the Litigation Agreement), will result in enormous inconvenience and increased expense for Lexington and, more important, for the Court, as the vast amount of evidence to be introduced against Fink and the other defendants in the RICO and fraud claims asserted against them will have to be presented twice.

As set forth in the Krugman Declaration, the lies that Fink told during his interviews with Lexington relate to his complicity in the misappropriations pleaded in the Complaint (Krugman Dec. ¶ 4 & Ex. D). Accordingly, the same evidence about how funds, purportedly raised by Flashpoint for the production of specified motion pictures, were actually spent that will be presented by Lexington to establish claims of RICO violations and fraud against Fink and other defendants will include all the evidence necessary to determine whether Fink complied

-11-

with the requirement of the Litigation Agreement that he be "truthful, candid, and complete" in his statements to Lexington about the use of these funds. That by itself requires denial of the motion to stay or sever.

More broadly, in every multi-defendant case there almost always will be some issues that are unique to a specific defendant (*e.g.*, did a particular defendant participate in the tortious conduct or the conspiracy alleged by the plaintiff). Any issues which may be specific to one of the defendants in the action certainly can be dealt with in the context of a single proceeding.[3] Fink's assertion that the Litigation Agreement somehow impacts his participation in the action can easily be resolved during the course of the action. Indeed, Fink ignores that all of his Litigation Agreement issues may be resolved on summary judgment in advance of trial. Fink's arguments do not begin to satisfy his required burden of demonstrating a showing of hardship or inequity; accordingly the motions to stay or sever should be denied. *See Mid-Valley Candy* at *9 (denying request for stay while substantial discovery remained and party had made no showing of hardship).

**B.    *Fink's Speculations Concerning the Possible Disqualification of Trial Counsel Do Not Provide a Basis to Stay or Sever This Action As to Fink***

Fink also bases his motions to stay or sever on his contention that Edward P. Krugman, Lexington's trial counsel in this action, who negotiated the Litigation Agreement with counsel for Fink, may, as a result of his participation in such negotiations, have to be disqualified from participation in the trial of this action. Wholly apart from the merits of this assertion by

---

[3] The fact that Fink has not commenced any discovery in this action (Fink Mem. at 10) is not unique as this is true also of the other three parties named as defendants in April, 2004. In fact, the Court just granted two of the new defendants, Tarlo Lyons and Stanley Munson, an extension of time to respond to the Complaint until September 15, 2004. As a result, there is and will be ample opportunity for Fink to pursue whatever discovery he wishes in the context of the existing action.

-12-

Fink (which, as noted below, will be strenuously disputed as non-meritorious by Lexington if and when a motion for disqualification is made by Fink), it does not follow that any disqualification of Mr. Krugman or his law firm should result in the duplicative proceedings sought by Fink. The connection between any disqualification of Mr. Krugman and the necessity to stay or sever the action as to Fink is, to say the least, not readily apparent.

Fink cites no authority for the proposition he asserts, that the possible disqualification of a party's designated trial counsel (and even the firm of which the trial counsel is a member) should result in the Court staying or severing an action as to a particular defendant to whom the conflict relates. Even if the Court should grant any subsequent to-be-filed motion to disqualify Mr. Krugman or the Cahill firm — a result that Lexington will oppose — all that it would mean is that Mr. Krugman would not be able to function as trial counsel.[4] It certainly would not compel the action to be stayed as to Fink or that Fink should be severed from the action. Indeed, either a stay as to Fink or severing Fink from the remainder of the action would be manifestly unfair to both Lexington and the Court, both of which would then have to engage in duplicative proceedings. Rather, it is in the interests of justice that Lexington and the Court not have to proceed piecemeal and that all matters be resolved in one proceeding.

While, as noted above, there is no disqualification motion before the Court and any such motion would not have the effect desired by Fink, a few comments about Fink's remarks on this subject will serve to illustrate the frivolous nature of his entire Motion. "Motions to disqualify are generally not favored . . . because [they] deprive parties of their counsel of choice and because these motions may be motivated by tactical concerns." *Vanguard Savings and Loan Ass'n*

---

[4] Mr. Krugman will of course not try the issues as to which he is a percipient witness. Whether any broader relief will be required (Lexington believes it will not) is not something the Court is in a position to determine at this time. As set forth below, the Litigation Agreement issues may be the subject of a motion (by either side, perhaps) for summary judgment, or it may be possible to bifurcate the issue. Other possibilities no doubt exist as well.

-13-

v. *Banks*, 1994 U.S. Dist. LEXIS 8697 at \*3 (E.D. Pa. June 27, 1994). A party's choice of counsel is entitled to "substantial deference." *George* v. *Wausau Insurance Co.*, 2000 U.S. Dist. LEXIS 2748 at \*2 (E.D. Pa. Mar. 13, 2000). It is the burden of the party arguing for disqualification to demonstrate clearly that continuing representation would be impermissible. *Id.* at \*4.[5]

Fink claims that Mr. Krugman would be disqualified under Pennsylvania Rule of Professional Conduct 3.7(a). Rule 3.7(a), by its plain language, only addresses disqualification "as advocate at a trial" and, therefore, is premature at this stage in the proceedings. *See Vanguard*, 1994 U.S. Dist. LEXIS 8697 at \*5-\*6 ("The motion is premature under the specific language of Rule 3.7 . . . The Court cannot fairly determine whether [counsel] should be disqualified as an advocate at this juncture, before discovery is complete.") Here, discovery of and by Fink has not even begun. Consequently, Fink's suppositions in this regard are pure speculation. *See Rounick* v. *Fireman's Fund Insurance Co.*, 1996 U.S. Dist. LEXIS 6864 at \*3 (E.D. Pa. May 20, 1996) ("[N]ecessity [for disqualification] requires more than mere speculation that counsel will be required to testify . . ."). Fink also is incorrect in his statement that "Attorney Krugman's disqualification may also be imputed to the entire Cahill, Gordon & Reindel [*sic*] firm pursuant to Rules of Professional Conduct 1.7 and 1.10." (Fink Mem. at 11-12) "A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9" Pa. R. Prof. Conduct 3.7(b).[6]

---

[5] The substantial burden that must be satisfied on any motion to disqualify a party's counsel no doubt influenced Fink merely to ruminate about, but not actually move to dismiss Mr. Krugman.

[6] Indeed, the harsh remedy of disqualification could easily be avoided. The Court could bifurcate the extremely small portion of the trial that would consider the Litigation Agreement upon which testimony from Mr. Krugman may be required. *See, e.g,. Louden v. Stewart,* 1989 U.S. Dist. LEXIS 9215 at \*5 (E.D. Pa. Aug 2, 1989) (bifurcating trial and barring attorney-witness from appearing as advocate only with regard to the portion of the trial for which he was to act as a witness).

-14-

## CONCLUSION

Fink's motion to dismiss, stay, or sever should be denied in its entirety.

Dated:  August 10, 2004

CAHILL GORDON & REINDEL LLP

*Of Counsel*:

    Kevin J. Burke
    Ira J. Dembrow

By: _____
          Edward P. Krugman
80 Pine Street
New York, New York  10005
(212) 701-3000

-and-

*Of Counsel*:

    Jeffrey R. Lerman
    Glenn F. Rosenblum

MONTGOMERY, MCCRACKEN, WALKER
   & RHOADS, LLP
123 South Broad Street
Philadelphia, Pennsylvania  19109
(215) 772-1500

*Attorneys for Plaintiff*