UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY,<br><br>                                    Plaintiff,<br><br>- against -<br><br>DAVID FORREST, T. BEAUCLERC ROGERS IV, STANLEY MUNSON, MARTIN FINK, all individually, and NEW BEGINNINGS ENTERPRISES LLC, a California Limited Liability Company, and TARLO LYONS, a partnership,<br><br>                                    Defendants. | Civil Action No. 02-CV-4435<br>(Hon. Anita B. Brody)<br><br><br>DECLARATION OF EDWARD P. KRUGMAN IN OPPOSITION TO DEFENDANT MARTIN FINK'S MOTION TO DISMISS, STAY, OR SEVER |

EDWARD P. KRUGMAN declares under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am a member of the law firm of Cahill Gordon & Reindel LLP and am admitted *pro hac vice* in this action as counsel for plaintiff, Lexington Insurance Company. Messrs. Jeffrey Lerman and Glenn Rosenblum, of Montgomery, McCracken, Walker & Rhodes LLP, are also counsel for Lexington herein.

2. The purpose of this Declaration is to explain the background, terms, and compliance by the parties with an agreement entered into on or about November 2, 2001 (the "Litigation Agreement") between defendant Martin Fink, on the one hand, and Lexington and other affiliated companies of American International Group, Inc. (the "AIG Companies"), on the other hand. The Litigation Agreement contains a covenant by the AIG Companies not to sue Fink with respect to certain matters. These matters would include the RICO claims in this action but not the claims for the proceeds of "Beautiful" (the Eighth Claim for Relief). The covenant is conditioned on, among other things, Fink being "truthful, candid, and complete" in providing

information to AIG Companies with respect to various film finance transactions. A copy of the Litigation Agreement is annexed hereto as Exhibit A.

3. I negotiated the Litigation Agreement on behalf of the AIG Companies with Sanford Michelman, counsel for Mr. Fink. The negotiations took place through written correspondence, e-mail correspondence and telephone communications between my office in New York, New York and Mr. Michelman's office in the Los Angeles area. Mr. Michelman also traveled to New York to meet with me.

4. In or about August or September 2003, I reached the tentative conclusion that Mr. Fink had violated the terms of the Litigation Agreement in that he had lied to counsel for Lexington about his complicity in certain of the funds diversions alleged in the complaint in this action.

5. Under the terms of the Litigation Agreement, I was required to — and did — afford Mr. Fink the opportunity to respond to my tentative conclusion before I acted upon it. I called Mr. Michelman and told him I would be sending him some materials. Attached as Exhibit B is a true and correct copy of an e-mail and accompanying documents that I sent to Mr. Michelman on September 9, 2003 with respect to the tentative conclusion I had formed. I received no response from Mr. Fink or Mr. Michelman to this e-mail.

6. Attached as Exhibit C is a true and correct copy of a further e-mail that I sent Mr. Michelman on October 8, 2003 inquiring as to Mr. Fink's position on the issues that I had raised in my September 9, 2003 e-mail. I again inquired as to Mr. Fink's position on these issues in a telephone call to Mr. Michelman in November 2003. I received no response from Mr. Fink or Mr. Michelman to these two inquiries.

7. Attached as Exhibit D is a true and correct copy of my letter to Mr. Michelman dated January 26, 2004, again inquiring as to Mr. Fink's position on the issues

that I had raised in September 2003. I received no response from Mr. Fink or Mr. Michelman to this letter.

8. After receiving no response to my letters, e-mails, and telephone call to Mr. Michelman with respect to my belief that Mr. Fink had breached the terms of the Litigation Agreement, I concluded that Mr. Fink did not plan to avail himself of the opportunity to rebut my determination and that Lexington, pursuant to the terms of the Agreement, was released from its obligation not to sue Mr. Fink. As set forth in the Agreement, this decision was to be "in good faith, but in [the] sole discretion" of AIG Companies' counsel (Ex. A, p. 2). I at all times acted in good faith in reaching the tentative conclusion that Mr. Fink had lied and thereafter making that conclusion firm.

9. I subsequently advised Mr. Michelman that, as a result of Mr. Fink's breach of the Litigation Agreement, Lexington was planning to add Mr. Fink as a defendant to existing RICO litigation against David Forrest and T. Beauclerc Rogers, IV which was then pending before this Court. Attached as Exhibit E is a true and correct copy of an e-mail chain between myself and Mr. Michelman during the period between April 19, 2004 to April 22, 2004, which contains two April 20, 2004 e-mails in which I advised Mr. Michelman, *inter alia*, that the AIG Parties intended to add Mr. Fink as a defendant in the RICO action pending in this Court and that an amended complaint to that effect was being circulated to the existing defendants in the action for their consent to its filing.

10. On or around April 29, 2004, Lexington filed a Second Amended and Supplemental Complaint in this action that named Mr. Fink as a defendant. I signed this document on behalf of Lexington. In doing so, I was aware of my obligations under Fed. R. Civ. P. 11. I would not have signed the Complaint had I not believed — as, indeed, I still believe — that (a) Mr. Fink had breached the Litigation Agreement by lying about his complicity in the improper funds transfers and (b) Lexington was thus free under the Litigation Agreement to proceed against Mr. Fink.

11. The Litigation Agreement further requires that no statement by Mr. Fink in his interviews with us be used directly against him in these proceedings, except for impeachment. No statement by Mr. Fink during his interviews is quoted in the Complaint or otherwise used directly against Mr. Fink.

12. I fully appreciate and understand that I may be a necessary witness on behalf of Lexington as to the construction and interpretation of the Litigation Agreement, and I will surely be a necessary witness on my good faith in making the determination that Mr. Fink had breached the agreement. I will not try these issues; on these issues, Lexington will be represented before the Court by its co-counsel in this action, Mr. Lerman.

I declare under penalty of perjury that the foregoing is true and correct, and that this Declaration was executed on August 9, 2004.

*[signature]*
Edward P. Krugman