IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY<br>Plaintiff<br><br>v.<br><br>DAVID FORREST and T. BEAUCLERC<br>ROGERS, IV, STANLEY MUNSON, MARTIN<br>FINK, all individually, and NEW BEGINNINGS<br>ENTERPRISES LLC, A California Limited<br>Liability Company, and TARLO LYONS, a<br>partnership,<br>Defendants | CIVIL ACTION<br><br>NO. 02-CV-4435<br><br>(Hon. Anita B. Brody) |

## <u>ORDER</u>

AND NOW this _____ day of _____, 2004, upon consideration of

Defendant, Tarlo Lyons' Motion to Dismiss, it is hereby ORDERED and DECREED that the

Motion is Granted and Plaintiff's Second Amended and Supplemental Complaint is dismissed

with prejudice.

_____
THE HONORABLE ANITA B. BRODY
UNITED STATES DISTRICT JUDGE

693282_1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY <br> Plaintiff <br> v. <br> DAVID FORREST and T. BEAUCLERC ROGERS, IV, STANLEY MUNSON, MARTIN FINK, all individually, and NEW BEGINNINGS ENTERPRISES LLC, A California Limited Liability Company, and TARLO LYONS, a partnership, <br> Defendants | CIVIL ACTION <br><br> NO. 02-CV-4435 <br><br> (Hon. Anita B. Brody) |

## MOTION OF TARLO LYONS TO DISMISS
## IN ACCORDANCE WITH FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2)

Defendant, Tarlo Lyons, moves this Honorable Court to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of in personal jurisdiction over defendant Tarlo Lyons and for the following reasons:

1.      Defendant, Tarlo Lyons, is a law firm with offices in London, England and with no office or other presence in the Commonwealth of Pennsylvania.

2.      Tarlo Lyons is a party without a significant presence or ability to act in Pennsylvania which has been drawn into litigation as a result of acts outside the forum.

3.      The only connection between this lawsuit and Pennsylvania is that one of the alleged wrongdoers lives in Gladwyne, Pennsylvania whereas numerous witnesses identified by plaintiff as having relevant information in their initial disclosures reside in the United Kingdom.

4.      Tarlo Lyons, its partners and agents, were not involved in raising the monies referred to in plaintiff's complaint

693282_1

5.      No act committed by Tarlo Lyons or any of its partners or agents acting in the course and scope of their employment involved the management of Flashpoint, the alleged "enterprise" in the RICO count but all such acts by Tarlo Lyons, its partners or agents relating to Flashpoint, were limited to the performance of professional services.

Furthermore, this action should be dismissed on the basis of *forum non conveniens* for the following reasons:

1.      An identical claim has been filed in the courts in the United Kingdom with the exception of the RICO claim;

2.      No act committed by Tarlo Lyons or any of its partners or agents acting in the course and scope of their employment involved the management of Flashpoint, the alleged "enterprise" in the RICO count but all such acts by Tarlo Lyons, its partners or agents relating to Flashpoint, were limited to the performance of professional services.  Therefore, Tarlo Lyons cannot, as a matter of law, be liable on that count.

3.      All claims except the RICO claim are barred by the statute of limitations and treble damage judgments are uncollectible in the United Kingdom.

4.      Plaintiffs in their initial disclosures have identified approximately fifty-two witnesses who are "likely to have discoverable information that Lexington may use to prove its claims in this action" of whom one individual is in the Commonwealth of Pennsylvania and the remainder are thousands of miles from Philadelphia where the court sits.

5.      The Complaint does not identify any individual whatsoever in the Commonwealth of Pennsylvania who has been caused damage by any of the allegations alleged in the Complaint.

6.    A balancing of the private interests and the public interests in this case dictates that it be brought elsewhere than in Pennsylvania.

The accompanying Memorandum of Law is incorporated by reference and sets forth in greater detail the basis for this Motion.

Respectfully submitted,

HARVEY, PENNINGTON LTD.

BY: _____
DAVID L. PENNINGTON
Identification No: 03633
1835 Market Street, 29th Floor
Philadelphia, PA 19103
(215) 563-4470
Attorneys for Defendant,
Tarlo Lyons

Dated: _9/15/04_

693282_1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY | CIVIL ACTION |
|                    Plaintiff | |
|      v. | NO. 02-CV-4435 |
| DAVID FORREST and T. BEAUCLERC ROGERS, IV, STANLEY MUNSON, MARTIN FINK, all individually, and NEW BEGINNINGS ENTERPRISES LLC, A California Limited Liability Company, and TARLO LYONS, a partnership, | (Hon. Anita B. Brody) |
|                    Defendants | |

## MEMORANDUM OF LAW
### IN SUPPORT OF THE MOTION OF TARLO LYONS TO DISMISS
### IN ACCORDANCE WITH FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2)

## I.    HISTORY OF THE CASE

This matter was initiated by Lexington Insurance Company against defendants, David Forrest and T. Beauclerc Rogers, IV, by a Complaint filed in July 2002 alleging the following claims:

      6.     Violation of 18 U.S.C. § 1962(c);

      7.     Violation of 18 U.S.C. § 1962(a);

      8.     Violation of 18 U.S.C. § 1962(d);

      9.     Common law fraud; and

      10.    Tortious interference with a contract.

On April 29, 2004, a Second Amended and Supplemental Complaint was filed in which Tarlo Lyons, a partnership, and Stanley Munson, as well as other individuals were added as defendants. The claims against Tarlo Lyons are as follows:

      1.     Violation of 18 U.S.C. § 1962(c);

      2.     Violation of 18 U.S.C. § 1962(d);

3.    Common law fraud;

4.    Tortious interference with contract;

5.    Fraudulent inducement; and

6.    Tortious interference with contract.

The court granted an extension of time in which to respond to both Tarlo Lyons and Stanley Munson and this Motion to Dismiss is the response of Tarlo Lyons.

## II.    STATEMENT OF FACTS

The court is no doubt familiar with the factual allegations being made by the plaintiff based upon earlier motions presented to the court, but a brief summary would no doubt be helpful. Plaintiff alleges that it issued an insurance policy at the instance of defendants Forrest and Rogers, the principal owners of Flashpoint, Ltd., Flashpoint (UK), Ltd., Flashpoint Investments and related entities, known as a Pecuniary Loss Indemnity Policy. The Flashpoint companies raised capital for the purpose of making motion picture films, including films for television and video. It is alleged that the monies were raised by the use of what is known as "special purpose vehicles" which sold notes and provided for repayment only from the stream of revenues from the movies produced. The insurance policy was provided in order to guarantee repayment and to make the notes marketable and it provided for repayment in the event the revenue fell short.

Tarlo Lyons was *not* the law firm that performed the legal services that related to raising the money. That was done by other law firms in London including Weil Gotshal & Manges, which was added as a defendant in the litigation which has terminated in London as a result of a settlement. That litigation which had been brought against Lexington Insurance Company by the claimants under the Lexington policy resulted in a settlement which forms the basis of plaintiff's claim in this action.

- 2 -

Tarlo Lyons was retained to perform certain legal services on behalf of the Flashpoint companies, notably the drawing up of contracts necessary for the production of films, drafting of the collateral agreements between Lexington and Flashpoint and as co-signatory on the Flashpoint company accounts. The disbursement of funds was at the direction of Flashpoint.

Tarlo Lyons is a firm of solicitors located in London. They have no offices in Pennsylvania or, for that matter, in the United States. No employee of Tarlo Lyons set foot in Pennsylvania in connection with the Flashpoint companies or any of the matters complained of in the Complaint. No counsel was sought by Tarlo Lyons from Pennsylvania lawyers in connection with Flashpoint prior to the institution of this litigation, and the only contact regarding Flashpoint between Tarlo Lyons or its employees and anyone in Pennsylvania were letters, faxes and/or e-mails to defendant Rogers, who happens to live in Gladwyne, Pennsylvania.

There is no allegation in plaintiff's Complaint that any citizen or resident of Pennsylvania suffered damages as a consequence of any allegations in the Complaint.

It is alleged in the Complaint that Stanley Munson was an indirect and minor shareholder in the Flashpoint companies, *but this fact was unknown to the partners of the firm*.

The work that was undertaken by Tarlo Lyons was to be performed in the United Kingdom. In fact, it was performed in the United Kingdom. Lexington Insurance Company assumed liability to its insured, Law Debenture Trust, on behalf of the note holders in London. The policy was placed in London with Stephen Mitchell, an underwriter for Lexington Insurance Company, who had previously done similar work for another insurance company in London. The policies were placed in London by the London brokerage firm of Jardine Lloyd Thompson. Plaintiff in this action also joined Jardine Lloyd Thompson in the litigation against it, which took

- 3 -

place in London as mentioned above. Lexington Insurance Company was represented in London by Ince & Co., a firm of solicitors, who reviewed the insurance aspects of the Flashpoint transactions. This party also was joined in the litigation against Lexington in London. The collateral agreements referred to in plaintiff's Complaint and which form the basis for the allegations of liability on the part of Tarlo Lyons provide for the application of English law. The liabilities under the policies which Lexington Insurance Company issued were litigated in Commercial Court in London in at least two actions, which have terminated and resulted in payments which plaintiff is contending are damages it is entitled to collect in this lawsuit. Lexington did not join Tarlo Lyons in that litigation.

It is tempting to ponder the reasons plaintiff may have had for not joining Tarlo Lyons in the now concluded litigation in London. It is regrettable that plaintiff did not include Tarlo Lyons in this suit at its outset so that the court could have considered its arguments at the same time as David Forrest's and not face the potential dilemma of dividing the litigation further by dismissing Tarlo Lyons. It was plaintiff's choice whatever the motivation and plaintiff must live with it.

However, Lexington has filed a separate claim against Tarlo Lyons in London, which makes allegations essentially identical to the allegations set forth in plaintiff's Complaint here, with the exception of the RICO claim.

The records of Tarlo Lyons regarding the Flashpoint companies consist of more than seventy boxes of materials. The Flashpoint company records, it is understood, are in the possession of Numerica, the administrators (similar to bankruptcy trustees) of Flashpoint in the London administration proceedings. It has been alleged in previous filings in this court by Rogers and Forrest that virtually all of their records and information are currently in London.

- 4 -

The only party to this action who is a resident or citizen of Pennsylvania is T. Beauclerc Rogers, IV.

Stanley Munson is filing an Affidavit with his own motion to dismiss which will set forth the facts concerning his involvement with the Flashpoint companies. This Affidavit is attached as Exhibit "A" and made part of the Tarlo Lyons' Motion. It sets forth that his dealings were almost invariably with David Forrest, whose offices were located in Pall Mall, or Susan Wright, his assistant, or Jennifer Barrett, Flashpoint's in-house solicitor both at that same location. While Mr. Rogers was a director of the Flashpoint companies, the day-to-day operations were in the hands of David Forrest, as is set forth in his previously filed Motion with this court. Mr. Munson's contacts with Beau Rogers on a personal level occurred in London and his communications with Mr. Rogers were generally not communications which resulted in substantive action, but were advisory in nature only – keeping him posted on activity in London. No management decisions were made during communications between Tarlo Lyons and Mr. Rogers in Pennsylvania.

The only connection whatsoever between Pennsylvania and Flashpoint is that one of the directors of Flashpoint, T. Beauclerc Rogers, IV, chose to live in Gladwyne, Pennsylvania during a time he participated in that United Kingdom group of companies.

## III.   **LEGAL ARGUMENT**

### A.   **THIS COURT LACKS PERSONAL JURISDICTION OVER TARLO LYONS BECAUSE LEXINGTON HAS FAILED TO PLEAD AND ESTABLISH THE REQUISITE MINIMUM CONTACTS WITH THE COMMONWEALTH OF PENNSYLVANIA**

Unlike motions to dismiss for failure to state a claim pursuant to 12(b)(6), when reviewing motions to dismiss for lack of personal jurisdiction, the court is not compelled to accept as true all factual allegations contained in the complaint. See Murray v. Nat'l Football

- 5 -

League, 1996 U.S. Dist. LEXIS 9108, at *18 (E.D. Pa. 1996).  Indeed, resolving a motion to

dismiss for lack of personal jurisdiction necessarily entails the consideration of factual issues

extraneous to those alleged in the pleadings.  Id.  At no point may a plaintiff rely on the bare

pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in

personam jurisdiction.  Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n.9

(3d. Cir. 1984)

       Once a defendant asserts lack of personal jurisdiction, the plaintiff then has the

burden of making at least a prima facie showing with sworn affidavits or other competent

evidence that such jurisdiction exists.  Quandel Group v. Chamberlin Co., 1999 U.S. Dist.

LEXIS 8822 at *2 (E.D. Pa. 1999).  Once the motion is made, plaintiff must respond with actual

proofs, not mere allegations.  Time Share, 735 F2d at 66 n.9.  Furthermore, plaintiff has the

burden of showing "with reasonable particularity" contacts between the defendant and the forum

sufficient to support the exercise of personal jurisdiction.  Quandel Group, 1999 U.S. Dist.

LEXIS 8822 at *2.

       Consistent with due process, a federal district court may exercise personal

jurisdiction over a nonresident to the forum state to the extent authorized by the law of the forum

state.  Doran v. Credit Bureau Associates, 2000 U.S. Dist. LEXIS 3093, at *5 (E.D. Pa. 2000).

Pennsylvania provides that a court may exercise personal jurisdiction to the extent permitted by

the Constitution of the United States.  Id.; see 42 Pa.C.S.A. § 5322(b).  There are two bases on

which a court may exercise personal jurisdiction -- general jurisdiction or specific jurisdiction.

Doran, 2000 U.S. Dist. LEXIS 3093, at *5-6.

693282_1

1.    **THE QUANTITY, QUALITY AND NATURE OF TARLO LYONS'
      CONTACTS WITH PENNSYLVANIA ARE INSUFFICIENT TO
      ESTABLISH PERSONAL JURISDICTION**

    a.    **THERE IS NO BASIS FOR EXERCISING GENERAL
      PERSONAL JURISDICTION OVER TARLO LYONS.**

To establish general jurisdiction, the defendant's contacts with the forum state must be "continuous and systematic." Id. at *6-7; see 42 Pa. C.S.A. § 5301(a)(2)(iii). Contacts are continuous and systematic if they are "extensive and pervasive." Quandel Group, 1999 U.S. Dist. LEXIS 8822, at *3 (quoting Fields v. Ramada Inn, 816 F.Supp. 1033, 1036 (E.D. Pa. 1993)). The continuous and systematic standard is not an easy burden for Lexington to meet. See Surgical Laser Technologies v. C.R. Bard, 921 F.Supp. 281, 284 (E.D. Pa. 1996). Lexington makes no averments that Tarlo Lyons, a United Kingdom law firm, engaged in extensive and pervasive contacts with Pennsylvania. Indeed, there are no allegations that Tarlo Lyons is licensed to practice law in Pennsylvania, had any employees in Pennsylvania, has ever conducted business in Pennsylvania, has advertised in Pennsylvania, has any telephone or bank accounts in Pennsylvania, or that Pennsylvania is Tarlo Lyons' principal place of business. As such, general jurisdiction over Tarlo Lyons is not proper. See Quandel Group, 1999 U.S. Dist. LEXIS 8822, at *3-4.

    b.    **THERE IS NO BASIS FOR EXERCISING SPECIFIC
      PERSONAL JURISDICTION OVER TARLO LYONS.**

Tarlo Lyons is not David Forrest. The court has previously ruled upon a Motion to Dismiss filed by David Forrest, an owner and director of the Flashpoint companies and the person who acknowledges in his filing with this court that he ran the day-to-day operations of those companies. The fact that the court dismissed David Forrest's Motion does not in any way indicate that the court should do the same with this Motion being filed on behalf of Tarlo Lyons. They are different parties, played different roles and had different contacts with Pennsylvania.

693282_1

Specific jurisdiction exists when a defendant undertook an affirmative act by which he purposefully availed himself of the privilege of conducting activity in the forum and the plaintiff's claim is related to or arises out of the defendant's contacts with the forum. See Quandel Group, 1999 U.S. Dist. LEXIS 8822, at *4. The defendant must have sufficient "minimum contacts" with the forum to have reasonably anticipated being required to defend the claim in a court here. Id. In order to satisfy the minimum contacts requirement, the court must be able to point to "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, this invoking the benefits and protections of its law." Santana Products v. Bobrick Washroom Equipment, 14 F.Supp.2d 710, 713 (M.D. Pa. 1998) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985)). A determination of whether sufficient minimum contacts exists involves and examination of the relationship among the defendant, the forum, and the litigation. Quandel Group, 1999 U.S. Dist. LEXIS 8822, at *4; Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984).

### (1) THERE ARE INSUFFICIENT CONTACTS BETWEEN TARLO LYONS AND PENNSYLVANIA TO ESTABLISH MINIMUM CONTACTS

Based upon Lexington's Second Supplemental and Amended Complaint, there is insufficient evidence in the pleading of any contacts between Tarlo Lyons and Pennsylvania. This Court, relying heavily on application of Grand Entertainment v. Star Media Sales, Inc., 988 F.2d 476 (3d. Cir. 1993), held that alleged co-conspirator Forrest's telephone calls and faxes to alleged co-conspirator Rogers in Gladwyne, Pennsylvania were sufficient to establish a prima facie case of minimum contacts. Lexington Ins. Co. v. Forrest, 263 F.Supp. 986, 994 (E.D. Pa. 2003). Lexington makes no claim that Tarlo Lyons or any agent of Tarlo Lyons lives in Pennsylvania, visited Pennsylvania, conducted business in Pennsylvania, or that any alleged tortious conduct affected any entity in Pennsylvania. Consequently, assuming *arguendo* the

- 8 -

applicability of <u>Grand</u> to Tarlo Lyons (which is addressed below), <u>Lexington</u> has the burden of making at least a prima facie showing with sworn affidavits or other competent evidence that similar telephone calls and faxes, if any, were made to Rogers to establish minimum contacts between Tarlo Lyons and Pennsylvania. <u>See Quandel Group</u>, 1999 U.S. Dist. LEXIS 8822 at *2.

Stanley Munson (whose Affidavit is attached as Exhibit A) did not at any time travel into Pennsylvania during the course of his work relating to the Flashpoint companies. Stanley Munson met on a number of occasions in London with T. Beauclerc Rogers, IV. His other contacts with Mr. Rogers took place by e-mail, fax or letter. These were generally not contacts involving management decisions relating to Flashpoint. Rather they were simply communications advising of things that had already been done and were designed to keep Mr. Rogers apprised of things that had transpired. The letters were typically simply copies of letters addressed to David Forrest in London. The day-to-day operations of the Flashpoint companies were directed by David Forrest as he has acknowledged in his previous filings with this court. He and his assistant, Susan Wright, or the in-house counsel for Flashpoint, both of whom are located at the company offices in London, were the ones who made the substantive decisions.

That having been said, a reasonable person in Mr. Munson's (and, therefore, the firm's) position would <u>not</u> have anticipated the possibility of being hauled into court in the United States.

The undertaking by Tarlo Lyons involved drafting of contracts with producers, directors, actors and others involved in the actual production of films. In addition, Tarlo Lyons, primarily Stanley Munson, had the task of being a co-signatory on disbursements from the Flashpoint bank accounts. The signatures were applied by the Tarlo Lyons at the direction of Flashpoint, which direction was given by the individuals identified above who ran the companies

- 9 -

on a daily basis. At no time did Stanley Munson or any other employee at Tarlo Lyons make a

decision that a particular disbursement should be initiated. Tarlo Lyons functioned as counsel,

within the context of the specific areas indicated above to the Flashpoint companies.

Under Pennsylvania law, merely because co-defendants may have committed acts

within Pennsylvania does not impute specific jurisdiction over Tarlo Lyons. See Santana, 14

F.Supp.2d at 718. That a court has personal jurisdiction over an alleged co-conspirator does not

confer jurisdiction over an alleged co-conspirator which does not itself have sufficient minimum

contacts with the forum. Royal Gist-Brocades N.V. v. Sierra Products, 1999 U.S. Dist. LEXIS

12414, at *8 (E.D. Pa. 1999). Under Pennsylvania law, personal jurisdiction of a non-forum

conspirator may be asserted only where a plaintiff demonstrates that the substantial acts in

furtherance of the conspiracy occurred in Pennsylvania and that the non-forum conspirator "was

aware or should have been aware of those acts." See Santana, 14 F.Supp.2d at 718 (quoting

Raymark v. Indus., Inc. v. Baron, 1997 U.S. Dist. LEXIS 9971 (E.D. Pa. 1997)).

Tarlo Lyons has not directed any activity at Pennsylvania. No negotiations,

benefits, or breaches took place in Pennsylvania. What is more, its alleged tortious activity took

place in the United Kingdom. Consequently, Tarlo Lyons has insufficient contacts with

Pennsylvania to establish minimum contacts. See, e.g., Surgical Laser Technologies v. C.R.

Bard, 921 F.Supp. 281, 285 (E.D. Pa. 1996) (granting 12(b)(2) motion to dismiss as defendant

directed no activity at Pennsylvania and alleged tortious conduct took place in India).

Assuming that Lexington will argue that Tarlo Lyons or some agent of Tarlo

Lyons sent communications to Pennsylvania to establish specific personal jurisdiction, such

communications would, nevertheless, be insufficient. As the Third Circuit recognized after the

1993 Grand decision, "informal communications in furtherance [of a contract between a resident

693282_1

and nonresident] does not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over the [nonresident defendant]." <u>Vetrotex Certainteed v. Consolidated Fiber Glass</u>, 75 F.3d 147, 152 (3d. Cir. 1996) (<u>quoting Sunbelt Corp. v. Noble, Denton & Assoc., Inc.</u>, 5 F.3d 28, 32 (3d. Cir. 1993) (finding telephone communications and facsimiles sent to Pennsylvania insufficient to establish personal jurisdiction)). Indeed, the performance of ministerial tasks or the mailing of information communication into the forum state alone is insufficient to support a claim of personal jurisdiction over a non-resident defendant. <u>Murray v. Nat'l Football League</u>, 1996 U.S. Dist. LEXIS 9108, at * 39-40 (E.D. Pa. 1996). Furthermore, several telephone conversations and facsimile transmissions from a foreign defendant to the forum state may not be sufficient to establish specific personal jurisdiction. <u>See</u> <u>D & S Screen Fund II v. Ferrari</u>, 174 F.Supp.2d 343 at 347-348 (E.D. Pa. 2001).

Additionally, the opinion of <u>Grand Entertainment v. Star Media Sales, Inc.</u>, 988 F.2d 476 (3d. Cir. 1993), relied upon by the Court in dismissing Defendant Forrest's R. 12(b)(2) motion to dismiss, is distinguishable. There, 12 communications to the forum by an out-of-state defendant, plus numerous contacts through the mails and telephone <u>and</u> negotiations for the purpose of an agreement that "would have created rights and obligations among citizens of the forum" were considered sufficient. <u>Grand</u>, 988 F.2d at 482-483. Here, there is no allegation that communications, if any, between Tarlo Lyons and Rogers would have created rights and obligations among citizens of Pennsylvania. As such, those telephone conversations and facsimiles, if any, alone would be insufficient to establish personal jurisdiction over Tarlo Lyons. <u>See</u> <u>TSA, Inc. v. Nass</u>, 1997 U.S. Dist. LEXIS 1043, at *7-10 (E.D. Pa. 1997) (distinguishing <u>Grand's</u> holding that telephone conversations and facsimiles are sufficient to establish personal jurisdiction as requiring additional contact, e.g., negotiations that would have created rights and

obligations among citizens of forum state); see also Quandel Group, 1999 U.S. Dist. LEXIS

8822 at *9-10 (telephone, telefax, and mail communications alone insufficient to establish

personal jurisdiction). Thus, such communications may count towards establishing personal

jurisdiction, but standing alone cannot confer personal jurisdiction. See Roetenberg v. King and

Everhard, P.C., 2000 U.S. Dist. LEXIS 16430, at *12-14 (E.D. Pa. 2000). Indeed, it is well

established that even where a plaintiff has alleged tortious conduct in the course of

correspondence, limited telephone or mail contacts which form the basis of the claim, such

contacts are insufficient to establish personal jurisdiction over a non-resident defendant. Id. at

*13-14.

        The court, in finding that the various contacts of Forrest by the use of mail and

wire transmissions were akin to the telexes that had been exchanged in the Grand case, did not

discuss the specific nature of the communications between David Forrest and Mr. Rogers in

Gladwyne. That is an important distinction. The communications between Tarlo Lyons and Mr.

Rogers in Pennsylvania are described above. They did not lead to the creation of a contract.

They cannot form the basis for RICO liability because they did not lead to management

decisions or RICO-related issues. They were very limited communications which were

essentially for information only and were not substantive. On the other hand, in the Grand case,

the telexes that were crucial resulted in what was alleged in the lawsuit to be a binding

agreement and the lawsuit related to the question of whether or not in fact the agreement was

binding. In the Grand case, the agent of the victim was the party in Pennsylvania. The alleged

culprit was the party involved in the twenty-six telexes and fifty or more telephone calls, a major

portion of which were initiated by the alleged culprit from outside the state. In other words, the

culprit deliberately used this means to enter the State and to take those acts out of which the

lawsuit arose.  In our case, the party in Pennsylvania is alleged to be one of the culprits.  Any calls which he made were going out of the State and any calls from Tarlo Lyons which came to the State were as described above, non-substantive and not triggering any events that resulted in the alleged damage to the plaintiff.  Tarlo Lyons has no knowledge concerning the substance and nature of the communications between the two directors of the Flashpoint companies, Forrest in London and Rogers in Gladwyne.  However, it would be understandable if the court were to conclude that the communications between these two directors who had created the Flashpoint companies and their means of doing business were substantive as contrasted to the communications between Tarlo Lyons and Mr. Rogers as described above.

The Grand case cites the landmark Supreme Court case of Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2184, which states that jurisdiction is appropriate "where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum state."  In that case it was said that the defendant "deliberately" has engaged in significant activities within a state, or has created a continuing obligation between himself and residents of the forum, so that he has manifestly availed himself of the privilege of conducting business in that state.  It was thus held to be presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.  Burger King was in Florida and it sued Rudzewicz.  Again, Rudzewicz would be characterized as the perpetrator and Burger King as the victim.

Most of the cases involve a party in the forum state sueing someone from elsewhere and not as here where the suit is between two parties outside the state.  There were no dealings between Lexington and Tarlo Lyons which would have suggested to Tarlo Lyons that it might be sued in Pennsylvania.

- 13 -

693282_1

The due process clause requires the giving of "a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will or will not render them liable to suit." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 287, 100 S.Ct. 559, 567 (1980).

In a concurring opinion in Shaffer v. Heitner, 433 U.S. 186, 218, 97 S.Ct. 2569, 2587 (1977). Justice Stevens stated that there must be "fair warning that a particular activity may subject a person to the jurisdiction of a foreign sovereign." "This fair warning" requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum, Burger King, Supra, p. 473, 2182, there.

Tarlo Lyons did not purposely enter Pennsylvania and direct activities at its residents. The long arm statutes were not intended to drag into this state lawsuits between actors in London, England.

> **(2)** **TRADITIONAL NOTIONS OF FAIR PLAY AND SUBSTANTIAL JUSTICE FAVOR DISMISSAL FOR LACK OF PERSONAL JURISDICTION OVER TARLO LYONS.**

If minimum contacts have been established, a court must then evaluate whether "the assertion of personal jurisdiction would comport with fair play and substantial justice." Grand Entertainment v. Star Media Sales, Inc., 988 F.2d 476, 481 (3d. Cir. 1993). The due process clause of the Fourteenth Amendment permits a state to exercise personal jurisdiction over a non-resident defendant with whom it has "certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Factors to be considered are as follows:

693282_1

1.     The burden on the defendant.  The burden on Tarlo Lyons in connection with defending an action in Philadelphia is very substantial.  It has counsel in London who have been retained to defend an almost identical lawsuit in that jurisdiction.  Thus, it must pay counsel in two actions.  All of its employees are in the United Kingdom and for a trial in Pennsylvania would have to travel across the Atlantic Ocean.  While videotape depositions may be utilized with regard to some witnesses, this is not the desired manner in which to present witnesses or testimony to juries, however true it may be that using such means are commonplace today.  Counsel for Tarlo Lyons will have to go to the United Kingdom to take numerous depositions.  Over twenty United Kingdom witnesses have been identified in the initial disclosures filed by plaintiff in this lawsuit.  The cost in that instance would be substantially more than would be true for defense of the case in London.  Virtually all of the documents, as has been pointed out in previous filings in this action, which belong to Flashpoint are currently in London.  Communications between Tarlo Lyons and counsel in Pennsylvania are relatively difficult because of the time difference.

Contrast the above with the position of Lexington Insurance Company.  While Lexington Insurance Company may be incorporated in the State of Delaware, as are perhaps millions of other companies, all of the people involved in Lexington's role as set forth in the Complaint appear to be located in the United Kingdom.  Those people may be on the payroll of a Delaware incorporated company, but they work in London and Steven Mitchell, the underwriter employed by Lexington who wrote the insurance by which Lexington became obligated was located in London.  They either have control of or have access to all of the relevant records which are located in London.  Their lawyers who handled the defense of the previous litigation

in which they joined other defendants, but for whatever reasons failed to join Tarlo Lyons, are in the United Kingdom and thoroughly knowledgeable about the case.

        2.     The interest of the forum state. The only interest of Pennsylvania in this matter is an abstract interest which can be best described as saying that it involves concern over the fact that an individual in Pennsylvania received communications by mail, e-mail or telephone that relate in some fashion to some wrongdoing that is alleged to have taken place elsewhere. The complained of activity was not set up in Pennsylvania, was not managed from Pennsylvania and did not take place in Pennsylvania or cause damage to anybody in Pennsylvania.

        The only reason anybody could be sued in Pennsylvania involving Flashpoint is that one of the individuals who is a director happens to choose Gladwyne, Pennsylvania for his home. This is hardly a justifiable basis for expending taxpayers' money, the time of citizens in sitting on a jury or any other resources of this community to litigate this United Kingdom problem.

        3.     Plaintiff's interest in obtaining relief. In the United Kingdom, relief for the plaintiff is only an arms length away. Plaintiff can get relief in the United Kingdom for the causes of action set forth in the Complaint through the means of the suit that is already instituted in London. The only exception is the RICO claim. However, so far as Tarlo Lyons is concerned, there is no basis for liability on its part under RICO. Tarlo Lyons performed professional services. It did not participate in the management of the alleged enterprise. Case law is clear that under those circumstances, there can be no liability on the part of Tarlo Lyons. That is true whether or not there might be the basis for liability on the part of David Forrest.

        In <u>Reves v. Ernst & Young</u>, 507 U.S. 170 (1973) the Supreme Court applied the "operation or management" test to determine a professional's RICO liability. The test

implemented by the Court requires a high level of participation from the professional; the

professional must participate in the operation or management the enterprise's affairs. Thus,

merely reporting to the enterprise or preparing corporate records is not sufficient to give rise to

professional liability under RICO; rather, the professional must be involved in a high degree of

decision-making for the enterprise.

Munson denies involvement in any representations Flashpoint made to brokers or

underwriters. Munson does not know how insurers assess risk or what information was provided

to them in this case.

Munson was a co-signatory on the money being paid from the Flashpoint

companies' accounts on the various projects, and simply followed his clients' instructions.

The Supreme Court held that for one to be subject to liability under section

1962(c), one must participate in the operation or management of the enterprise itself. In <u>Reves</u>, a

farming cooperative ("Co-op") sold promissory notes payable to the holder on demand to raise

money for operating expenses. <u>See</u> <u>Reves v. Ernst & Young</u>, 507 U.S. 170, 172 (1993). Jack

White was appointed general manager by Co-op's board of directors. In January 1980, White

began taking loans from Co-op to finance the construction of a gasohol plant by his company,

White Flame Fuels, Inc. <u>See id.</u> at 172-73. Then in November 1980, White proposed at a board

meeting that Co-op purchase White Flame. The board agreed, but then filed a declarationary

action against White and his company alleging that Co-op already owned the gasohol plant. The

court declared Co-op the owner of White Flame and dismissed White's debt. <u>See Reves</u>, 507

U.S. at 173. This transaction financially weakened Co-op. Furthermore, in January 1981, while

the loans were accumulating, White was convicted of tax fraud.

- 17 -

Co-op hired an accounting firm, to be later known as Ernst & Young, to complete an audit of its 1981 operations. The firm had to decide whether Co-op owned White Flame from the beginning of construction or whether it had purchased White Flame from White because such decision would affect Co-op's assets and solvency. See id. at 174. The firm decided to conclude for accounting purposes that Co-op owned White Flame from the beginning of construction, resulting in inflated assets and the avoidance of declaring Co-op insolvent. See Reves, 507 U.S. at 174. Despite Co-op's solvency riding on the firm's final decision, the accounting firm did not tell Co-op's board that if it was not entered in the books that Co-op owned White Flame from the start then Co-op would be insolvent. As a result, Co-op filed for bankruptcy because of its inability to finance the payment of the demand notes. A certified class of demand noteholders and the trustee of Co-op brought suit alleging that the accounting firm violated section 1962 of RICO. See id. at 175.

The Supreme Court held that for one to be subject to liability under section 1962(c), one must participate in the operation or management of the *enterprise* itself. Thus, the Supreme Court upheld the Eighth Circuit's "operation or management" test for determining participation in an enterprise's affairs. See id. at 185. First, with the goal of unambiguously defining the statute's terms, the Court turned to section 1962(c)'s statutory language. See Reves, 507 U.S. at 177. The Court defined "conduct" as "to lead, run, manage, or direct", indicating that some degree of direction is requiring. See id. at. 177-78. Further, the Court defined "participate" as "to take part in". See id. at 178-79. Therefore, it concluded that under section 1962(c) to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs, under section 1962(c), one must participate in the operation or management of the enterprise itself. See id. at 179.

- 18 -

693282_1

After interpreting RICO's statutory language, the Court found additional support for the "operations or management" test in the statute's legislative history. Based on the remarks of Congress members, the Court concluded that Congress did not intend for section 1962(c) to extend beyond prohibiting the *operation* of an enterprise through a pattern of racketeering activity, and for subsections (a) and (b) to extend beyond prohibiting the *acquisition* of an enterprise. See Reves, 507 U.S. at 182 (citing 116 Cong. Rec. 607, 35227, 36294, 36296 (1970)). With such support, the Court applied the statute to the facts, holding that the accounting firm, Ernst & Young, was not liable. It determined that the auditors did not participate in the operation or management of Co-op. See id. at 186. Specifically, the Court found that drafting the company's financial statements did not constitute management of the Co-op's affairs. See id. at 186. Consequently, Reves resulted in a restrictive operations or management test, reducing the number of suits that were being brought against professionals, such as accountants and lawyers, for actions not originally intended under RICO. See Christopher D. McDemus, Comment, Reves v. Ernst & Young: The Supreme Court's Recent Restrictive Standard Concerning § 1962(c) of the Civil RICO Statute, 19 Del. J. Corp. 1027, 1061-62 (1994).

After Reves, courts have strictly applied the operation or management test to suits alleging that professionals violated RICO. In Nolte v. Pearson, 994 F.2d 1311 (8th Cir. 1993) the Eighth Circuit found the defendant law firm not liable under section 1962(c) of RICO under the operation or management test. See id. at 1314. The court held that the law firm's preparing and drafting for the company various documents, such as an attorney opinion letter and a memorandum advising investors of federal income tax consequences, did not suggest the attorney's participated in the operation or management of the enterprise. See id. at 1317. There, investors leased music rights in return for investment tax credits, which they later learned that the

- 19 -

IRS did not credit. The investors sued the law firm for fraud, negligent misrepresentation, and RICO violations based on representations made in an opinion letter regarding the tax consequences of the lease. The court affirmed the grant of a directed verdict in favor of defendant, determining that the opinion letters prepared by the law firm merely interpreted information given to them by the leasing company and it did not in any way participate in the operation or management of the company. See id. at 1316-17. Thus, the court applied the operations or management test, consistent with Reves, to find the law firm not liable.

Likewise, the Third Circuit addressed a similar situation in University of Maryland v. Peat, Marwick, Main & Co., 996 F.2d (3rd Cir. 1993). The court found an auditor who prepared financial statements and attended the enterprise's board meetings not liable under RICO, reasoning such services did not demonstrate that the auditor participated in the enterprise's affairs. See University of Md., 996 F.2d at 1539. There, the plaintiffs, policyholders, brought an action against an insolvent insurance company's accounting firm under section 1962(c), alleging that the accounting firm performed a materially deficient audit on the insurer. See id. at 1536. The accounting firm, Peat, Marwick, Main & Co., prepared opinions concerning the finances of the insurance company, but the financial statements were false and misleading. See id. at 1538. Finding Reves dispositive, the Third Circuit held that the accounting firm was not liable under section 1962(c) of RICO because the firm did not participate in the operations or management of the insurance company. See id. at 1539-40. The court points out that the Supreme Court in Reves made it clear that merely performing financial services and attending board meetings does not constitute participation in the enterprise's affairs. See id. at 1539. The Third Circuit emphasized that "simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO

- 20 -

as a result.  There must be a nexus between the person and the conduct in the affairs of an enterprise."  University of Maryland v. Peat, Marwick, Main & Co., 996 F.2d at 1539. Therefore, the court ruled in favor of the accounting firm reasoning that beneficial services provided by the accounting firm did not create RICO liability.  See id.

In Baumer et al v. Pachl and Yow, 8 F.3d 1341 (9th Cir. 1993), the Ninth Circuit examined the "conduct or participate" requirement of section 1962(c).  The Ninth Circuit relied on Reves, concluding that the attorney did not participate in the operations or management of the enterprise.  See Baumer, 8 F.3d at 1344.    In Baumer, an attorney and a real estate appraiser were hired to help a company after the California Department of Corporations determined that transactions by partners constituted illegal sales of unregistered securities.  See id. at 1342. The plaintiffs, numerous investors, sued the attorney and the real estate appraiser, alleging RICO violations.  The Ninth Circuit found that the attorney's involvement in preparing two letters, preparing the partnership agreement, and assisting in the Chapter 7 proceeding, in which he again sent two letters, did not suffice to hold the attorney liable under RICO.  See id. at 1344. The court pointed out that at no time did the attorney hold a formal position in the limited partnership nor did he play any part in directing the affairs of the enterprise; the attorney merely had a limited role in providing legal services to the limited partnership.  Moreover, the court stated that it's irrelevant under Reves whether the attorney's services were performed well or poor, improperly or properly

In Gilmore v. Berg, 820 F. Supp. 179 (D.N.J. 1993) the district court for the District of New Jersey addressed whether defendants, an accountant and an attorney, violated section 1962(c) and 1962(d) of RICO by making allegedly affirmative misrepresentations.  The court applied the restrictive operations and management test arising from Reves, determining

- 21 -

that the defendants, an accountant and an attorney, were not liable for alleged RICO violations. The plaintiffs alleged that the attorney for a partnership made affirmative misrepresentations in his tax opinion letter by (1) stating that the millions paid for the property by the partnership reflected the property's fair market value, and (2) by failing to update the letter after receiving the errata sheet. See Gilmore, 820 F. Supp. at 182. With respect to the accountant, the plaintiffs' alleged that he made affirmative misrepresentations in his financial forecast letter.

Using the test under section 1962(c) upheld in Reves, the court noted that a person employed by or associated with an enterprise is liable only if he participates in the operation or management of the enterprise. See id. at 183. The court determined that the attorney's conduct did not constitute the necessary participation under RICO, despite his preparing the tax opinion letter, preparing documents for the purchase and sale of real estate, attending closings, preparing and filing Certificates of Limited Partnership and Incorporation, and serving as agent for the receipt of process for legal entities. The court found these services to be "common professional services typically rendered by attorneys for their business clients." No evidence existed that he was directing the legal entities he represented to engage in particular transactions; he merely provided legal services to help the entity carry out transactions. See Gilmore, 820 F. Supp. at 183. Thus, the court dismissed the plaintiffs' section 1962(c) claim against the attorney.

Similarly, regarding RICO allegations against the accountant, the court held that preparing a forecast letter, even if misleading, and providing accounting services for entities involved in the sale of the partnership's interest did not constitute operation or management in the enterprise. Therefore, such claim was also dismissed.

693282_1

Plaintiff's Complaint specifically alleges that the complained of actions by Tarlo Lyons were in the usual course of the law firm's business and, therefore, clearly constituted provision of legal services.

Perhaps even more compelling in eliminating consideration of the availability of the RICO claim in Pennsylvania is that its availability is illusory. Treble damage judgments are uncollectible in the United Kingdom. In addition, an action for deceit is available there and except for the useless treble damage aspect, it is essentially the same as the RICO claim.

In fact, there is less relief available to plaintiffs here than in London. No citation to the court is needed to establish that the two year statute of limitations has run on the other claims by plaintiff against Tarlo Lyons, fraud and tortuous interference with contract. The allegations in plaintiff's Complaint are sufficient to establish that even under the discovery rule the claims are barred.

It should be pointed out as is set forth in the Affidavit of a partner of Tarlo Lyons (attached as Exhibit B) that the firm was not aware of the alleged ownership by Stanley Munson, its former partner, of a part of Flashpoint and should there be any basis for finding him liable on that basis it would not apply to the law firm.

4.    Interstate judicial system's interest in obtaining a most efficient resolution of the controversy and shared interstate concerns about fundamental substantive social policies. The reference to interstate presumably should be modified in this case to international. Certainly, the English courts have no desire for a RICO action to be enforced against anybody because the United Kingdom does not have such a law. In a case in which the plaintiff has identified in initial disclosures tens of witnesses who have knowledge relating to the allegations

- 23 -

in the plaintiff's Complaint but only one single individual is present in Pennsylvania, the word "efficient" could in no way be utilized to characterize resolution of the controversy here.

The court, in its Explanation and Order on Forrest's Motion to Dismiss, made reference to the fact that David Forrest and T. Beauclerc Rogers, IV showed prominently in brochures that were being distributed by Flashpoint in the United States. Although these brochures have not been reviewed by the undersigned, it is believed that these brochures do not refer to Tarlo Lyons or Stanley Munson who were simply lawyers performing legal services for a corporate client.

## IV.    **FORUM NON CONVENIENS**

Dismissal of an action is proper where a defendant shows that: (1) an adequate alternative forum exists; and (2) the public and private interest factors weigh heavily in favor of dismissal. See Tannenbaum v. Brink, 119 F.Supp.2d 505, 511 (E.D. Pa. 2000). An adequate alternative forum exists "when the defendant is amenable to process in the other jurisdiction." See Royal Gist-Brocades, N.V. v. Sierra Products, 1999 U.S. Dist. LEXIS 12414, at *10 (E.D. Pa.) (quoting Lacey v. Cessna Aircraft Co., 932 F.2d 170, 180 (3d Cir. 1991). If an alternative forum exists, the court then weighs the public and private factors. Royal Gist-Brocades, 1999 U.S. Dist. LEXIS 12414, at *10.

The pertinent private factors include: (1) relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) and, all practical problems that make a trial of a case easier, more expeditious, and less expensive. Id. at *11-12. The relevant public interest factors a court must consider are the: (1) administrative difficulties flowing from court congestion; (2) local interests in not having localized controversies in an unrelated forum

- 24 -

imposed on forum citizens burdened with jury duty.  <u>Tannenbaum v. Freeman. 119 F.Supp.2d.</u>
<u>505, </u>512, at *19-20 (E.D. Pa. 2000).

Much has already been said that relates to this issue and an effort will be made not
to be repetitious.  However, it should be pointed out that London is appropriate but Pennsylvania
is not an appropriate place to try this case for the following reasons:

1.      Tarlo Lyons is a firm of London solicitors with no office in Pennsylvania.

2.      The records in this case are in London and not in Pennsylvania.

3.      Plaintiff, in its initial disclosures, has identified over twenty witnesses who
would be individuals with relevant knowledge who are in the United Kingdom.  Tarlo Lyons will
have at least six or seven additional witnesses, all of whom are in England where they live and
work.

4.      Lexington Insurance Company employees involved in the placement of
the insurance are in the United Kingdom.

5.      The insurance brokers are in the United Kingdom.

6.      An almost identical lawsuit has been filed in London.

7.      Even the relevant records of the one individual who resides in
Pennsylvania are in London.

8.      Although use of compulsory process to produce witnesses would be
available to the litigants in Pennsylvania the process is cumbersome compared to that which
would exist in London.

9.      The cost to every party would be greater in Philadelphia than in London
because only one witness and none of the documents reside here.

10.    As far as the local interest of the court is concerned, the court in Philadelphia has far less interest in seeing that these issues are resolved than the courts in London.

11.    No one in Pennsylvania has suffered damage from the claim set forth in the Complaint.

12.    English law is provided to be governing in the collateral agreements which the Complaint states are relevant to the claims being made against Tarlo Lyons and these issues would be better resolved in the United Kingdom.

13.    There is no legitimate reason why the courts in Pennsylvania rather than the English courts should be involved in this matter.

If the traditional scales of justice are utilized to weigh factors in favor of a trial in Pennsylvania versus the factors in favor of trial in London, the scale for London touches the ground and the scale for Pennsylvania is sky high.

Respectfully submitted,

HARVEY, PENNINGTON LTD.

BY: _____
DAVID L. PENNINGTON
Identification No: 03633
1835 Market Street, 29th Floor
Philadelphia, PA 19103
(215) 563-4470
Attorneys for Defendant,
Tarlo Lyons

Dated: _____9/15/04_____

- 26 -

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY<br><div align="right">Plaintiff</div><br>v.<br><br>DAVID FORREST and T. BEAUCLERC ROGERS, IV, STANLEY MUNSON, MARTIN FINK, all individually, and NEW BEGINNINGS ENTERPRISES LLC, A California Limited Liability Company, and TARLO LYONS, a partnership,<br><div align="right">Defendants</div> | CIVIL ACTION<br><br>NO. 02-CV-4435<br><br>(Hon. Anita B. Brody) |

## CERTIFICATE OF SERVICE

David L. Pennington, Esquire, attorney for Defendant, Tarlo Lyons, hereby

certifies that I have served true, correct and complete copies of Defendant, Tarlo Lyons' Motion

to Dismiss, Proposed Order and Memorandum of Law upon the following parties or their

counsel of record by first class mail, postage prepaid on this day:


Glenn F. Rosenblum, Esquire
Jeffrey R. Lerman, Esquire
Montgomery, McCraken, Walker & Rhoads
123 South Broad Street
Philadelphia, PA 19109
            and
Edward P. Krugman, Esquire
Emily A. Poler, Esquire
Ira J. Dembrow, Esquire
Scott M. Mory, Esquire
Cahill Gordon & Reindel
80 Pine Street
New York, NY 10005
*Counsel for Plaintiff*

Conrad O. Kattner, Esquire
McShea Tecce, P.C.
Mellon Bank Center
1735 Market Street, 16th Floor
Philadelphia, PA 19103
*Counsel for Stanley Munson*

Edward M. Dunham, Jr., Esquire
Shannon Hampton Sutherland, Esquire
Duane Morris LLP
One Liberty Place
Philadelphia, PA 19103
*Counsel for David Forrest*

Nicholas M. Centrella, Esquire
James J. Rohn, Esquire
Kevin Dooley Kent, Esquire
Conrad O'Brien Gellman & Rohn, PC
1515 Market Street, 16th Floor
Philadelphia, PA  19102
*Counsel for T. Beauclerc Rogers, IV*

Neil G. Epstein, Esquire
Eckert Seamans Cherin & Mellott, LLC
1515 Market Street
Ninth Floor
Philadelphia, PA  19102
               and
Jeffrey D. Farrow, Esquire
Mona Z. Hanna, Esquire
Sanford Louis Michelman, Esquire
Michelman & Robinson LLP
4 Hutton Centre, Suite 300
Santa Ana, CA  92707
*Counsel for Martin Fink*

Alexander Kerr, Esquire
Stephen P. McFate
McCarter & English, LLP
Mellon Bank Center
1735 Market Street, Suite 700
Philadelphia, PA  19103
               and
Beverly Y. Lu, Esquire
Charles A. Adamek
Lord Bissell & Brook, LLP
300 South Grand Avenue, Suite 800
Los Angeles, CA  90071
*Counsel for New Beginnings Enterprises*

HARVEY, PENNINGTON LTD.

BY: _____
       DAVID L. PENNINGTON
       Identification No: 03633
       1835 Market Street, 29th Floor
       Philadelphia, PA  19103
       (215) 563-4470
       Attorneys for Defendant,
       Tarlo Lyons

Dated:  _9/15/04_

# EXHIBIT A

CIVIL ACTION NO: 02-4435

## IN THE UNITED STATES DISTRICT
## COURT FOR THE EASTERN DISTRICT
## OF PENNSYLVANIA

LEXINGTON INSURANCE COMPANY

Plaintiff

**and**

DAVID FORREST (1)
T BEAUCLERC ROGERS IV (2)
STANLEY MUNSON (3)
MARTY FINK (4)
NEW BEGINNINGS ENTERPRISES LLC (5)
TARLO LYONS (6)

Defendants

-----

## A F F I D A V I T

-----

I, STANLEY MUNSON of Webster's Farm, High Street, Glinton, near Peterborough, England being duly sworn according to law, depose and say that:

1.    I am named as a Defendant in this action. At all material times, for the purposes of this action between 1996 and 2000 I was a salaried partner (and accordingly an employee) in the Defendant firm of Tarlo Lyons.

2.    I was born in England and am a lifelong resident and citizen of the United Kingdom of Great Britain and Northern Ireland. For all purposes, England is my domicile.

3.    I am a solicitor of the Supreme Court of England and Wales, having been admitted as such in June 1975 and have worked in England for my entire professional life. As detailed hereafter, my personal contacts with the

Eastern District of Pennsylvania are virtually non-existent.

4.     Between March 1995 and July 2002 I was a salaried partner in the Defendant firm, an English firm of solicitors, Tarlo Lyons, practising out of its offices at 33 St John's Lane, London, EC1M 4DB. During that time, more specifically between March 1997 and December 2000 through my former firm I provided legal services to various Flashpoint companies.

5.     Also during that time from March 1997 I have held a non-controlling ownership interest of 7.5% in the two Flashpoint companies that traded, i.e. Flashpoint Limited and Flashpoint (UK) Limited via a company which was owned and controlled by me namely Filmwatch Limited. I also had, via Filmwatch Limited, a non-controlling shareholding in Flashpoint Investments Limited, which did not trade but which held shares in other companies. These shareholdings effectively gave me a 7.5% interest in the Flashpoint companies.

6.     Each of the Flashpoint companies to which I provided legal services or in which I had an ownership interest was incorporated either in England or the Channel Island of Jersey (and were therefore in the United Kingdom) and had its principal place of business in England as follows:-

       a)     Flashpoint Limited was formed in March 1997 in Jersey (the United Kingdom) and had its principal place of business in Pall Mall, London, SW1.

       b)     Flashpoint (UK) Limited was formed in March 1998 in England and also had its principal place of business in Pall Mall, London, SW1.

       c)     Flashpoint Investments Limited was, from memory, formed in 1998 in England and also had its principal place of business at the Flashpoint offices in Pall Mall, London, SW1.

7.     I was not a director of either of the two trading Flashpoint companies, i.e.

2

Flashpoint Limited or Flashpoint (UK) Limited, but I was a director of the non-trading holding company, Flashpoint Investments Limited. I was the company secretary to these latter two companies: in English law the function of a company secretary is administrative and relates in particular to compliance with the requirements of the Companies Acts.

8.     Prior to making this statement my attention has been drawn to the legal professional privilege which attaches to communications between a solicitor and his or her client. So far as I am aware there has been no waiver of such privilege on the part of Tarlo Lyons' former clients and I make this statement therefore within the confines of my duty to preserve that professional privilege and my inability to refer to the precise nature of my communications with former clients and their contents and ask the Honourable Court to bear that restriction in mind in reading what follows.

9.     So far as I was concerned Flashpoint was an operation based in London around its major operating centre, the offices in Pall Mall. My sources of contact and of instruction were almost invariably David Forrest and his assistant Susan Wright, both of whom were based in the London Office and also, from 1999 onwards Jennifer Barrett who became Flashpoint's in-house solicitor from 1999.

10.    I rarely, if ever, had legal instruction or direction from Beau Rogers based in Pennsylvania. My clear recollection was that my instructions would come from one source, namely David Forrest and his team in London.

11.    As a result, I never had occasion to visit Pennsylvania in connection with Flashpoint at any time during the years in which I provided legal services to Flashpoint through Tarlo Lyons. My one visit to Pennsylvania was not business related and occurred about 20 years ago in or about 1984 to attend the wedding of a friend.

12.    Without derogating from my former firm's client's privilege, I did of course communicate occasionally with Beau Rogers of Gladwyne Pennsylvania in

connection with Flashpoint. However, I did so by fax, mail or telephone calls from my office in London. The preponderance of my communication with Beau Rogers whilst he was in Pennsylvania would be to arrange convenient times for his visits to London and meetings so that we could discuss any business whilst he was in England. Such other limited communications as there may have been were invariably of a logistical nature.

13. Beau Rogers was a regular visitor to London and to my recall would visit the offices in Pall Mall at least once every other month and at busy times probably every month and I would meet Beau Rogers face to face in London.

14. I was introduced to Beau Rogers by David Forrest in London. I did not solicit or initiate Tarlo Lyons' business relationship with Beau Rogers. To my knowledge and recollection, there was no other Pennsylvanian connection involving Flashpoint except that Beau Rogers resided there. No films were shot there and no suppliers, producers or other services were procured in or based in that State.

15. In my role at Tarlo Lyons as solicitor for Flashpoint, I did not initiate any drawn-down request for funds. I did not direct or control day-to-day operations and had no involvement with the raising of funds, save for dealing with formal contractual matters on instructions after a deal had been struck by my clients. I was not involved in the production of sales' estimates for the films Flashpoint was involved in, nor in the procurement of investments in Flashpoint. In short, I was not involved in the implementation of any of the Hollywood Funding projects. I acted as counsel to Flashpoint when instructed to do so in London, particularly on contractual and intellectual property issues.

16. During the currency of Tarlo Lyons' instructions from Flashpoint I believe I had occasion to visit California twice. These visits were of no more than three or four days' duration and their purpose was to meet other lawyers to

4

discuss contractual issues. I did on those occasions meet Marty Fink and Beau Rogers at offices in the Los Angeles area. To my knowledge, none of the other persons involved in those trips or meetings was based in Pennsylvania.

17. I have also visited New York and Los Angeles approximately 6 or 7 additional times over the course of my life, the first visit being in the late 1970's and the most recent in, I believe, 1993, usually for a period of no more than 3 or 4 days at a time.

18. The extent that I communicated with persons or entities, such as brokers, insurers or others who may have had some connection with the United States of America and with whom Flashpoint did business, I communicated by fax, mail or telephone calls from my offices in London or met them or their representatives only in England and principally in or around London. To my knowledge, none of these other persons or entities was based in or was from Pennsylvania.

19. I will also say that, so far as I am aware, the minutes, records and files of the Flashpoint companies were kept at their offices in London. I have read what purports to be a copy of an Affidavit sworn by David Forrest in this action and would agree with what he says about the essential kernel of the Flashpoint enterprises being the Flashpoint offices in London evidenced by the fact that if not in his possession then all relevant Flashpoint documentation will be in the hands of the various companies' administrators or of Tarlo Lyons.

SWORN AT Websters Farm, High Street, Glinton        )
                                                     )
Near THE CITY OF Peterborough                        )
                                                     )
ON 15 September 2004                                 )

Before me Sarah Humble..............................

Solicitor/

5

This Affidavit is filed on behalf of the Defendants Stanley Munson and Tarlo Lyons

# EXHIBIT B

CIVIL ACTION

NO. 02-CV-4435

(Hon. Anita B. Brody)

<u>IN THE UNITED STATES DISTRICT COURT</u>
<u>FOR THE EASTERN DISTRICT OF PENNSYLVANIA</u>

B E T W E E N :

LEXINGTON INSURANCE COMPANY

<u>PLAINTIFF</u>

- A N D -

DAVID FORREST and T. BEAUCLERC ROGERS, IV, STANLEY MUNSON, MARTIN
FINK, all individually, and NEW BEGINNINGS ENTERPRISES LLC, A California
Limited Liability Company, and TARLO LYONS, a partnership

<u>DEFENDANTS</u>

---

**AFFIDAVIT OF NIGEL McEWEN
IN SUPPORT OF TARLO LYONS' MOTION TO
DISMISS**

---

I, **Nigel McEwen** of Tarlo Lyons MAKE OATH and SAY as follows:

1.      I am a solicitor and a partner in the law firm of Tarlo Lyons located in London,
England.  Between 1992 and 2002 I was managing partner of the firm and since that
time have remained as a partner, which I have been for eighteen years.  From the
middle of 1998, I was head of the firm's small Media Department, which role
continued until the merger of the Media Department with the firm's Com Tech
Department in 2002.

2.      I am fully aware of the nature of the proceedings commenced by Lexington Insurance
Company in the United States Federal Court for the Eastern District of Pennsylvania,
and I am making this Affidavit in support of a Motion being filed by Tarlo Lyons to
dismiss the action.

3.     To the best of my knowledge based on communications with other partners in my firm, as well as my own personal knowledge regarding contacts of Tarlo Lyons or any of its agents, servants or employees with Pennsylvania in connection with the Flashpoint client of the firm and the circumstances set forth in the complaint of Lexington Insurance Company, the work on behalf of the Flashpoint companies was performed by Stanley Munson or those working with him.  The only contact between Tarlo Lyons and Pennsylvania was in the form of telephone calls, e-mails, and/or letters to T. Beauclerc Rogers, IV, who has his home in Gladwyne, Pennsylvania. None of the employees of Tarlo Lyons have visited Pennsylvania in connection with any matter related to Flashpoint or the subject matter of the litigation in which this Affidavit is being filed.

4.     Stanley Munson is the single person who would have the most knowledge regarding what was done on behalf of the Flashpoint companies in relation to the allegations in plaintiff's Complaint and he is submitting an Affidavit in connection with the firm's Motion to Dismiss.

5.     None of the partners in Tarlo Lyons was aware of any ownership interest on the part of Stanley Munson in any entity related to the Flashpoint companies.

6.     My firm has not acted for any client based in Pennsylvania from 1996 to present, the period I have searched.  During that period, the firm acted on behalf of clients in the following circumstances:

     a.     Advising clients on a Software License Agreement with a large United States corporation in 2002.  Communication took place between my firm's London office and the United States corporation's office in Philadelphia (although I do not believe that location is the Head Office of the US Corporation).

     b.     Advising a large bank on an Agreement for a back-office system to be installed in the United Kingdom and to be supplied by a company based in Wayne, Pennsylvania.

One firm partner went to Philadelphia in 2003 to visit several local law firms but not on behalf of clients.  Another partner made a two hour personal visit during that period.

I, Nigel McEwen, verify that the facts set forth in this Affidavit are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Sworn by the said **Nigel McEwen**    }

                                         }

at ●    }

                                         }

on the 15th day of September 2004   }
before me,

A Solicitor/~~Commissioner for Oaths~~

Deborah Price
Kingsley Napley
14 St John's Lane
London
EC1M 4AJ