IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY<br><br>　　　　　　　　　　　　Plaintiff<br><br>　　　　　v.<br><br><br>DAVID FORREST,<br>T BEAUCLERC ROGERS IV,<br>STANLEY MUNSON,<br>MARTY FINK,<br>NEW BEGINNINGS ENTERPRISES LLC,<br>and TARLO LYONS<br><br>　　　　　　　　　　Defendants | CIVIL ACTION<br><br>NO. 02-4435<br><br>(Hon. Anita B. Brody) |

## ORDER

And now, this _____ day of _____, 2004, upon consideration of the

Motion of Stanley Munson to Dismiss in accordance with Federal Rule Of Civil Procedure

12(B)(2), and all responses thereto, it is hereby ORDERED that the Motion is GRANTED and

Plaintiff's Second Amended Complaint is DISMISSED with prejudice.


THE HONORABLE ANITA B. BRODY
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY<br>Plaintiff<br><br>v.<br><br>DAVID FORREST,<br>T BEAUCLERC ROGERS IV,<br>STANLEY MUNSON,<br>MARTY FINK,<br>NEW BEGINNINGS ENTERPRISES LLC,<br>and TARLO LYONS<br><br>Defendants | CIVIL ACTION<br><br>NO. 02-4435 |

## MOTION OF STANLEY MUNSON TO DISMISS IN ACCORDANCE WITH FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2)

Defendant, Stanley Munson, moves this Honorable Court to dismiss the

Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of in persona

jurisdiction over defendant Stanley Munson and for the following reasons:

1.    Defendant, Stanley Munson is a solicitor practicing law with offices in

London, England and with no office or other presence in the Commonwealth of Pennsylvania.

2.    Stanley Munson is a party without a significant presence or ability to act

in Pennsylvania which has been drawn into litigation as a result of acts outside the forum.

3.    The only connection between this lawsuit and Pennsylvania is that one of

the alleged wrongdoers lives in Gladwyne, Pennsylvania whereas numerous witnesses identified

by plaintiff as having relevant information in their initial disclosures reside in the United

Kingdom.

4.    All of the acts or omissions as alleged in plaintiff's Second Amended

Complaint, with regard to Stanley Munson, whether in his role as a solicitor, corporate secretary,

non-controlling minority shareholder, or otherwise, were essentially in the nature of providing of professional services, and none of these acts or omissions, even with all facts and reasonable inferences drawn in plaintiff's favor, constituted predicate acts, a pattern of such acts, conspiracy, or participation in the control or management of RICO enterprise in any way.

Furthermore, this action should be dismissed on the basis of forum non conveniens for the following reasons:

1.    An identical claim has been filed in the courts in the United Kingdom with the exception of the RICO claim;

2.    All of the acts or omissions as alleged in plaintiff's Second Amended Complaint, with regard to Stanley Munson, whether in his role as a solicitor, corporate secretary, non-controlling minority shareholder, or otherwise, were essentially in the nature of providing of professional services, and none of these acts or omissions, even with all facts and reasonable inferences drawn in plaintiff's favor, constituted predicate acts, a pattern of such acts, conspiracy, or participation in the control or management of RICO enterprise in any way, and thus Stanley Munson cannot be liable on those counts.

3.    Plaintiffs in their initial disclosures have identified approximately fifty-two witnesses who are "likely to have discoverable information that Lexington may use to prove its claims in this action" of whom one individual is in the Commonwealth of Pennsylvania and the remainder are thousands of miles from Philadelphia where the court sits.

4.    The Complaint does not identify any individual whatsoever in the Commonwealth of Pennsylvania who has been caused damage by any of the allegations alleged in the Complaint.

5.    A balancing of the private interests and the public interests in this case dictates that it be brought elsewhere than in Pennsylvania.

The accompanying Memorandum of Law is incorporated by reference and sets forth in greater detail the basis for this Motion.

WHEREFORE, the Second Amended Complaint of Plaintiff Lexington Insurance Company must be DISMISSED in its entirety as to Defendant Stanley Munson for lack of personal jurisdiction under Fed. R. Civ. P. 12 (b) (2) and applicable law, by entry of an Order in the form attached.

Respectfully submitted,

BY: _____
CONRAD O. KATTNER, ESQ.
Identification No: 035468
MCSHEA & TECCE, P.C.
1735 Market Street, 16th Floor
Philadelphia, PA 19103
(215) 599-0800
Attorney for Defendant,
Stanley Munson

Date: ___9 – 15 – 0 9___

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY | CIVIL ACTION |
| Plaintiff | |
| v. | NO. 02-4435 |
| DAVID FORREST, T BEAUCLERC ROGERS IV, STANLEY MUNSON, MARTY FINK, NEW BEGINNINGS ENTERPRISES LLC, and TARLO LYONS | |
| Defendants | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF STANLEY MUNSON TO DISMISS IN ACCORDANCE WITH FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2)

### I.  Introduction

Stanley Munson, an individual solicitor who practiced in London, UK, stands in a different relation to this forum than the defendants who have previously moved for dismissal for lack of personal jurisdiction. He has lived and practiced his entire life in the United Kingdom. He never visited Pennsylvania during the time of the events alleged. The acts and omissions alleged as to him arise essentially from his professional services for clients and related activities in the United Kingdom. Accordingly, under the established law of due process, the case against Mr. Munson in this forum must be dismissed for lack of personal jurisdiction by entry of Order in the form attached.

### II.  Facts

It is well-established that for purposes of determining personal jurisdiction in multi-defendant cases, the court must look to the allegations as to the individual defendant – here Stanley Munson – with allegations as to "defendants" generally bearing far less weight.

- 1 -

Stanley Munson is an English solicitor living and practicing in the United Kingdom his entire life. He never visited Pennsylvania professionally or personally at any time during the events alleged. Except for a few visits to California in the United States, his entire involvement in the present controversy arises from professional services and related activities he performed in the United Kingdom, mostly in and around London and the Channel Island of Jersey. (Affidavit of Stanley Munson).

Plaintiff Lexington's Second Amended Complaint, consisting of 97 numbered paragraphs plus 112 sub-paragraphs, mentions Munson individually in 13 paragraphs and 3 sub-paragraphs. (Second Amended Complaint, ¶¶ 18, 32, 34, 38c, 38e, 41, 42, 47e, 74, 75, 76, 78, 79, 83, 84, 85).

The acts and omissions alleged as to Munson individually all take place in the United Kingdom. Sometime before 1997 Munson began representing an English client, defendant David Forrest, and working as a partner at an English law firm, defendant Tarlo Lyons. Through a United Kingdom entity – Filmwatch Ltd. – Munson invested as a non-controlling minority shareholder (7.5% interest) in two of Forrest's United Kingdom companies – Flashpoint UK, Ltd., and Flashpoint, Ltd. – and Munson served as corporate secretary for them. (Affidavit of Munson).

Munson's alleged activities were to "negotiate" certain agreements, "execute" certain documents, and "certify" certain draws. (Second Amended Complaint, ¶¶ 18, 32, 34, 38c, 38e, 41, 42, 47e, 74, 75, 76, 78, 79, 83, 84, 85). These acts are alleged to be wrongful for Munson's failure to discern whether certain documents were "completed," or certain funds "segregated," along with repeated claims of alleged "misrepresentation" or "failure to disclose" what Munson allegedly "knew," was "aware" of, or Munson or his clients "intended." (Id.).

All or virtually all these negotiations, meetings, document reviews, and communications with plaintiff, plaintiff representatives, brokers, or others, including Munson's clients (the other defendants to this action), took place in and around London and in the United Kingdom. (Affidavit of Munson). Self-evidently, Munson's "knowledge," "awareness," and "intentions" were with him in the United Kingdom. None of the activities occurred in Pennsylvania. (Id.).

No specific connection between Munson and Pennsylvania is alleged in the Complaint. The only alleged specific connection to the United States are faxes from Munson to defendant Martin Fink in California. (Second Amended Complaint, ¶ 47e).

The only connection between Munson and Pennsylvania alleged by plaintiff's Complaint is that one of the principals of the companies Munson represented, invested in, and served, namely defendant Rodgers, was Pennsylvania resident, and Rodger's Pennsylvania home address was listed as one of the corporate office locations of the Flashpoint United Kingdom companies. (Second Amended Complaint, ¶ 18). Munson did not solicit or initiate Rodger's participation in the companies. Munson, in his role as solicitor and corporate secretary, admittedly sent some informational phone, fax, and mail communications to Rodgers in Pennsylvania. (Affidavit of Munson). These communications were incidental to Munson's professional role in the United Kingdom., and none are central to the allegations of plaintiff's Complaint. (*See* Second Amended Complaint).

Plaintiff Lexington is based in London, Boston, and Delaware, but not Pennsylvania. The "reliance," if any, upon Munson's alleged acts or omissions took place by plaintiff Lexington Insurance, its insureds, or others in and around the United Kingdom, and no instances are alleged to have occurred in Pennsylvania.

From Munson's point of view, the conduct alleged by Lexington did not and could not focus on Pennsylvania. For instance, of fifty-one (51) witnesses listed in plaintiff Lexington's Initial Disclosure, the largest single number, twenty-three (23) are in the United Kingdom, where Munson conducted essentially all his activities. Only one (Rogers) is in Pennsylvania.

The "injuries" alleged by plaintiff Lexington are the "expending" of legal fees and costs to prosecute, defend, or "settle" claims by or against its insureds and others, and alleged enhanced "losses" to its insureds. (Second Amended Complaint ¶¶ 79, 81a-e, 86, 87). None of these injuries is alleged to have occurred in Pennsylvania. None are focused on Pennsylvania.

Lexington is conducting parallel litigation in the United Kingdom, asserting essentially the same allegations against Munson and Tarlo Lyons. (Claim Form re: *Lexington Insurance Co. v. Tarlo Lyons and Stanley Munson*, Queen's Bench, Commercial Court, Claim No. 2004-Folio-201 (Filed March 11, 2004).

In 2002, Lexington initiated the present lawsuit in the Eastern District of Pennsylvania, but it did not name either Munson or his law firm as parties. In May 2003, this court held, inter alia, that defendant David Forrest, one of the principals in the Flashpoint companies, with far more extensive contacts to Pennsylvania and the United States than Munson, was subject to the personal jurisdiction of Pennsylvania.

On April 29, 2004, plaintiff Lexington filed its Second Amended Complaint naming as defendants for the first time Stanley Munson and the law firm with which he was a partner, Tarlo Lyons. Plaintiff alleges two civil RICO counts against Munson – namely 1962 (c) conduct and 1962 (d) conspiracy (Counts I and III), and four tort counts – specifically, common law fraud, tortuous interference with contract, fraudulent inducement, and further alleged tortuous

interference with contract. (Counts 4, 5, 6, 7). The court has set the date for Munson's responsive

motion to be September 15, 2004.

Munson has filed a Motion to Dismiss under Fed. R. Civ. P. Rule 12(b)(2) on grounds

that he is not subject to either the general or specific personal jurisdiction of Pennsylvania, and

seeks an Order in the form attached dismissing this action as to him for lack of personal

jurisdiction.

Munson notes also that the law firm with which he worked, defendant Tarlo Lyons, has

also filed a Motion to Dismiss for lack of personal jurisdiction. The facts and arguments therein

further confirm that this case should be dismissed for lack of personal jurisdiction over Munson

individually.

This Memorandum of Law follows.

## III.   Argument

### A.    Standard of Review for Motions to Dismiss for Lack of Personal Jurisdiction under Fed. R. Civ. P. Rule 12(b)(2).

Once a defendant raises the defense of personal jurisdiction, the burden then shifts to the

plaintiff to prove that jurisdiction over that defendant exists. To meet this burden the plaintiff

must presents a prima facie case for the exercise of personal jurisdiction by establishing with

reasonable particularity sufficient contacts between the defendant and the forum state. *Mellon*

*Bank (East) PSFS v. Farino,* 960 F.2d 1217, 1223 (3d Cir.1992); *Carteret Savings Bank, F.A. v.*

*Shushan,* 954 F.2d 141, 146 (3d Cir.1992).

Personal jurisdiction consists of two components, one constitutional and the other

statutory. First, the plaintiff must demonstrate that jurisdiction is proper pursuant to the law of

the forum state and second, must show that jurisdiction comports with Due Process under the

United States constitution. *Erinc v. Karavil,* No. 00-5729, 2001 WL 1143314, *4 2001 U.S. Dist.

LEXIS 15222, at *16 (E.D.Pa. Sept. 27, 2001). The Supreme Court has long recognized that the

due process clause protects an individual's liberty interest in not being subject to the binding

judgments of a forum with which he has established no meaningful contacts, ties or relations.

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471-472, 105 S.Ct. 2174, 2181, 85 L.Ed.2d 528

(1985); *International Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95

(1945). Indeed, Due Process requires that the defendant have "minimum contacts" within the

forum state such that the exercise of jurisdiction comports with "traditional notions of fair play

and substantial justice." *Remick v. Manfredy,* 238 F.3d 248, 255 (3d Cir.2001), quoting

*International Shoe,* 326 U.S. at 316, 66 S.Ct. 154. Thus, to satisfy the dictates of the due process

clause, the defendant must have purposefully directed his conduct toward the forum state or must

have purposefully availed himself of the protection of the laws of the forum state. *See, Burger*

*King,* 471 U.S. at 472, 105 S.Ct. 2174; *IMO Industries v. Kiekert AG,* 155 F.3d 254, 259 (3d

Cir.1998).

Under Fed.R.Civ.P. 4(e), a district court may assert personal jurisdiction over non-

resident defendants to the extent permissible under the law of the state where the district court

sits. *Id.* Pursuant to Pennsylvania's long-arm statute, 42 Pa.C.S. § 5322(b), the courts are

permitted to exercise personal jurisdiction over non-resident defendants to the constitutional

limits of the due process clause of the fourteenth amendment. *Mellon Bank (East) PSFS v.*

*DiVeronica Bros., Inc.,* 983 F.2d 551, 554 (3rd Cir.1993); *National Paintball Supply, Inc. v.*

*Cossio,* 996 F.Supp. 459, 461 (E.D.Pa.1998).

The exercise of jurisdiction can satisfy Due Process on one of two distinct theories, a

defendant's general or claim-specific contacts with the forum. *Remick* and *Erinc,* both *supra.* A

defendant is subject to general jurisdiction when it has continuous and systematic contacts with

the forum state and exists even if the plaintiff's cause of action arises from the defendant's non-forum related activities. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414-416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co.,* 75 F.3d 147, 151 n. 3 (3d Cir.1996). Specific jurisdiction, in turn, is established when a non-resident defendant has "purposefully directed" his activities at a resident of the forum and the injury arises from or is related to those activities. *General Electric Company v. Deutz Ag,* 270 F.3d 144, 151 (3d Cir.2001). Questions of specific jurisdiction are properly tied to the particular claims asserted and thus specific jurisdiction frequently depends on physical contacts with the forum. *Id.* Thus, where the plaintiff has shown that the defendant has the requisite minimum contacts with the forum state *and* that the exercise of personal jurisdiction would comport with traditional notions of fair play and substantial justice, the constitutional due process standards underlying specific jurisdiction are satisfied. *See, e.g., Lautman v. The Loewen Group, Inc.,* No. 99-75, 2000 WL 772818, 2000 U.S. Dist. LEXIS 8241 (E.D.Pa. June 15, 2000).

B.    **General Jurisdiction is Lacking – Munson is not subject to the "general" jurisdiction of Pennsylvania.**

General jurisdiction exists when a defendant's contacts with the forum state are "continuous and systematic." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984). General personal jurisdiction may be established by showing that a defendant conducts a continuous and systematic part of its business in the forum. *Fields v. Ramada Inn,* 816 F.Supp. 1033, 1036 (E.D.Pa.1993). Contacts are continuous and systematic if they are "extensive and pervasive." *Id.*

This court previously noted that, "Plaintiff [Lexington] has not sought to prove that [defendant] Forrest's contacts with this district were continuous and systematic." (Order of Brody, J., May 2003, at 7, n.5).

Here, Munson has never resided, owned property, or conducted any substantial or systematic activity within Pennsylvania. His only brief visit was 18 years ago, and completely unrelated to the present matters. He has worked and resided in the United Kingdom his entire life. Hence, there is no basis for him to be subject to the general personal jurisdiction of Pennsylvania.

**C.    Specific Jurisdiction is Lacking – Munson has not had the requisite quantity, quality, or nature of minimum contacts to be subject to the personal jurisdiction of Pennsylvania.**

Munson here, as alleged by plaintiff's Complaint and shown by his affidavit, essentially provided professional and related services of negotiation, document review, analysis, and meetings to United Kingdom corporate clients in an around London and the United Kingdom. The cases cited by this court's previous Order with respect to personal jurisdiction over defendant Forrest are distinguishable and fail to establish personal jurisdiction over Stanley Munson.

For instance, in *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141 (3d Cir.), cert. denied, 506 U.S. 817 (1992), the court found an individual Louisiana attorney (Shushan) subject to the personal jurisdiction of New Jersey in a suit brought by his New Jersey client (Cartaret Bank). However, that attorney had personally and voluntarily traveled to New Jersey and while there "committed [the] fraudulent misrepresentation [from which the case arose] in New Jersey at the Roseland meeting [with the plaintiff, Carteret Bank, his former client] to review the closing papers prior to the [central transaction in the case]" *Id. At 146* (emphasis added). The alleged omissions and breaches of duty by the attorney at the New Jersey meeting were the "crux of [the plaintiff's] fraudulent misrepresentation claim." *Id. At 146* (emphasis added). The combination of this crucial meeting in New Jersey with "numerous telephone calls and correspondence" compounding the alleged non-disclosure and misrepresentations to the New Jersey plaintiff made

the individual Louisiana attorney subject to New Jersey's specific personal jurisdiction. By contrast, Munson never traveled to or visited Pennsylvania in any connection with this case. He never dealt with or communicated with any representative of plaintiff Lexington in Pennsylvania. None of the transactions alleged by Lexington took place in Pennsylvania. Such correspondence and phone calls as Munson had with defendant Rodgers in this forum were incidental and peripheral to the transactions alleged in plaintiff's Complaint. Hence, the logic, reasoning, and precedent of *Carteret*, when applied to the present facts and allegations, compel the conclusion that individual defendant Stanley Munson is <u>not</u> subject to the personal jurisdiction of Pennsylvania.

Similarly, in *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476 (3d Cir. 1993) the quality and nature of contacts by the Spanish national – San Perez – with Pennsylvania stand in sharp contrast to those of Munson here. In *Grand*, unlike here, the individual defendant's communications with Pennsylvania were not merely incidental, but were at the very heart of the case. San Perez reached out to Pennsylvania to negotiate the the very "subject of the underlying litigation."with plaintiff's key representative, Wax, who was based in Pennsylvania. That transaction was a (disputed) contract to distribute 450 films nationwide, including within Pennsylvania. *Id. At 480.* The individual defendant's (Perez's) communications with the forum consisted not only of the "twelve [faxes] sent [by defendant personally] to Pennsylvania" in these central negotiations, as well as Perez traveling from Spain to California to meet with Pennsylvania based Wax, other "traveling" by Perez "between Spain and California" over the course of "four months" to effect the deal, along with Perez's use of an "agent" (attorney Freifeld) to participate in about "fifty" phone calls with Wax in Pennsylvania, of which it was "estimated" that Perez' agent Freifeld initiated about 20 to 25 of the calls. *Id. at 479-480.*

Here, by contrast, Munson did not seek out Rogers in Pennsylvania. None of the transactions alleged by plaintiff Lexington were centered in Pennsylvania. None of plaintiff Lexington's representatives were in Pennsylvania. Munson's dealings and communications were centered in and structured around London and the United Kingdom. Munson's few visits to California were incidental and sporadic. Munson's communications Rogers in Pennsylvania were incidental and informational, and unlike in *Grand* they are not at the heart of plaintiff's Complaint Hence, as with *Carteret*, the logic, reasoning, and precedent of *Grand*, when applied to the present facts and allegations, compel the conclusion that individual defendant Stanley Munson is <u>not</u> subject to the personal jurisdiction of Pennsylvania.

By contrast, cases where the defendant's pattern of alleged contacts with Pennsylvania resembles that attributed to Munson here have repeatedly found no basis for personal jurisdiction.

For instance, in *Vetrotex Certainteed Corp. v. Consolidated Fiberglass Products Co.,* 75 F.3d 147 (3d Cir. 1996), minimum contacts were not established despite the existence of an agreement with a party in the forum, telephone calls to Pennsylvania, and letters written to plaintiff in Pennsylvania. *Vetrotex* held that "informational communications in furtherance of a contract between a resident and a non-resident were not the 'purposeful activity' necessary for the assertion of jurisdiction over [the non-resident defendant]." *Id. at 152.*

In *Remick v. Manfredy,* 238 F.3d 248, 255 (3d Cir.2001) the court held certain individual attorney defendants not subject to Pennsylvania's jurisdiction, even where their law firm and other individual defendants were so subject. The court also held that analysis of specific jurisdiction must be "claim-specific," such that certain defendants there, who had reached to Pennsylvania to negotiate a contract, were subject to its jurisdiction as to alleged breach of

contract and tortuous interference with contract, but were not subject to Pennsylvania jurisdiction for tort claims relating to libel, slander, and defamation as to the same plaintiff. Among key factors were questions of whether the attorneys had "solicited" the contract, or "initiated the business relationship" with the Pennsylvania resident, whether they had sent or received payments to Pennsylvania, and whether they had "reached out beyond one state" to "create" the relations and obligations to the citizens of Pennsylvania. Here, as shown by plaintiff's Complaint and Munson's affidavit, Munson did not "solicit" or "initiate" the involvement of Rogers in the corporate entities. Rather, Rogers came to Munson in London. Munson's relation with Rogers was only incidental to Rogers were only through Rogers involvement in United Kingdom entities who instructed Munson's services, paid his fees, and conducted the financing transactions. The contracts and "Collateral Agreements" alleged were entered in London. Munson's activities of negotiating, reviewing, executing, certifying, and approving, as alleged in plaintiff's Complaint, were all conducted in London and United Kingdom. Accordingly, under the standards of *Remick*, Munson is not subject to the personal jurisdiction of Pennsylvania as to any of plaintiff's claims.

Courts in this jurisdiction have repeatedly found the performance of tasks such as those done by Munson coupled with the mailing of informational communication into the forum state insufficient to support a claim of personal jurisdiction over a non-resident defendant. See, e.g., *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co.*, 75 F.3d 147 (3d Cir.1995) (telephone calls and letters to Pennsylvania which were not part of negotiation or execution of contract insufficient to support personal jurisdiction over California defendant); *D&S Screen Fund II v. Ferrari*, 174 F. Supp. 2d 343 (E.D. Pa. 2001) (distributor not subject to Pennsylvania jurisdiction despite substantial number of letters, faxes, federal express packages and e-mails to Pennsylvania; individual corporate officer protected by corporate shield doctrine; tort-out-harm-

in theory not create jurisdiction because alleged tortuous acts not conducted in Pennsylvania and not focused on Pennsylvania); *Royal-Gist Brocades N.V. v. Sierra Products, Ltd.*, 1999 U.S. Dist. Lexis 12414 (E.D. Pa. 1999) (individual defendant not subject to jurisdiction of Pennsylvania even though he signed an earlier distribution agreement with a Pennsylvania corporation and was the "mastermind" of the alleged tortuous scheme; tort-out-harm-in theory not create jurisdiction because acts conducted elsewhere and Pennsylvania not focus of scheme; co-conspirator agency not create jurisdiction; plaintiff able to obtain relief in pending Canadian action); *see also Sunbelt Corp.,* 5 F.3d at 32 (facsimiles describing plan for mechanism which non-resident defendant was contractually bound to supply insufficient); *Drugscan, Inc. v. Pena,* 1994 WL 327034 at *3 (E.D.Pa. Jun. 29, 1994) (forum contact by client's lawyer insufficient to establish personal jurisdiction over client); *W.F.C. Co., Inc. v. Delta Reinforced Plastic Structures Inc.,* 1990 WL 156461 at *3 (E.D.Pa. Oct. 11, 1990) (correspondence with the forum concerning specifications for bid on construction project insufficient).

Here, Munson's personal activities, clients, and meetings all centered in the United Kingdom. Munson did not initiate or solicit the contacts with Pennsylvania. Munson's informational faxes and letters to Rodgers in Pennsylvania, even under the most highly realistic view, are not the sort of "purposeful activity" sufficient to subject him individually to the personal jurisdiction of Pennsylvania. These acts are not at the heart of the activities alleged by plaintiff's Complaint. Munson's activities as an individual are in no way focused on Pennsylvania. Thus, under the standards of due process and applicable law, Munson is not subject to the personal jurisdiction of Pennsylvania. Accordingly, the Complaint against Munson must be dismissed in its entirety.

**D.      Conspiracy claims fail to create a basis for personal jurisdiction over Munson.**

Plaintiff's allegations of conspiracy, (Second Amended Complaint, Count II, ¶¶ 60-64, page 23) do not subject Munson to Pennsylvania's jurisdiction.

That a court may have personal jurisdiction over one or more alleged conspirators – perhaps Forrest and Rogers – does not confer jurisdiction over an alleged co-conspirator – such as Munson or others – who does not himself have sufficient minimum contacts with the forum. *Murray v. National Football League*, 1996 U.S. Dist. LEXIS 9108; 1996 WL 363911; *Hawkins v. Upjohn Co.*, 890 F.Supp. 601, 608-09 (E.D. Tex. 1994). Mere membership in an alleged conspiracy does not automatically make an alleged member subject to the jurisdiction of every other alleged member. *Massachusetts School of Law v. American Bar Ass'n,* 846 F. Supp. 374, 379 (E.D.Pa. 1994); *citing Arthur Treacher's Framchisee Litigation*, 92 F.R.D. 398, 411 (E.D.Pa. 1981). Most courts utilize conspiracy jurisdiction warily and require that a plaintiff "plead with particularity the conspiracy as well as the overt acts within the forum." *See* World *Wide Minerals Ltd. v. Republic of Kazakhstahn,* 116 F.Supp.2d 98, *108 (D.D.C. 2000). For conspiracy jurisdiction to function there must be a "substantial act" within the forum, of which the individual defendant was "aware or should have been aware," as well as specific pleading of circumstances to make such act a fair basis for jurisdiction. *Arthur Treacher's Framchisee Litigation*, 92 F.R.D. 398, 411 (E.D.Pa. 1981).

Here, no "substantial act" is plead to have occurred in Pennsylvania. No basis for awareness by Munson of any such "substantial" act has been plead or shown. Moreover, the circumstances plead and shown as to Munson, in his professional and related activities in London and the United Kingdom, fail to create a basis for personal jurisdiction over him

personally. Accordingly, the complaint against Munson must be dismissed for lack of personal jurisdiction.

**E.      Civil RICO does not create a basis for personal jurisdiction over Munson.**

Plaintiff Lexington has sued Munson under two counts of civil RICO, specifically alleged § 1962 (c) conduct and § 1962 (d) conspiracy. (Second Amended Complaint, Counts 1 and 3, ¶¶ 50-54, 60-64, at 20-22, 23). Plaintiff may argue that 18 U.S.C. § 1965 confers personal jurisdiction over Munson individually on the basis of "national contacts" with the United States, regardless of his lack of "local contacts" with Pennsylvania. Under the RICO statute, § 1965 (a) first grants jurisdiction over a defendant – such as Rogers – in the jurisdiction where he resides – Pennsylvania. Second, § 1965 (b) provides for nationwide service and jurisdiction over "other parties" not residing in the district when "it is shown that the ends of justice require" such service and jurisdiction. "This jurisdiction is not automatic but requires a showing that the ends of justice so require." *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.* 138 F.3d 65, *71 -72 (2d Cir. 1998). To make the requisite showing that the "ends of justice so require," a plaintiff must show, among other things, that "there exists no other district in which a court will have personal jurisdiction over al the alleged co-participants or co-conspirators." *Butcher's Union Local No. 498 v. SDC Inv., Inc.,* 788 F.2d 535, 538-39 (9th Cir. 1986). If plaintiff fails to make the necessary showing, plaintiff's action must be dismissed for lack of personal jurisdiction as to that defendant. *Staff Builders of Philadelphia, Inc. v. Koschitzki,* WL 97407, *3 -4 (E.D.Pa., 1989).

As this court has stated previously, "The special RICO venue statute also provides for nationwide venue in cases brought under section 1964 of the statute where it can be shown that 'the ends of justice require' such a result. 18 U.S.C. § 1965(b). In the instant case, plaintiffs' principal argument is that the ends of justice will be jeopardized if plaintiffs' choice of forum is

disregarded. While … a plaintiff's choice of forum is a factor in venue determinations, 'the ends of justice' will hardly be threatened if [the court] decline[s] to exercise nationwide jurisdiction under section 1965(b) where venue is clearly proper as to every defendant in another district under section 1391(b)." *Eastman v. Initial Investments, Inc.* 827 F.Supp. 336, 338 - 339 (E.D.Pa.,1993) (Brody, J.); *See, e.g., *339 Southmark Prime Plus, L.P. v. Falzone,* 768 F.Supp. 487, 491 (D.Del.1991) (refusing to exercise nationwide venue under § 1965(b) where requirements of § 1391(b) clearly establish venue elsewhere).

Here, plaintiff Lexington has wholly failed to make the requisite "interests of justice" showing as to Munson. Jurisdiction over all defendants is proper in the United Kingdom. , and indeed Plaintiff Lexington has instituted suit there. Plaintiff's action in the United Kingdom provides the full opportunity for relief, if it is able to prove its allegations (which are disputed). On the facts alleged, plaintiff has not and cannot make the requisite showing as to Munson. Accordingly, plaintiff's Complaint as to Munson  must be dismissed for lack of personal jurisdiction.

Bearing further upon the "interests of justice" analysis is the fact that Munson's essential role is and was as an individual attorney, serving United Kingdom corporate clients, in transactions with United Kingdom insurers and creditors, through his acts of meeting, negotiation, and the like principally within the United Kingdom. See *Reves v. Ernst & Young*, 507 U.S. 170, 172 (1993) (professional services not typically considered to be "participation" in the operation or management of a RICO enterprise); *Gilmore v. Berg*, 820 F. Supp. 179 (D.N.J. 1993) (same). Munson's alleged contacts with the proposed forum of Pennsylvania, or indeed the United States, were all in his fiduciary and corporate capacities, as discussed further herein, thus

rendering him outside the scope of personal jurisdiction under all theories, including the RICO

statute, traditional analysis, and the due process clause.

Accordingly, plaintiff's Second Amended Complaint must be dismissed as to Munson for

lack of personal jurisdiction.

### F.   The "effects test" of alleged torts or wrongs outside the jurisdiction causing alleged harm within it does not create personal jurisdiction over Munson.

Plaintiff accuses Munson of one count of common law fraud, one count of fraudulent

inducement of contract, and two counts of tortious interference with contract. (Second Amended

Complaint, Counts 4, 5, 6, 7, ¶¶ 65-87, at 23-28).

Although in some cases, a defendant may become subject to personal jurisdiction where

an alleged intentional tort is committed outside the forum under the "effects test," such

jurisdiction only arises where the tort alleged is not "mere untargeted negligence," but rather

"intentional and allegedly tortious actions ... expressly aimed [at the forum state]." *Calder v.

Jones*, 465 U.S. 783 (1984) (alleged defamation about plaintiff had greatest impact in forum state

of California where plaintiff entertainer lived and worked, magazine had its greatest circulation,

and relevant entertainment industry was centered). The Third Circuit requires fulfillment of a

three part test, that the tort be (1) intentional; (2) the plaintiff feels the "brunt of the harm" in the

forum state such that the forum can be said to be the "focal point" of the harm; and (3) that the

defendant "expressly aimed his tortious conduct at the forum." *Imo Industries, Inc. v. Kiekert

AG*, 155 F.3d 254 (3d Cir. 1998) (New Jersey not have personal jurisdiction over German

company; even though plaintiff's headquarters were in New Jersey, it was not the focus of the

dispute about German defendant selling French subsidiary). "There is an important distinction

between intentional activity which foreseeably causes injury in the forum and intentional acts

specifically targeted at the forum." *Narco Avionics, Inc. v. Sportsman's Market, Inc.*, 792

F.Supp. 398, 408 (E.D. Pa. 1992). Where an alleged tort is not so "focused" on the forum, personal jurisdiction has been found lacking. *See, e.g., Remick v. Manfredy,* 238 F.3d 248, 255 (3d Cir.2001); *Royal-Gist Brocades N.V. v. Sierra Products, Ltd.*, 1999 U.S. Dist. Lexis 12414 (E.D. Pa. 1999).

Here, the contracts underlying the alleged torts were negotiated, executed, and entered in London and the United Kingdom, under English law. They were between London based companies, insurers, and creditors. Munson's alleged acts, representations, conducts, or omissions took place almost exclusively in the United Kingdom. None of these acts or transactions were focused on Pennsylvania.

Hence, there is no independent basis for personal jurisdiction as to Munson with respect to the torts alleged in Counts 4 through 8 of plaintiff's Second Amended Complaint. *Remick v. Manfredy,* 238 F.3d 248 (3d Cir.2001) (specific jurisdiction is claim-specific). Hence, these counts must be dismissed as to Munson for lack of personal jurisdiction.

Moreover, as noted herein, there is not a basis for civil RICO jurisdiction over Munson. Thus, there is no basis for pendent jurisdiction as to these tort claims.

Accordingly, plaintiff's Complaint as to Munson must be dismissed for lack of personal jurisdiction.

**G.     Since Munson's alleged contacts were in his fiduciary roles as an attorney and corporate secretary, he is not subject individually to personal jurisdiction.**

Munson served as a solicitor (attorney) in the United Kingdom. He also served as a corporate secretary to some of the United Kingdom based Flashpoint companies, and became a non-controlling minority shareholder. To the extent he communicated with or contacted the one corporate shareholder or officer in Pennsylvania – namely Rogers – he did so as a result of or in connection with his fiduciary duties.

As previously noted, Munson's acts as an attorney were and are not of a character to subject him to the specific personal jurisdiction of Pennsylvania, particularly when compared to cases involving attorneys as noted above, and particularly in light of the fact that he did not solicit, or initiate, the relationship with the forum, and given that such relationship is neither the "focus" nor "heart" of either plaintiff's allegations nor of Munson's conduct. *See, e.g., Carteret Savings Bank, F.A. v. Shushan,* 954 F.2d 141, 146 (3d Cir.1992); *Remick v. Manfredy,* 238 F.3d 248, 255 (3d Cir.2001). See *Reves v. Ernst & Young,* 507 U.S. 170, 172 (1993) (professional services not typically considered to be "participation" in the operation or management of a RICO enterprise); *Gilmore v. Berg,* 820 F. Supp. 179 (D.N.J. 1993) (same).

To the extent that some of Munson's activities might allegedly have been in his role as a corporate secretary or non-controlling shareholder does not expose him individually to personal jurisdiction. In general, individuals performing acts in their corporate capacity that bring them in contact with other states do not become individually subject to the jurisdiction of such states for those acts. This principle is commonly referred to as the "fiduciary shield" or "corporate shield" doctrine. Even when the plaintiff asserts an "exception" for alleged tortious acts or acts under a statutory scheme – such as civil RICO – that may expose the corporate actor to personal liability (if he has violated such tort or statute), the court must still analyze (1) the officers alleged role in the corporate structure; (2) the quality and nature of the officer's alleged contacts; and (3) the extent of the officer's role in the alleged tortious conduct. *See, e.g., Streamlight, Inc. v. ADT Tools, Inc.,* 2003 WL 22594316 (W.D. Pa. 2003) (president of corporation, but did not oversee day to day operations, traveled to Pennsylvania in corporate capacity, but tortious acts did not occur in Pennsylvania, not subject to Pennsylvania personal jurisdiction on facts alleged); *D&S Screen Fund II v. Ferrari,* 174 F. Supp. 2d 343 (E.D. Pa. 2001) (president with "most significant

role in corporate structure," had "several telephone calls and faxes" to Pennsylvania, but "initiated only one" fax on the day of the central transaction; even though alleged to be the "primary tortfeasor" acts occurred outside of Pennsylvania; and individual not subject personal jurisdiction of Pennsylvania); *Royal-Gist Brocades N.V. v. Sierra Products, Ltd.*, 1999 U.S. Dist. Lexis 12414 (E.D. Pa. 1999) ("mastermind" of the alleged tortious scheme; but no meaningful contacts beyond signing a distribution agreement in his corporate capacity; not subject to Pennsylvania jurisdiction).

### 1.    Role in Corporate Structure

Munson's role was not central. He was corporate secretary and attorney. He was a non-controlling, minority shareholder. He did not initiate the transactions, deals, or transfers of funds. He did not conduct or control the day-to-day operations or bank accounts. Hence, these factors weigh against any exercise of personal jurisdiction over him individually.

### 2.    Corporate Contacts with Pennsylvania

Munson's contacts with Pennsylvania were essentially occasional, and informational, by way of a relatively small number of "cc's," phone calls, or faxes to keep Rogers apprised of developments in the United Kingdom. Munson never visited Pennsylvania in connection with the events alleged. Hence, the quality and nature of these few contacts weigh against any exercise of personal jurisdiction over him individually.

### 3.    Role in Alleged Tortious or Wrongful Conduct

Munson's essential role is and was as an individual attorney, serving United Kingdom based corporate clients, in transactions with United Kingdom based insurers and creditors. According to plaintiff's Complaint, Munson's alleged activities were to "negotiate" certain agreements, "execute" certain documents, and "certify" certain draws. (Second Amended Complaint, ¶¶ 18, 32, 34, 38c, 38e, 41, 42, 47e, 74, 75, 76, 78, 79, 83, 84, 85). Plaintiff alleges

these acts became wrongful for Munson's failure to discern whether certain documents were "completed," or certain funds "segregated," along with allegations of "misrepresentation" or "failure to disclose" what Munson allegedly "knew," was "aware" of, or what Munson or his clients "intended." (Id.). Such acts, omissions, knowledge, or intention on the part of Munson necessarily took place in and around the United Kingdom. It was not focused upon or directed to Pennsylvania or the United States. Hence, this third facts also weighs heavily against any exercise of personal jurisdiction over Munson individually.

### 4.    Summary as to acts in his corporate and fiduciary capacity.

In summary, Munson's contacts with Pennsylvania, consisting of relatively few informational communications to Rogers, whether standing alone, or considered to be within his corporate or attorney capacities, are insufficient to subject him individually to the personal jurisdiction of Pennsylvania. Accordingly, the plaintiff's Complaint against Munson must be dismissed for lack of personal jurisdiction.

### H.    Traditional Notions of Fair Play and Substantial Justice Confirm that Munson is not subject to personal jurisdiction.

As the foregoing analysis shows, plaintiff has failed to establish minimum contacts on the part of Munson with plaintiff's chosen forum of Pennsylvania sufficient to establish personal jurisdiction over Munson individually. Plaintiff has also failed to establish the "interests of justice" or any basis for personal jurisdiction over Munson individually under the civil RICO act. The alleged acts of Munson as an attorney are at best at the periphery of participation contemplated by civil RICO. *See Reves v. Ernst & Young*, 507 U.S. 170, 172 (1993). His acts in his role as a non-controlling minority shareholder and corporate secretary are of the type and character that can not and should not subject him individually to personal jurisdiction under the fiduciary shield doctrine. *See, e.g., D&S Screen Fund II v. Ferrari*, 174 F. Supp. 2d 343 (E.D.

Pa. 2001). Any tortious conduct as Munson is alleged to have participated in is and was not focused on Pennsylvania. *See, e.g., Imo Industries, Inc. v. Kiekert AG*, 155 F.3d 254 (3d Cir. 1998). Hence, under all the elements of personal jurisdiction analysis, plaintiff has failed to show personal jurisdiction over Munson individually, and thus plaintiff's Complaint against him must be dismissed in its entirety for lack of personal jurisdiction.

However, the due process clause requires and permits an analysis of whether personal jurisdiction meets with "traditional notions of fair play and substantial justice." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). It is of particular concern whether a defendant could "anticipate being haled into the courts of the forum" for his alleged activities. *Id.*

Among the relevant concerns is whether the plaintiff has an "adequate alternative forum" that may redress the plaintiff's rights, and spare the defendant the burden of litigating in a far flung fora. *See, e.g., Royal-Gist Brocades N.V. v. Sierra Products, Ltd.*, 1999 U.S. Dist. Lexis 12414 (E.D. Pa. 1999) (Canadian forum considered adequate alternative)

Here, plaintiff Munson's activities were structured in handling transactions in the United Kingdom, which even though the clients had interests in the United States, his role was such that he could hardly contemplate being haled personally into the courts of the United States or Pennsylvania.

It may be noted that the burden of litigating this matter upon an individual defendant such as Munson is large. Even with modern fax, phone, e-mail, and transportation, time zone differences impede consultations with counsel, witness and document preparation, and all elements of defending a complex case such as the present.

Plaintiff's initial disclosure reveals only one witness of fifty-one in Pennsylvania, with twenty-three in the United Kingdom. Hence, even with RICO process, access to sources of proof is impaired.

Munson has no assets or property in Pennsylvania or the United States. Hence, even if plaintiff is successful, any judgment must be transferred to the United Kingdom.

Plaintiff has started, although temporarily stayed, an action against Munson in the United Kingdom. Hence, the overall judicial system is burdened with two actions. Munson is burdened with this distant action, while not relieved of the burden of defending in his home courts. Plaintiff has an adequate alternative remedy in the United Kingdom. Given the jurisdictional issues raised herein, and the considerations of where judgment, if any, would need to be pursued, dismissal of the United Kingdom action is no remedy. Under notions of fair play, such duplicative litigation is not in the interests of justice, fair to an individual defendant such as Munson, or consistent with traditional notions of justice.

Accordingly, for these additional reasons, plaintiff's attempt to subject Munson individually to the jurisdiction of courts in Pennsylvania fails to comport with the standards of the due process clause and traditional notions of justice and fair play. Thus, plaintiff's Complaint as to Munson must be dismissed for lack of personal jurisdiction.

## IV.    **Forum Non Conviens**

Munson incorporates by reference the arguments of Defendant Tarlo Lyons with respect to Forum Non Conveniens, as set forth in Motion of Tarlo Lyons to Dismiss in Accordance with Federal Rule of Civil Procedure 12 (b)(2).

Dismissal of an action for inconvenient forum is proper where the defendant shows that: (1) an adequate alternative forum exists; and (2) the public and private interest factors weigh heavily in favor of dismissal. *See Tannenbaum v. Brink,* 119 F.Supp. 2d 505, 511 (E.D. Pa.

2000). Where an adequate forum exists, the court weighs public and private interest factors including: (1) relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) and all practical problems that make trial of a case easier, more expeditious, and less expensive. *Royal-Gist Brocades N.V. v. Sierra Products, Ltd.*, 1999 U.S. Dist. Lexis 12414 (E.D. Pa. 1999). Public interest factors include: (1) administrative difficulties flowing from court congestion; (2) local interests in not having localized controversies in an unrelated forum imposed on forum citizens burdened with jury duty. *Id.*

Here, the appropriate forum to litigate this action is London, in the United Kingdom, where plaintiff Lexington has already filed an action (Exhibit B). Any question of the multiplicity or division of legal actions is purely the creation of plaintiff Lexington, and not of defendants, least of all defendant Munson individually. The potential witnesses, especially those whom Munson dealt with, are in London and the United Kingdom. The private burdens on Munson individually are exceptional. There is essentially no public interest in Pennsylvania as to Munson's peripheral and United Kingdom based alleged role in the alleged scheme. Any judgment against Munson would need to be transferred to the United Kingdom. Plaintiff Lexington has already commenced an action against Munson that provides it a potential for full and adequate relief.

Hence, in addition to the lack of personal jurisdiction over Munson individually, the inappropriateness and inconvenience of the Pennsylvania forum as compared to the United Kingdom, provide an additional reason requiring dismissal of the present action as against Stanley Munson individually by entry of an Order in the form attached.

## V.    Conclusion

For all of the above reasons, plaintiff Lexington's Complaint against Munson must be dismissed for lack of personal jurisdiction. Plaintiff has failed to establish minimum contacts on the part of Munson with plaintiff's chosen forum of Pennsylvania sufficient to establish personal jurisdiction over Munson individually. Plaintiff has also failed to establish the "interests of justice" or any basis for personal jurisdiction over Munson individually under the civil RICO act. The alleged acts of Munson as an attorney are at best at the periphery of participation contemplated by civil RICO. *See Reves v. Ernst & Young*, 507 U.S. 170, 172 (1993). His acts in his role as a non-controlling minority shareholder and corporate secretary are of the type and character that can not and should not subject him individually to personal jurisdiction under the fiduciary shield doctrine. *See, e.g., D&S Screen Fund II v. Ferrari*, 174 F. Supp. 2d 343 (E.D. Pa. 2001). Any tortious conduct as Munson is alleged to have participated in is and was not focused on Pennsylvania. *See, e.g., Imo Industries, Inc. v. Kiekert AG*, 155 F.3d 254 (3d Cir. 1998). Hence, under all the elements of personal jurisdiction analysis, plaintiff has failed to show personal jurisdiction over Munson individually, and thus plaintiff's Complaint against him must be dismissed in its entirety for lack of personal jurisdiction.

WHEREFORE, the Second Amended Complaint of Plaintiff Lexington Insurance Company must be DISMISSED in its entirety as to Defendant Stanley Munson for lack of personal jurisdiction under Fed. R. Civ. P. 12 (b) (2) and applicable law by entry of an Order in the form attached.

Respectfully submitted,

BY: _____

CONRAD O. KATTNER, ESQ.
Identification No: 035468
MCSHEA & TECCE, P.C.
1735 Market Street, 16th Floor
Philadelphia, PA 19103
(215) 599-0800
Attorney for Defendant,
Stanley Munson

Date: _9 – 15 – 04_____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LEXINGTON INSURANCE COMPANY
                                        Plaintiff

                    v.

DAVID FORREST,
T BEAUCLERC ROGERS IV,
STANLEY MUNSON,
MARTY FINK,
NEW BEGINNINGS ENTERPRISES LLC,
and TARLO LYONS

                                        Defendants

CIVIL ACTION

NO.  02-4435

**EXHIBITS TO**
**MOTION OF STANLEY MUNSON TO DISMISS**
**IN ACCORDANCE WITH FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2)**

A.      Affidavit of Stanley Munson

B.      Claim Form re: *Lexington Insurance Co. v. Tarlo Lyons and Stanley Munson*, Queen's
Bench, Commercial Court, Claim No. 2004-Folio-201 (Filed March 11, 2004)

# Exhibit A

CIVIL ACTION NO: 02-4435

**IN THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT
OF PENNSYLVANIA**

**LEXINGTON INSURANCE COMPANY**

Plaintiff

**and**

**DAVID FORREST (1)
T BEAUCLERC ROGERS IV (2)
STANLEY MUNSON (3)
MARTY FINK (4)
NEW BEGINNINGS ENTERPRISES LLC (5)
TARLO LYONS (6)**

Defendants

---

**A F F I D A V I T**

---

I, STANLEY MUNSON of Webster's Farm, High Street, Glinton, near Peterborough, England being duly sworn according to law, depose and say that:

1.  I am named as a Defendant in this action. At all material times, for the purposes of this action between 1996 and 2000 I was a salaried partner (and accordingly an employee) in the Defendant firm of Tarlo Lyons.

2.  I was born in England and am a lifelong resident and citizen of the United Kingdom of Great Britain and Northern Ireland. For all purposes, England is my domicile.

3.  I am a solicitor of the Supreme Court of England and Wales, having been admitted as such in June 1975 and have worked in England for my entire professional life. As detailed hereafter, my personal contacts with the

Eastern District of Pennsylvania are virtually non-existent.

4.   Between March 1995 and July 2002 I was a salaried partner in the Defendant firm, an English firm of solicitors, Tarlo Lyons, practising out of its offices at 33 St John's Lane, London, EC1M 4DB.  During that time, more specifically between March 1997 and December 2000 through my former firm I provided legal services to various Flashpoint companies.

5.   Also during that time from March 1997 I have held a non-controlling ownership interest of 7.5% in the two Flashpoint companies that traded, i.e. Flashpoint Limited and Flashpoint (UK) Limited via a company which was owned and controlled by me namely Filmwatch Limited.  I also had, via Filmwatch Limited, a non-controlling shareholding in Flashpoint Investments Limited, which did not trade but which held shares in other companies.  These shareholdings effectively gave me a 7.5% interest in the Flashpoint companies.

6.   Each of the Flashpoint companies to which I provided legal services or in which I had an ownership interest was incorporated either in England or the Channel Island of Jersey (and were therefore in the United Kingdom) and had its principal place of business in England as follows:-

   a)   Flashpoint Limited was formed in March 1997 in Jersey (the United Kingdom) and had its principal place of business in Pall Mall, London, SW1.

   b)   Flashpoint (UK) Limited was formed in March 1998 in England and also had its principal place of business in Pall Mall, London, SW1.

   c)   Flashpoint Investments Limited was, from memory, formed in 1998 in England and also had its principal place of business at the Flashpoint offices in Pall Mall, London, SW1.

7.   I was not a director of either of the two trading Flashpoint companies, i.e.

Flashpoint Limited or Flashpoint (UK) Limited, but I was a director of the non-trading holding company, Flashpoint Investments Limited. I was the company secretary to these latter two companies; in English law the function of a company secretary is administrative and relates in particular to compliance with the requirements of the Companies Acts.

8.   Prior to making this statement my attention has been drawn to the legal professional privilege which attaches to communications between a solicitor and his or her client. So far as I am aware there has been no waiver of such privilege on the part of Tarlo Lyons' former clients and I make this statement therefore within the confines of my duty to preserve that professional privilege and my inability to refer to the precise nature of my communications with former clients and their contents and ask the Honourable Court to bear that restriction in mind in reading what follows.

9.   So far as I was concerned Flashpoint was an operation based in London around its major operating centre, the offices in Pall Mall. My sources of contact and of instruction were almost invariably David Forrest and his assistant Susan Wright, both of whom were based in the London Office and also, from 1999 onwards Jennifer Barrett who became Flashpoint's in-house solicitor from 1999.

10.  I rarely, if ever, had legal instruction or direction from Beau Rogers based in Pennsylvania. My clear recollection was that my instructions would come from one source, namely David Forrest and his team in London.

11.  As a result, I never had occasion to visit Pennsylvania in connection with Flashpoint at any time during the years in which I provided legal services to Flashpoint through Tarlo Lyons. My one visit to Pennsylvania was not business related and occurred about 20 years ago in or about 1984 to attend the wedding of a friend.

12.  Without derogating from my former firm's client's privilege, I did of course communicate occasionally with Beau Rogers of Gladwyne Pennsylvania in

connection with Flashpoint. However, I did so by fax, mail or telephone calls from my office in London. The preponderance of my communication with Beau Rogers whilst he was in Pennsylvania would be to arrange convenient times for his visits to London and meetings so that we could discuss any business whilst he was in England. Such other limited communications as there may have been were invariably of a logistical nature.

13.    Beau Rogers was a regular visitor to London and to my recall would visit the offices in Pall Mall at least once every other month and at busy times probably every month and I would meet Beau Rogers face to face in London.

14.    I was introduced to Beau Rogers by David Forrest in London. I did not solicit or initiate Tarlo Lyons' business relationship with Beau Rogers. To my knowledge and recollection, there was no other Pennsylvanian connection involving Flashpoint except that Beau Rogers resided there. No films were shot there and no suppliers, producers or other services were procured in or based in that State.

15.    At no time did I initiate any request for or on behalf of Flashpoint for a draw-down of funds. I did not direct or control day-to-day operations and had no involvement with the raising of funds, save for dealing with formal contractual matters on instructions after a deal had been struck by my clients. I was not involved in the production of sales' estimates for the films Flashpoint was involved in, nor in the procurement of investments in Flashpoint. In short, I was not involved in the implementation of any of the Hollywood Funding projects. I acted as counsel to Flashpoint when instructed to do so in London, particularly on contractual and intellectual property issues.

16.    During the currency of Tarlo Lyons' instructions from Flashpoint I believe I had occasion to visit California twice. These visits were of no more than three or four days' duration and their purpose was to meet other lawyers to

discuss contractual issues. I did on those occasions meet Marty Fink and Beau Rogers at offices in the Los Angeles area. To my knowledge, none of the other persons involved in those trips or meetings was based in Pennsylvania.

17.    I have also visited New York and Los Angeles approximately 6 or 7 additional times over the course of my life, the first visit being in the late 1970's and the most recent in, I believe, 1993, usually for a period of no more than 3 or 4 days at a time.

18.    The extent that I communicated with persons or entities, such as brokers, insurers or others who may have had some connection with the United States of America and with whom Flashpoint did business, I communicated by fax, mail or telephone calls from my offices in London or met them or their representatives only in England and principally in or around London. To my knowledge, none of these other persons or entities was based in or was from Pennsylvania.

19.    I will also say that, so far as I am aware, the minutes, records and files of the Flashpoint companies were kept at their offices in London. I have read what purports to be a copy of an Affidavit sworn by David Forrest in this action and would agree with what he says about the essential kernel of the Flashpoint enterprises being the Flashpoint offices in London evidenced by the fact that if not in his possession then all relevant Flashpoint documentation will be in the hands of the various companies' administrators or of Tarlo Lyons.

SWORN AT Websters Farm, High Street, Glinton          )

Near THE CITY OF Peterborough          )

ON 15 September 2004          )

Before me Sarah Humble...........................

Solicitor/

TOTAL P.07

This Affidavit is filed on behalf of the Defendants Stanley Munson and Tarlo Lyons

# Exhibit B

DentonWildeSapte

# Claim Form

| In the | High Court of Justice |
|---|---|
| | Queen's Bench Division |
| | Commercial Court |
| | Royal Courts of Justice |

| | For court use only |
|---|---|
| Claim No. | 2004-FOLIO 201 |
| Issue date | 11-MAR-04 |

Claimant(s) LEXINGTON INSURANCE COMPANY (whose registered office is at 200 State Street, Boston, Massachusetts 02109, United States of America)

Seal  11 MAR 2004

Defendant(s) TARLO LYONS (a firm) of Watchmaker Court, 33 St John's Lane, London EC1M 4DB (1) and
STANLEY MUNSON (an individual)  of Websters Farm, High Street, Gunton, Peterborough, Cambridgeshire, PE6 7LS (2)

**Does, or will, your claim include any issues under the Human Rights Act 1998?**

☐ Yes        X No

Name and address of Defendant receiving this claim form

see attached schedule

| Amount claimed | To be assessed |
|---|---|
| Court fee | £800 |
| Solicitor's costs | To be assessed |
| Total amount | To be assessed |

The court office at the Admiralty & Commercial Registry, Royal Courts of Justice, Strand, London WC2A 2LL is open between 10.00 am and 4.30 pm Monday to Friday.  When corresponding with the court, please address forms or letters to the court manager and quote the claim number.

| | Claim No. | |
|---|---|---|

**Brief details of claim:** The Claimant is an insurance company which underwrote policies relating to film finance transactions known as Hollywood Funding 4, 5 and 6 ("the Transactions"). The policies were procured by Flashpoint Limited and Flashpoint (UK) Limited (together "Flashpoint"). Flashpoint also entered into collateral agreements with the Claimant relating to the Transactions . The First Defendant is the firm of solicitors and the Second Defendant the partner representing Flashpoint throughout the relevant period. The Defendants owed direct obligations to the Claimant which arose, inter alia under the collateral agreements. The Second Defendant was also an indirect shareholder of Flashpoint.

By reason of:

1) misrepresentations and/or deceit on the part of the Defendants, and

2) the Defendants procuring breaches of the collateral agreements by Flashpoint, and

3) a conspiracy between the Defendants and Flashpoint to injure Lexington's economic interests

the Claimant has suffered loss and damage.

The Claimant claims the full amount of loss and damage which it suffered by virtue of the Defendants' acts.

The Claimant also claims such sums as were received by the Defendants as fees and other benefits which were the proceeds of a fraud by Flashpoint on the Claimant.

**Particulars of claim will follow if an acknowledgment of service is filed that indicates an intention to defend the claim**

**Statement of Truth**

The Claimant believes that the facts stated in this claim form are true.

I am duly authorised by the claimant to sign this statement.

Full name: Adrian Mecz

Name of claimant's solicitor's firm: Denton Wilde Sapte

Signed: _____    position or office held: partner

**Claimant's solicitor**

© Crown copyright. Reproduced by Denton Wilde Sapte

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY<br>Plaintiff<br><br>v.<br><br>DAVID FORREST,<br>T BEAUCLERC ROGERS IV,<br>STANLEY MUNSON,<br>MARTY FINK,<br>NEW BEGINNINGS ENTERPRISES LLC,<br>and TARLO LYONS<br><br>Defendants | CIVIL ACTION<br><br>NO.  02-4435 |

## CERTIFICATE OF SERVICE

Conrad Kattner, Esquire, attorney for Defendant, Stanley Munson, hereby certify

that I have served true, correct and complete copies of Defendant, Stanley Munson's

Motion to Dismiss, Proposed Order and Memorandum of Law upon the following parties

or their counsel of record by first class mail, postage prepaid on September 15, 2004:

Glenn F. Rosenblum, Esquire
Jeffrey R. Lennan, Esquire
Montgomery, McCracken, Walker &
Rhoads
123 South Broad Street
Philadelphia, PA 19 109
and
Edward P. Krugrnan, Esquire
Emily A. Poler, Esquire
Ira J. Dembrow, Esquire
Scott M. Mory, Esquire
Cahill Gordon & Reindel
80 Pine Street
New York, NY 10005
*Counsel for Plaintiff*

Alexander Kerr, Esquire
Stephen P. McFate
McCarter & English, LLP
Mellon Bank Center
1735 Market Street, Suite 700
Philadelphia, PA 19 103
and
Beverly Y. Lu, Esquire
Charles A. Adamek
Lord Bissell & Brook, LLP
300 South Grand Avenue, Suite 800
Los Angeles, CA 9007 1
*Counsel for New Beginnings Enterprises*

1   --

Edward M. Dunham, Jr., Esquire
Shannon Hampton Sutherland, Esquire
Duane Morris LLP
One Liberty Place
Philadelphia, PA 19 103
*Counsel for David Forrest*

David L. Pennington
Harvey, Pennington, Ltd.
29th Floor,
1835 Market Street
Philadelphia, PA 19103
*Counsel for Tarlo Lyons*

Nicholas M. Centrella, Esquire
James J. Rohn, Esquire
Kevin Dooley Kent, Esquire
Conrad OYBrien Gellman & Rohn, PC
1 5 1 5 Market Street, 1 6th Floor
Philadelphia, PA 19 102
*Counsel for T.   Beauclerc Rogers, IV*

Neil G. Epstein, Esquire
Eckert Seamans Cherin & Mellott, LLC
15 15 Market Street
Ninth Floor
Philadelphia, PA 19 102
and
Jeffrey D. Farrow, Esquire
Mona Z. Hanna, Esquire
Sanford Louis Michelman, Esquire
Michelman & Robinson LLP
4 Hutton Centre, Suite 300
Santa h a , CA 92707
*Counsel for Martin Fink*

Respectfully submitted,

BY: _____

CONRAD O. KATTNER, ESQ.
Identification No: 035468
MCSHEA & TECCE, P.C.
1735 Market Street, 16th Floor
Philadelphia, PA 19103
(215) 599-0800
Attorney for Defendant,
Stanley Munson

Date: _____