IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY | CIVIL ACTION |
| Plaintiff | |
| v. | NO.  02-CV-4435 |
| DAVID FORREST and T. BEAUCLERC ROGERS, IV, STANLEY MUNSON, MARTIN FINK, all individually, and NEW BEGINNINGS ENTERPRISES LLC, A California Limited Liability Company, and TARLO LYONS, a partnership, | (Hon. Anita B. Brody) |
| Defendants | |

## **ORDER**

AND NOW this _____ day of _____, 2004, upon consideration of Defendant, Tarlo Lyons' Motion to Dismiss, Plaintiff's Answer to the Motion to Dismiss and the Briefs of Plaintiff and Defendant, it is hereby ORDERED and DECREED that the Motion is Granted and Plaintiff's Second Amended and Supplemental Complaint as to Tarlo Lyons is dismissed with prejudice.

_____
THE HONORABLE ANITA B. BRODY
UNITED STATES DISTRICT JUDGE

700410_1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY <br>                             Plaintiff <br>             v. <br> DAVID FORREST and T. BEAUCLERC <br> ROGERS, IV, STANLEY MUNSON, MARTIN <br> FINK, all individually, and NEW BEGINNINGS <br> ENTERPRISES LLC, A California Limited <br> Liability Company, and TARLO LYONS, a <br> partnership, <br>                           Defendants | CIVIL ACTION <br><br> NO.  02-CV-4435 <br><br> (Hon. Anita B. Brody) |

**REPLY BRIEF ON BEHALF OF TARLO LYONS TO THE ANSWER OF LEXINGTON
INSURANCE COMPANY TO THE MOTION TO DISMISS FILED BY TARLO LYONS**

       Before the Court is the motion to dismiss filed on behalf of Tarlo Lyons, based on

lack of personal jurisdiction over Tarlo Lyons and *forum non conveniens*.  In its Answer and

Brief, plaintiff takes the position that the Court has already decided the issues on the previously

filed Motion to Dismiss of David Forrest, one of the original defendants and, therefore, there are

no further issues for the Court to determine.  Such is clearly not the case.

       Tarlo Lyons is a London law firm which performed legal services in London on

behalf of a United Kingdom client, Flashpoint.  David Forrest is one of the two primary

shareholders and directors in that United Kingdom client and he operated and managed on a day-

to-day basis the client's business from his office in London.  The other principal shareholder and

director was T. Beauclerc Rogers, IV, a resident of Gladwyne, Pennsylvania, who, as is set forth

in the Affidavit filed with the Motion to Dismiss, is not a person who actively managed the client

so far as any communications between the law firm and Mr. Rogers are concerned.  The contacts

with Flashpoint were with David Forrest, Susan Wright and the other approximately eight

employees who ran the enterprise from offices on Pall Mall in London.  Clearly, the issues

regarding personal jurisdiction are factually and fundamentally different between David Forrest and Tarlo Lyons, the law firm.

With regard to the question of *forum non conveniens*, the suggestion that this is a moot issue because of the Court's prior ruling is simply not accurate. Plaintiff belatedly added Tarlo Lyons as a defendant long after institution of the original suit against David Forrest and T. Beauclerc Rogers, IV for reasons unknown to Tarlo Lyons, plaintiff being possessed of virtually all records relating to the lawsuit long before joinder of Tarlo Lyons. The addition of another defendant requires the Court to address anew the weight of the various factors that govern a determination as to whether the defense of *forum non conveniens* should result in dismissal of the case. The addition of Tarlo Lyons tips the scales in the opposite direction from the Court's prior ruling.

In its Brief, Lexington declares that the arguments in the Brief of Tarlo Lyons relating to the fact that the firm was not involved in the operation and management of the enterprise are irrelevant. Had they truly believed that assertion presumably they would have simply cited authority and gone on to other relevant arguments. However, a very large portion of Lexington's Brief addresses those very arguments and they are central to the Court's determination. They establish that in fact there was no substantive involvement on the part of Tarlo Lyons in the operation or management of the alleged enterprise and thus clearly distinguish this case from the [1]Grand case which is the primary authority underlying the Court's determination that it had jurisdiction over David Forrest. The contacts between Tarlo Lyons and Pennsylvania did not involve creation of rights and obligations as was true in the authority underlying the Forrest Decision by this Court.

---

[1] Grand Entertainment v. Star Media Sales, Inc., 988 F.2d 476 (3d. Cir. 1993).

In addition, with regard to the conspiracy claim against Tarlo Lyons under 18 U.S.C. 1962(c), the Affidavits submitted with the Motion to Dismiss make it clear that there was not the necessary knowledge on the part of Tarlo Lyons that any acts that they performed might have been supportive of a conspiracy in violation of the RICO statute.[2]

These points are clear:

Ø    Tarlo Lyons performed its work in England.

Ø    Tarlo Lyons did not enter the United States and create rights and obligations.

Ø    Adding Tarlo Lyons as a party requires a new approach and requires dismissal on the basis of *forum non conveniens*.

Ø    From the vast reservoir of Flashpoint documents in its exclusive possession, plaintiff has produced nothing to establish a *prima facie* case.

## I.    LEGAL ARGUMENT

### A.    Plaintiff has not carried its burden of establishing a *prima facie* case as is required by Federal Rule of Civil Procedure 12(b)(2).

Unlike a motion to dismiss for failure to state a claim under Rule 12(b)(6), the filing of a motion asserting lack of personal jurisdiction under Rule 12(b)(2) requires that evidence beyond the allegations in the complaint be produced by the plaintiff to establish a *prima facie* case, Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2nd 61 (3rd Cir. 1984). Plaintiff may not, as plaintiff attempts to do here, rely simply on the allegations in plaintiff's Complaint.

### 1.    The exhibits contained in plaintiff's Answer to the Motion to Dismiss do not support a prima facie case.

It is, therefore, necessary to review each of the documents presented in connection with the Declaration of Edward P. Krugman, which forms the basis of plaintiff's effort to carry

---

[2] The court's attention is drawn to the Brief attached to Tarlo Lyon's Motion to Dismiss in which it was pointed out that the statute of limitations has run as to all but the RICO claim based on the face of the Complaint.

its burden.  They do not establish, as plaintiff contends, that Tarlo Lyons was involved in the business and financial activities of Flashpoint as opposed to simply providing legal services as is contended by Tarlo Lyons.  They do not establish a *prima facie* case that Tarlo Lyons entered the jurisdiction and established rights and obligations as a result of that entry.

### a.    EXHIBIT A

This is a letter not from Tarlo Lyons in London to Mr. Rogers in Gladwyne, but rather a letter from Mr. Rogers in Gladwyne to Filmwatch, Ltd. at its registered address on Watchmaker Court.  It has no bearing on any involvement on the part of Tarlo Lyons, but is simply addressed c/o Tarlo Lyons at Watchmaker Court.  Stanley Munson is not entering into Pennsylvania with this letter but, rather, Mr. Rogers is communicating with London.

### b.    EXHIBIT B

Rather than establishing what plaintiff contends, this letter from Susan Wright at the Flashpoint offices at 67 Pall Mall, London to Stanley Munson at Tarlo Lyons in London, undermines the basic foundation of plaintiff's Complaint.  The letter was also sent to Mark Drummond-Brady, the broker at (Jardine) Lloyd Thompson, the London broker from whom the policies with Lexington were acquired.  This November 18, 1998 letter makes it clear that the underwriters were fully informed as to the principal activities of which plaintiff complains, the use of money to purchase equipment and other property.  The memo is a straightforward presentation of what was being done and was circulated to a large number of people which surely would not have been the case had there been an effort to do something secretive and improper.  It contradicts the contentions in plaintiff's Compliant that the use of money as outlined in the letter was unknown to the underwriters.

### c.    EXHIBIT C

This exhibit refers to the redrafting of a contract, which is what lawyers do. Clearly this was not anything involved in the operation and management of Flashpoint, but was the performance of professional services for those who were operating the business. It does not support any allegation that Tarlo Lyons had knowledge of any improper activity by Flashpoint.

### d.    EXHIBIT D

This exhibit is a letter from Tarlo Lyons in London to David Forrest in London simply advising the client of what one "Paul Thornhill" has done with monies placed at interest and telling Mr. Forrest that he should communicate with Paul Thornhill in some fashion so that Paul Thornhill has up-to-date information on cash flow. Stanley Munson specifically states that he did not have that information, thus undermining the contention of plaintiff in its Brief that this document proved that Stanley Munson was in charge of the cash flow at Flashpoint. Like the other memoranda, this exhibit does not establish that Tarlo Lyons was involved in the operation and management of the alleged enterprise or had knowledge of any activities in violation of the RICO statute.

### e.    EXHIBIT E

Plaintiff makes much of the provision in the Collateral Agreement between Lexington Insurance Company and Flashpoint (UK), Ltd. drafted by the Corporate Insurance Group of Ince & Co., Lexington's solicitors, providing that a Tarlo Lyons' partner will co-sign all Flashpoint disbursements. First, it should be pointed out that Tarlo Lyons is not a signatory to this Collateral Agreement. In addition, Lexington contends that there could only be one possible purpose for the agreement providing for a second signature by a Tarlo Lyons' partner, to protect the interest of Lexington. This is blatantly inaccurate.

My law firm, for example, requires two signatures on all checks in excess of $1,000.00. This is to protect our law firm, not a third party. This protection was only against a single individual taking monies that belong to Flashpoint. Had the solicitors for Lexington wished protection for **Lexington** by requiring the co-signing of disbursements, surely it would have provided for a partner at Ince & Co. to be the signatory rather than providing for the signature of a partner at Tarlo Lyons. Flashpoint was the firm's client to whom Tarlo Lyons owed its duty. Nothing plaintiff has presented creates a duty to any other party. Had the intention of the Collateral Agreement been to safeguard Lexington, Ince & Co. would not have provided for a co-signature from somebody who would have a clear conflict of interest. Lexington is a company which is part of AIG, probably the largest insurance group in the world. They are accustomed to instructing their counsel as to their wishes. Had they desired to have the monies held in trust, they would have arranged for Ince & Co., their solicitors, to state that unequivocally. In fact, they did so in connection with the collection account involved in the Flashpoint transaction. This document goes to the heart of plaintiff's claim in this lawsuit and on its face belies plaintiff's contentions and undermines the entire lawsuit.

Plaintiff's suggestion that Stanley Munson's statements in his Affidavit that at no time did a Tarlo Lyons' employee initiate a disbursement convicts him out of his own mouth of facilitating fraud is based clearly on a misunderstanding of the Collateral Agreement. Although Lexington would like the court to believe that Mr. Munson's statement was not true, Lexington has not brought forth a single document from the thousands of documents in its possession – virtually all of the records of Flashpoint - suggesting to the contrary. There is no evidence whatsoever that Tarlo Lyons initiated any disbursements.

**f.      EXHIBIT F**

This is a letter from Martin Fink in California to Stanley Munson, not from Munson to Fink.  It simply recites what has been done by the client to the client's lawyer.  This is a normal part of the activities of an attorney representing its client.  It does not involve Tarlo Lyons creating rights or obligations in Pennsylvania, in California or anywhere in the United States.

**g.      EXHIBIT G**

This facsimile from Martin Fink in California to David Forrest confirms a telephone conversation in which it appears that Forrest decided what monies should be advanced by Flashpoint and there appears to be a note appended from Forrest in London to Stanley Munson in London which would permit him to co-sign the disbursement.  This is consistent with what Stanley Munson has set forth in his Affidavit and undermines contrary contentions by the plaintiff.  Forrest initiates the disbursements and Munson co-signs to make certain that Flashpoint, the owner of the funds, has authorized it.

**h.      EXHIBIT H**

Martin Fink is sending a facsimile to Stanley Munson in London inquiring into the status of apparently past due disbursements which, again, simply involves inquiry as to the whereabouts of a payment.  It does not involve Tarlo Lyons entering the United states and creating any rights or obligations and it does not in any way establish any knowledge on the part of Tarlo Lyons that there were any RICO violations being committed.

**i.      EXHIBIT I**

Again, Martin Fink sends a facsimile to Stanley Munson informing him that apparently a disbursement from Leopold Joseph, the bank, had not gone through with the expected speed and asking him to inquire of the bank.  Please note in connection with this

700410_1

exhibit, as with many of the exhibits, it is David Forrest who was copied by Martin Fink and not Mr. Rogers. David Forrest in London was the person who made the decisions. Plaintiff contends that this Exhibit is clear evidence of Munson's complicity in diversion of funds. To the contrary, there is nothing whatsoever in this document to suggest anything being diverted anywhere. It is stated in plaintiff's Brief that this communication between Munson in England and Fink in the United States is significant for jurisdictional purposes. It is an incidental communication from Fink in the United States to Munson in England and Munson, in this document which he did not author, is not bringing himself or Tarlo Lyons under the wing of the American courts.

### j.    EXHIBIT J

This is alleged to establish Munson's knowledge of the "diversion" of funds to a building and facility, but this was covered in the previous exhibit which had been communicated to the underwriters and, therefore, does not support the contention that anything was done without the knowledge and consent of the underwriters. See the comments above in connection with Exhibit B, which also explain this document. The underwriters were made fully aware that these transactions were taking place and both Exhibit B and Exhibit J make it clear that this was a proper, fully documented, self-supporting business transaction.

### k.    EXHIBIT K

This is a letter from Stanley Munson in London to another individual in London, with copies to Forrest and Rogers. It is addressed to Richard Stratton at Travers Smith Braithwaite, another firm of London solicitors representing Flashpoint. Tarlo Lyons were only acting for Flashpoint in respect to certain matters and Flashpoint retained other well established legal and other professional advisors. It also makes reference to the law firm of Lord Bissell & Brook, who were advising Flashpoint as to their United States operation and, in fact, a copy was

sent to that law firm. This is simply a recitation of the ownership interests in the corporation as they already existed, together with advice from Stanley Munson in his capacity as a lawyer concerning the corporate structure. Contrary to the suggestion in plaintiff's Brief, there is nothing Byzantine about it. It identifies the four shareholders and suggests how their desire in regard to relative ownership can be accomplished.

### l.    EXHIBIT L

This letter from Martin Fink to Stanley Munson, when Munson happened to be in Los Angeles, was sent to him because Martin Fink had concluded that the original mailing to London had arrived after Mr. Munson had left that city. It is simply an informational communication informing the lawyer of what the company has done. It is not substantive and is not jurisdictionally significant. It is a letter making an appointment for a meeting to be followed by lunch. It does not even identify what the meeting in fact concerns.

### m.    EXHIBIT M

This exhibit appears to be follow-up on Exhibit K based on the reference to Lord Bissell & Brook. It was routine legal work and in no way related to any predicate acts or an awareness on the part of Tarlo Lyons to any possible RICO violation.

### n.    EXHIBIT N

Exhibit N proves nothing. A reader cannot possibly understand what it refers to other than a facsimile of November 25, which is not included. Presumably, the plaintiff who has all the Flashpoint documents have that facsimile but have chosen not to make Exhibit N meaningful by attaching it.

### o.    EXHIBIT O

This exhibit is a facsimile to Beau Rogers from Stanley Munson explaining what apparently happened as a result of things done by others regarding potential income under the

contracts related to music produced for a film. This is, again, simply the kind of incidental advice a lawyer will give to a client and establishes nothing to indicate that Tarlo Lyons was involved in the operation and management of Flashpoint or that it had any awareness of any illegal activities.

### p.    EXHIBIT P

This document is similar to the previous one and is a recitation by Stanley Munson, a lawyer, to Beau Rogers, one of the shareholders and a director of Flashpoint, who at the time this was sent apparently was residing in the Kensington House Hotel in **London**. It explains how the contracts or arrangements regarding the music in films are handled. It is simply legal advice and does not establish anything that the plaintiff must establish in order to have jurisdiction found in this court.

### q.    EXHIBIT Q

More than anything else, this document underlines the fact that Beau Rogers in Gladwyne had little involvement in the decisions made in connection with Flashpoint and that David Forrest was in fact the one who was running the show. He asked to be copied on all correspondence that deals with Flashpoint where David Forrest gets a copy so that he can keep up-to-date – not so that he can make a decision – but there is no evidence that in fact he was copied on all subsequent documents. Again, all documents are in the possession of plaintiff and plaintiff has failed to produce what would have been expected if plaintiff's contentions are correct regarding substantive contacts relating to jurisdiction. Plaintiff's brief **presumes** what Rogers would have done on receiving copies of communications, but there is no basis for any such presumption and no document to support the presumption. On its face, it clearly is simply a request for copies of documents for information purposes. Page 13 of the Brief is an example of plaintiff's bold assertions of "fact" based on "the quantity of documents that Lexington has seen

to date" which do not carry plaintiff's burden to establish a *prima facie* case based on affidavits or other proper evidence, not conjecture and sweeping generalizations.

### r.    EXHIBIT R

Exhibit R is a collection of nine facsimiles or letters from Munson to Rogers identified on page 14 of the Brief, one of which apparently was in fact hand delivered to Mr. Rogers and refers to Mr. Rogers having hand delivered a document to Mr. Munson apparently in London. Some of these documents are duplicates of previously reviewed exhibits and, once again, are simply informational documents from a lawyer to the client.

### s.    EXHIBIT S

This exhibit relates to the agreement of the parties to stay the proceedings in London and has no bearing on the jurisdictional issue other than to establish clearly that London is a suitable venue for the litigation. All of the claims against Tarlo Lyons in this case can be asserted against the firm in London, except RICO and treble damage judgments which are not enforceable in England. Plaintiff can pursue a claim for fraud in England and thus has an adequate remedy in that respect.

### t.    EXHIBIT T

This is a brochure which apparently Flashpoint produced, which simply mentions Tarlo Lyons as lawyers along with other law firms, accounting firms and a bank. Surely, it is not being suggested that if a client lists a law firm on a marketing brochure, the firm is subject to suit wherever the brochure is found. Again, the brochure spells out the company structure in clear, public view, contradicting plaintiff's assertion that the corporate structure was "Byzantine."

### u.    EXHIBIT U

The documents included in Exhibit U are, once again, simply documents relating to the drafting of contracts which on their face are perfectly legitimate. There is nothing about

any of the documents that suggest that they are not legitimate arms length contracts being negotiated. They do not refer to or give any evidence of any diversion of funds. They do not establish any knowledge on the part of Tarlo Lyons to any RICO violation.

### v.    EXHIBIT V

Exhibit V refers to draw downs or production of films. This is precisely what the plaintiff says the monies were to be used for and these are not evidence of any wrongdoing or any consciousness on the part of Tarlo Lyons regarding the possibility of unlawful activity.

The above exhibits are apparently all that plaintiff can produce from among the huge number of boxes of documents from Flashpoint which are in their possession. None of these documents show that Tarlo Lyons had any knowledge of fraudulent activities or RICO violations and none of them show that Tarlo Lyons should have had such knowledge. The conclusions that plaintiff attempts to draw from the documents are simply not supported by their content. None of the documents establish that Tarlo Lyons purposefully entered Pennsylvania for the purpose of creating rights and obligations and none of the documents show that in fact rights and obligations were created by communications from Tarlo Lyons to Pennsylvania.

The same can be said of California. None of the documents establish that Tarlo Lyons purposefully entered any state to create rights and obligations. The activities that are documented are the same in both States and there is no basis for jurisdiction in either of them. The Grand case is clearly distinguishable because the communications in that instance created a contractual undertaking which was the subject matter of the lawsuit before the Court in Grand. None of the documents incorporated in plaintiff's Response to the Motion to Dismiss of Tarlo Lyons establish that any communication between Tarlo Lyons and either Pennsylvania or California was a RICO predicate act or involved Tarlo Lyons in the operation and management of the alleged enterprise. None of the documents show a knowledge on the part of Tarlo Lyons

of any unlawful acts or intentions on the part of their client. There is absolutely no evidence of any affirmative act by Tarlo Lyons connected to any illegal activity. In fact, none of the documents produced by plaintiff contain any evidence of any illegal act.

> **2.    Plaintiff's Brief in support of its Answer has failed to address any of the authority cited in Tarlo Lyons' Brief in support of the Motion to Dismiss which distinguishes Tarlo Lyons from David Forrest under the Grand Case.**

Plaintiff's Brief suggests that plaintiff fails to understand the distinctions that exist between Tarlo Lyons and David Forrest that were brought out in the Tarlo Lyons' Brief. They rely on the <u>Grand</u> case and do not address the issues identified in subsequent decisions where, as here, the facts regarding the defendants in question are different from the <u>Grand</u> case and in this instance different from David Forrest. David Forrest and Beau Rogers clearly have a different relationship than that which exists between Rogers and Tarlo Lyons. Just any facsimile or any letter or any telephone call is not sufficient to support jurisdiction. The communications here did not establish rights and obligations to Pennsylvania citizens.

Besides merely restating that this Court relied heavily upon <u>Grand</u> in denying alleged co-conspirator Forrest's Motion to Dismiss, Lexington in opposition fails to address any other case law cited by Tarlo Lyons in its Brief. Nor does Lexington address Tarlo Lyons' specific analysis as to the inapplicability of the <u>Grand</u> case to the facts regarding Tarlo Lyons in the instant matter.[3]

---

[3] <u>See</u> Tarlo Lyons' Brf. in Support of Mot. to Dismiss at. 11-14. For example, despite Tarlo Lyons' challenge that Lexington produce evidence of additional contacts between Tarlo Lyons and Pennsylvania that would have created rights and obligations among citizens of forum state, Lexington failed to produce same. <u>See</u> <u>TSA, Inc. v. Nass</u>, 1997 U.S. Dist. LEXIS 1043, at *7-10 (E.D. Pa. 1997) (distinguishing <u>Grand's</u> holding that telephone conversations and facsimiles are sufficient to establish personal jurisdiction as requiring additional contact, e.g., negotiations that would have created rights and obligations among citizens of forum state); <u>see</u> also <u>Quandel Group</u>, 1999 U.S. Dist. LEXIS 8822 at *9-10 (telephone, telefax, and mail communications alone insufficient to establish personal jurisdiction).

Importantly, Lexington's burden is to show "with reasonable particularity" contacts between the defendant and the forum sufficient to support the exercise of personal jurisdiction. Quandel Group v. Chamberlin Co., 1999 U.S. Dist. LEXIS 8822 at *2 (E.D. Pa. 1999). Lexington has not met this burden. Lexington's proof to support its claim of sufficient contacts to exercise personal jurisdiction consists of a 1997 fax from Rogers **to** Munson. This evidence is unavailing since the communication does not represent contacts from Munson **to Pennsylvania**. See Lexington Brf. in Opp. at 13. Lexington's other proof consists of seven faxes and two letters from Munson to Rogers. Most of these faxes and letters are merely transmittal letters forwarding copies of other documents for arrangements between Rogers and non-resident entities. These documents are insufficient to create personal jurisdiction. As stated before in Tarlo Lyons' moving papers, which Lexington neglects to address, the Third Circuit recognized after the 1993 Grand decision, "informal communications in furtherance [of a contract between a resident and nonresident] does not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over the [nonresident defendant]." Vetrotex Certainteed v. Consolidated Fiber Glass, 75 F.3d 147, 152 (3d. Cir. 1996) (quoting Sunbelt Corp. v. Noble, Denton & Assoc., Inc., 5 F.3d 28, 32 (3d Cir. 1993) (finding telephone communications and facsimiles sent to Pennsylvania insufficient to establish personal jurisdiction). Indeed, the performance of ministerial tasks or the mailing of information into the forum state alone is insufficient to support a claim of personal jurisdiction over a non-resident defendant. Murray v. Nat'l Football League, 1996 U.S. Dist. LEXIS 9108, at * 39-40 (E.D. Pa. 1996). Furthermore, several telephone conversations and facsimile transmissions from a foreign defendant to the forum state may not be sufficient to establish specific personal jurisdiction. See D & S Screen Fund II v. Ferrari, 174 F.Supp.2d 343 at 347-348 (E.D. Pa. 2001). Tarlo Lyons

denies that such communications constitute predicate RICO acts, and even if they were somehow tortious in nature, it is well established that even where a plaintiff has alleged tortious conduct in the course of correspondence, limited telephone or mail contacts which form the basis of the claim, such contacts are insufficient to establish personal jurisdiction over a non-resident defendant.  Roetenberg v. King and Everhard, P.C., 2000 U.S. Dist. LEXIS 16430, at *12-14 (E.D. Pa. 2000).

> **3.    Plaintiffs have failed to fulfill their burden to provide necessary evidence of Tarlo Lyons conspiring to operate or manage an enterprise.**

Plaintiff attempts to get around the requirement that Tarlo Lyons be shown to have participated in the operation and management of the enterprise by pointing out that there is a claim in the Complaint against Tarlo Lyons alleging that they conspired with Flashpoint in violation of 18 U.S.C. § 1962(d).  They failed to properly analyze the law in this respect.

While a case of Smith v. Berg, 247 F.3d 532, 538; 2001 U.S. App. LEXIS 6254 (3rd Cir. 2001), stands for the proposition that a claim under § 1962(d) does not require a violation of § 1962(c), the analysis of this case law has not been carried far enough by plaintiffs.

The Third Circuit in the case of United States v. Antar, 53 F.3rd 568 (3rd Cir. 1995) did a careful analysis of a line of cases relating to the conspiracy claims under RICO.  The Court created a distinction "between, on the one hand, conspiring to operate or manage an enterprise, and, on the other hand, conspiring with someone who is operating or managing the enterprise."  Antar, 53 F.3rd at 581.  The Court concluded that liability under § 1962(d) would only exist where the defendant is working to do something for which it would be liable under § 1962(c).  See Smith, 247 F.3rd at 536.  The distinction is an important one.  If liability were to attach simply on the basis of one working with a party which is operating or managing an enterprise, any body performing any services for such an offender would be liable on a theory of

conspiracy. There must be a conscious, knowing conspiracy to operate and manage the enterprise which defendant must be a part of. That would create liability where the parties agree to the illegal undertaking but one of them maintains a solely passive role while the other operates and manages the enterprise. The plaintiff has produced absolutely nothing in support of its burden to set forth a *prima facie* against Tarlo Lyons which would reasonably suggest that Tarlo Lyons knew that Flashpoint operated and managed an enterprise in violation of the RICO statute. As is pointed out above in the analysis of various exhibits which have been attached to plaintiff's Response to Tarlo Lyons' Motion to Dismiss, plaintiff attempts to bridge the gap between the evidence they have attached to their Brief, from among the massive collection of documents in their possession, and the necessary evidence they must show the Court to support a *prima facie* case. Therefore, the argument that this case could go forward on a conspiracy theory is simply missing. As the Supreme Court of the United States has stated in <u>Salinas v. United States</u>, 522 U.S. 52, 139 L. Ed. 2d 352, 118 S. Ct. 469 (1997), the defendant must "adopt the goal of furthering or facilitating the criminal endeavor." 522 U.S. at 65. The Court spells out that the common law of criminal conspiracy applies and that it is essential that the conspirators in fact share a common purpose. It is not sufficient that they simply have a business relationship. <u>Dongelewicz v. PNC Bank Nat'l Ass'n</u>, 104 Fed. Appx. 811, 2004 U.S. App. LEXIS 15351 (2004) holds that "the fact that First Eastern [conspirator] provided financing to CBG [enterprise] in no way gives rise to an inference (i) that First Eastern agreed to commit predicate acts; or (ii) that First Eastern knew that the predicate acts were part of racketeering activity, two necessary elements of a RICO conspiracy" it went on to state that at the best the plaintiff could "prove nothing more than that First Eastern facilitated the conduct of CBG's business by

providing financing, which it had a contractual obligation to do." Clearly, any conspiracy claim against Tarlo Lyons lacks support in any of the Exhibits produced by plaintiff.

> **4.** **Plaintiff has not demonstrated that Tarlo Lyons had sufficient contacts for personal jurisdiction to be proper in California.**

Plaintiff has not demonstrated that California has sufficient contacts with Munson or Tarlo Lyons for personal jurisdiction to be proper. Plaintiff argues that if the Court finds that Pennsylvania has insufficient contacts, then California has sufficient contacts.

Under Fed. R. C. P. 4(e), a district court may assert personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits. Pursuant to California's long-arm statute, Cal. Code Civ. Proc. § 410.10, California courts may exercise personal jurisdiction over non-residents if such an exercise is consistent with the due process clause of the United States Constitution.

Plaintiff has not met its burden of showing that California courts would have jurisdiction over Tarlo Lyons. Plaintiff has the burden of making at least a prima facie showing with sworn affidavits or other competent evidence that such jurisdiction exists. Quandel Group v. Chamberlin Co., 1999 U.S. Dist. LEXIS 8822 at *2 (E.D. Pa. 1999). Once the motion is made, plaintiff must respond with actual proofs, not mere allegations. Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d. Cir. 1984). Furthermore, plaintiff has the burden of showing "with reasonable particularity" contacts between the defendant and the forum sufficient to support the exercise of personal jurisdiction. Quandel Group, 1999 U.S. Dist. LEXIS 8822 at *2.

Most notably, plaintiff's fatal flaw in demonstrating requisite contacts with California is that it failed to present any proof that Tarlo Lyons knowingly participated in illegal activities directed into California. Plaintiff's mere allegations in its pleading that "Munson

knowingly caused misappropriation" is not enough as plaintiff must product specific, affirmative, factual allegations to establish jurisdiction. Time Share Vacation Club, 735 F.2d at 66 n.9; see also Dymits v. American Brands, Inc., 1996 U.S. Dist. LEXIS 19742 at *18 (N.D. Cal. Dec. 31, 1996) (granting defendant's motion to dismiss as plaintiff's RICO pleadings were not sufficiently specific to establish personal jurisdiction).

   Plaintiff attempted proof of Tarlo Lyons' purposeful entry into California consisting of only three letters and two faxes over three years is unavailing. See Lexington's Brf. in Opp. to Tarlo Lyons' Mot. to Dismiss at 23-24. Just as with alleged Pennsylvania contacts, plaintiff fails to show California contacts qualitatively establish personal jurisdiction. Instead, plaintiff is erroneously content in arguing that a few mailings without more is sufficient. Tarlo Lyons has insufficient contacts with California to establish minimum contacts as the communications do no constitute direction of activity toward California nor did the alleged tortious activity occur in California . See, e.g., Surgical Laser Technologies v. C.R. Bard, 921 F.Supp. 281, 285 (E.D. Pa. 1996) (granting 12(b)(2) motion to dismiss as defendant directed no activity at Pennsylvania and alleged tortious conduct took place in India). As the Third Circuit recognized after the 1993 Grand decision, "informal communications in furtherance [of a contract between a resident and nonresident] do not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over the [nonresident defendant]." Vetrotex Certainteed v. Consolidated Fiber Glass, 75 F.3d 147, 152 (3d. Cir. 1996) (quoting Sunbelt Corp. v. Noble, Denton & Assoc., Inc., 5 F.3d 28, 32 (3d. Cir. 1993) (finding telephone communications and facsimiles sent to Pennsylvania insufficient to establish personal jurisdiction)). Indeed, the performance of ministerial tasks or the mailing of informational communications into the forum state alone is insufficient to support a claim of personal

jurisdiction over a non-resident defendant.  Murray v. Nat'l Football League, 1996 U.S. Dist.

LEXIS 9108, at * 39-40 (E.D. Pa. 1996).  Furthermore, several telephone conversations and

facsimile transmissions from a foreign defendant to the forum state may not be sufficient to

establish specific personal jurisdiction.  See D & S Screen Fund II v. Ferrari, 174 F.Supp.2d 343

at 347-348 (E.D. Pa. 2001).  Here, there is no allegation that communications, if any, between

Tarlo Lyons and Fink would have created rights and obligations involving citizens of California.

As such, those telephone conversations and facsimiles, if any, alone would be insufficient to

establish personal jurisdiction over Tarlo Lyons.  See TSA, Inc. v. Nass, 1997 U.S. Dist. LEXIS

1043, at *7-10 (E.D. Pa. 1997) (distinguishing Grand's holding that telephone conversations and

facsimiles are sufficient to establish personal jurisdiction as requiring additional contact, e.g.,

negotiations that would have created rights and obligations among citizens of forum state); see

also Quandel Group, 1999 U.S. Dist. LEXIS 8822 at *9-10 (telephone, telefax, and mail

communications alone insufficient to establish personal jurisdiction).

>        **5.    Plaintiff cannot establish personal jurisdiction over Tarlo Lyons**
>        **through Fed. R. C. P. 4(k)(2).**

Plaintiff's invocation of Rule 4(k)(2) further supports defendant's allegations of

lack of personal jurisdiction over Tarlo Lyons as plaintiff can not meet Rule 4(k)(2)'s mandate

requiring sufficient proof of continuous and systematic activity *unrelated* to the suit in the forum.

Ungar v. The Palestinian Liberation Authority, 153 F.Supp. 2d 76, 92-93 (D.R.I.  2001).  A

plaintiff's application for Rule 4(k)(2) must make a *prima facie* case showing:

>        (1) the claim arises under federal law; (2) no situation specific
>        federal statute confers personal jurisdiction over the defendant, and
>        (3) the defendant's contact with the nation as a whole are sufficient
>        to comply with the constitutional requirements of due process and
>        minimum contacts.  In addition, plaintiff must certify that "based
>        on the information that is readily available to plaintiff and his
>        counsel, the defendant is not subject to suit in the courts of general
>        jurisdiction of any state."

Id. (citations omitted).[4]  The burden of production then shifts to the defendant to show that

defendant's contacts with the United States are constitutionally insufficient, or that it is subject to

suit in a state court of general jurisdiction.  Id. at 92.  If the defendant contends that it does not

have sufficient contacts with the United States, as Tarlo Lyons contends here, the plaintiff "need

only prove that his claim arises under federal law and that the defendant has contacts with the

United Sates as a whole sufficient to permit a federal court constitutionally to exercise personal

jurisdiction over it."  Id.  Consequently, plaintiff must then demonstrate that the individual

defendants have engaged in "continuous and systematic activity, unrelated to the suit" in the

forum.  Id. at 92-93 (quoting Noonan v. Winston, 135 F.3d 85, 89 (1st Cir. 1998).

        Notably, the standard for exercising general jurisdiction based upon continuous

and systematic contacts is more stringent than the test for specific jurisdiction.  Aeropulse Inc. v.

Harold MacQuinn Inc., 1986 U.S. Dist. LEXIS 27610 at *2-3 (E.D. Pa. Mar. 27, 1986); see

Surgical Laser Technologies v. C.R. Bard, 921 F.Supp. 281, 284 (E.D. Pa. 1996).  The court may

exercise general jurisdiction over a nonresident corporate defendant only if the defendant has

continuing affiliations with businesses within the Commonwealth unrelated to the plaintiff's

cause of action.  Aeropulse , 1986 U.S. Dist. LEXIS 27610 at *2-3.  Moreover, courts must

exercise even greater care before exercising personal jurisdiction over foreign nationals.

Noonan, 135 F.3d at 93 (citing Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 115

(1987).  Notably, plaintiff's brief in opposition is bereft of **any** assertion that Tarlo Lyons has

any continuing affiliations with Pennsylvania, California, the United States or any jurisdiction

therein, unrelated to plaintiff's cause of action.  Indeed, plaintiff's Brief in opposition neither

mentions the phrase "general jurisdiction" nor provides any analysis distinguishing general and

specific personal jurisdiction.  Consequently, plaintiff can not rely upon Rule 4(k)(2) to establish

---

[4] Plaintiff has not certified that defendants are not subject to suit in the courts of general jurisdiction of any state.

personal jurisdiction over Tarlo Lyons as plaintiff failed to produce evidence sufficient to show

that Tarlo Lyons had continuous and systematic contacts unrelated to the suit in the forum.

Ungar, 153 F.Supp. 2d at 92-93.

      **6.**      ***Forum non conveniens* – the addition of Tarlo Lyons tips the scale in the opposite direction from when the court addressed the issue of the motions of Rogers and Forrest alone.**

      Tarlo Lyons has set forth at length in its Brief accompanying the Motion to

Dismiss the reasons for concluding that the lawsuit should be dismissed on the grounds of *forum*

*non conveniens*.  The fact that the Court has previously reviewed this issue prior to the joinder of

Tarlo Lyons does not, as suggested by plaintiff, foreclose the Court from again addressing the

issue.  In fact, it is essential that the Court do so because if Tarlo Lyons is a party, the

considerations must again be balanced taking into account **all** of the parties.  The arguments

contained in that Brief will not be repeated, but there are additional reasons this jurisdiction is

not an appropriate one to hear this lawsuit.

      Tarlo Lyons, should it be determined that the Court has jurisdiction over the firm,

is actively considering the joinder of additional parties, all of whom are located in London.  The

insurance brokers, Jardine Lloyd Thompson, are one of those contemplated third parties'

defendant.  The documents contained in plaintiff's Brief opposing the Motion to Dismiss make it

clear that Jardine should be a party defendant if the matter proceeds against Tarlo Lyons.

Specific attention should be directed to Exhibit B, which makes it clear beyond a doubt that the

brokers were fully knowledgeable about everything that transpired, including specifically what

plaintiff contends involves a diversion of funds.  Mark Drummond-Brady, the broker at Jardine,

as well as his firm is a potential additional party.  This complicates matters even further in terms

of the logistics of a trial, attendance of witnesses, availability of documents, the cost of the

litigation, and all other factors that the Court must consider with regard to the defense of *forum*

*non conveniens.*  It also makes it clear that these proceedings are going to consume substantial, additional time before proceeding to a conclusion.  Because an anticipated response of any of these other London parties to be joined would be an objection as to jurisdiction, this matter will be further protracted.

       The Court, however, can eliminate its concerns in this regard because it may – and emphatically should in this instance – dismiss the case for *forum non conveniens* as to Stanley Munson and Tarlo Lyons only, permitting plaintiff to proceed against the defendants as to whom it has already ruled on that issue.  See Republic of Pan. v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935; 1997 U.S. App. LEXIS 21874 (11th Cir. 1997), Robert v. Bell Helicopter Textron, Inc., 2003 U.S. Dist. LEXIS 20109 (N.D. Tex. 2003), and Cabalceta v. Standard Fruit Company, et al., 883 F.2d 1553; 1989 U.S. App. LEXIS 14416 (11th Cir. 1989). These cases stand for the proposition that one defendant can be dismissed for *forum non conveniens* even though others remain in the case.

       The Republic of Panama is particularly persuasive in our case.  In that instance, the claims against certain of the defendants were dismissed on the basis of *forum non conveniens* and also under the doctrine of international comity.  The defendant must show (1) under the applicable law that an adequate alternative forum is available, and (2), that the private and public interest factors weigh in favor of dismissal.  In that case, as in our case, the contention was made that the inability to bring a RICO claim in the alternative jurisdiction required denial of the motion to dismiss.  The Court held that the first test, availability of an adequate alternative forum, is satisfied by establishing that the defendant is "amenable to process" in another jurisdiction.  (Republic of Panama, page 951).  There is an existing claim pending in London in our case which has been stayed pending this Court's resolution of the Motion before it.  In the

Republic of Panama case, proceedings were also pending in England and elsewhere.  The second

requirement is also met in our case as it was in the Republic of Panama case.  Plaintiff there

contended and plaintiff here contends that the absence of a RICO claim in the alternative forum

requires dismissal of the defense of *forum non conveniens*.  The Court ruled against plaintiff, on

the basis of Piper Aircraft Company v. Reyno, 454 U.S. 235, 102 S.Ct. 252, 70 L.E.d.2[nd] 419

(1981), in which the Supreme Court rejected the idea that dismissal should be barred "solely

because of the possibility of an unfavorable change in law"….Only when "the remedy provided

by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all,

[will] the unfavorable change in law…be given substantial weight," page 951.  The Republic of

Panama court continues by stating that three circuits have considered the issue of whether the

inability of a plaintiff to assert a RICO claim in a forum precludes dismissal for *forum non*

*conveniens* and all three circuits have concluded that it does not.  Page 952.  In this regard, on the

face of the Complaint all claims asserted against Tarlo Lyons other than the RICO claim are

barred by the two year statute of limitations in Pennsylvania and the plaintiff can assert a fraud

claim in England.  A treble damage judgment obtained under the RICO statute in the United

States is unenforceable in England.  Therefore, there is nothing whatever to support a contention

that dismissal for *forum non conveniens* would deprive the plaintiff of any claim on which it

might collect.

    The Republic of Panama court went on to analyze the balance of private and

public factors.  The private factors include ease of access to sources of proof, the need to obtain

witnesses and all practical matters that relate to "easy, expeditious and inexpensive" trial of the

case.

The easy solution – and the one compelled by the concepts applicable to *forum non conveniens* – is that the case against Tarlo Lyons be tried where it should be tried – **in London**. The presence of this lawsuit in the United States is an instance of the tail wagging the dog.

### 7.    Misconceptions in Plaintiff's Brief.

Lexington, in its Brief on page 2, asserts that Tarlo Lyons "played a central role "in furthering the objectives of the Flashpoint enterprise." Nothing in its Brief or the Exhibits attached to it supports that statement. All the Exhibits show is that Tarlo Lyons was one of three law firms giving advice to Flashpoint and that the advice was routine legal advice. (In our Brief on page 2 accompanying the Motion to Dismiss, it was pointed out that the London office of Weil Gotshal provided the legal advice in connection with raising the money involved in the case.) Nothing produced by plaintiff suggests any affirmative act by Tarlo Lyons in support of a RICO violation or knowledge by Tarlo Lyons of any violation.

Plaintiff's Brief repeatedly refers to documents plaintiff has seen and makes assertions as to what they prove but plaintiff has not produced them. This leads to only one conclusion – that no evidence exists - because plaintiff has not only all of Flashpoint's documents, but all of the Flashpoint's documents that were in the possession of Tarlo Lyons. It is not contemplated that they will ever have more such information than they already possess.

Lexington claims that Stanley Munson had active involvement in arranging Flashpoint's cash flow. This is contradicted by more than one of plaintiff's documents that show that he did not even have knowledge of the cash flow.

Plaintiff is interpreting documents it has produced depends on substantial leaps of faith, drawing illogical inferences, assumptions and presumptions.

Plaintiff has the burden of establishing a *prima facie* case and has failed.  The

Motion of Tarlo Lyons to Dismiss the claim must be granted.

Respectfully submitted,

HARVEY, PENNINGTON LTD.


BY:_____ /s/
                DAVID L. PENNINGTON
                Identification No: 03633
                1835 Market Street, 29th Floor
                Philadelphia, PA 19103
                (215) 563-4470
                Attorneys for Defendant,
                Tarlo Lyons

Dated:  November 12, 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY | CIVIL ACTION |
| Plaintiff | |
| v. | NO.  02-CV-4435 |
| DAVID FORREST and T. BEAUCLERC ROGERS, IV, STANLEY MUNSON, MARTIN FINK, all individually, and NEW BEGINNINGS ENTERPRISES LLC, A California Limited Liability Company, and TARLO LYONS, a partnership, | (Hon. Anita B. Brody) |
| Defendants | |

## CERTIFICATE OF SERVICE

David L. Pennington, Esquire, attorney for Defendant, Tarlo Lyons, hereby

certifies that I have served true, correct and complete copies of Defendant, Tarlo Lyons' Reply

Brief to Answer of Lexington Insurance Company's Motion to Dismiss filed by Tarlo Lyons

upon the following parties or their counsel of record by first class mail, postage prepaid on this

day:

Glenn F. Rosenblum, Esquire
Jeffrey R. Lerman, Esquire
Montgomery, McCraken, Walker & Rhoads
123 South Broad Street
Philadelphia, PA  19109
           and
Edward P. Krugman, Esquire
Emily A. Poler, Esquire
Ira J. Dembrow, Esquire
Scott M. Mory, Esquire
Cahill Gordon & Reindel
80 Pine Street
New York, NY  10005
*Counsel for Plaintiff*

Conrad O. Kattner, Esquire
McShea Tecce, P.C.
Mellon Bank Center
1735 Market Street, 16th Floor
Philadelphia, PA  19103
*Counsel for Stanley Munson*

Edward M. Dunham, Jr., Esquire
Shannon Hampton Sutherland, Esquire
Duane Morris LLP
One Liberty Place
Philadelphia, PA  19103
*Counsel for David Forrest*

Nicholas M. Centrella, Esquire
James J. Rohn, Esquire
Kevin Dooley Kent, Esquire
Conrad O'Brien Gellman & Rohn, PC
1515 Market Street, 16th Floor
Philadelphia, PA  19102
*Counsel for T. Beauclerc Rogers, IV*

Neil G. Epstein, Esquire
Eckert Seamans Cherin & Mellott, LLC
1515 Market Street
Ninth Floor
Philadelphia, PA  19102
    and
Jeffrey D. Farrow, Esquire
Mona Z. Hanna, Esquire
Sanford Louis Michelman, Esquire
Michelman & Robinson LLP
4 Hutton Centre, Suite 300
Santa Ana, CA  92707
*Counsel for Martin Fink*

Alexander Kerr, Esquire
Stephen P. McFate
McCarter & English, LLP
Mellon Bank Center
1735 Market Street, Suite 700
Philadelphia, PA  19103
    and
Beverly Y. Lu, Esquire
Charles A. Adamek
Lord Bissell & Brook, LLP
300 South Grand Avenue, Suite 800
Los Angeles, CA  90071
*Counsel for New Beginnings Enterprises*

HARVEY, PENNINGTON LTD.

BY:_____/s/
       DAVID L. PENNINGTON
       Identification No: 03633
       1835 Market Street, 29th Floor
       Philadelphia, PA  19103
       (215) 563-4470
       Attorneys for Defendant,
       Tarlo Lyons

Dated:  November 12, 2004