IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY<br>Plaintiff<br><br>v.<br><br>DAVID FORREST and T. BEAUCLERC ROGERS, IV, STANLEY MUNSON, MARTIN FINK, all individually, and NEW BEGINNINGS ENTERPRISES LLC, A California Limited Liability Company, and TARLO LYONS, a partnership,<br>Defendants | CIVIL ACTION<br><br>NO. 02-CV-4435<br><br>(Hon. Anita B. Brody) |

**REPLY BRIEF ON BEHALF OF DEFENDANT STANLEY MUNSON TO PLAINTIFF LEXINGTON INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS TO DISMISS OF DEFENDANTS STANLEY MUNSON AND TARLO LYONS**

CONRAD KATTNER
Identification No: 035468
MCSHEA & TECCE
1735 Market Street, 16th Floor
Philadelphia, PA 19103
(215) 599-0800
*Attorney for Defendant,*
*Stanley Munson*

# TABLE OF CONTENTS

I.   ARGUMENT ................................................................................................- 2 -

   A.   Plaintiff has failed to carry its burden of establishing a *prima facie* case as is required by Federal Rule of Civil Procedure 12(b)(2). .............................................................- 2 -

     1.   The exhibits contained in plaintiff's Answer to the Motion to Dismiss do not support a prima facie case.........................................................................................- 2 -

     2.   Plaintiffs have failed to fulfill their burden to provide necessary evidence of Munson conspiring to operate or manage an enterprise.................................................- 14 -

     3.   Plaintiff has not demonstrated that Munson had sufficient contacts for personal jurisdiction to be proper in California.............................................................- 15 -

   B.   Plaintiff cannot establish personal jurisdiction over Munson through Fed. R. C. P. 4(k)(2). ...............................................................................................- 16 -

   C.   Forum non conveniens. .............................................................................- 17 -

II.   CONCLUSION ...........................................................................................- 18 -

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY <br> Plaintiff <br><br> v. <br><br> DAVID FORREST and T. BEAUCLERC ROGERS, IV, STANLEY MUNSON, MARTIN FINK, all individually, and NEW BEGINNINGS ENTERPRISES LLC, A California Limited Liability Company, and TARLO LYONS, a partnership, <br> Defendants | CIVIL ACTION <br><br> NO. 02-CV-4435 <br><br> (Hon. Anita B. Brody) |

## <u>ORDER</u>

AND NOW this _____ day of _____, 2004, upon consideration of

Defendant, Stanley Munsons' Motion to Dismiss and Reply Brief, it is hereby ORDERED and

DECREED that the Motion is Granted and Plaintiff's Second Amended and Supplemental

Complaint as to Stanley Munson is dismissed with prejudice.

_____
THE HONORABLE ANITA B. BRODY
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY<br>　　　　　　　　　　　　Plaintiff<br><br>　　　　v.<br><br>DAVID FORREST and T. BEAUCLERC<br>ROGERS, IV, STANLEY MUNSON, MARTIN<br>FINK, all individually, and NEW BEGINNINGS<br>ENTERPRISES LLC, A California Limited<br>Liability Company, and TARLO LYONS, a<br>partnership,<br>　　　　　　　　　　　　Defendants | CIVIL ACTION<br><br>NO. 02-CV-4435<br><br>(Hon. Anita B. Brody) |

**REPLY BRIEF ON BEHALF OF DEFENDANT STANLEY MUNSON TO
PLAINTIFF LEXINGTON INSURANCE COMPANY'S MEMORANDUM OF LAW IN
OPPOSITION TO THE MOTIONS TO DISMISS OF DEFENDANTS STANLEY
MUNSON AND TARLO LYONS**

Defendant, Stanley Munson ("Munson") respectfully submits this Reply in response to

the Memorandum of Law of Plaintiff Lexington Insurance Company ("Lexington") in

Opposition to the Motions to Dismiss of Defendants Stanley Munson and Tarlo Lyons ("Tarlo").

For the reasons stated herein, Munson's Motion to Dismiss should be granted, and all claims

against Munson should be dismissed.

Each defendant must be treated individually. Lexingtons' implied logic that because this

court has found personal jurisdiction over David Forrest, a corporate principal and controlling

shareholder based in the United Kingdom, by no means establishes any such jurisdiction over an

individual solicitor, Stanley Munson.

Lexington has conceded that it is not seeking to establish "general" personal jurisdiction

over Munson. Nor could it. Moreover, The Affidavit and Exhibits attached to Lexington's

Memorandum fail to establish "claim-specific" personal jurisdiction over Munson with respect to

Lexington's claims. Lexington's Affidavit and Exhibits in no way contradict Munson's

Affidavit. Rather, they show a solicitor acting in and around London, for United Kingdom based corporate clients, regarding transactions entered in the United Kingdom. His reporting to clients in the United States (by faxes and letters) and two trips to California are merely incidental, and by no means at the heart or crux of the allegations as to him.

Accordingly, for the reasons stated herein, and in the Reply Brief of Tarlo Lyons which is incorporated by reference, this action as to Stanley Munson must be dismissed with prejudice for lack of personal jurisdiction over him.

## I. ARGUMENT

**A. Plaintiff has failed to carry its burden of establishing a *prima facie* case as is required by Federal Rule of Civil Procedure 12(b)(2).**

Unlike a motion to dismiss for failure to state a claim under Rule 12(b)(6), the filing of a motion asserting lack of personal jurisdiction under Rule 12(b)(2) requires that evidence beyond the allegations in the complaint be produced by the plaintiff to establish a *prima facie* case, *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61 (3d Cir. 1984).

**1. The exhibits contained in plaintiff's Answer to the Motion to Dismiss do not support a prima facie case.**

The exhibits submitted by Lexington fail to establish, as plaintiff contends, that Munson was involved in the everyday business and financial affairs of Flashpoint relevant to plaintiff's claims. Rather, they show he was simply providing legal services and holding a non-controlling position and interest. They do not prove that Munson entered the jurisdiction or established rights and obligations as a result of that entry.

Lexington has attached a Declaration of Edward Krugman and 39 documents[1] (excluding duplicates), of which one (1) is the Collateral Agreement negotiated in the United Kingdom;[2]

one (1) is a Flashpoint Brochure not authored by Munson;[3] one (1) is a memo from a person in the United Kingdom directed to others in the United Kingdom including Munson, but copied ("cc") to some persons in the United States;[4] one (1) is a letter from Munson to another person in the United Kingdom;[5] eight (8) are letters from persons in the US directed to Munson in the United Kingdom;[6] two (2) are letters or faxes directed from Munson to others in the United Kingdom but copied ("cc") to persons in the US;[7] one is letter sent within California to Munson during one of his two visits there,[8] and the remaining twenty-one (21) are letters or faxes from Munson to persons in the US, addressed in detail below.

The issue before the court is not the <u>quantity</u> of communications or contacts, but their <u>quality</u> in relation to Lexington's claims. Munson is cognizant of the observations of the Third Circuit and other courts that "even one contact with the forum may be enough to justify jurisdiction so long as the other criteria are met." *Grand Entertainment Group Ltd. V. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir. 1993)

The relevant cases, in both their facts and reasoning, show that personal jurisdiction does <u>not</u> exist with respect to Munson here.

For instance, even in *Grand Entertainment Group Ltd. V. Star Media Sales, Inc.*, 988 F.2d 476 (3d Cir. 1993), relied upon heavily by Lexington, and applied by this court to defendant Forrest in its earlier opinion at *Lexington Ins. Co. v. Forrest,* 263 F.Supp.2d 986,

---

[1] Notincluding within this count the post-litigation letter of September 17, 2004 attached as Exhibit S.
[2] 7/6/98 Collateral Agreement, Exhibit E.
[3] 1999 Flasphoint Brochure, Exhibit T.
[4] 11/18/98 Memo from Susan Wright, Exhibit B.
[5] 11/6/98 Letter from Munson to Rogers (in London), Exhibit P.
[6] Faxes and letters dated 12/196, 5/27/97, 2/27/98, 4/13/98, 4/15/98, 4/22/98, 5/11/98, and 10/3/98; in Exhibits A, Q, L, F, G, I, H, J respectively.
[7] 11/6/97 Letter and 7/2/98 Fax, in Exhibit R.

995 (E.D.Pa.,2003), the Third Circuit held that "the instant dispute arises <u>directly out of the</u> <u>contacts in issue</u>." *Grand,* 988 F.2d at 483 (emphasis added). Indeed, that was true, since the plaintiff in *Grand* alleged a certain central contract giving rise to alleged civil RICO fraud, and the contacts in issue – specifically, twelve faxes directed from the Spanish defendant himself to the Pennsylvania chief negotiator of plaintiff, a meeting in Los Angeles between the Spanish defendant and that Pennsylvania chief negotiator, and at least 20 calls initiated by the Spanish defendant's agent to Pennsylvania – all related "<u>directly</u>" to negotiation of that central contract. *Id.* at 479-80, 483. (emphasis added).

Here, by contrast, the central contracts in issue – the Collateral Agreement with the plaintiff insurer – were entered in London. *See, Exhibit E (Collateral Agreement).* Munson was himself an agent, as counsel. Munson's trips to California in November 1997 and February 1998 did not involve any negotiations with plaintiff Lexington, and were months before and unrelated to the first transaction entered with Lexington in July 1998. *See, Complaint at ¶4.* Munson's contacts with Pennsylvania were essentially informational. Meanwhile, none of Munson's contacts with Pennsylvania or anywhere else in the United States directly, or even indirectly, give rise to Lexington's claim. Hence, under the standards of *Grand*, Munson is not subject to the personal jurisdiction of either Pennsylvania or the United States with respect to any of Lexington's claims, and thus the case against him must be dismissed.

Similarly instructive is *Carteret Savings Bank v. Shushan,* 954 F.2d 141 (3d Cir. 1992), in which the Third Circuit found New Jersey had personal jurisdiction over a Louisiana attorney for a fraud claim in which the attorney "committed a fraudulent misrepresentation <u>in New Jersey</u> at the Roseland meeting" that was at the "<u>crux</u>" of the case, and which meeting was with respect

---

[8] 2/27/98 Letter from Fink to Munson; Exhibit L.

to the breach of fiduciary duty claim a "<u>culminating event</u>" in the representation. *Id.* at 146, 149 (emphasis added).

Here, all the central and crucial acts, omissions, activities, and transactions relating to the relations between Munson, through his United Kingdom corporate clients, to Lexington, took place in the United Kingdom. None of the communications or visits are central or crucial, but rather they are peripheral and informational at best. Consequently, under the law, as illustrated by the facts and reasoning of *Carteret*, Munson is not subject to the personal jurisdiction of Pennsylvania or the United States with respect to Lexington's claims, and thus all claims against him in this action must be dismissed.

Following the 1993 *Grand* and 1992 *Carteret* decisions, which as noted both require dismissal and show a lack of personal jurisdiction as to the claims against Munson, the Third Circuit stated and held in the 1996 *Vetrotex* case that, "informational communications in furtherance [of a contract between a resident and nonresident] do not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over the [nonresident defendant]." *Vetrotex Certainteed v. Consolidated Fiber Glass,* 75 F.3d 147, 152 (3d. Cir. 1996) (*quoting Sunbelt Corp. v. Noble, Denton & Assoc., Inc.*, 5 F.3d 28, 32 (3d. Cir. 1993) (finding telephone communications and facsimiles sent to Pennsylvania insufficient to establish personal jurisdiction)).

When reviewed in light of these principles, and the cases cited in Munson's original brief, it becomes evident that the exhibits submitted by plaintiff Lexington individually and collectively fail to establish personal jurisdiction with respect to plaintiff's civil RICO claims, which claims arise out of contracts negotiated in the United Kingdom, between United Kingdom

parties. Rather, they show and confirm only informational and incidental contacts between Munson and Pennsylvania or the United States, with parties other than plaintiff, and incidental to Munson's providing legal services centered in the United Kingdom. Accordingly, the claims against Munson must be dismissed for lack of personal jurisdiction.

### a. Exhibit A

This letter is directed to Munson. It is not initiated by him. It confirms that, contrary to plaintiff's contentions, Munson lacks control as to the Flashpoint entities. Specifically, this letter of December 1, 1996 from Rogers (in Gladwyne, PA) to Filmwatch (Munson's entity) and Johnson re: Flashpoint Shares states that any share to Munson applies only after "disbursements payable to third parties" have been taken out, and establishes that **"you [Munson] shall have no right to appoint directors,"** and **"your [Munson's] shares shall have no voting rights."** (emphasis added). By this letter, Munson is not entering into Pennsylvania or the United States. .

### b. Exhibit B

Rather than establishing what plaintiff contends, this Memorandum undermines the foundation of plaintiff's Complaint and fails to show any basis for personal jurisdiction. It is from Susan Wright of Flashpoint, in London, to a large number of parties, including not only Munson in London, but Mark Drummond-Brady, a broker at (Jardine) Lloyd-Thompson, also in London, from whom the Lexington policies were acquired. Although titled "Strictly Private and Confidential", this November 9, 1998 Memo from Susan Wright to Flashpoint Directors: Forrest, Rogers, Wignall; Tarlo Lyons: Munson; Prosperity: Fink, Mann, Richards; and Lloyd Thompson: Mark Drummond-Brady re: Funding and Ownership, plainly describes and discloses the activities of which Lexington now complains, such as the purchase of equipment and property – "[T]he commercial object of the exercise … was, in the first place, to save on rentals

by buying the equipment. … The plan calls for the acquisition of a building in Los Angeles and the purchase of additional equipment. … [W]e wish to pass a benefit to the underwriters [Lexington], and we do this by allowing Prosperity to occupy the building without paying any rent to Flashpoint, thereby reducing its overheads and the cost of production of the films." The letter effects and reflects disclosure to Lexington – "… **Disclosure has been made to the underwriters regarding the acquisition of equipment, the income from which, as well as title, inures to their benefit.** … Finally, and as a 'belt and braces,' **we have disclosed to the underwriters that funds from Slate II will be used towards the acquisition of Real Estate."** (emphasis added). It is copied to Lexington's broker. Thus, this exhibit contradicts any contention of plaintiff's Complaint that the use of money outlined in the letter was unknown to the underwriters, and fails to show any basis for personal jurisdiction as to Munson.

### c.      Exhibit C

This letter, like many other exhibits, simply shows a lawyer involved in drafting of a contract. This July 3, 1997 letter from Munson to Richards (in AZ) cc: Forrest, Fink (in CA), and Rogers (in PA) is an informational communication from a lawyer to counter-parties and clients. ("I am enclosing a re-draft of the master agreement …"). It does not support any allegation that Munson had knowledge of any improper activity by Flashpoint.

### d.      Exhibit D

This letter of November 26, 1997 from Munson in London to Forrest in London simply advises of what a "Paul Thornhill" of Leopold Joseph bank in London has done in placing moneys at interest, and suggests that client Forrest communicate with Mr. Thornhill. It reveals, that Munson lacks up to date information or control – "…. I do not have up to date copies of cash flow schedules so, would you let me have them, or alternatively deal directly with Paul Thornhill

on this point" – contradicting plaintiff's contentions. Like the other exhibits, it both shows Munson lacked knowledge or control as to the alleged enterprise, and fails to establish any basis for personal jurisdiction.

### e. Exhibit E

This July 6, 1998 Collateral Agreement re Jules Verne Project between Lexington and Flashpoint UK is a contract involving plaintiff Lexington. Yet, the exhibit reveals it was negotiated in the United Kingdom between United Kingdom based entities. Munson is not a party nor signatory to the contract. Plaintiff makes much of the clause calling for signature of a Tarlo Lyons partner, presumably Munson, on certain drawdowns. Yet, the exhibit reveals it was drafted by Ince & Co., Lexington's solicitors in the United Kingdom. There may be many reasons for requiring multiple signatures on transactions. Lexington necessarily knew that Tarlo Lyons represented Flashpoint, and owed its first allegiance to Flashpoint, not Lexington, and indeed necessarily had a conflict of interest with Lexington. Had plaintiff, a sophisticated insurer, wished to place the moneys in the "holding account" into an attorney's trust, it could have required a signature by its own solicitors, Ince & Co. Indeed, Lexington did so with funds in later stage "collection accounts." Moreover, there is no inconsistency between this agreement and Munson's affidavit, as suggested by plaintiff's brief. No documents have been produced showing Munson ever "initiated" any disbursements. Were this case similar to *Grand*, which as to Munson it is not, this contract allegedly central to plaintiff's claims would have been negotiated and entered into in Pennsylvania or the United States. Consequently, as to Munson, this United Kingdom contract both fails to support plaintiff's claims and fails to provide any basis for personal jurisdiction.

####     f.     **Exhibit F**

This April 13, 1998 Memo from Fink (in CA) to Munson re Flashpoint, is not initiated by Munson, and is simply a client informing a lawyer of activities. ("I [Fink] recap the situation regarding drawdowns …. We may need to fund some escrow accounts before the end of the week. …"). It fails to support plaintiff's claims, and fails to establish jurisdiction.

####     g.     **Exhibit G**

Again, this April 15, 1998 fax from Fink (in CA) to Munson re: Flashpoint with a Note from Forrest to Munson simply states, "Please process payments." – "Per our telephone conversation earlier today, here is what I [Forrest] would like to see wired tomorrow … [various dollar amounts] … I am attaching copies of all the drawdown requests referenced in this memo to Stanley's copy …." This document shows on its face that Forrest is controlling disbursements. It shows Munson is not the initiator of disbursements. It is not a contact from Munson to Pennsylvania or the United States. It fails to support plaintiff's claims or personal jurisdiction.

####     h.     **Exhibit H**

Once again, this May 11, 1998 Memo from Fink (in CA) to Munson re: Regent, stating "I'd like to tell them where we stand on the past due drawdowns …" is simply a client requesting follow-up from counsel. It is consistent with provision of legal services, and is essentially informational and incidental. It neither supports plaintiffs claims nor establishes jurisdiction.

####     i.     **Exhibit I**

This again is an informational fax from Fink to Munson, copied also to Forrest in London. This memo of April 22, 1998 from Fink (in CA) to Munson re Regent drawdowns states that "The … drawdown for Monsters did not go through … please double-check the Leopold Joseph end and let me know." Contrary to the plaintiff's contentions this document fails to show

diversion of funds. It was not initiated by Munson, and neither supports plaintiff's claims nor establishes any basis for jurisdiction over him.

### j.     Exhibit J

Despite plaintiff's contentions that this memorandum shows knowledge of "diversion" of funds, as noted with respect to Exhibit B above, the same facts were disclosed to plaintiff Lexington through its broker. This October 3, 1998 memo from Fink (in CA) to Munson re Flashpoint Building and Equipment states that "… As to the build-out and equipment, the general plan is to utilize funds from the Prosperity slates. …." It is not initiated by Munson. It shows a client providing information to counsel. It is essentially an informational communication. It neither supports plaintiff's claims, nor establishes any basis for personal jurisdiction.

### k.     Exhibit K

This letter from Munson in London to another person in London, copied to several persons, including Rogers in Pennsylvania, shows a lawyer maintaining corporate formalities and advising as to shareholdings. Essentially, this September 27, 1999 Letter from Munson to Stratton re US Operations cc: Forrest, Rogers (in PA), Barrett, Wright, Fullertove, Watts, and Borchardt is just a "… letter to remind everyone just what the shareholdings are …." Contrary to plaintiff's suggestion, there is nothing "Byzantine" about it. It is simply a typical legal service, reporting holdings of four shareholders. It neither supports plaintiff's claims nor shows any basis for personal jurisdiction.

### l.      Exhibit L

Although this letter was sent from Fink to Munson while Munson happened to be in California on one of his two visits there, it is merely an informational communication. This February 27, 1998 letter from Fink (in CA) to Munson (visiting CA) re Regent, shows a client providing information to counsel and setting up a meeting to negotiate agreements. It is neither central to nor supportive of plaintiff's claims. The visit to California is shown to involve Flashpoint business generally, not the dealings with plaintiff Lexington, and thus this letter fails to establish any basis for the personal jurisdiction of either Pennsylvania or the United States over Munson as to Flashpoint's claims.

### m.      Exhibit M

The fax simply follows up on Exhibit K and shows legal services of negotiating a contract. This September 18, 1998 Fax from Munson to Fink (in CA), Mann, Richards, Forrest, and Rogers (in PA) re Prosperity Pictures states essentially "I am enclosing a draft Memorandum of Agreement …" It is thus consistent with rendering of typical legal services from the United Kindgom, fails to show any awareness of any RICO violation, and fails to establish any basis for personal jurisdiction.

### n.      Exhibit N

This letter of November 26, 1997 Letter from Munson to Rodnusky (in CA) re Flashpoint essentially states "I shall be staying at the Beverly Hills Plaza …" It does nothing more than show one of the two visits to California. It fails to support plaintiff's claims, or any basis for personal jurisdiction as to any of them.

### o. Exhibit O

This fax of August 18, 1998 from Munson to Rogers re "Kiss Toledo Goodbye/Composer" notes regarding intellectual property that "… the production company ends up owning the copyright in the music …." It reflects incidental advice that a layer mayu give a client.

### p. Exhibit P

This exhibit was exchanged within the United Kingdom, and relates to the incidental advice of the previous exhibit. Thus, this November 6, 1998 Letter from Munson to Rogers (in London) cc Forrest states "Flashpoint did require some assistance in focusing on music rights and the collection of royalties. … [C]an I suggest that you contact her, have a meeting with her, and explore the question …." It simply advises a client of information learned by the lawyer, and defers to the client's business activities.

### q. Exhibit Q

This letter of May 27, 1997, early on the sequence of events, from Rogers (in PA) to Munson requesting, "… [C]opy me on all correspondence …" is simply a principal of a client requesting information. It shows activities were centered in London, not Pennsylvania. It is an informational request that fails to support jurisdiction.

### r. Exhibit R

This exhibit collects approximately 12 letters or faxes sent from Munson to Rogers in Pennsylvania, to Fink in California, or other in the United States from 1996 to 2001. Many are duplicates of other exhibits. Each of these is essentially an informational communication

between lawyer and client, or reflects the two visits already discussed, and thus neither supports plaintiff's claims, nor establishes a basis for jurisdiction.

### s.    Exhibit S

This September 17, 2004 Letter between Counsel in England to Stay English Proceedings is unrelated to personal jurisdiction, but does support the fact that England is an appropriate forum for this dispute centering upon transactions entered between United Kingdom parties in the United Kingdom.

### t.    Exhibit T

This Flashpoint Brochure was not produced by Munson. Having a firm named in a client's marketing brochure is not a basis for jurisdiction.

### u.    Exhibit U

This collection of four letters from Munson to Fink in the United States reflects a lawyer assisting in drafting of contracts, and informational communications related thereto, and thus fails to support either plaintiff's claims or any basis for jurisdiction.

### v.    Exhibit V

Finally, this fax of May 13, 1998 from Munson to Fink (in CA) re Draw Downs Silent Storms – Monsters – Romantic, stating that "David and I have signed the draw downs …" shows the use of funds for films, rather than any diversion, as plaintiff contends, and like the other documents, fails to support jurisdiction as to plaintiff Lexington's claims in this action.

### w.    The Exhibits collectively fail to support personal jurisdiction over Munson

From the thousands of Flashpoint documents in their possession, the above exhibits are what plaintiff has submitted. None show Munson had any knowledge of fraudulent activities or

RICO violations. The conclusions that plaintiff attempts to draw from the documents are simply not supported by their content. None of the documents establish that Munson purposefully entered Pennsylvania, California, or the United States for the purpose of creating rights and obligations germane to plaintiff's claims. Individually and collectively, the documents and contacts reflected in them are essentially informational and incidental, as in *Vetrotex*, and fail to establish jurisdiction.

None of the documents or contacts are of a character central to plaintiff's claims as was the case in *Grand* and *Carteret*. None of the factors emphasized by this court in its prior opinion at *Lexington Ins. Co. v. Forrest,* 263 F.Supp.2d 986, *995 (E.D.Pa.,2003) apply to Munson individually. Munson's two incidental trips and informational communications are NOT "central" to plaintiff's claim as in *Grand.* Munson has NOT "shown his ability to conduct business in the United States" and has NOT "actively carried on substantial activities here." *Grand,* 988 F.2d at 483. As to Munson, "[t]his" IS "a case where a party without a significant presence or ability to act in the United States is drawn into litigation as a result of acts outside the forum." *Grand,* 988 F.2d at 483.

Consequently, under applicable law, the exhibits submitted by plaintiff Lexington fail to meet the burden imposed by FED. R. CIV. P. 12(b)(2). Accordingly, all claims against defendant Munson must be dismissed with prejudice for lack of personal jurisdiction by entry of an Order in the form attached.

> **2. Plaintiffs have failed to fulfill their burden to provide necessary evidence of Munson conspiring to operate or manage an enterprise.**

Plaintiff Lexington's exhibits fail to establish any conspiracy-based personal jurisdiction over Munson. To show a RICO conspiracy under 18 U.S.C. § 1962(d) a plaintiff must establish that " (i) that [the particular defendant] agreed to [have someone] commit predicate acts; [and]

(ii) that [the particular defendant] knew that the predicate acts were part of racketeering activity."

*Dongelewicz v. PNC Bank Nat'l Ass'n,* 104 Fed. Appx. 811, 2004 U.S. App. LEXIS 15351

(2004) (providing financing to alleged RICO enterprise and actors does not create RICO

conspiracy liability), *citing Smith v. Berg,* 247 F.3d 532 (3rd Cir. 2001).

As shown by the above review of the exhibits, plaintiff has failed to support personal

jurisdiction. The exhibits fail to show knowledge or agreement by Munson as to any RICO

predicate acts or pattern of such acts. They fail to show any control of the alleged enterprise, and

indeed confirm the opposite. Consequently, any conspiracy claim against Munson lacks support

in any of the Exhibits produced by plaintiff, and thus all claims against defendant Munson must

be dismissed with prejudice for lack of personal jurisdiction by entry of an Order in the form

attached.

### 3. Plaintiff has not demonstrated that Munson had sufficient contacts for personal jurisdiction to be proper in California.

Plaintiff has not demonstrated that California has sufficient contacts with Munson

for personal jurisdiction to be proper. Under Fed. R. C. P . 4(e), a district court may assert

personal jurisdiction over non-resident defendants to the extent permissible under the law of the

state where the district court sits.  Pursuant to California's long-arm statute, Cal. Code Civ. Proc.

§ 410.10, California courts may exercise personal jurisdiction over non-residents if such an

exercise is consistent with the due process clause of the United States Constitution.

As shown by the above analysis of exhibits, Munson's two visits to California and

communications to that state were not central to nor germane to plaintiff's claim. Munson's

alleged tortious activity did not occur in California . <u>See</u>, <u>e.g.</u>, <u>Surgical Laser Technologies v.</u>

<u>C.R. Bard</u>, 921 F.Supp. 281, 285 (E.D. Pa. 1996) (granting 12(b)(2) motion to dismiss as

defendant directed no activity at Pennsylvania and alleged tortious conduct took place in India).

Unlike in *Grand Entertainment Group Ltd. V. Star Media Sales, Inc.*, 988 F.2d 476 (3d Cir. 1993) and *Carteret Savings Bank v. Shushan, 954 F.2d 141 (3d Cir. 1992)* none of these communications or visits were "central" to, the "crux" of, or a "culminating event" as to any of plaintiff's claims. The totality of the circumstances shows that Munson provided services based in the United Kingdom to clients based in the United Kingdom. Accordingly, plaintiff has failed to show that Munson is subject to the jurisdiction of California, and all claims against defendant Munson must be dismissed with prejudice for lack of personal jurisdiction by entry of an Order in the form attached.

**B.    Plaintiff cannot establish personal jurisdiction over Munson through Fed. R. C. P. 4(k)(2).**

Plaintiff's invocation of Rule 4(k)(2) further supports defendant's allegations of lack of personal jurisdiction over Munson. As shown by the above analysis of exhibits, Munson's activities were to provide legal services in the United Kingdom based clients. Although he twice visited the United States, and communicated to certain principals of the client (Fink and Rogers) in the United States, and certain counter-parties with whom the clients dealt, principally in negotiating contracts, none of these contacts directly involved the transactions with plaintiff Lexington. None of these contacts with the United States were central to the claims asserted by plaintiff Lexington. Rather, the communications and contacts with the United States were essentially informational and incidental to plaintiff's claims. Plaintiffs claims arise out of and center upon the negotiation and alleged breach of terms of certain Hollywood Funding Agreements and Collateral Agreements negotiated, and entered into in the United Kingdom, between United Kingdom parties, and Munson's limited non-controlling role with respect to these transactions took place in the United Kingdom. Accordingly, plaintiff has failed to show that Munson is subject to the jurisdiction of California, and all claims against defendant Munson

must be dismissed with prejudice for lack of personal jurisdiction by entry of an Order in the form attached.

### C. Forum non conveniens.

As asserted in Munson's original Brief accompanying his Motion to Dismiss the reasons this lawsuit should be dismissed on the grounds of *forum non conveniens.*

It is well-established that an action may be dismissed as to some defendants (such as Munson) for *forum non conveniens*, even though it might proceed in the jurisdiction against other defendants (such as Forrest and Rogers previously addressed by this court). *Robert v. Bell Helicopter Textron, Inc.*, 2003 U.S. Dist. LEXIS 20109 (N.D. Tex. 2003) (motion to dismiss for *forum non conveniens* granted as to defendant movant company, but denied as to a bankrupt company defendant and its affiliates). *See*, *Cabalceta v. Standard Fruit Company, et al.*, 883 F.2d 1553; 1989 U.S. App. LEXIS 14416 (11th Cir. 1989) (noting that dismissal of certain Puerto Rican defendants, but not others, on the grounds of *forum non conveniens* may be appropriate). *See also, Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935; 1997 U.S. App. LEXIS 21874 (11th Cir. 1997) (even though all defendants ultimately dismissed from RICO claim, it was proper that some but no all defendants be dismissed because of *forum non conveniens*).

Here, the United Kingdom is an appropriate forum for this dispute as shown by Exhibit S. The hardship on an individual such as Munson in litigating in a foreign country a set of disputes regarding contracts he helped negotiate in the United Kingdom between United Kingdom parties is palpable. Although Munson twice visited California, and sent faxes and letter to parties in the United States, these were essentially informational and incidental. They did not involve reaching out on his part to create obligations between himself and the United States. Unlike in *Grand*, Munson's activities did not demonstrate a capacity to conduct business in the United States, and

they did not involve the transactions at the heart of this dispute. *See, Grand Entertainment Group Ltd. V. Star Media Sales, Inc.*, 988 F.2d 476 (3d Cir. 1993).

Consequently, as set forth above, in Munson's original brief accompanying his Motion to Dismiss, and in Tarlo Lyons Brief in response to plaintiff Lexington's Reply, this lawsuit should be dismissed as to Munson on grounds of *forum non conveniens*, and allowed to proceed in the United Kingdom.

## II.    <u>CONCLUSION</u>

For all of the above reasons, all claims against defendant Stanley Munson must be dismissed with prejudice for lack of personal jurisdiction, and for *forum non conveniens,* by entry of an Order in the form attached. The Exhibits submitted by plaintiff Lexington fail to support plaintiff's burden under FED. R. CIV. P. 12(b)(2). They show Munson lacked control as to the alleged RICO enterprise. They fail to show any agreement or knowledge of improper purpose on the part of Munson. They show his activities were consistent with the mere provision of legal services, primarily in the United Kingdom, to United Kingdom based clients. The transactions central to plaintiff's case were entered in the United Kingdom. To the extent Munson had contacts with Pennsylvania, California, or the United States, the exhibits submitted show they were of an informational nature, and at most incidental to plaintiff's claims. The situation of Munson with respect to plaintiff's allegations is markedly different than that of defendant Forrest previously analyzed by this Court. Indeed, under the principles, logic, and reasoning of *Grand Entertainment Group Ltd. V. Star Media Sales, Inc.*, 988 F.2d 476 (3d Cir. 1993), as well as this court's prior opinion, and the other cases cited herein, neither general nor claim-specific personal jurisdiction exists over Stanley Munson as to the claims of plaintiff Lexington Insurance. Accordingly, all claims against Stanley Munson must be dismissed for lack of personal jurisdiction and on grounds of *forum non conveniens.*

WHEREFORE, defendant Stanley Munson respectfully requests all claims against him be DISMISSED WITH PREJUDICE for lack of personal jurisdiction and on grounds of *forum non conveniens* by entry of an Order in the form attached.

Respectfully submitted,


BY:    /s/ Conrad Kattner
        CONRAD KATTNER
        Identification No: 035468
        MCSHEA & TECCE
        1735 Market Street, 16th Floor
        Philadelphia, PA 19103
        (215) 599-0800
        Attorney for Defendant,
        Stanley Munson

Dated:  November 12, 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY<br>　　　　　　　　　　　　Plaintiff<br><br>　　　　　v.<br><br>DAVID FORREST and T. BEAUCLERC<br>ROGERS, IV, STANLEY MUNSON, MARTIN<br>FINK, all individually, and NEW BEGINNINGS<br>ENTERPRISES LLC, A California Limited<br>Liability Company, and TARLO LYONS, a<br>partnership,<br>　　　　　　　　　　　　Defendants | CIVIL ACTION<br><br>NO.  02-CV-4435<br><br>(Hon. Anita B. Brody) |

## <u>CERTIFICATE OF SERVICE</u>

　　　　　　Conrad Kattner, Esquire, attorney for Defendant, Stanley Munson, hereby

certifies that I have served true, correct and complete copies of Defendant, Stanley Munson'

Reply Brief to Answer of Lexington Insurance Company's Motion to Dismiss filed by Stanley

Munson upon the following parties or their counsel of record by electronic filing or first class

mail, postage prepaid on this day:


Glenn F. Rosenblum, Esquire
Jeffrey R. Lerman, Esquire
Montgomery, McCracken, Walker & Rhoads
123 South Broad Street
Philadelphia, PA  19109
　　　　　　and
Edward P. Krugman, Esquire
Emily A. Poler, Esquire
Ira J. Dembrow, Esquire
Scott M. Mory, Esquire
Cahill Gordon & Reindel
80 Pine Street
New York, NY  10005
*Counsel for Plaintiff*

David Pennington, Esquire
Harvey, Pennington
1835 Market Street, 29th Floor
Philadelphia, PA  19103
*Counsel for Tarlo Lyons*

Edward M. Dunham, Jr., Esquire
Shannon Hampton Sutherland, Esquire
Duane Morris LLP
One Liberty Place
Philadelphia, PA  19103
*Counsel for David Forrest*

Nicholas M. Centrella, Esquire
James J. Rohn, Esquire
Kevin Dooley Kent, Esquire
Conrad O'Brien Gellman & Rohn, PC
1515 Market Street, 16th Floor
Philadelphia, PA 19102
*Counsel for T. Beauclerc Rogers, IV*

Neil G. Epstein, Esquire
Eckert Seamans Cherin & Mellott, LLC
1515 Market Street
Ninth Floor
Philadelphia, PA 19102
    and
Jeffrey D. Farrow, Esquire
Mona Z. Hanna, Esquire
Sanford Louis Michelman, Esquire
Michelman & Robinson LLP
4 Hutton Centre, Suite 300
Santa Ana, CA 92707
*Counsel for Martin Fink*

Alexander Kerr, Esquire
Stephen P. McFate
McCarter & English, LLP
Mellon Bank Center
1735 Market Street, Suite 700
Philadelphia, PA 19103
    and
Beverly Y. Lu, Esquire
Charles A. Adamek
Lord Bissell & Brook, LLP
300 South Grand Avenue, Suite 800
Los Angeles, CA 90071
*Counsel for New Beginnings Enterprises*

Respectfully submitted,

BY:   /s/ Conrad Kattner
      CONRAD KATTNER
      Identification No: 035468
      MCSHEA & TECCE
      1735 Market Street, 16th Floor
      Philadelphia, PA 19103
      (215) 599-0800
      Attorney for Defendant,
      Stanley Munson

Dated: November 12, 2004