## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

LEXINGTON INSURANCE COMPANY,

                               Plaintiff,

-against-

DAVID FORREST, *et al.*,

                               Defendants.

                                                Civil Action No. 02-CV-4435
                                                (Hon. Anita B. Brody)

MARTIN FINK,

                               Plaintiff,

-against-

NEW HAMPSHIRE INSURANCE CO., *et al.*,

                               Defendants

LEXINGTON INSURANCE COMPANY,

                           Counterclaimant,

                                                  Civil Action No. 04-CV-5370
against-
                                                (Hon. Patrice B. Tucker)

MARTIN FINK and NEW BEGINNINGS
ENTERPRISES, LLC,

                           Counterclaim Defendants.

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT ROGERS' MOTION TO COMPEL

Edward P. Krugman
Kevin J. Burke
Ira J. Dembrow
CAHILL GORDON & REINDEL LLP
Eighty Pine Street
New York, New York  10005
(212) 701-3000

Jeffrey R. Lerman
Glenn F. Rosenblum
MONTGOMERY, WALKER & ROADES, LLP
123 South Broad Street
Philadelphia, Pennsylvania  19109
(215) 772-1500

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES..................................................................................... II

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS ......................................................................................2

ARGUMENT

I.   THE COURT SHOULD DENY THE MOTION TO COMPEL ........................................8

      A.   A District  Court Is Required To Consider International
            Comity When Exercising Its Discretion Whether To Permit
            or Deny Discovery of Materials Prohibited From
            Disclosure by a Foreign Nation ...............................................8

      B.   Applying The Aerospatiale Factors, The Court Should at
            This Time Deny Rogers's Motion To Compel Discovery as
            to Matters That Fall Within The Scope of the English
            Disclosure Prohibitions ...........................................................11

            1.   The First Two Factors.................................................. 11

            2.   The Third Factor ......................................................... 12

            3.   The Fourth Factor ...................................................... 13

            4.   The Fifth Factor .......................................................... 13

      C.   The Other Document Requests and Interrogatory Included
            in the Motion to Compel Also Do Not Justify an Order of
            Production ...............................................................................14

II.  THE COURT SHOULD DIRECT THAT MATERIALS
      PROHIBITED BY ENGLISH DISCLOSURE RESTRICTIONS
      BE SOUGHT BY LEXINGTON'S REQUEST FOR
      INTERNATIONAL JUDICIAL ASSISTANCE ............................................16

CONCLUSION.......................................................................................20

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*Abbott Laboratories* v. *Teva*
   *Pharmaceuticals USA, Inc.*,
   2004 U.S. Dist. LEXIS
   (D. Del. July 15, 2004)...................................................................  18

*Distillers Co.* v. *Times Newspapers Ltd.*
   [1975] 1 Q.B. 613............................................................................  4

*In re Automotive Refinishing Paint*
   *Antitrust Litigation*,
   358 F. 3d 288 (3d Cir. 2004).........................................................  8, 10

*First American Corp.* v. *Price Waterhouse LLP*,
   154 F. 3d 16 (2d Cir. 1998)...........................................................  10

*Home Office* v. *Harman* [1983] A.C. 280....................................................  3, 4

*Marlwood Commercial Inc.* v. *Kozeny*,
   *Omega Group Holdings Ltd.* v. *Kozeny*, [2004]
   EWHC 189 (Comm)......................................................................  3

*Midland Marks Ltd.* v. *Hobday* [1989] 1 WLR 1148.........................................  3

*Minpeco, S.A.* v. *Commodity Servs., Inc.*,
   116 F.R.D. 517 (S.D.N.Y. 1987)...................................................  10

*Prudential Assurance Co.* v. *Fountain Page Ltd.*
   [1991] 1 WLR 756..........................................................................  3

*Reinsurance Co. of America, Inc.* v. *Administratia*
   *Asiqurarilor de Stat*,
   902 F. 2d 1275 (7th Cir. 1990)......................................................  10-11, 13

*Richmark Corp.* v. *Timber Falling*
   *Consultants*,
   959 F. 2d 1468 (9th Cir. 1992)......................................................  10, 11, 12, 13

*Societe Nationale Industrielle*
   *Aerospatiole* v. *United States*
   *Dist. Court*,
   482 U.S. 522 (1987)........................................................................  8, 9, 10

*Tulip Computers International B.V.*
   v. *Dell Computer Corp.*,
   254 F. Supp. 2d 469 (D. Del. 2003)...............................................  8, 18

*United States* v. *Vetco, Inc.*
   691 F.2d 1281 (9th Cir. 1981).......................................................  10

*White* v. Kenne*th Warren & Son*,
203 F.R.D. 369 (N.D. Ill. 2001)................................................................. 9, 11, 12, 13, 14

**Other Authorities**

Hague Convention on the Taking of
Evidence Abroad in Civil or Commercial
Matters, Mar. 18, 1970,
23 U.S.T. 2555, 847 U.N.T.S. 231...................................................... *passim*

Fed. R. Civ. P. 26............................................................................... 11

Restatement of Foreign Relations Law
of the United States (Revised) (Tent.
Draft Nov. 7, 1986)............................................................................ 9, 10

Restatement (Third) of Foreign Relations
Law of the United States (1987)......................................................... 9, 10, 19

United Kingdom Civil Procedure Rule 31.22......................................... 3

United Kingdom Civil Procedure Rule 32.12......................................... 3

United Kingdom Contempt of Court Act, s 14, 1981............................. 3

28 U.S.C. § 1782.............................................................................. 12 & n.5

Lexington respectfully submits this Memorandum in opposition to "Defendant Beau-clerc Rogers IV's Motion to Compel Discovery Addressed to Plaintiff Lexington Insurance Company". For the reasons stated herein, the motion should be denied at this time, but the issue raised by the motion — discovery of relevant materials prohibited from disclosure under English law — should be addressed by Lexington's pending Motion for Issuance of a Letter of Request for International Judicial Assistance pursuant to the Hague Convention.

## PRELIMINARY STATEMENT

The lawsuit pending before this Court is derivative; it is in many ways similar to a subrogation action. It follows three now-settled English actions that were brought against Lex-ington. These lawsuits are referred to by Rogers in his motion as the Law Debenture Trust or LDT actions (after the name of one of the parties in the English actions). LDT acted for inves-tors in films and television series promoted by Flashpoint; the investments were supported by insurance policies issued by Lexington, which promised to pay the investors if the films did not earn back the funds invested.

Defending and settling the English lawsuits cost Lexington approximately $15 mil-lion, net of recoveries from reinsurers and other parties. In the lawsuit before this Court, Lexing-ton seeks to recover these amounts from the parties whose wrongdoing was responsible for Lex-ington's payment obligations in England — the four individuals and two entities named as de-fendants in this action.

Much of the evidence relevant to Lexington's claims in this action was initially de-veloped and assembled in connection with the English litigation. Vast amounts of these materi-als — 60 boxes of documents — have been available to defendants for months, but nobody both-ered to come and look, or even ask for copies in electronic form, until after the last status confer-ence on November 22. In response to interrogatories and document requests served by defendant Rogers, however, Lexington had objected to part of one interrogatory and to several document requests on the grounds that the materials sought were prohibited from disclosure under English

confidentiality restrictions. In his instant motion to compel, Rogers seeks an order from the Court directing Lexington to produce these materials.

As discussed in Point I below, the motion to compel is vastly overbroad under the caselaw applicable to multinational litigation such as this, and it should be denied on that basis. The motion to compel does, however, raise an issue of considerable importance to all parties in this action, namely the discovery of relevant documents and witness statements that were produced in the English litigation but whose disclosure is prohibited by English law. Lexington believes that such material can and should appropriately be obtained by a Letter of Request for International Judicial Assistance (the "Letter of Request" or "Request") pursuant to the *Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters,* Mar. 18, 1970, 23 U.S.T. 2555, 847 U.N.T.S. 231 (the "Hague Convention"). *See* Point II, below. Lexington seeks the issuance by this Court of a Letter of Request addressed to the appropriate United Kingdom authorities in order to obtain documents and testimony that it believes will enable it to prosecute this action, but more than that is true. The Letter of Request seeks disclosure of *all* relevant documents that currently are prohibited from disclosure under English law.

The Letter of Request is not limited to seeking documents. It also seeks the testimony of a substantial number of witnesses with direct knowledge of the facts and circumstances of defendants' fraud. These witnesses are resident in England; their testimony cannot be compelled except via the Hague Convention. ***Lexington is terribly concerned that if the Court were simply to override English confidentiality rules as to documents, rather than proceeding by the usual route of a Letter of Request, then the English courts might decide not to honor the Letter of Request for testimony, and the Court (and, of course, Lexington) would be denied access to highly important evidence.***

## STATEMENT OF FACTS

The English confidentiality restrictions at issue are sections 31.22 and 32.12 of the Civil Procedure Rules ("CPR"), which provide:

"31.22  (1)  A party to whom a document has been disclosed may use the document only for the purpose of the proceedings in which it is disclosed, except where –

(a)  the document has been read to or by the court, or referred to, at a hearing which has been held in public;

(b)  the court gives permission; or

(c)  the party who disclosed the document and the person to whom the document belongs agree.

(2)  The court may make an order restricting or prohibiting the use of a document which has been disclosed, even where the document has been read to or by the court, or referred to, at a hearing which has been held in public.

(3)  An application for such an order may be made –

(a)  by a party; or

(b)  by any person to whom the document belongs."

"32.12  (1)  Except as provided by this rule, a witness statement may be used only for the purpose of the proceedings in which it is served.

(2)  Paragraph (1) does not apply if and to the extent that -

(a)  the witness gives consent in writing to some other use of it;

(b)  the court gives permission for some other use; or

(c)  the witness statement has been put in evidence at a hearing held in public."

While there are no provisions in the CPR that impose penalties for breach of its provisions, it is the position of the English courts that misuse of documents in breach of CPR 31.22 or of witness statements in breach of CPR 32.12 will constitute a contempt of court that is punishable by imprisonment for up to two years, imposition of a fine, obtaining security for good behavior, or a summary award of damages. *Home Office* v. *Harman* [1983] A.C. 280 at 300, 321, H.L.; *Marlwood Commercial Inc.* v. *Kozeny, Omega Group Holdings Ltd., et al.* v. *Kozeny*, [2004] EWHC 189 (Comm); *Prudential Assurance Co.* v. *Fountain Page Ltd.,* [1991] 1 WLR 756; *Midland Marks Ltd.* v. *Hobday,* [1989] 1 WLR 1148; Contempt of Court Act 1981 s 14. And the English courts have held that the party to whom the documents were disclosed in the

litigation, the party's attorneys and anyone who may come into possession of the documents are bound by the undertaking not to use them for collateral purpose. *Home Office* v. *Harman, supra.; Distillers Co.* v. *Times Newspapers Ltd.,* [1975] 1 Q.B. 613.

In considering Lexington's objections to the Motion to Compel and its Motion for a Letter of Request, the Court should be mindful of two overriding facts.

First, this is not a case where the only evidence, or even the majority of the evidence, available to prove or disprove relevant allegations is prohibited from disclosure by the confidentiality restrictions of a foreign nation. Here, vast amounts of documents produced voluntarily to Lexington in the English litigation can be, and were, offered to defendants in this action. For example, this action alleges substantial wrongdoing by the four individual defendants, all of whom were involved in controlling and operating various companies in England and the United States collectively known as Flashpoint. All of Flashpoint's documents came into the possession of Flashpoint's bankruptcy administrators in England after the main Flashpoint entities went into administration there (the equivalent of a United States bankruptcy proceeding) and these documents were voluntarily produced to Lexington. As a result, none of these documents are prohibited from disclosure under English law, and together with a substantial amount of other documents have been offered to defendants.

Rogers, however, has shown no interest in reviewing these documents. In Lexington's July 20, 2004 Responses to Rogers' First Request for Production of Documents, Lexington stated that it would produce documents in response to most of the individual document requests and that these documents would be available at the offices of Montgomery McCracken, Lexington's counsel in Philadelphia. Out of 38 specific document requests, Lexington asserted the English disclosure prohibition only as to five requests. To date, however, neither Rogers, nor any other defense counsel, has sought to review the hard copies of these documents, let alone request copies of all or any portion of the documents, which are contained in about 60 boxes.

At the status conference on November 22, Lexington offered to produce to all defendants a set of CDs containing all of the documents responsive to Rogers' document request (*i.e.*, all of the documents contained in the 60 boxes). The offer was confirmed by e-mail the next day, and on December 1, Lexington further confirmed that it would also produce an OCR disk, which has search capabilities, in addition to the TIFF and PDF formats previously offered to defendants. To date, Rogers has not requested a set of the CDs, nor has he made any response to Lexington's offer to produce on CDs documents responsive to his document requests. As a result of Rogers' continued refusal to review, in either hard copy or on CDs, the extensive document production made available by Lexington (of documents that are not prohibited from disclosure under English law), the Court should view with considerable skepticism the unstated premise of Rogers' Motion to Compel — that all of the documents prohibited from disclosure under English law are necessary for the preparation of his defense in this action.

Second, *a substantial majority of the documents produced in the English litigation that are prohibited from disclosure by English law are wholly irrelevant to the issues in this litigation*. The English litigation concerned two largely separate subjects: (1) the arrangements for the financing that was secured for the various film and TV productions and (2) the arrangements for the insurance that provided credit support for these projects. Only the insurance portion of the English case is at all relevant to the allegations in this litigation, as only that portion pertains to Lexington and other entities' interactions with Lexington. Only documents and witnesses relating to the latter should be, and are, being sought in Lexington's Motion for a Letter of Request under the Hague Convention. Most of the entities who were parties to the English litigation were involved with the first category, the financing for the various film projects. These parties included Credit Suisse First Boston ("CSFB"), the lead manager for the financings; Asset Backed Capital ("ABC"), the noteholders (the investor found by CSFB to purchase the notes that were issued to raise financing for the production of various films and a TV series); Quadrant Capital Ltd., investment advisors to ABC; Law Debenture Trust ("LDT"), the insured who was the trustee for the notes; Hollywood Realisations Trust Ltd., the successor trustee/assignee; and

Weil Gotshal & Manges ("WG&M"), English solicitors, who were, through different groups within WG&M, attorneys for each of CSFB, ABC and LDT.

Documents produced by these entities, and witness statements from individuals associated with these entities,[1] have no relevance to the claims raised by Lexington in this action. Lexington's claims here relate solely to Flashpoint's fraud in the procurement of insurance from Lexington with respect to various motion picture and TV film projects and its subsequent misappropriation of the proceeds raised to finance the various film projects. The issues that relate to insurance matters in the English litigation involve only Lexington, Flashpoint[2] and JLT Risk Solutions Ltd. ("JLT"), the broker for the insurance. As noted above, none of the Flashpoint documents is subject to English confidentiality restrictions, and all Flashpoint and Lexington documents have been available to defendants since this past July. The main category of relevant documents prohibited from disclosure are Witness Statements and documents produced in the English Litigation by JLT. These documents and witness statements are, in part, the subject of Lexington's motion for a Letter of Request under the Hague Convention.

In his Motion to Compel, Rogers does not mention the voluminous quantity of documents that Lexington has made available to Rogers (and all of the other defendants). Instead, Rogers notes, rather disingenuously, that "[b]ecause Rogers was not a party to the LDT proceeding [the English lawsuit], he has not been privy to the discovery generated therein." (Rogers Mem. at 2) Had Rogers availed himself of Lexington's offer to produce hard copies of relevant documents in July 2004, or CDs of such documents in November 2004, he would have

---

[1]     In the English litigation, LDT produced Witness Statements from two of its employees, ABC produced Witness Statements from four Quadrant employees, CSFB produced four Witness Statements from its personnel and WG&M produced ten Witness Statements. All of these Witness Statements and the documents produced by these parties and by various third parties with respect to the "financing side" of the English litigation have no relevance to any of the issues raised by Lexington's current action against Flashpoint individuals and entities.

[2]     No Flashpoint entity nor any person associated with Flashpoint was a party to the English proceedings.

become "privy" to a vast amount of the discovery generated in the English proceeding that is relevant to the issues in this action.

Out of 20 interrogatories and 38 document requests served on Lexington by Rogers, Lexington objected to providing answers and producing documents on the basis of the English disclosure restrictions as to only one interrogatory and five document requests.  The interrogatory and document requests are:

(a)    "All witness statements, depositions, transcripts, affidavits, other transcripts or records of testimony from the LDT litigation or any other litigation or administrative proceeding concerning the Hollywood Funding transactions."  (Doc. Req. No. 36)

(b)    "Identify each third party and/or party that has provided a witness statement or interview to Lexington in connection with the instant litigation, the LDT proceedings, or any proceeding conducted on behalf of DTI, and describe with specificity the substance of each statement or interview." (Int. No. 5)[3]

(c)    "All documents relating to Lexington's settlement of claims brought by insureds under the Hollywood Funding Nos. 4, 5, and 6 policies."  (Doc. Req. No. 32)

(d)    "All documents omitted from Lexington's production of Andrew Maclay's Expert Report."  (Doc. Req. No. 35)[4]

(e)    "All documents identified in Lexington's Initial Disclosure."  (Doc. Req. No. 37)

(f)    "All documents relating to communications between the Department of Trade and Industry ('DTI') and Lexington."  (Doc. Req. No. 4)

Under the relevant standards applied by the courts in considering the motion to compel disclosure of documents prohibited from disclosure by the laws of a foreign state, the Court should deny Rogers' motion to compel (Point I, below) and grant Lexington's pending motion for issuance of a Letter of Request pursuant to the Hague Convention (Point II, below).

---

[3]    In response to this Interrogatory, Lexington provided a list of all individuals who provided Lexington with Witness Statements, but mindful of the English disclosure prohibition, could not produce the Statements themselves and could not "describe with specificity the substance" of such Statements.

[4]    A redacted version of Mr. Maclay's Report, redacting reference to materials prohibited from disclosure, was provided to Rogers in September 2003 as an attachment to Lexington's RICO Case Statement.

# ARGUMENT

## I.

## THE COURT SHOULD DENY THE MOTION TO COMPEL

**A.**   ***A District Court Is Required To Consider International Comity When Exercising Its Discretion Whether To Permit or Deny Discovery of Materials Prohibited From Disclosure by a Foreign Nation***

A district court has discretion to allow discovery of materials that exist in a foreign nation and that are forbidden to be disclosed by the laws of that foreign nation. *See, e.g., Societe Nationale Industrielle Aerospatiale v. United States Dist. Court*, 482 U.S. 522, 542 (1987) ("[T]he scope of American discovery is often significantly broader than is permitted in other jurisdictions, and we are satisfied that foreign tribunals will recognize that the final decision on the evidence to be used in litigation conducted in American courts must be made by those courts."), *quoted in Tulip Computers International B.V. v. Dell Computer Corp.*, 254 F. Supp. 2d 469, 475 (D. Del. 2003). In the exercise of that discretion, however, a district court must be guided by due consideration of international comity.

In *Aerospatiale*, the Supreme Court noted that "[c]omity refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states," *Aerospatiale*, 482 U.S. at 543 n.27, and it explicitly endorsed consideration of international comity in the crafting of discovery orders, although it refused to mandate that resorting to the Hague Convention would in every case serve as a proper substitute for such consideration. *Aerospatiale*, 482 U.S. at 544 ("We therefore decline to hold as a blanket matter that comity requires resort to Hague Evidence Convention procedures without prior scrutiny in each case of the particular facts, sovereign interests, and likelihood that resort to those procedures will prove effective."). *See also In re Automotive Refinishing Paint Antitrust Litigation*, 358 F.3d 288, 300 (3d Cir. 2004) ("The concept of comity requires in this context 'a more particularized analysis' of the respective interests of the foreign host nation and the requesting nation than a blanket first resort rule would generate." (quoting *Aerospatiale*, 482 U.S. at 543-

44)).  The Supreme Court concluded that "[t]he exact line between reasonableness and unreason-ableness in each case must be drawn by the trial court, *based on its knowledge of the case and of the claims and interests of the parties* and the governments whose statutes and policies they in-voke."  *Aerospatiale*, 482 U.S. at 546 (emphasis added).

A court must use principles of international comity to arrive at a compromise be-tween the full reach of the court's discovery powers and the foreign nation's non-disclosure re-quirement.  *Aerospatiale*, 482 U.S. at 544 n.29 ("The lesson of comity is that neither the discov-ery order nor the blocking statute can have the same omnipresent effect that it would have in a world of only one sovereign.  The blocking statute thus is relevant to the court's particularized comity analysis only to the extent that its terms and its enforcement identify the nature of the sovereign interests in non-disclosure of specific kinds of material.").  With specific reference to the English confidentiality rule, CPR 32.12, the court in *White v. Kenneth Warren & Son*, 203 F.R.D. 369, 376 (N.D. Ill. 2001), said that "[i]f this Court expects courts in foreign jurisdictions to honor its orders and laws, this Court must pay due deference and respect to the laws and tradi-tions of our English colleagues."

The *Aerospatiale* decision offers guidance to a district court on the factors relevant to a consideration of international comity in the context of transnational discovery.  482 U.S. at 544 n. 28 ("[t]hese factors are relevant to any comity analysis: (1) the importance to the . . . litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would un-dermine important interests of the state where the information is located." *Aerospatiale,* 482 U.S. at 544 n.28 (quoting Restatement of Foreign Relations Law of the United States (Revised) § 437(1)(c) (Tent. Draft No. 7, 1986)).  The factors enumerated in § 437(1)(c) of the Draft Re-statement are now found in §442(1)(c) of the Third Restatement of Foreign Relations Law of the

United States. *See* Restatement (Third) of Foreign Relations Law of the United States § 442 (1987).

In *In re Automotive Refinishing Paint Antitrust Litigation*, the Third Circuit considered whether resort must initially be made to the Hague Convention for jurisdictional discovery. 358 F.3d 288, 290 (3d Cir. 2004). The court held that jurisdictional discovery did not require first resort to the Hague Convention. *Id.* at 305. In its decision, the Third Circuit adopted the reasoning from *Aerospatiale* that international comity requires a balancing of the interests of the foreign nation against U.S. interests. *Id.* at 300. Neither the Third Circuit nor the district courts within the Third Circuit, however, has had occasion to consider the comity factors enumerated in *Aerospatiale*. We must therefore turn to authority from other circuits.

Courts in other circuits have applied the *Aerospatiale (i.e., Restatement)* factors, or balancing tests derived from these factors, in analyzing the effects of discovery orders on international comity. *See, e.g., First American Corp. v. Price Waterhouse LLP,* 154 F.3d 16, 22 (2d Cir. 1998) (approving the district court's consideration of four factors "for gauging the reasonableness of foreign discovery: (i) the competing interests of the nations whose laws are in conflict; (ii) the hardship that compliance would impose on the party or witness from whom discovery is sought; (iii) the importance to the litigation of the information and documents requested; and (iv) the good faith of the party resisting discovery." *(citing Minpeco, S.A. v. Conticommodity Servs., Inc.,* 116 F.R.D. 517, 523 (S.D.N.Y. 1987)); *Richmark Corp. v. Timber Falling Consultants,* 959 F.2d 1468, 1475 (9th Cir. 1992) (recognizing that "*Aerospatiale* endorsed the balancing test contained in the Restatement (Third) of Foreign Relations Law § *442(1)(c)*" and considering those factors along with "'the extent and the nature of the hardship that inconsistent enforcement would impose upon the person, . . . . [and] the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state.'" *(quoting United States. v. Vetco, Inc.,* 691 F.2d 1281, 1288 (9th Cir. 1981)); *Reinsurance Co. of America, Inc. v. Administratia Asigurarilor de Stat,* 902 F.2d 1275, 1283 (7th Cir. 1990)

(affirming district court's denial of motion to compel responses as "consistent with our prior holdings as well as the new standard under Restatement (Third) § 442 and not an abuse of discretion").

Accordingly, Lexington respectfully submits that Rogers's motion must be decided by reference to the *Aerospatiale* factors.

**B.    *Applying The Aerospatiale Factors, The Court Should at This Time Deny Rogers's Motion To Compel Discovery as to Matters That Fall Within The Scope of the English Disclosure Prohibitions***

A consideration of the *Aerospatiale* factors, set forth above, demonstrates that the motion to compel should be denied.

1.    The First Two Factors
- "the importance to the litigation of the documents or other information requested"
- "the degree of specificity of the request"

"Where evidence sought is, 'directly relevant,' to issues in litigation, this factor weighs in favor of production." *White v. Kenneth Warren & Son*, 203 F.R.D. 369, 375 (N.D. Ill. 2001) (*quoting Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992)). Federal Rule of Civil Procedure 26(b)(1) states that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." The use of the words "directly relevant" rather than just "relevant" in *Richmark* implies that a heightened standard of relevancy is appropriate in contexts where a foreign non-disclosure requirement applies. In *Richmark*, plaintiff sought information about the defendant Chinese corporation's assets in order to enforce judgment against the defendant. *Richmark*, 959 F.2d at 1475. The court found that such evidence was directly relevant to the litigation at hand, and that this factor weighed in favor of disclosure. *Id.*

Rogers' most extensive request that is lacking in relevance or specificity is the request for "[a]ll witness statements, deposition transcripts, affidavits, or other transcripts or re-

cords of testimony from the LDT litigation or any other litigation or administrative proceeding concerning the Hollywood Funding transactions." (Document Request No. 36) "Generalized searches for information, the disclosure of which is prohibited under foreign law, are discouraged." *Richmark*, 959 F.2d at 1475. The *Richmark* court found that a request for "recent financial documents" was not so burdensome to favor non-disclosure where the request was "reasonably limited in time," and where all of the information sought would serve the purpose of "identifying [defendant's] current assets in order to execute the judgment." *Id.* Lexington submits that this Request, essentially calling for all documents from the English litigation, is on its face overbroad and should be denied on the ground that most of the matters that took place in the English action, as discussed above, are wholly irrelevant to any issues in this lawsuit. As set forth in Point II below, Lexington is seeking, through a Letter of Request for International Judicial Assistance, to obtain all of the documents and testimony that are in fact relevant to the issues in this action.

2.   The Third Factor
  •   "whether the information originated in the United States"

In the *White* case all of the materials sought were in England. The court in *White* found that "there is no question that [the documents] originated in England and those who would be subject to the penalties are in England and this would weigh toward non-disclosure." 203 F.R.D. at 375.

The situation here is similar but not identical. Most of the material did in fact originate in England, but some of it originated in the United States and was obtained by Lexington through the assistance of various district courts pursuant to 28 U.S.C. § 1782.[5] As to much of

---

[5]   Section 1782 provides:

"The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation."

the material that originated in the United States, Lexington has already obtained permission from various persons and entities to produce their documents and/or witness statements here. As to the rest of the U.S.-source material, Lexington acknowledges that the Court might well conclude that an order compelling production is appropriate. As to the English-source material, however, this factor weighs against granting the motion.

### 3.    The Fourth Factor
- "the availability of alternative means of securing the information"

Courts have held that alternative means of obtaining the materials must be "substantially equivalent" to the requested production. *See, e.g., Richmark*, 959 F.2d at 1475. In *White*, the court found it relevant that "[t]he Defendants have not demonstrated that they have attempted to contact the witnesses nor have they sought to petition the court in England for release of the witness statements." 203 F.R.D. at 375. Here, Lexington believes that its requested Letter of Request under the Hague Convention is an appropriate means of securing the requested information. We point out that we flagged this issue at the very first status conference in this matter, well over a year ago, and we offered to join with defendants in seeking relief from the English courts. They did nothing to pursue this issue until this past summer.

### 4.    The Fifth Factor
- "the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located."

The *Richmark* court found that the United States had an interest in "vindicating the rights of American plaintiffs" and "enforcing the judgments of its courts." 959 F.2d at 1477. Another court found the United States interest to be in "protecting the finality of judgments . . . ." *White*, 203 F.R.D. at 375 (*citing Reinsurance Co. of America, Inc. v. Administratia Asigurarilor de Stat*, 902 F.2d 1275, 1280 (7th Cir. 1990)). In *White*, as here, the English non-disclosure requirement was at issue. That court found that "the English interests in confidentiality seem quite

compelling considering the penalties involved and to the extent their law appears aimed toward domestic affairs." 203 F.R.D. at 375. Weighing United States and English interests similar to those in the instant case, then, the *White* court found that "the final factor . . . would lean toward non-disclosure and ultimately under the international comity analysis would also favor non-disclosure of those statements." *Id.*

Because the balance of these factors weighs heavily toward non-disclosure in this case, due regard for international comity should result in denial by the Court of Rogers' motion to compel. However, to facilitate the discovery of relevant materials currently prohibited from disclosure by English law, which is the objective of Rogers' motion to compel, the Court should allow Lexington to proceed by means of a Request pursuant to the Hague Convention, as described in Point II, below. If the documents made available under the Letter of Request are insufficient, *then* the Court can revisit the issue and make a truly informed judgment as to whether, and to what extent, it might actually be necessary to order Lexington to produce the withheld materials.

**C.    *The Other Document Requests and Interrogatory Included in the Motion to Compel Also Do Not Justify an Order of Production***

Rogers seeks the substance (*i.e.*, copies) of all witness statements or interviews provided to Lexington. Lexington currently is seeking the permission of the individuals who gave Witness Statements to it in connection with the English litigation to disclose their Statements in this action. Interviews of individuals that were taken by English counsel for Lexington that were not reduced to formal Witness Statements submitted to other parties and the Court are work product and non-disclosable. In *White* v. *Kenneth Warren & Son,* 203 F.R.D. 369 (N.D. Ill. 2001), the court held that plaintiffs were making a good faith attempt to obtain witness statements used in a prior litigation in England and declined to order their production on a motion by defendants.

Rogers seeks "all documents relating to Lexington's settlement of claims brought by insureds under the Hollywood Funding Nos. 4, 5 and 6 policies." The only information from these documents relevant to this action is the monetary amounts that Lexington had to pay to settle the English litigation, which is part of Lexington's damages claim in this action. Lexington offered to produce this information. Rogers, however, insists on disclosure of the entire Settlement Agreements. The Settlement Agreements are not subject to English court rules enforcing confidentiality but are merely subject to a contractual obligation of confidentiality, as to which Lexington acknowledges that the needs of this case are superior. Accordingly, Lexington hereby withdraws its objection to production (subject, of course, to the confidentiality order in this action) of the Settlement Agreements that resolved the English actions. Many of the documents relating to the negotiations are internal to Lexington's team and thus are privileged, but those that are not will be located and produced.

Rogers seeks "[a]ll documents omitted from Lexington's production of Andrew Maclay's Expert Report." The documents that were omitted from Lexington's production of the Maclay Report to Mr. Rogers (on September 2, 2003), as an attachment to Lexington's RICO Case Statement, are documents that Lexington could not disclose pursuant to English confidentiality restrictions. These are among the documents that Lexington is seeking by the request for issuance of a Letter of Request. This material, we submit, should be disclosed by the English court in response to the Letter of Request, and not be the subject of an order from this Court.

Rogers seeks "[a]ll documents identified in Lexington's Initial Disclosures." Many of the documents identified therein were not precluded from discovery and are among the 60 boxes of documents made available to Mr. Rogers in July of this year (but never sought to be reviewed by Rogers). The documents that the Initial Disclosures said were prohibited from discovery by English confidentiality restrictions are among the documents covered by one or more

of the above Document Requests. These documents are among the documents whose disclosure is sought in Lexington's pending Letter of Request.[6]

Finally, Rogers seeks "[a]ll documents relating to communications between the Department of Trade and Industry ("DTI") and Lexington." According to Lexington's London solicitors, the DTI in England was conducting an investigation of Messrs. Forrest and Rogers, but its proceedings have now been stayed pending completion of this action. The DTI also advised Lexington's English solicitors that all communications between it and Lexington were confidential and not to be disclosed to any third party. Indeed, in Plaintiff's First Request for Production of Documents, served on the two individuals who were then the only defendants in the case, Messrs. Forrest and Rogers, Mr. Rogers objected to this request

> "on the grounds that it calls for information that is protected from disclosure by the attorney client, work product, and/or joint defense privilege, not relevant or likely to lead to the discovery of admissible evidence, and to the extent that it calls for production of documents that are confidential under and protected from disclosure by, the required report privilege and/or English law."

For the reasons stated by Mr. Rogers in response to a similar document request served by Lexington, the Court should not order this category of requested documents to be produced.

## II.

### THE COURT SHOULD DIRECT THAT MATERIALS PROHIBITED BY ENGLISH DISCLOSURE RESTRICTIONS BE SOUGHT BY LEXINGTON'S REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE

In Lexington's Motion for Issuance of a Letter of Request for International Judicial Assistance which has been circulated to all defense counsel and which accompanies this Opposi-

---

[6]     There are documents that fall within the broad general categories described in the Initial Disclosures but that are irrelevant and would not have been produced in any event. These, include, *e.,g.*, the documents and witness statements from Credit Suisse, LDT, and the other "financing side" parties in the English litigation. It is not clear whether Rogers is asking for these documents; if he is, his request should be denied.

tion, Lexington is seeking to take the testimony of, and obtain any Witness Statement(s) provided in the English litigation and associated documents from the following fourteen individuals:

(a)    Gordon Dawson - Insurance broker with JLT

(b)    Mark Drummond Brady - Insurance broker with JLT

(c)    Douglas Fenton - Insurance broker with JLT

(d)    Susan Wright - Flashpoint executive, Vice President of Finance and Risk Management

(e)    Neil Dunn - Employee of Talisman Films (U.K.) Ltd. ("Talisman"), producer of *Jules Verne*, which was Hollywood Funding No. 4

(f)    Richard Jackson - Talisman employee

(g)    Carolyn Oulton - Associated with Talisman

(h)    David Lamping - Sales agent for *The New Professionals*

(i)    Steven Mitchell - Lexington underwriter

(j)    Keith Peacock - General Manager of Lexington's London office

(k)    Marcus Ringrose - Underwriter on various Flashpoint projects

(l)    Peter Salmon/Tessa Ross - Both associated with the British Broadcasting Corporation ("BBC").

(m)    Allan Guest - Mitsui Sumitomo Insurance

In this Request, Lexington is only seeking the testimony of and Witness Statements provided to it by residents of England. Lexington also received Witness Statements by a number of residents of the United States for use in the English litigation. As to the United States residents, Lexington is seeking their consent to the disclosure of the Statements and expects that many if not all of the United States residents will so consent. In addition, Lexington plans to depose many, if not all, of the United States residents who provided Witness Statements for use in the English litigation (among other depositions). To date, Lexington has noticed the depositions of David Jackson for December 22, 2004 and Helen Sarlui for December 23, 2004 and has served subpoenas on both these individuals. Both of these proposed deponents provided Witness Statements to Lexington. At these and all depositions taken in this action by Lexington, defense counsel, of course, will have the opportunity to fully cross-examine the witnesses (and Lexington believes it will be able to produce the deponents' Witness Statements to defense counsel prior to their depositions).

The Request also seeks to have Lexington relieved of its confidentiality obligations with respect to documents produced to Lexington in the English litigation by JLT and Talisman, and requests that the BBC and Mitsui Sumitomo Insurance (London Management) Ltd. produce relevant documents for use in this action.[7]

An appropriate means of securing relevant documents and testimony prohibited from disclosure by English law is through the Hague Convention which is a judicially recognized means of securing evidence abroad, *i.e.,* instead of the Federal Rules of Civil Procedure. A request for international judicial assistance pursuant to the Hague Convention is particularly appropriate when all the proposed witnesses are third parties, rather than parties, as they are in Lexington's proposed Request. In *Abbott Laboratories* v. *Teva Pharmaceuticals USA, Inc.,* 2004 U.S. Dist. LEXIS 13480, at *6 (D. Del. July 15, 2004), the court said that "[t]he Hague Evidence Convention serves as an alternative or 'permissive' route to the Federal Rules of Civil Procedure for the taking of evidence abroad from litigants and third parties alike." (citing *Aerospatiale*). The *Abbott Laboratories* court further held that

> "As a threshhold matter, I agree with the parties that application of the Hague Convention is appropriate here, as the witnesses are not parties to the lawsuit, have not voluntarily subjected themselves to discovery, are citizens of France, and are not otherwise subject to the jurisdiction of this court." *Id.* at *7.

*See also Tulip Computers International B.V.* v. *Dell Computer Corp.,* 254 F. Supp. 2d 469, 474 (D. Del. 2003) ("Resort to the Hague Evidence Convention is appropriate since both Mr. Duynisveld and Mr. Dietz [residents of the Netherlands] are not parties to the lawsuit..."). The same considerations that were present in *Abbott Laboratories* and *Tulip Computers* are present here. All individuals and entities enumerated in the Request are third parties, have not voluntar-

---

[7]    In 1998, Flashpoint and/or Talisman attempted to sell the *Jule Verne* broadcasting rights to the BBC, but the BBC decided not to purchase these rights. The Complaint alleges that the *Jules Verne* TV series was presented to Lexington as though the BBC was about to purchase the English rights to the series for a substantial sum when in fact the BBC had already rejected the series. Flashpoint sought to have Mitsui insure a proposed, but never effected, Hollywood Funding No. 7 transaction.

ily subjected themselves to discovery, are citizens of England and are not otherwise subject to the jurisdiction of this Court.

Lexington submits that the individuals and entities included in the Request, and their related documents, encompass all of the relevant documents prohibited from disclosure by English law that are relevant to the issues in this action – for all parties. As a result, the Court should sign the Request, which Lexington believes is narrow enough to be granted in toto or in large measure by the English court. Should the English court, however, decline to allow Lexington to produce a significant portion of the documents sought by the Request, the Court can revisit this matter if defendants continue to believe that such documents are necessary for their defense of Lexington's claims (which presumably would not occur until they review, in hard copy or on CDs, the 60 boxes of documents made available by Lexington). Lexington, however, respectfully submits that, as an initial matter, Rogers' motion to compel should be denied and the parties should proceed by Lexington's Request under the Hague Convention. While Lexington, obviously, cannot predict how fast the English court will act on its Request, the defendants should experience no prejudice. To date, they have not even sought to review the 60 boxes of documents that have been available since July 2004 and that, since November 2004, have been offered to defendants on CDs. (Two defendants recently requested and received a set of the CDs.)

Paragraph 2(a) of Section 442 of the Third Restatement of the Foreign Relations Law of the United States, states:

> "(2)    If disclosure of information located outside the United States is prohibited by law, regulations, or order of a court or other authority of the state in which the information... is located, ...
>
> (a)    a court or agency of the United States may request the person to whom the order is directed to make a good faith effort to secure permission from the foreign authorities to make the information available."

Pursuant to Lexington's Letter of Request for International Judicial Assistance pursuant to the Hague Convention, Lexington is making an "effort to secure permission from the foreign authorities to make this information available."

## CONCLUSION

The motion to compel discovery should be denied in its entirety and the Court should sign the Order submitted by Lexington for a Letter of Request for International Judicial Assistance pursuant to the Hague Convention.

Dated:  December 17, 2004

CAHILL GORDON & REINDEL LLP

*Of Counsel*:

    Kevin J. Burke
    Ira J. Dembrow

By: _____
     Edward P. Krugman
    80 Pine Street
    New York, New York  10005
    (212) 701-3000

    -and-

*Of Counsel*:

    Jeffrey R. Lerman
    Glenn F. Rosenblum

MONTGOMERY, MCCRACKEN, WALKER
    & RHOADS, LLP
123 South Broad Street
Philadelphia, Pennsylvania  19109
(215) 772-1500

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that a copy of "Plaintiff's Memorandum of Law in Opposition to Defendant Rogers' Motion to Compel" was served this 17th day of December, 2004, by U.S. First Class Mail upon:

James J. Rohn, Esq.
Nicholas M. Centrella, Esq.
Kevin Dooley Kent, Esq.
Conrad O'Brien Gellman & Rohn, P.C.
1515 Market Street, 16th Floor
Philadelphia, PA  19102

*Attorneys for T. Beauclerc Rogers, IV*

Edward M. Dunham, Jr., Esq.
Shannon Hampton Sutherland, Esq.
Duane Morris LLP
One Liberty Place
Philadelphia, PA  19103-7396

*Attorneys for David Forrest*

Neil G. Epstein, Esq.
Eckert Seamans Cherin & Mellott, LLC
1515 Market Street - Ninth Floor
Philadelphia, PA  19102

Sanford L. Michelman, Esq.
Mora Z. Hanna, Esq.
Jeffrey D. Farrow, Esq.
Michelman & Robinson, LLP
4 Hutton Centre, Suite 300
Santa Ana, CA  92707

*Attorneys for Martin Fink*

Alexander Kerr, Esq.
Stephen P. McFate
McCarter & English, LLP
Mellon Bank Center
1735 Market Street, Suite 700
Philadelphia, PA  19103

Charles A. Adamek, Esq.
Beverly Y. Lu, Esq.
Lord, Bissell & Brook LLP
300 S. Grand Avenue, Suite 800

Los Angeles, CA 90071

*Attorneys for New Beginnings Enterprises*

Thomas M. Kittridge
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103


John D. Gordan, Esq.
Eugene Bannigan, Esq.
Jack N. Thomas, Esq.
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, New York 10178-0060

*Attorneys for Tarlo Lyons*

Conrad O. Kattner, Esq.
McShea & Teece, P.C.
1735 Market Street, 16th Floor
Philadelphia, PA 19103

*Attorneys for Stanley Munson*

Dated:    New York, New York
          December 17, 2004

                                        _____
                                        Ira J. Dembrow