IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEXINGTON INSURANCE COMPANY, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| DAVID FORREST, et al., | : | |
| | : | NO. 02-CV-4435 |
| Defendants. | : | |
| | : | |

**EXPLANATION AND ORDER**

     Plaintiff Lexington Insurance Company ("Lexington") has filed suit against individual defendants David Forrest ("Forrest"), T. Beauclerc Rogers IV ("Rogers"), Stanley Munson ("Munson"), and Martin Fink ("Fink"), as well as against New Beginnings Enterprises LLC ("New Beginnings"), a California limited liability company, and Tarlo Lyons ("Tarlo"), a British partnership.  Before me now are motions to dismiss Lexington's second amended complaint for lack of personal jurisdiction and forum non conveniens filed by Munson and Tarlo.  Defendants Rogers and Forrest have filed a joinder in those motions only on the theory of forum non conveniens.  For the reasons that follow, I will deny the motions.

     As I discussed in greater detail in my earlier ruling, Lexington Insurance Co. v. Forrest, 263 F.Supp.2d 986 (E.D.Pa. 2003) ("Lexington I"), the present litigation arises from the following alleged circumstances: defendants Rogers and Forrest were the principal shareholders of a series of companies collectively referred to as "Flashpoint."  Rogers resides within the Eastern District of Pennsylvania, and several of the Flashpoint companies are located at his home

in Gladwyne, Pennsylvania. Forrest is a subject of the United Kingdom. At least two Flashpoint companies are organized and exist under the laws of the United Kingdom. Defendant Munson is a subject of the United Kingdom and works as a lawyer for defendant Tarlo, a British law firm. He owned, through a separate entity, a 7.5 percent interest in the Flashpoint companies. Lexington is a Delaware corporation with its principal place of business in Massachusetts. It writes property and casualty insurance business in the United States and the United Kingdom.

Flashpoint raised capital for the purpose of making motion picture films. Lexington issued insurance policies at the instance of Forrest and Rogers to guarantee repayment to Flashpoint's creditors in the event that revenues from the films fell short. Munson, working at least partly in his capacity as a lawyer for Tarlo, served as Corporate Secretary for two Flashpoint companies, drafted various contractual documents for Flashpoint, and was a cosignatory on disbursements from Flashpoint bank accounts. Certain of these contracts and disbursements are at the core of one of Lexington's primary allegations–that the Flashpoint companies misappropriated funds that Flashpoint was contractually bound to reserve for projects underlying Lexington's insurance policies.

Plaintiff's complaint names defendants Munson and Tarlo in six of the eight claims for relief: 1) Count I, violation of 18 U.S.C. § 1962(c), the RICO provision pertaining to participation in the conduct of an enterprise's affairs through a pattern of racketeering activity; 2) Count III, violation of 18 U.S.C. § 1962(d), the RICO provision pertaining to conspiracy to violate 18 U.S.C. § 1962(a)-(c); 3) Count IV, common law fraud based on Munson and Tarlo's inducement of Lexington to enter into three financing agreements through misrepresentations and omissions of material facts; 4) Count V, tortious interference with contract based on Munson and

Tarlo's role in causing Flashpoint to misappropriate funds where such misappropriations amounted to a breach of contract between Flashpoint and Lexington; 5) Count VI, fraudulent inducement based on Munson and Tarlo's role in the negotiation of agreements protecting against the misappropriation of funds that defendants allegedly had no intention of honoring or complying with; and 6) Count VII, tortious interference with contract based on Munson and Tarlo's role in authorizing disbursement of funds in violation of certain agreements between Flashpoint and Lexington.

Challenges to the assertion of specific personal jurisdiction generally must be evaluated in both a claim-specific and defendant-specific fashion. See Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 94 n.1 (3d Cir. 2004); Remick v. Manfredy, 238 F.3d 248, 255-56 (3d Cir. 2001); Rush v. Savchuk, 444 U.S. 320, 332 (1980). As the instant motion is a motion to dismiss under Fed. R. Civ. P 12(b)(2) and I have not held an evidentiary hearing, Lexington is required to present a prima facie case that jurisdiction exists for each defendant and for every claim. Miller Yacht Sales, Inc., 384 F.3d at 94-96. The Third Circuit recently summarized the proper methodology for analyzing the constitutional limits of specific personal jurisdiction:

> [Courts must] "examine the relationship among the [defendants], the forum, and the litigation." Specific jurisdiction over a defendant exists when that defendant has "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." A single contact that creates a substantial connection with the forum can be sufficient to support the exercise of personal jurisdiction over a defendant.
> If these "purposeful availment" and "relationship" requirements are met, a court may exercise personal jurisdiction over a defendant so long as the exercise of that jurisdiction "comport[s] with fair play and substantial justice."

Id. at 96-97 (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002) and Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).

"[A] defendant's contacts with a forum need not have been the proximate cause of the plaintiff's injuries." Id. at 99. "The specific jurisdiction analysis simply requires that the plaintiff's claims 'arise out of or relate to' the defendant's forum contacts." Id.

Plaintiff has met its burden of establishing with reasonable particularity sufficient contacts between defendants Munson and Tarlo and the forum state to support jurisdiction, at least with respect to counts I and III of plaintiff's second amended and supplemental complaint, the RICO claims.[1] Defendant Munson, acting in his capacity as a lawyer for Tarlo, communicated with Rogers in Pennsylvania by fax, mail and telephone calls from his office in London. Munson, as a matter of course, sent copies of all correspondence between him and Forrest dealing with Flashpoint to Rogers in Pennsylvania. The specific communications that Lexington has identified appear largely to have served to keep Rogers informed as to developments in the Flashpoint venture. Some communications pertain to the disbursement of funds and therefore are more closely related to Lexington's primary allegations against Munson and Tarlo, while others are unremarkable. As defendants have repeatedly emphasized, these communications may fairly be characterized as "informational." And, as defendants note, the Third Circuit has indicated that in the context of breach of contract claims, "informational communications in furtherance of [a] contract do not establish the purposeful activity necessary for a valid assertion of personal jurisdiction." Sunbelt Corp. v. Noble, Denton & Assoc., Inc., 5

---

[1] Plaintiff has not argued that defendants' contacts with the nation as a whole might be sufficient to subject defendants to jurisdiction in this district for the RICO claims due to RICO's nationwide service of process provision, 18 U.S.C. § 1965.

F.3d 28 (3d Cir. 1993). However, informational communications in the context of a RICO claim present a different circumstance. Plaintiff has alleged that these communications were critical to maintaining the "enterprise" at the heart of the RICO conspiracy. RICO specifically targets enterprises engaging in patterns of racketeering activity. See United States v. Turkette, 452 U.S. 576 (1981). Indeed, the existence of an enterprise is an element that must be proven in addition to a "pattern of racketeering activity." Id. at 583. A RICO claim thus can be said to arise out of informational communications that are critical to the maintenance of the enterprise at the center of the RICO conspiracy.[2] See also Miller Yacht Sales, Inc., 384 F.3d at 100 (finding tortious interference claim to arise out of forum contacts where contractual interference occurred in China, but defendants sent communications into forum state to arrange trip to China and interference related to misappropriation of photos and floor plans obtained in forum). Therefore, plaintiff has made a prima facie showing that Munson and Tarlo have minimum contacts with Pennsylvania sufficient to support personal jurisdiction with respect to the RICO claims. Seeing no reason why considerations of traditional notions of fair play and substantial justice should differ with respect to Munson and Tarlo than with respect to Forrest, as discussed in Lexington I, 263 F.Supp.2d at 995, personal jurisdiction is therefore proper.

Whether plaintiff has made this prima facie showing with respect to the remaining state law claims is perhaps more questionable. However, neither side has addressed the personal

---

[2] Plaintiff has further argued that these communications constitute RICO predicate acts of wire fraud. See Tabas v. Tabas, 47 F.3d 1280, 1294 (3d Cir. 1995) ("[T]he use of the mails need not be an essential element of the fraudulent scheme. Rather, so long as the mailings are 'incident to an essential part of the scheme,' the mailing element is satisfied.") (citations omitted); Schmuck v. United States, 489 U.S. 705, 710-11 ("It is sufficient for the mailing to be 'incident to an essential part of the scheme,' or 'a step in [the] plot.'") (citations omitted). In that sense too the RICO claim may arise out of the communications.

jurisdiction question in a claim-specific fashion.³  See Miller Yacht Sales, Inc., 384 F.3d at 94 n.1.  Plaintiff has requested the opportunity to conduct further jurisdictional discovery before any claims are dismissed on jurisdictional grounds.  As Lexington's claim for jurisdiction is not "clearly frivolous," see Massachussets School of Law at Andover, Inc. v. American Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir. 1997), I will exercise my "considerable procedural leeway" in deciding motions to dismiss for lack of personal jurisdiction, e.g., Leonard A. Feinberg, Inc. v. Central Asia Capital Corp., 936 F.Supp. 250, 253 (E.D.Pa. 1996), and deny the motion without prejudice with respect to the state law claims, so that Lexington will have the opportunity to conduct further discovery.  Furthermore, because Munson and Tarlo must remain in the case to defend the RICO claims as it is, I will simply allow discovery to continue as scheduled.

I note that I have not conclusively determined the existence of personal jurisdiction over any of the defendants who have moved for dismissal on personal jurisdiction grounds with respect to any claim, including defendant Forrest.  Rather, I have only determined that Lexington has made a prima facie showing of personal jurisdiction.  See Lexington I, 263 F.Supp.2d at 994 ("I find that Forrest's phone calls and faxes with this forum suffice to present a prima facie case of minimum contacts.")  Plaintiff continues to bear the burden of establishing jurisdiction by a preponderance of the evidence and defendants will be free to raise the jurisdictional defense again at the close of all discovery or following the presentation of evidence at trial.

In addition, for the reasons discussed in Lexington I, I deny all defendants' motion in the alternative to dismiss on grounds of forum non conveniens.

---

³Nor has either side addressed any potential applicability of the doctrine of pendent personal jurisdiction.  See, e.g., Robinson v. Penn Central Co., 484 F.2d 553 (3d Cir. 1973).

**AND NOW**, this 19th day of December 2004, upon consideration of defendants Stanley Munson's and Tarlo Lyons' motions to dismiss (docket # 81, docket #82), defendants T. Beauclerc Rogers IV's and David Forrest's joinder in said motions on the theory of forum non conveniens (docket #96), and plaintiff's responses, it is hereby **ORDERED** that defendant's motions are **DENIED**.

S/Anita B. Brody

_____

ANITA B. BRODY, J.

Copies **FAXED** on _____ to:    Copies **MAILED** on _____ to:

O:\ABB\Lexington dismiss.wpd