# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| LEXINGTON INSURANCE COMPANY,<br><br>                                   Plaintiff,<br><br>- against -<br><br>DAVID FORREST, T. BEAUCLERC ROGERS IV, STANLEY MUNSON, MARTIN FINK, all individually, and NEW BEGINNINGS ENTERPRISES LLC, a California Limited Liability Company, and TARLO LYONS, a partnership,<br>                                   Defendants. | Civil Action No. 02-CV-4435<br>(Hon. Anita B. Brody)<br><br>**DECLARATION OF EDWARD P. KRUGMAN IN SUPPORT OF MOTION FOR ISSUANCE OF LETTERS ROGATORY** |

EDWARD P. KRUGMAN, declares under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1.      I am a member of the firm of Cahill Gordon & Reindel LLP and am admitted in this action *pro hac vice* as counsel for plaintiff, Lexington Insurance Company ("Lexington"). I submit this declaration under penalty of perjury in support of Lexington's motion for issuance of Letters Rogatory to the relevant judicial authorities of the provinces of British Columbia and Québec, Canada.

2.      The purpose of the Letters Rogatory is to obtain evidence, in the form of testimony and documents, for use at the trial of this action.

3.      The facts set forth herein, unless otherwise specified, are based on my information and belief as to the testimony I believe the specified witnesses would give in this matter. My factual basis for making these statements is my experience since August 2000 as worldwide coordinating counsel for AIG Companies (including Lexington) on film finance litigation and, in particular, on four-plus years of claims and litigation with respect to Flashpoint risks.

-2-

During this period I have been directly involved in, and have supervised, the investigation of the facts of this case, including review of thousands of pages of documentation, interviews of many of the individuals for whom the Letter of Request is sought, and oversight of the English *Hollywood Funding* litigation (which is the source of Lexington's damages herein).

**Background**

4.    As the Court is aware, Lexington asserts claims against defendants in this action for RICO violations, common law fraud, tortious interference with contract, fraudulent inducement, constructive trust, and money had and received. All of the claims relate to a cluster of companies known generically as "Flashpoint," and the defendants include the principals of Flashpoint (Messrs. Forrest and Rogers), Flashpoint's man in Los Angeles (Mr. Fink), Flashpoint's English lawyer and law firm (Mr. Munson and Tarlo Lyons), and one of the Flashpoint companies (New Beginnings Enterprises). All of the defendants except New Beginnings are alleged to have been involved in a massive, multi-year Ponzi scheme involving procuring insurance policies by fraud and diverting the proceeds of insured transactions when received.

5.    The risk Lexington insured was that films would not earn sufficient amounts to pay off their financing costs. As set forth in the Complaint in this action, the films Flashpoint financed did not have the financial worth that they were represented to have, and Flashpoint diverted to itself much of the production money it had raised. The investors made claims under the policies Lexington had issued, but Lexington refused to pay, asserting that the policies were tainted by this fraud.

6.    The investors thereupon sued Lexington in the English High Court, in three actions captioned *Hollywood Realisations Trust Limited* v. *Lexington Insurance Company and Others*, 2001 Folio Nos. 211/935 and *Law Debenture Trust Corporation (Channel Islands) Limited* v. *Lexington Insurance Company and JLT Risk Solutions Limited*, 2002 Folio No. 193 (the

-3-

"*Hollywood Funding* actions"). Lexington expended millions of dollars in defending and set-tling the *Hollywood Funding* actions; the purpose of the action in this Court is to recover those costs from the architects of the Flashpoint scheme.

### Fraudulent Sales Estimates

7.     Investors loaned money to film production enterprises, and Lexington in-sured the loans, based in substantial part on "sales estimates" — estimates of the amount of money a film could be expected to earn. Lexington has alleged that when Flashpoint was faced with projects that could not be justified on an objective view of their merits, it took to inflating sales estimates in order to induce lenders — and, more particularly, insurers — to go forward with the financing transactions so that Flashpoint could earn its transaction fees and gain access to the proceeds that it intended to (and did) divert to its own purposes.

8.     I have seen substantial evidence that Flashpoint personnel (including Messrs. Forrest, Rogers, and Fink) fraudulently inflated or participated in the inflation of sales estimates for certain projects known as *The New Professionals*, *Award*, *The Secret Adventures of Jules Verne* ("*Jules Verne*"), and *Regent 1*, as detailed in the Second Amended Complaint at paragraph 27.

### Misappropriation of Funds

9.     Another component of the Flashpoint scheme was to divert funds from their intended purpose to improper ends. Flashpoint routinely commingled the funds it received for its various projects in a single bank account, despite the fact that it was obligated to keep such funds segregated. This was the precursor to various abuses.

10.     Flashpoint routinely used funds that were earmarked by the lenders for the productions of specific slates of films to produce films of different slates. Flashpoint also fraudulently diverted funds to defendants' own use for ventures such as a film post-production

-4-

facility in California, a chain of movie theaters in Russia, and a group of companies in Québec, Canada known as Ice Storm.

11.    The cumulative effect of this misappropriation was to bring about the eventual collapse of the entire scheme in 1999, when Flashpoint ran out of money.

12.    On January 19, 2001, the English High Court entered judgment determining that at least $8.8 million of funds that Flashpoint had raised were not used for the purpose of funding the relevant films but had been dissipated.

13.    Lexington is already in possession of most of the evidence it needs on the misappropriation issue, but certain additional evidence is needed, as outlined below.

**The Evidence Sought**

14.    The testimony and documents Lexington seeks through the Letters Rogatory are set forth below:

| Witness | Last Known Address | Evidence Sought: |
|---|---|---|
| Filmline International, Inc. | 410 Rue Saint-Nicolas, Bureau 10 Montréal, Québec | Documents |

15.    Defendants fraudulently obtained financing from Lexington to enable production, in Canada, of a television series entitled *Jules Verne* by certain UK-based companies and a Montréal-based production company known as Filmline International.  In July 1997, defendant David Forrest procured a series of sales estimates for use by Flashpoint in order to present them to insurers, such as Lexington.  The cumulative estimates ultimately presented to insurers (including plaintiff) were, on information and belief nearly four times greater than a reasonable estimate would have been.

16.    On information and belief, defendant Forrest knew that the successive estimates had no basis in fact, were neither reasonable nor professionally prepared, and were created

-5-

for the sole purpose of inducing Lexington to provide financing to defendants. Further, such sales estimates that were presented to Lexington by presenting them as "net" (*i.e.*, with the sales agents' commission deducted), whereas they were in fact developed on a gross basis. In addition, the series was presented to Lexington as though the British Broadcasting Corporation was about to purchase the English rights to the series for a substantial sum, whereas in truth and in fact the BBC had already rejected the series.

17.    As Filmline was among the primary beneficiaries of this fraud in that it enabled it to produce *Jules Verne*, Lexington believes that Filmline possesses documents relevant to defendants' fraudulent activities that may be used at trial, and requests such documents.

| Witness | Last Known Address | Evidence Sought: |
|---|---|---|
| Ice Storm Digital Studio, Inc. | 2595 Place Chassé, Montréal, Québec | Documents |

18.    In addition to the fraudulent sales estimates that defendants provided for *Jules Verne*, defendants obtained funds from Lexington for the stated purpose of financing the production of *The Secret Adventures of Jules Verne*, but, as alleged in the Complaint, fraudulently diverted and/or misappropriated such funds to Ice Storm Digital Studios, Inc., ("Ice Storm") a Montréal-based special effects studio in which they and certain producers of *Jules Verne* maintained an ownership interest.

19.    Flashpoint's use of monies obtained in the Hollywood Funding transactions was governed by various documents known as collateral agreements. These agreements prescribed certain permissible uses for the funds, and *inter alia*, required that the funds be segregated. Defendants operated in flagrant disregard of these agreements.

-6-

20.    As alleged in the Complaint, during the period August 12, 1999 to December 9, 1999, in connection with the production of *Jules Verne*, defendants, via Flashpoint, transferred a total of US$824,900 to Ice Storm for items not within the production budget of *Jules Verne*.    In April and May 1999, defendants, via Flashpoint posted separate amounts of US$1,500,000 and C$3,426,652 as security for Ice Storm equipment leases, and such amounts were subsequently drawn against by the lessor.    Even further, all of the funds so used were transferred from the Flashpoint account that contained the improperly commingled funds that were raised from Lexington and that were supposed to be dedicated to the uses set forth in the collateral agreements.    In addition, defendants Forrest and/or Rogers at one point are believed to have been board members of Ice Storm and to have maintained some financial interest in the company.

21.    As Ice Storm was the recipient of fraudulently diverted funds, and due to its close ties to the defendants in this action overall, Lexington believes that Ice Storm possesses documents relevant to defendants' fraudulent activities as described in paragraph 33 of the Second Amended Complaint that may be used at trial, and requests such documents.

| Witnesses | Last Known Address | Evidence Sought: |
|---|---|---|
| New City Productions, Inc. | 1005 Cypress Street<br>Vancouver, British Columbia | Documents |
| Colleen Nystedt | c/o New City Productions, Inc.<br>1005 Cypress Street<br>Vancouver, British Columbia | Testimony |

22.    A substantial part of defendants' misappropriations resulted from what was at heart a pyramid scheme.    A transaction known as Hollywood Funding No. 6 closed in December 1998, with defendants having raised money for six separate films or slates of films.    Flash-

-7-

point was obligated to expend funds raised in the Hollywood Funding No. 6 transaction solely for the projects for which the funds were raised pursuant to the agreements noted above.

23.    Flashpoint, at the direction of defendants, did nothing of the sort. Throughout 1999, Flashpoint repeatedly expended Hollywood Funding No. 6 funds for projects that were entirely outside the scope of the transaction, including in numerous instances on films that were not produced by any of the producers that were the subject of the Hollywood Funding No. 6 transaction. In November 1999 Flashpoint ran out of money, and the scheme came crashing down, although plaintiff was unable to verify that this was what happened until it audited Flashpoint the following year. Between November 1999 and February 2001 defendants Forrest and Rogers attempted to cover up their wrongdoing by dressing up Flashpoint's books so that the misappropriations and misapplications of funds would not look so stark.

24.    In or around 1998 or 1999, Flashpoint entered into an agreement with New City Productions, Inc. of Vancouver, British Columbia, via negotiations with New City's President and CEO Colleen Nystedt, to produce a slate of five films (the "New City slate") with money raised in the Hollywood Funding No. 6 transaction. For the duration of the relationship, Ms. Nystedt was New City's primary contact person with Flashpoint.

25.    As described above, defendants' misappropriations doomed this effort from the outset. Rather than expend the Hollywood 6 funds for the New City slate, defendants unlawfully diverted the funds to other ends. Though it is not entirely clear, it appears that only one of the New City slate films was ever even made.

26.    Due to New City's involvement as an intended beneficiary of the Hollywood Funding No. 6 transaction, their extensive involvement with defendants, and having been adversely affected by defendants' misappropriation, Lexington believes, based on the extensive documentary evidence in its possession and based on witness interviews that both New City Pro-

-8-

ductions, Inc. and Ms. Nystedt are in possession of information that can be used at trial in the action before us.  Lexington therefore requests that New City Productions, Inc. produce documents and that Ms. Nystedt give testimony for use at trial with respect to their knowledge of the Hollywood Funding No. 6 misappropriations as described in paragraph 33 of the Second Amended Complaint.

I declare under penalty of perjury that the foregoing is true and correct, and that this Declaration was executed on January 11, 2005.

Edward P. Krugman

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF PENNSYLVANIA

LEXINGTON INSURANCE COMPANY,

Plaintiff,

- against -

DAVID FORREST, T. BEAUCLERC ROGERS IV,
STANLEY MUNSON, MARTIN FINK, all individually,
and NEW BEGINNINGS ENTERPRISES LLC, a California
Limited Liability Company, and TARLO LYONS, a
partnership,

Defendants.

Civil Action No. 02-CV-4435
(Hon. Anita B. Brody)

## ORDER FOR ISSUANCE OF LETTERS ROGATORY

Now, upon reading the Declaration of Edward P. Krugman, submitted in support of the Lexington's motion for the issuance of Letters Rogatory and it appearing that the testimony and documents of the designated witnesses therein, currently residing in the Provinces of Quebec and British Columbia, Canada, are material and necessary to the trial of the issues of these actions, it is hereby

ORDERED, that the Letters Rogatory, in the form annexed hereto, be issued in this action directed to the Appropriate Judicial Authorities of Provinces of Quebec and British Columbia, Canada, requesting them, by the usual and proper process of those authorities: to summon the designated witnesses to appear individually to give deposition testimony on videotape and to submit documents for inspection and copying at a time and place to be determined by mutual agreement of the parties and the witness.

-2-

IT IS FURTHER ORDERED, that each Letter Rogatory contain an expression of readiness and willingness of this Court to do the same for the Appropriate Judicial Authorities of the Provinces of Quebec and British Columbia in a similar case when required.

Dated:  Philadelphia, Pennsylvania
        January___, 2005

_____
UNITED STATES DISTRICT JUDGE

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF PENNSYLVANIA

LEXINGTON INSURANCE COMPANY,

Plaintiff,

- against -

DAVID FORREST, T. BEAUCLERC ROGERS IV,
STANLEY MUNSON, MARTIN FINK, all individually,
and NEW BEGINNINGS ENTERPRISES LLC, a California
Limited Liability Company, and TARLO LYONS, a
partnership,

Defendants.

Civil Action No. 02-CV-4435
(Hon. Anita B. Brody)

## LETTER ROGATORY

To the appropriate judicial authorities of the Province of Québec, Canada, Greetings:

WHEREAS, a certain civil action for violations of the Racketeer Influenced and Corrupt Organizations Act, codified at 18 U.S.C. §§ 1961 *et seq.*, fraudulent inducement, tortious interference with contract, and other contract-based claims is pending in the United States District Court for the Eastern District of Pennsylvania, in which Lexington Insurance Company ("Lexington") is the plaintiff and David Forrest, T. Beauclerc Rogers IV, Stanley Munson, Martin Fink, New Beginnings Enterprises LLC, and Tarlo Lyons are defendants (collectively "defendants"), and it has been represented to us that justice cannot be completely done between the parties without obtaining documents, for use at trial, that are believed to currently be in the possession of the following entities within your jurisdiction:

| Entity | Address |
|--------|---------|
| Filmline International, Inc. | 410 Rue Saint-Nicolas, Bureau 10 <br> Montréal, Québec |
| Ice Storm Digital Studios, Inc. | 2595 Place Chassé, <br> Montréal, Québec |

WHEREAS, the United States District Court for the Eastern District of Pennsylvania has jurisdiction to adjudicate the controversy pending before it, has the power to compel the attendance of witnesses and the production of documents, and is empowered to direct the taking of testimony both inside and outside of its jurisdiction; and

WHEREAS, Lexington, by their counsel of record, has submitted a declaration that: (i) they intend to use the documents to be produced by offering them in evidence at the trial of the above-identified action; and (ii) the documents are not to be used only for a discovery purpose or to support the initiation of a foreign proceeding; and

WHEREAS, the admissibility of the offer in evidence of such documents will be ruled upon by this court at the trial; and

WHEREAS, Lexington contends in the action pending before us the following:

*The underlying action*

Plaintiff Lexington brings this action against four individual defendants (Messrs. Forrest, Rogers, Fink, and Munson), a California-based defendant, New Beginnings Enterprises, LLC, and Tarlo Lyons, Solicitors, a UK law firm (collectively, "defendants). Each of these de-

fendants was and/or is associated with a cluster of companies known generically as "Flashpoint." Flashpoint financed movies by raising funds from investors. It obtained credit support for these transactions in the form of insurance policies issued by Lexington and other insurers, who promised to pay off the investors if the films did not earn back their investment. A copy of the Second Amended and Supplemental Complaint ("Complaint") in this action is annexed hereto as Exhibit A.

Plaintiff asserts that Flashpoint was effectively a complete fraud (Complaint ¶ 1). The films it financed did not have the financial worth that they were represented to have, and Flashpoint diverted to itself much of the production money it had raised (Complaint ¶¶ 1, 3). The investors made claims under the policies Lexington had issued, but Lexington refused to pay, asserting that the policies were tainted by this fraud. The investors thereupon sued Lexington in England in multiple actions, captioned *Hollywood Realisations Trust Limited* v. *Lexington Insurance Company and Others*, 2001 Folio No. 211/935 and *Law Debenture Trust Corporation (Channel Islands) Limited* v. *Lexington Insurance Company and JLT Risk Solutions Limited*, 2002 Folio No. 193. Lexington asserts that it spent millions of dollars to defend the suits and millions more to settle them (Complaint ¶ 5). Lexington now brings the instant action in order to seek, *inter alia*, recovery of these amounts from defendants, who (Lexington asserts) collectively constituted the architects and actors of the Flashpoint scheme.

*Connections of the Witnesses to the Case*

### 1.    Filmline International

Lexington contends that defendants fraudulently obtained financing from Lexington to enable production, in Canada, of a television series entitled *The Secret Adventures of Jules Verne*, ("*Jules Verne*") by certain UK-based companies and a Montréal -based production company known as Filmline International.  In July 1997, defendant David Forrest procured a series of sales estimates for use by Flashpoint in order to present them to insurers, such as Lexington. The cumulative estimates ultimately presented to insurers (including plaintiff) were nearly four times greater than a reasonable estimate would have been.

On Lexington's information and belief, defendant Forrest knew that the successive estimates had no basis in fact, were neither reasonable nor professionally prepared, and were created for the sole purpose of inducing Lexington to provide financing to defendants.  Further, such sales estimates that were presented to Lexington by presenting them as "net" (i.e., with the sales agents' commission deducted), whereas they were in fact developed on a gross basis.  In addition, the series was presented to Lexington as though the British Broadcasting Corporation was about to purchase the English rights to the series for a substantial sum, whereas in truth and in fact the BBC had already rejected the series.

As Filmline was among the primary beneficiaries of this fraud in that it enabled it to produce *Jules Verne*, Lexington believes that Filmline possesses documents relevant to defen-

dants' fraudulent activities that may be used at trial, and requests documents detailed in the an-

nexed requests (see Exhibit B).

### 2.    Ice Storm Digital Studios, Inc.

In addition to the fraudulent sales estimates that defendants provided for *Jules*

*Verne*, Lexington contends in the action pending before us that defendants obtained funds from

Lexington for the stated purpose of financing the production of *Jules Verne*, and that defendants

fraudulently diverted and/or misappropriated such funds to Ice Storm Digital Studios, Inc., ("Ice

Storm") a Montréal-based special effects studio in which they and certain producers of *Jules*

*Verne* maintained an ownership interest.

Flashpoint's use of monies obtained in the Hollywood Funding transactions was

governed by various documents known as collateral agreements. These agreements prescribed

certain permissible uses for the funds, and *inter alia*, required that the funds be segregated. Lex-

ington asserts that defendants operated in flagrant disregard of these agreements.

During the period August 12, 1999 to December 9, 1999, in connection with the

production of *Jules Verne*, defendants, via Flashpoint, transferred a total of US$824,900 to Ice

Storm for items not within the production budget of *Jules Verne*. In April and May 1999, defen-

dants, via Flashpoint posted separate amounts of US$1,500,000 and C$3,426,652 as security for

Ice Storm equipment leases, and such amounts were subsequently drawn against by the lessor.

Even further, all of the funds so used were transferred from the Flashpoint account that contained

the improperly commingled funds that were raised from Lexington and that were supposed to be

dedicated to the uses set forth in the collateral agreements. In addition, defendants Forrest and

Rogers at one point are believed to have been board members of Ice Storm and to have maintained some financial interest in the company.

As Ice Storm was the recipient of fraudulently diverted funds, and due to its close ties to the defendants in this action overall, Lexington believes that it possesses documents relevant to defendants fraudulent activities that may be used at trial, and requests documents detailed in the annexed requests (see Exhibit B).

WHEREAS, the evidence sought from Filmline and Ice Storm is relevant to the matter now pending before this court; and

WHEREAS, Lexington believes that Filmline and Ice Storm possess documents regarding these matters and seeks to obtain them as described in the attached Exhibit B; and

WHEREAS, this District Court has issued this Letter Rogatory with the attached document requests in Exhibit B upon Filmline and Ice Storm; and while this District Court would consider, in the absence of any specific objections, the information sought by this Letter Rogatory to be within the parameters of Federal Rule of Civil Procedure 26, this District Court has left the scope of documents to be produced to be determined by the appropriate court in the Province of Québec; and

WHEREAS, the evidence is required in order that a just and speedy trial in this matter may ensue and is necessary in the interests of justice to enable this District Court to determine the issues pending before it; and

WHEREAS, according to Lexington, the evidence sought may be otherwise un-available from any source within the United States of America.

WE, THEREFORE, REQUEST that in the interest of justice, you cause, by your proper and usual process, Filmline and Ice Storm to produce, at a time and place to be determined by you, for the purposes of inspection and copying by a duly appointed representative of Lexington, all documents as described in Exhibit B attached, or that such documents and/or photocopies thereof be transmitted to us under cover duly sealed and addressed to the Clerk of the United States District Court, Eastern District of Pennsylvania, 601 Market Street, Room 2609, Philadelphia, PA 19106-1797, USA, and we shall be ready and willing to do the same for you in a similar case when required.

WITNESS, Honorable Anita B. Brody Judge of the United States District Court for the Eastern District of Pennsylvania, this _____ day of January, 2005.

By the Court,

_____

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

I, Michael E. Kunz, Clerk of Court of the United States District Court for the Eastern District of Pennsylvania, do hereby certify that the Honorable Anita B. Brody, whose name is signed to the accompanying pages, is now, and was at the time of the signing the same, a Judge for the United States District Court for the Eastern District of Pennsylvania.

IN WITNESS WHEREOF, I have hereunto set the seal of the United States District Court for the Eastern District of Pennsylvania at the City of Philadelphia this ___ day of January, 2005

_____
Clerk of the Court

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

I, Anita B. Brody, Judge of the United States District Court for the Eastern District of Pennsylvania, do hereby certify that Michael E. Kunz, whose signature is attached to the letter hereto annexed, was at the date thereof the Clerk of Court for the United States District Court for the Eastern District of Pennsylvania; that the official acts and doings of said Clerk are entitled to full faith and credit; and that the attestation to said letter of request was in due form of law. I further certify that the seal attached to said letter of request is the seal of this Court

WITNESS my hand and seal of said Court in the City of Philadelphia on this __ day of January, 2005

_____
United States District Court Judge

EXHIBIT B

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY,<br><br>                              Plaintiff,<br><br>        -against-<br><br>DAVID FORREST, T. BEAUCLERC ROGERS IV,<br>STANLEY MUNSON, MARTIN FINK, all<br>individually, and NEW BEGINNINGS ENTERPRISES<br>LLC, a California Limited Liability Company, and<br>TARLO LYONS, a partnership,<br><br>                              Defendants. | Civil Action No. 02-CV-4435<br>(Hon. Anita B. Brody)<br><br><br>**DOCUMENT REQUESTS** |

The following are the schedules of document requests to be served on the named entities as follows:

1.    Filmline International, Inc.

2.    Ice Storm Digital Studios, Inc.

-2-

## SCHEDULE 1

## DOCUMENTS REQUESTED

1.    All documents relating to any sales estimates prepared or received by you or at your direction or request, whether or not such sales estimates were ever transmitted to any person outside of Filmline, relating to "The Secret Adventures of Jules Verne," including but not limited to any initial, changed, revised, corrected, or final sales estimates and all communications relating to any such sales estimates.

2.    All documents relating to any company with the word "Flashpoint" in its name.

3.    All documents relating to communications with any of the following:

        (a)    David Forrest

        (b)    T. Beauclerc Rogers IV

        (c)    Martin Fink

        (d)    Complete Film Corporation

        (e)    Any company with the words "New Beginnings" in its name

        (f)    Stanley Munson

        (g)    Tarlo Lyons, Solicitors

-3-

## SCHEDULE 2
## DOCUMENTS REQUESTED

1.  All documents relating to any company with the word "Flashpoint" in its name, including but not limited to any documents related to any funding or monetary benefits received by or with the assistance of any Flashpoint company and/or any personnel associated therewith.

2.  All documents relating to any financial obligation undertaken by any Flashpoint company on behalf of Ice Storm Digital Studios, Inc. ("Ice Storm") or any related entity, employee, or owner, including but not limited to the assumption of any debts, leases, or liabilities.

3.  All documents relating to the following, including any documents relating to monetary or other compensation paid to any of the following:

        (a)    David Forrest

        (b)    T. Beauclerc Rogers IV

        (c)    Martin Fink

        (d)    Complete Film Corporation

        (e)    Any company with the words "New Beginnings" in its name

        (f)    Stanley Munson

        (g)    Tarlo Lyons, Solicitors

4.  Documents sufficient to show the ownership of Ice Storm and any related entity, including all corporate parents, subsidiaries, or affiliates from the years 1997 to the present.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF PENNSYLVANIA

LEXINGTON INSURANCE COMPANY,

                    Plaintiff,

         - against -

DAVID FORREST, T. BEAUCLERC ROGERS IV,
STANLEY MUNSON, MARTIN FINK, all individually,
and NEW BEGINNINGS ENTERPRISES LLC, a California
Limited Liability Company, and TARLO LYONS, a
partnership,

                    Defendants.

Civil Action No. 02-CV-4435
(Hon. Anita B. Brody)

## LETTER ROGATORY

To the appropriate judicial authorities of the Province of British Columbia, Canada, Greetings:

WHEREAS, a certain civil action for violations of the Racketeer Influenced and Corrupt Organizations Act, codified at 18 U.S.C. §§ 1961 *et seq.*, fraudulent inducement, tortious interference with contract, and other contract-based claims is pending in the United States District Court for the Eastern District of Pennsylvania, in which Lexington Insurance Company ("Lexington") is the plaintiff and David Forrest, T. Beauclerc Rogers IV, Stanley Munson, Martin Fink, New Beginnings Enterprises LLC, and Tarlo Lyons are defendants (collectively "defendants"), and it has been represented to us that justice cannot be completely done between the parties without obtaining documents and testimony, for use at trial, that of the following within your jurisdiction:

| Entity/Individual | Address |
|---|---|
| New City Productions, Inc. | 1005 Cypress Street<br>Vancouver, British Columbia |
| Colleen Nystedt | c/o New City Productions, Inc.<br>1005 Cypress Street<br>Vancouver, British Columbia |

WHEREAS, the United States District Court for the Eastern District of Pennsylvania has jurisdiction to adjudicate the controversy pending before it, has the power to compel the attendance of witnesses and the production of documents, and is empowered to direct the taking of testimony both inside and outside of its jurisdiction; and

WHEREAS, Lexington, by their counsel of record, has submitted a declaration that: (i) they intend to use the documents to be produced by offering them in evidence at the trial of the above-identified action; and (ii) the documents are not to be used only for a discovery purpose or to support the initiation of a foreign proceeding; and (iii) they intend to use the testimony sought at trial; and

WHEREAS, the admissibility of the offer in evidence of such documents will be ruled upon by this court at the trial; and

WHEREAS, Lexington contends in the action pending before us the following:

### The underlying action

Plaintiff Lexington brings this action against four individual defendants (Messrs. Forrest, Rogers, Fink, and Munson), a California-based defendant, New Beginnings Enterprises, LLC, and Tarlo Lyons, Solicitors, a UK law firm (collectively, "defendants"). Each of these defendants was and/or is associated with a cluster of companies known generically as "Flashpoint." Flashpoint financed movies by raising funds from investors. It obtained credit support for these transactions in the form of insurance policies issued by Lexington and other insurers, who promised to pay off the investors if the films did not earn back their investment. A copy of the Second Amended and Supplemental Complaint ("Complaint") in this action is annexed hereto as Exhibit A.

Plaintiff asserts that Flashpoint was effectively a complete fraud (Complaint ¶ 1). The films it financed did not have the financial worth that they were represented to have, and Flashpoint diverted to itself much of the production money it had raised (Complaint ¶¶ 1, 3). The investors made claims under the policies Lexington had issued, but Lexington refused to pay, asserting that the policies were tainted by this fraud. The investors thereupon sued Lexington in England in multiple actions, captioned *Hollywood Realisations Trust Limited* v. *Lexington Insurance Company and Others*, 2001 Folio No. 211/935 and *Law Debenture Trust Corporation (Channel Islands) Limited* v. *Lexington Insurance Company and JLT Risk Solutions Limited*, 2002 Folio No. 193. Lexington asserts that it spent millions of dollars to defend the suits and millions more to settle them (Complaint ¶ 5). Lexington now brings the instant action in order to seek, *inter alia*, recovery of these amounts from defendants, who (Lexington asserts) collectively constituted the architects and actors of the Flashpoint scheme.

*Connections of the Witnesses to the Case*

In addition to fraudulently obtaining sales estimates, the second piece of defendants' scheme was the misappropriation of funds. Flashpoint's use of monies obtained in the Hollywood Funding transactions was governed by various documents known as collateral agreements. These agreements prescribed certain permissible uses for the funds, and *inter alia*, required that the funds be segregated. Lexington asserts that defendants operated in flagrant disregard of these agreements.

A substantial part of defendants' misappropriations resulted from what Lexington asserts was at heart a pyramid scheme. A transaction known as Hollywood Funding No. 6 closed in December 1998, with defendants having raised money for six separate films or slates of films. Flashpoint was obligated to expend funds raised in the Hollywood Funding No. 6 transaction solely for the projects for which the funds were raised pursuant to the agreements noted above.

Lexington contends that Flashpoint, at the direction of defendants, did nothing of the sort. Throughout 1999, Flashpoint repeatedly expended Hollywood Funding No. 6 funds for projects that were entirely outside the scope of the transaction, including in numerous instances on films that were not produced by any of the producers that were the subject of the Hollywood Funding No. 6 transaction. In November 1999 Flashpoint ran out of money, and the scheme came crashing down, although plaintiff was unable to verify that this was what happened until it audited Flashpoint the following year. Between November 1999 and February 2001 defendants Forrest and Rogers attempted to cover up their wrongdoing by dressing up Flashpoint's books so that the misappropriations and misapplications of funds would not look so stark.

In or around 1998 or 1999, Flashpoint entered into an agreement with New City Productions, Inc. of Vancouver, British Columbia, via negotiations with New City's President and CEO Colleen Nystedt, to produce a slate of five films (the "New City slate") with money raised in the Hollywood Funding No. 6 transaction. For the duration of the relationship, Ms. Nystedt was New City's primary contact person with Flashpoint.

As described above, defendants' misappropriations doomed this effort from the outset. Rather than expend the Hollywood 6 funds for the New City slate, defendants unlawfully diverted the funds to other ends. Though it is not entirely clear, it appears that only one of the New City slate films was ever even made. For the duration of the relationship, Ms. Nystedt was New City's primary contact person with Flashpoint.

Due to New City's involvement as an intended beneficiary of the Hollywood Funding No. 6 transaction, their extensive involvement with defendants, and having been adversely affected by defendants' misappropriations, Lexington believes, based on the extensive documentary evidence in its possession and based on witness interviews that both New City Productions, Inc. and Ms. Nystedt are in possession of information that can be used at trial in the action before us.

WHEREAS, the evidence sought from New City Productions, Inc. and Ms. Nystedt is relevant to the matter now pending before this court; and

WHEREAS, this District Court has issued this Letter Rogatory with the attached document requests in Exhibit B upon New City Productions, Inc. and Ms. Nystedt; and while this

District Court would consider, in the absence of any specific objections, the information sought

by this Letter Rogatory to be within the parameters of Federal Rule of Civil Procedure 26, this

District Court has left the scope of documents to be produced and the testimony to be given to be

determined by the appropriate court in the Province of British Columbia; and

WHEREAS, the evidence is required in order that a just and speedy trial in this

matter may ensue and is necessary in the interests of justice to enable this District Court to de-

termine the issues pending before it; and

WHEREAS, according to Lexington, the evidence sought may be otherwise un-

available from any source within the United States of America.

WE, THEREFORE, REQUEST that in the interest of justice, you cause, by your

proper and usual process, New City to produce, at a time and place to be determined by you, for

the purposes of inspection and copying by a duly appointed representative of Lexington, all

documents as described in Exhibit B attached, or that such documents and/or photocopies thereof

be transmitted to us under cover duly sealed and addressed to the Clerk of the United States Dis-

trict Court, Eastern District of Pennsylvania, 601 Market Street, Room 2609, Philadelphia, PA

19106-1797, USA; and that the Ms. Colleen Nystedt be called, at a time and place to be deter-

mined by you, to give testimony under oath with respect to the matters described herein to be

used at trial, and that such testimony be recorded on videotape and by a stenographer and that

such video, audio, and written transcripts be transmitted to us under cover duly sealed and ad-

dressed to the Clerk of the United States District Court, Eastern District of Pennsylvania, 601

Market Street, Room 2609, Philadelphia, PA 19106-1797, USA, and we shall be ready and willing to do the same for you in a similar case when required.

WITNESS, Honorable Anita B. Brody Judge of the United States District Court for the Eastern District of Pennsylvania, this _____ day of January, 2005.

By the Court,

_____

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

      I, Michael E. Kunz, Clerk of Court of the United States District Court for the Eastern District of Pennsylvania, do hereby certify that the Honorable Anita B. Brody, whose name is signed to the accompanying pages, is now, and was at the time of the signing the same, a Judge for the United States District Court for the Eastern District of Pennsylvania.

      IN WITNESS WHEREOF, I have hereunto set the seal of the United States District Court for the Eastern District of Pennsylvania at the City of Philadelphia this ___ day of January, 2005

 

                                      _____
                                         Clerk of the Court

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

      I, Anita B. Brody, Judge of the United States District Court for the Eastern District of Pennsylvania, do hereby certify that Michael E. Kunz, whose signature is attached to the letter hereto annexed, was at the date thereof the Clerk of Court for the United States District Court for the Eastern District of Pennsylvania; that the official acts and doings of said Clerk are entitled to full faith and credit; and that the attestation to said letter of request was in due form of law. I further certify that the seal attached to said letter of request is the seal of this Court

      WITNESS my hand and seal of said Court in the City of Philadelphia on this __ day of January, 2005

_____
United States District Court Judge

EXHIBIT B

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF PENNSYLVANIA

LEXINGTON INSURANCE COMPANY,

                              Plaintiff,

    -against-

DAVID FORREST, T. BEAUCLERC ROGERS IV,
STANLEY MUNSON, MARTIN FINK, all
individually, and NEW BEGINNINGS ENTERPRISES
LLC, a California Limited Liability Company, and
TARLO LYONS, a partnership,

                              Defendants.

Civil Action No. 02-CV-4435
(Hon. Anita B. Brody)


**DOCUMENT REQUESTS**

The following are the document requests to be served on New City Productions, Inc.

## DOCUMENT REQUESTS

1.    All documents relating to any company with the word "Flashpoint" in its name.

2.    All documents relating to communications with any of the following:

        (a)    David Forrest

        (b)    T. Beauclerc Rogers IV

        (c)    Martin Fink

        (d)    Complete Film Corporation

        (e)    Any company with the words "New Beginnings" in its name

        (f)    Stanley Munson

        (g)    Tarlo Lyons, Solicitors

3.    Any documents relating to any actual or proposed slate of films to be produced with the assistance or involvement of Flashpoint known as the "New City 1 Slate."

4.    Documents sufficient to identify every motion picture (whether or not produced and/or completed) that is within the definition of the "New City 1 Slate,"

5.    All documents relating to any funds received or owing from any company with the word "Flashpoint" in its name.