## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY,<br><br>                           Plaintiff,<br><br>      - against –<br><br>DAVID FORREST, T. BEAUCLERC ROGERS IV,<br>STANLEY MUNSON, MARTIN FINK, all individually,<br>and NEW BEGINNINGS ENTERPRISES LLC, a<br>California Limited Liability Company, and<br>TARLO LYONS, a partnership,<br><br>                         Defendants. | Civil Action No. 02-CV-4435<br>(Hon. Anita B. Brody) |

## O R D E R

AND NOW, this _____ day of _____, 2005, upon consideration of the

Motion of Defendant Tarlo Lyons for Judgment on the Pleadings Pursuant to Federal Rule of

Civil Procedure 12(c), the accompanying Memorandum of Law in support thereof, the

accompanying Affidavit of John D. Gordan, III in support thereof, and any response thereto, it is

hereby

      ORDERED that the Motion for Judgment on the Pleadings is GRANTED.  It is further

      ORDERED that judgment shall be entered, with prejudice, in favor of Defendant, Tarlo

Lyons, and against Plaintiff on all counts of Plaintiff's Second Amended and Supplemental

Complaint.

                    BY THE COURT:


_____
J.

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

LEXINGTON INSURANCE COMPANY,

Plaintiff,

- against –

DAVID FORREST, T. BEAUCLERC ROGERS IV,
STANLEY MUNSON, MARTIN FINK, all individually,
and NEW BEGINNINGS ENTERPRISES LLC, a
California Limited Liability Company, and
TARLO LYONS, a partnership,

Defendants.

Civil Action No. 02-CV-4435
(Hon. Anita B. Brody)

---

**MOTION OF DEFENDANT TARLO LYONS FOR JUDGMENT ON THE PLEADINGS
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(C)**

Defendant Tarlo Lyons, by and through its undersigned counsel, hereby moves this Court,

pursuant to Federal Rule of Civil Procedure 12(c), for judgment on the pleadings, for the reasons set forth

in the accompanying Memorandum of Law and Affidavit of John D. Gordan, III, filed herewith.

Date: New York, NY
    January 25, 2005

Respectfully submitted,

MORGAN LEWIS & BOCKIUS LLP

By _____
John D. Gordan, III (pro hac vice)
Eugene F. Bannigan (pro hac vice)
John N. Thomas (pro hac vice)
101 Park Avenue
New York, NY 10178
212.309.6000

Thomas M. Kittredge (Pa. I.D. 04471)
Kenneth L. Racowski (Pa. I.D. 90514)
1701 Market Street
Philadelphia, PA 19103
215.963.5000

Attorneys for Defendant
Tarlo Lyons

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY,<br><br>                     Plaintiff,<br><br>- against –<br><br>DAVID FORREST, T. BEAUCLERC ROGERS IV,<br>STANLEY MUNSON, MARTIN FINK, all individually,<br>and NEW BEGINNINGS ENTERPRISES LLC, a<br>California Limited Liability Company, and<br>TARLO LYONS, a partnership,<br><br>                     Defendants. | Civil Action No. 02-CV-4435<br>(Hon. Anita B. Brody) |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANT
TARLO LYONS FOR JUDGMENT ON THE PLEADINGS
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(C)**

      Defendant Tarlo Lyons respectfully submits its memorandum of law in support of

its motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the

pleadings against plaintiff Lexington Insurance Company ("Lexington").

**I.      INTRODUCTION**

      Lexington's second amended and supplemental complaint (the "complaint"), the

operative pleading in this action, is a selectively drafted work of legal fiction by an accomplished

author.  It is in the nature of a historical novel, based only in a few respects on real facts:

          1.      There was a series of related companies called Flashpoint
during the relevant period that were involved in obtaining and
supplying financing for the production of motion pictures.

          2.      There were six "Hollywood Funding" transactions, as
alleged in ¶ 4 of the complaint.

     3.     Tarlo Lyons, an established firm of solicitors in London, and specifically Stanley Munson, a salaried partner there, were counsel for Flashpoint in the Hollywood Funding transactions.

The core accusation against Mr. Munson – that he was lax in acquiescing in the application of moneys in the Flashpoint Holding Account – was specifically made in Lexington's original complaint in this case, filed July 3, 2002, but, to their prejudice, Lexington named neither Mr. Munson nor Tarlo Lyons as parties until the present complaint filed in April, 2004. Except for vicarious liability for the purported wrongdoing of Mr. Munson, Tarlo Lyons is not claimed to have done anything wrong.

Paragraph 4 identifies the six Hollywood funding transactions and states: "Plaintiff was the insurer for the last three transactions (Hollywood Funding 4, 5 and 6); another insurer (HIH Casualty & General Insurance Ltd.) was insurer for the first three." The complaint necessarily seeks relief only on the Hollywood Funding 4, 5 and 6 transactions, although it freely pleads wrongdoing with respect to earlier Hollywood Funding transactions. (e.g., Complaint ¶¶ 27(b), 33(a) and (b)).

There is much more to the foundation of the story than Lexington lets on. Lexington is a wholly-owned subsidiary of American International Group ("AIG"), a very large, publicly-traded, highly profitable, prominent and recently notorious American insurance company. In the period when Flashpoint was active (1997-1999), the same kind of shortfall insurance for motion picture financing that Lexington sold could also be obtained in London from New Hampshire Insurance Co. ("New Hampshire"), another AIG subsidiary just like Lexington. New Hampshire was a participant in Hollywood Funding 1, 2 and 3 – though as a reinsurer, not a direct insurer. Despite that participation and the allegations of fraud in these

2

earlier transactions, neither New Hampshire nor AIG seeks any recovery for them; they are not suing Tarlo Lyons or the other defendants here or elsewhere.

AIG and New Hampshire make no claim to recover for Hollywood Funding 1, 2 and 3 because they benefited handsomely from what Lexington now claims here was a RICO violation of which it was a victim. Indeed, assuming the 10% premium identified in the UK Flashpoint opinions, the net premiums collected just by Lexington on the $186 million value (Complaint ¶ 4) of Hollywood Funding 4, 5 and 6 alone (which its complaint never refers to) approximate the amount of its purported damages.

HIH, the insurer referred to in the portion of ¶ 4 of the complaint quoted above, did pay the $31 million in insurance claims presented in the Hollywood Funding 1 and 2 transactions. However, when HIH claimed on its reinsurance from New Hampshire and two other reinsurers, these companies declined, claiming that HIH should have refused to pay those claims based on numerous grounds, including fraud: one such ground was a rigid application of the Jurassic doctrine of warranty – long since overruled by statute in more enlightened jurisdictions (e.g., N.Y. Insurance Law § 3106(b)), but on which the High Court and the Court of Appeal in England sustained New Hampshire, enabling it to retain the substantial reinsurance premiums it had collected for coverage it was allowed to walk away from.[1/] HIH has gone into insolvency. Nevertheless, HIH has made no claim against Tarlo Lyons or Mr. Munson on the grounds asserted by Lexington here with regard to the Hollywood Funding 1-3 transactions, even though HIH would be the real party in interest if Lexington's accusations had any merit.

---

[1/]    HIH Casualty & General Insurance Ltd. v. New Hampshire Insurance Co., [2001] 1 Lloyd's Rep 378, aff'd. [2001] EWCA Civ. 735. Copies of these decisions are attached hereto as Exhibits A and B. According to paragraph 5 of the first Court of Appeal decision, HIH's premiums were rated at 10% of the limit of the coverage. As a quota share reinsurer, New Hampshire should have received that amount less a small overrider paid to HIH.

3

## II.    **FACTUAL BACKGROUND**

The complaint alleges six counts against Tarlo Lyons:

Count 1.        Substantive RICO (18 U.S.C. § 1962(c))

Count 3.        RICO conspiracy (18 U.S.C. § 1962(d))

Count 4.        Common Law Fraud

Count 5.        Tortious Interference with Contract

Count 6.        Fraudulent Inducement

Count 7.        Tortious Interference with Contract

The damages claimed are expenses incurred by Lexington in defending and settling claims brought under the insurance policies Lexington issued on the Hollywood Funding 4, 5 and 6 transactions.

The gravamen of the complaint is in two core allegations.  First, it is claimed that defendants Forrest and Rogers misrepresented and fabricated the probable earnings of the films in all the Hollywood Funding transactions and two miscellaneous freestanding Flashpoint films, "The New Professionals" and "It Had to Be You".  There is no allegation that Tarlo Lyons or Munson had any role in, or knowledge of, this alleged wrongdoing, although the RICO "enterprise" and conspiracy allegations of the complaint seek to make them financially responsible for it nevertheless.

Second, Lexington claims against Mr. Munson and the other defendants personally, and against Tarlo Lyons vicariously, that in violation of Collateral Agreements – entered into between Lexington and Flashpoint as part of the documentation for each slate in the Hollywood Funding transactions – the proceeds of the financings were applied from the Holding Account to films and other Flashpoint motion picture activities outside the confines of the

4

specific slate to which each such Collateral Agreement applied. Here again New Hampshire's unidentified role as reinsurer in the Hollywood Funding 1-3 transactions creates a paradox in its affiliate's claim as victim: the bulk of the moneys the complaint identifies as having been subjected to such misuse were Hollywood Funding 1-3 funds (where New Hampshire, although exposed, was able to profit by avoidance of its reinsurance responsibilities) applied to Hollywood Funding 4-6 films, which mitigated Lexington's insurance exposure. (Complaint ¶ 33(a)(i) and (b)(i)).

The predicate felonies in the RICO counts are mail fraud and wire fraud (18 U.S.C. §§ 1341, 1343). These statutes are plainly relevant to the specific claim of misrepresentation of future film earnings Lexington levels at Rogers and Forest. However, the applicability of these statutes is not clear at all in relation to allegations the complaint makes against Munson and Tarlo Lyons. Specifically, the wrongdoing alleged is that Munson and Tarlo Lyons had "wrongfully authoriz[ed] and certif[ied] withdrawals of funds raised in the various Hollywood Funding transactions for purposes other than the projects to which they were dedicated...aware that such conduct was in breach of Flashpoint's contractual obligations...and each deliberately misled plaintiff as to such conduct." (Complaint ¶ 35). The complaint repeatedly characterizes defendants' alleged wrongdoing as "misappropriation" of the borrowed funds, obviously intending to imply an undesirable thing, but this alleged wrong is a species of misconduct unknown as such both to Title 18 of the United States Code and to the law of torts. An obvious reason is that Lexington cannot and does not contend that the supposedly "misappropriated" moneys were not Flashpoint's property: accordingly, the only breach "misappropriation" could be in this context is breach of contract.

What Lexington's claim comes down to is that financing from the Hollywood Funding 4, 5 and 6 transactions was used outside the specific film slates to which the financing and Collateral Agreements applied. This would be at most the breach of contract Lexington identifies (Complaint ¶ 35) if (1) Mr. Munson or Tarlo Lyons were a party to the Collateral Agreements, which they weren't; or (2) Mr. Munson or Tarlo Lyons had assumed responsibilities to Lexington some other way with regard to this use of the funds, which they hadn't; and (3) the Collateral Agreements contained such restrictions on the use of funds, which they didn't.[2/]  Even with a contract to which Tarlo Lyons was a party, Lexington's fraud claims would founder on the basic rule that: "A tort obligation is a duty imposed by law to avoid causing injury to others. It is 'apart from and independent of promises made and therefore apart from the manifested intention of the parties' to a contract (Prosser and Keeton, Torts § 92, at 655 [5th Ed.])." New York University v. Continental Ins. Co., 87 N.Y.2d 308, 316 (1995).

Finally, in taking an overview of the facts, the Court needs to recognize that, of the three Hollywood Funding transactions – 4, 5 and 6 – on which Lexington participated, the complaint only pleads misuse of the proceeds of Hollywood Funding 6 effectively. (¶ 33). Certain of the "misappropriations" are specifically attributed to Hollywood Funding 1-3 (¶ 33(a) and (b)), in which Lexington was not involved, and two "misappropriations" are specifically attributed to Hollywood Funding 6 (¶ 33(f) and (g)), in which Lexington participated. However, the other "misappropriations" (¶ 33(c), (d) and (e)) are each simply attributed to "the various Hollywood Funding financings" – as easily Hollywood Funding 1-3 as a later transaction – and

---

[2/]    Representative Collateral Agreements are annexed to the moving affidavit of John D. Gordan, III, submitted herewith, and are appropriately considered by the Court on the motion because of Lexington's extensive citation to, and quotation from, the Collateral Agreements in the complaint. Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004). There are variations in later versions.

thus the pleading is inadequate in these instances to state a claim on which Lexington can recover.

Last, all of the claims alleged are time barred. None of the transactions took place later than 1998, and the alleged "misappropriations" are not claimed to have taken place later than 1999. Lexington admits as much, because the complaint makes an ineffectual effort to claim fraudulent concealment and equitable tolling. (¶¶ 93-97).

## A.     The Collateral Agreements

Lexington's case against Tarlo Lyons and Mr. Munson depends entirely on its assertion that moneys in the Hollywood Funding 1-6 transactions were "misappropriated" by Flashpoint with Mr. Munson's acquiescence as a signatory on accounts established under Collateral Agreements. Although it is an essential element of Lexington's allegations of <u>mens rea</u> that the defendants were "simultaneously violating" the restrictions of the Hollywood Funding 1-3 "transactions" when negotiating the Collateral Agreements for Hollywood Funding 4, 5 and 6, that claim is part of the fiction of Lexington's complaint. Lord Justice Rix in the <u>HIH</u> appeal, cited in footnote 1 above, described the status of the Collateral Agreement for Hollywood Funding 1 as follows:

> 24. The collateral agreement (for the 7.23 slate) was not in fact executed as between HIH and Flashpoint until at least a year later. The document is headed "DATED with effect from the 3rd August 1998". That heading is by way of manuscript amendment of an original line which had read "DATED DECEMBER 1998". It is well possible therefore that the document was in fact executed even later than Aug 3, 1998. Despite the working inference that I am in general prepared to make regarding the availability of a contemporary draft of the collateral agreement as of July, 1997, the Court was not shown such a draft in the available bundles, and my personal attempt to find one has brought to light a draft attached to a Lloyd Thompson fax on July 17, 1997 (referred to there as the "Side Agreement") which is a very much less sophisticated document than the final executed version. That again indicates

7

> that it is impossible to proceed on the basis of any particular
> finding as to what was seen by any party at the time of binding any
> of the three insurance documents.

Lord Justice Rix's example – the 7.23 slate (Hollywood 1, according to ¶ 29(a) of the Complaint) – shows that contrary to Lexington's complaint, the Collateral Account for Hollywood Funding 1 was not negotiated until sometime after Hollywood Funding 5 (Complaint ¶ 4).

Annexed to the moving affidavit of John D. Gordan, III are the two Collateral Agreements applicable to Filmworks, one of the slates within Hollywood 5, chosen as a paradigm from Lexington's production. The funds pass from the investor pool to the Jersey Flashpoint company – Flashpoint Ltd. ("Flashpoint Jersey"). The Flashpoint Jersey – Lexington Collateral Agreement (at 3(1)) provides that the "Films budget portion of the Funds" – a term not among the defined terms of the document – "shall be immediately deposited in the Flashpoint Jersey Holding Account and in turn be paid by Flashpoint under the Flashpoint UK Purchase Agreement to Flashpoint UK."

Paragraph 4(1) of the Flashpoint UK-Lexington Collateral Account provides that the Films budget portion of the Funds, once received from Flashpoint Jersey as provided above, will be immediately placed on deposit in a bank account (the "Holding Account") opened and maintained by Flashpoint UK and on which a partner of Tarlo Lyons shall be a co-signatory for all cheques or other payment authorisations from such account. The only further provision respecting the "Holding Account" is paragraph 4(2):

> (2)    Flashpoint further undertakes to Lexington to procure that
> Tarlo Lyons will not release any funds from such Holding Account
> in relation to the principal photography of the Films unless and
> until the Principal Production Documents in relation to the Films
> have been substantially completed to the reasonable satisfaction of
> Lexington.

The "Films" are defined in the definition section as "includ[ing] 'Filmworks' series of films as a whole, and any and all films, or excerpts and episodes therein".

8

Paragraph 4 of the Lexington-Flashpoint UK Collateral Agreement then provides for the establishment of a Production Account, in which moneys are to be deposited when drawn out of the Holding Account in conformity with Paragraph 4(2), quoted above.[3/] Paragraphs 4(5) and 4(6) provide for the establishment of, and priorities of distribution from, a Collection Account for deposit of the Net Receivables, which are defined as the films' Revenues less Producer expenses.[4/]

---

[3/]  Production Account

    (3)    Upon drawdown of any monies from the Holding Account in accordance with sub-clause (2) above, such monies shall be paid into a production account opened for the benefit of Flashpoint by the Producer (the "Production Account").

    (4)    Flashpoint undertakes that withdrawals from the Production Account shall be made strictly in accordance with the Production and Finance Agreement, and the relevant budget and cashflow scheduled provided to Lexington.

[4/]  Collection Account

    (5)    Flashpoint undertakes to Lexington to:

        (a)    open and maintain the Flashpoint UK Collection Account being a specially designated trust account with Leopold Joseph of 29 Gresham Street, London EC2V 7EA in the name of Flashpoint UK for the purpose of receiving all Net Receivables and in turn transferring such Net Receivables into the Collection Account up to an aggregate amount of the Collection amount;

        (b)    procure that Tarlo Lyons will procure that there is opened and maintained a specially designated trust account with the Guernsey branch of Credit Suisse First Boston for the purposes of receiving from the Flashpoint UK Collection Account all Net Receivables (the "Collection Account") in the name of Flashpoint Jersey.

    (6)    The amount standing to the credit of the Collection Account shall be held on the following trusts:

        (a)    FIRST up to an amount in aggregate equal to the Collection Amount to Flashpoint Jersey to enable Flashpoint Jersey to pay such Collection Amount into the Escrow Account for the benefit of Hollywood Funding (No. 5) Limited in accordance with the terms of the Purchase Agreement;

        (b)    SECOND to Lexington to enable Lexington to recover monies due to Lexington under the terms of this agreement or the Flashpoint Jersey Collateral Agreement generally (including without limitation, amounts due to Lexington under Clauses 11 and 12);

(continued).

9

Paragraph 4(7) imposes the following obligations:

> (7)    Flashpoint undertakes to Lexington to procure that Tarlo
> Lyons will confirm in writing to the reasonable satisfaction of
> Lexington that Tarlo Lyons acknowledges its obligations under
> Clause 4(5) and (6) [the Collection Account] and confirms its
> intentions to comply with same.

Finally, Paragraph 4(9) provides Lexington with the following monitoring mechanism:

> Management of Accounts
>
> (9)    Flashpoint agrees to provide to Lexington (on a monthly
> basis) copies of all bank statements in relation to the Holding
> Account, Flashpoint Jersey Holding Account, Production Account,
> Collection Account, Flashpoint UK Collection Account and
> Escrow Account, together with a breakdown and reconciliation of
> monies paid and received, the payee/payer (as the case may be),
> and brief details of the reason for the payment or receipt, and
> agrees to provide such other information in relation to the accounts
> as Lexington may reasonably require.

## III.    ARGUMENT (Tarlo Lyons is Entitled to Judgment on the Pleadings)

### A.    Failure to State a Claim Upon Which Relief Can Be Granted

The foregoing background information greatly facilitates the Court's task in identifying the utter failure of Lexington's complaint to state a claim upon which it can be granted the relief it seeks.

#### 1.    Counts 6 and 7

Counts 6 and 7 allege fraudulent inducement and tortious interference with contract based on something Lexington bootstraps into calling "the Tarlo Lyons Representations", but which is nothing more than Paragraph 4(2) of the Collateral Agreement quoted at p. 8 above:

> (2)    Flashpoint further undertakes to Lexington to procure that
> Tarlo Lyons will not release any funds from such Holding Account
> in relation to the principal photography of the Films unless and

---

> (c)    THIRD, upon execution of all liabilities and obligations under the Policy and this
> agreement to Flashpoint absolutely.

10

> until the Principal Production Documents in relation to the Films
> have been substantially completed to the reasonable satisfaction of
> Lexington.

(Complaint ¶¶ 73, 82). Count Six treats this contractual language as a representation – which it is not, although there is a Representation and Warranty Section of the Lexington-Flashpoint UK Collateral Agreement which contains nothing about Tarlo Lyons.

Lexington also insinuates that this is a representation by Tarlo Lyons, christening it as such, when obviously, if it were a representation at all, it would be one by Flashpoint. The Flashpoint UK Collateral Agreement does contain Paragraph 4(7), dealing with the Collection Account, whereby Flashpoint was contractually required to obtain Tarlo Lyons' written undertaking to perform the contractually specified activities, but (1) there is no claim that Tarlo Lyons gave the undertaking; (2) violation of such an undertaking is a breach of contract, if it is anything, not a fraud; (3) the only undertaking by Tarlo Lyons concerned the Collection Account, and Lexington does not complain about the administration of Collection Account; and (4) the Holding Account is what Lexington is complaining about. (Complaint ¶¶ 42, 47(e), 73, 82). Paragraph 75 loads Munson with guilt "because, inter alia, in July 1997 Munson, acting on behalf of Flashpoint, negotiated the Collateral Agreement with respect to the Hollywood Funding No. 1 Transaction", when it is obvious from the quoted portion of Lord Justice Rix's opinion that the parties viewed the Collateral Agreement as so insignificant that more than a year later it was still in draft and unsigned.

The language of the "Tarlo Lyons Representations" Lexington relies on does not support Lexington's claim. Its only limitation on the use of the funds in the Holding Account is that they not be used for principal photography with regard to the films governed by the Collateral Agreement until the applicable contractual documents have been approved. There is no limitation on the use of the moneys in the Holding Account for pre-production costs for the

11

films which are the subject of the Collateral Agreement or for <u>any</u> <u>other</u> <u>purpose</u> separate from such films.  Lexington is trying to make a federal crime out of what would not have risen to a breach of contract had Mr. Munson or Tarlo Lyons been a party to the Collateral Agreements, which they were not.

2.    Count 5

This is another tortious interference claim, based on "misappropriation" of Flashpoint moneys to expenditures on "The Building/New Standard Post, Ice Storm and Russian Cinemas."  (Complaint ¶ 68).  Although the contracts interfered with are claimed to be the Collateral Agreements for Hollywood Fundings 4-6, (¶¶ 68-69), the detailed allegations with regard to the sources of the funds applied for those three purposes do not attribute the source to Hollywood Funding 4-6 but instead to "the Flashpoint account that contained the (improperly commingled) funds **raised in the various Hollywood Funding transactions**" (Complaint 33(c)(iii) and (e)(iii) (emphasis supplied).  Since these allegations fail to earmark the "misappropriated" funds to Hollywood Funding 4-6, in which Lexington participated, rather than Hollywood Funding 1-3, in which Lexington did not, Lexington has pleaded no injury, quite apart from the fact that Lord Justice Rix's opinion establishes that no "improper commingling" could possibly have occurred in the Hollywood Funding 1-3 transactions.  In any event, its claim here fails for the same reason as it did on Counts Six and Seven – what is pleaded does not make out a breach of the Collateral Agreement by Flashpoint.

12

3.    Counts 1 and 3

These are RICO counts.  The first count is a substantive count under 18 U.S.C.

§ 1962(c).  The third count is a conspiracy count under 18 U.S.C. § 1962(d).  The third count

subsumes the allegations not only of the first count but also of the second – pleaded against

Forrest and Rogers only under 18 U.S.C. § 1962(a), alleging that a portion of the racketeering

income they received was invested in The Building LLC and New Standard Post and that

Lexington has been injured financially by being forced to pursue creditor's remedies.

(Complaint ¶¶ 55-59).

(a)    The 1962(c) claim in Count 1

This claim is predicated on the mail and wire fraud statutes (18 U.S.C. §§ 1341,

1343) and the interstate transportation of fraudulently obtained goods statute (18 U.S.C. § 2314).

Lexington's 1962(c) claim is thus premised exclusively on fraud.  Under settled law in this

Circuit, all fraud claims, including RICO claims, must be pleaded with the particularity required

by Rule 9(b) of the Federal Rules of Civil Procedure.  Lum v. Bank of America, supra, 361 F.3d

at 223-24.  Lexington must "allege who made a misrepresentation to whom and the general

content of the misrepresentation."  See id. at 224; see also McLaughlin v. Anderson, 962 F.2d

187, 191 (2d Cir. 1992).  Lexington must also plead and prove reliance on the misrepresentation

alleged.  See Ideal Dairy Farms v. John Labatt, Ltd., 90 F.3d 737, 746-47 (3d Cir. 1996); see also

Moore v. Paine Webber, Inc., 189 F.3d 165, 169-73 (2d Cir. 1999); 18 U.S.C. § 1964(c).

From the shape of Lexington's pleading it seems that the "Tarlo Lyons

Representations" from Counts 6 and 7 are not a basis for the RICO claim.  If they were, they

would fail to support it for the reasons already discussed.  Otherwise, the Court will look in vain

for the identification in the RICO pleadings of any misrepresentations made by Stanley Munson

13

and thus, vicariously, by Tarlo Lyons. These counts are little changed from the original pleading filed by Lexington in July 2002, when only Mr. Forrest and Mr. Rogers were named, and this element may have been satisfied as to them by the laundry list of misrepresentations on film performance now transposed to ¶ 27 of the existing complaint. But neither Mr. Munson nor Tarlo Lyons are alleged to have had any part in, or knowledge of, that activity: the charge against them is that they acquiesced in Flashpoint's "misappropriation" of the proceeds from one Hollywood Funding deal for the purposes of another, or for other Flashpoint business purposes, which, as demonstrated above, is no fraud at all, much less federal criminal mail or wire fraud. Nowhere is there a single specific allegation that Mr. Munson or Tarlo Lyons misrepresented anything to anybody, much less to Lexington.

Similarly Lexington fails to plead reliance on any identifiable misrepresentation by Mr. Munson or Tarlo Lyons. This is hardly surprising, because as in <u>Ideal Dairy Farms</u>, the "misappropriations" complained of would be immediately apparent from the monthly statements and reconciliation to which Lexington was contractually entitled (see paragraph 4(9) of the Collateral Agreement, quoted above at page 10). Lexington's pleading is silent about these reports, but the facts can only be: (1) the reports misrepresented the true situation – something that Lexington would undoubtedly plead if it could and it has not; or (2) the reports disclosed what was happening, in which case Lexington has no fraud claim; or (3) Lexington never asked for the reports it was entitled to, or never looked at the ones it got, because its staff was entirely indifferent to the "misappropriations" – nothing more sinister than taking money from the wrong pocket for valid business reasons – which its lawyers have puffed up after the fact to federal criminal violations. In any event, the closest that Lexington ever gets to pleading reliance – even as to the alleged film performance misrepresentations that Munson or Tarlo Lyons were not

14

involved in – is the mere statement that "plaintiff justifiably relied on such misrepresentations" (Complaint ¶ 44) and "Had plaintiff known the truth" (Complaint ¶ 46), neither of which complies with Rule 9(b)'s requirement to specify who relied on what said by whom.[5]

A final RICO point is the requirement that the plaintiff plead the personal participation of each defendant in two racketeering acts injuring the plaintiff. See Eaby v. Richmond, 561 F. Supp. 131, 134 (E.D. Pa. 1983); Ronly, Ltd. v. Feingold, Civ. A. Nos. 88-7458, 89-8651, 1990 WL 187019, at *3 (E.D. Pa. Nov. 27, 1990); see also First Capital Asset Mgmt. v. Satinwood, 385 F.3d 159 (2d Cir. 2004). Here, in coopering Munson and Tarlo Lyons to its existing RICO claim, Lexington simply added subparagraph (e) to what is now paragraph 47:

> (e)     on information and belief, numerous faxes between defendant Fink in California and defendants Munson and Tarlo Lyons in the United Kingdom for the purpose of arranging for withdrawals from the Flashpoint holding account of the monies raised in the various Hollywood Funding transactions.

Such nonspecific allegations on information and belief do not meet the pleading requirements for the two predicate RICO felonies, particularly since, as noted several times before, Lexington was not involved in and has no standing to complain about Hollywood Funding 1, 2 and 3.

### (b)     The 1962(d) claim in Count 3

The present 1962(d) conspiracy claim is pleaded exactly as it was when the original complaint was filed against Forrest and Rogers alone in July 2002. It pleads two objects – the 1962(d) substantive violation alleged in the first count and the 1962(d) substantive

---

[5]     Lest the Court be skeptical that Lexington would be indifferent to the management of moneys in transactions in which it was ostensibly exposed for nearly $200 million, the proof at trial would show that, despite appearances, at the inception of each transaction, Lexington laid off all but a tiny percentage of the risks on other carriers by the use of reinsurance and was left with almost no economic interest.

violation pleaded in the second.  When Tarlo Lyons and the other defendants were added to the case in April 2004, they were named in the first count but not the second; there are no allegations against them that relate to the second count.  Hence, it is supposed that the dual objects pleaded in the conspiracy count relate to Forrest and Rogers alone, and only the first object to all other defendants except New Beginnings.

The general rule is that in a case such as this one, where the substantive 1962(c) violation pleaded is deficient, that deficiency requires dismissal of the 1962(d) conspiracy count as well.  In the rare instances where the 1962(c) count is well pleaded but the plaintiff can only show injury from conduct in furtherance of the conspiracy apart from the pattern of racketeering activity alleged, then in this Circuit a conspiracy claim under Section 1962(d) may still lie if the injury-causing conduct is a felony identified in Section 1961(1).  See Rehkop v. Berwick Healthcare Corp., 955 F.3d 285, 289-91 (3d Cir. 1996); see also Breslin v. Brainard, No. 01-CA-7269, 2003 WL 22351297, at *12 (E.D. Pa. Oct. 14, 2003).  However, here at least as to Mr. Munson and Tarlo Lyons because of the deficiencies on the underlying fraud claims, and potentially as to all defendants because of the inadequate pleading of reliance identified above, the case is governed by the general rule and Count 3 must be dismissed.

(c)    Count 4

This claim is disposed of by the discussion of fraud and reliance under the discussion of Count 1.

16

### B.  STATUTE OF LIMITATIONS

All of Lexington's state law claims are governed by the Pennsylvania Uniform Statute of Limitations on Foreign Claims Act, which applies the <u>shorter</u> of the foreign limitations period or the applicable Pennsylvania statute of limitations.  42 Pa. Cons. Stat. Ann. § 5521.

The Pennsylvania statute of limitations for common law fraud (Count 4) and fraudulent inducement (Count 6) is two years.  42 Pa. Cons. Stat. Ann. § 5524(7).  The Pennsylvania statute of limitations for tortious interference with contract (Counts 5 and 7) is two years.  42 Pa. Cons. Stat. Ann. § 5524(3).  These claims obviously accrued earlier than April 2002, which was two years prior to the filing of the complaint against Mr. Munson and Tarlo Lyons.  Lexington admits knowledge of the alleged fraud by the end of 2000.  (Complaint ¶ 95).

RICO claims (Counts 1 and 3) have a four-year statute of limitations.  <u>Agency Holding Corp. v. Malley-Duff Assocs.</u>, 483 U.S. 143, 152-156 (1987).  There is no question that even the <u>last</u> of the acts pleaded against any of the defendants was in 1999, more than four years before Mr. Munson and Tarlo Lyons were added to the complaint.  None of the possibilities for relation back under Rule 15(c) of the Federal Rules of Civil Proceedings apply – indeed, "Mr. Munson of Tarlo Lyons" was even identified by name in the original complaint (¶ 32(c)) filed July 2002 as someone defendants Forrest and Rogers knew "would certify any draw he was requested to certify, without regard to the propriety of the draw."

The current rule for the accrual of RICO claims in this Circuit is the "injury discovery rule" announced in <u>Forbes v. Eagleson</u>, 228 F.3d 471, 484 (3d Cir. 2000).  Under <u>Forbes</u> "a RICO claim accrues when 'plaintiffs knew or should have known of their injury.'"  <u>Mathews v. Kidder, Peabody & Co.</u>, 260 F.3d 239, 250-51 (3d Cir. 2001).  As noted earlier, Lexington had a contractual right under Section 4(9) of the Flashpoint UK – Lexington

Collateral Agreements to receive monthly reports which would have revealed all of the injurious "misappropriations" now claimed to have harmed Lexington.  In the paragraphs (¶¶ 93-96) devoted to "fraudulent concealment and equitable tolling" in the complaint there is no allegation, as there surely would be, that Flashpoint submitted falsified reports.  Therefore, it can only be the case that either (1) accurate reports were submitted or (2) the reports that Flashpoint was contractually bound to submit were not provided, a circumstance in itself more than sufficient to have led a sophisticated insurer to "recognize[] it as a storm warning" -- and Flashpoint as its source -- requiring immediate investigation and the diligence that Lexington admits it did not even initiate for two years.  Id. at 252.

Moreover, the opinion of Lord Justice Rix (at ¶¶ 47-49) in the Court of Appeal in the Hollywood Funding 1 and 2 cases, cited at footnote 1 above, establishes that HIH initiated litigation on its reinsurance on Hollywood Funding 1 against New Hampshire Insurance Co., Lexington's sister company, in late 1999, and against AXA on Hollywood Funding 1 and against New Hampshire and AXA on Hollywood Funding 2 in early 2000.  AXA's defense asserted bad faith misrepresentations by the broker in the placement.  Clearly, Lexington was on notice of at least the potential of fraud in the later Hollywood Funding transactions on which it participated.

As for equitable tolling, Lexington offers an explanation of its inability to discover the alleged misrepresentations regarding film performance (Complaint at ¶ 96), but this aspect of the claim does not involve Mr. Munson or Tarlo Lyons.  The only justification for Lexington's failure to discover the "misappropriations" of which it complains is its bald assertion that:  "Defendants' frauds and other misconduct were inherently self-concealing." (Complaint ¶ 93).  Not only is this naked assertion light years away from what it is Lexington's burden to establish to claim the benefit of equitable tolling, Forbes, supra, 228 F.3d at 487, the

18

Collateral Agreements, which are crucial to Lexington's fraud claim, prove that the opposite is true.

## IV.    **CONCLUSION**

For the foregoing reasons, Defendant Tarlo Lyons respectfully requests that its motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure be granted.

Date: New York, NY
     January 25, 2005

Respectfully submitted,

MORGAN LEWIS & BOCKIUS LLP

By: _John D. Gordan, III_

John D. Gordan, III  (pro hac vice)
Eugene F. Bannigan  (pro hac vice)
John N. Thomas  (pro hac vice)
101 Park Avenue
New York, NY  10178
(212) 309-6000

Thomas M. Kittredge  (Pa. I.D.  04471)
Kenneth L. Racowski  (Pa. I.D.  90514)
1701 Market Street
Philadelphia, PA 19103
215.963.5000

Attorneys for Defendant
    Tarlo Lyons

19

## CERTIFICATE OF SERVICE

I, Kenneth L. Racowski, do hereby certify that on this date, I caused copies of the

following:  (1) Motion of Defendant Tarlo Lyons for Judgment on the Pleadings Pursuant to

Federal Rule of Civil Procedure 12(c); (2) Memorandum of Law in Support of the Motion of

Defendant Tarlo Lyons for Judgment on the Pleadings Pursuant to Federal Rule of Civil

Procedure 12(c); (3) Affidavit of John D. Gordan, III in Support of Motion of Defendant Tarlo

Lyons for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c); and (4)

(Proposed) Order to be served upon counsel as follows:

### VIA HAND DELIVERY

Jeffrey R. Lerman, Esq.
Glenn F. Rosenblum, Esq.
Montgomery McCracken
  Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA 19109

### VIA FEDERAL EXPRESS (overnight delivery)

Edward P. Krugman, Esq.
Kevin J. Burke, Esq.
Ira J. Dembrow, Esq.
Cahill Gordon & Reindel
80 Pine Street
New York, NY 10005

Edward M. Dunhan, Jr., Esq.
Shannon Hampton Sutherland, Esq.
Duane Morris LLP
One Liberty Place
Philadelphia, PA  19103

James J. Rohn, Esq.
Nicholas M. Centrella, Esq.
Kevin Dooley Kent, Esq.
Conrad O'Brien Gellman & Rohn PC
1515 Market Street, 16th Floor
Philadelphia, PA 19102

Alexander Kerr, Esq.
Stephen P. McFate, Esq.
McCarter and English, LLP
1735 Market Street, Suite 700
Philadelphia, PA 19103

Charles A. Adamek, Esq.
Beverly Y. Lu, Esq.
Lord Bissell & Brook LLP
300 South Grand Avenue, Suite 800
Los Angeles, CA  90071

Neil G. Epstein, Esq.
Eckert Seamans Charin & Mellott, LLC
1515 Market Street, 9th Floor
Philadelphia, PA  19102

Sanford I. Michelman, Esq.
Mora Z. Hanna, Esq.
Jeffrey D. Farrow, Esq.
Michelman & Robinson LLP
4 Hutton Centre, Suite 300
Santa Ana, CA  92707

Conrad O. Kattner, Esq.
McShea Tecce  P.C.
Mellon Bank Center
1735 Market Street, 16th Floor
Philadelphia, PA 19103

Kenneth L. Racowski

Dated:  January 25, 2005

1-PH/2146774.1