UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

<table>
<tr><td>

LEXINGTON INSURANCE COMPANY,

Plaintiff,

- against -

DAVID FORREST, T. BEAUCLERC ROGERS IV,
STANLEY MUNSON, MARTIN FINK, all individually,
and NEW BEGINNINGS ENTERPRISES LLC, a California
Limited Liability Company, and TARLO LYONS, a
partnership,

Defendants.
</td><td>

Civil Action No. 02-CV-4435
(Hon. Anita B. Brody)

**DECLARATION OF
EDWARD P. KRUGMAN IN
OPPOSITION TO THE
MOTIONS FOR JUDGMENT
ON THE PLEADINGS OF
DEFENDANTS STANLEY
MUNSON AND TARLO LYONS**
</td></tr>
</table>

EDWARD P. KRUGMAN declares under penalty of perjury pursuant to 28 U.S.C.
§ 1746 as follows:

1.    I am a member of the law firm of Cahill Gordon & Reindel LLP and am

admitted *pro hac vice* in this action as counsel for plaintiff, Lexington Insurance Company.

Messrs. Jeffrey Lerman and Glenn Rosenblum, of Montgomery, McCracken, Walker & Rhodes

LLP, are also counsel for Lexington herein.

2.    I make this Declaration to put before the Court the documents referred to in

Lexington's Memorandum of Law in opposition to the motions for judgment on the pleadings of

defendants Stanley Munson and Tarlo Lyons.

3.    Attached as Exhibit A is a true and correct copy of the Collateral Agreement

relating to the six films known as the Regent Project, between Lexington and Flashpoint Limited,

dated August 3, 1998, set forth at LEX-01 180326-48.

4.    Attached as Exhibit B are true and correct copies of four drawdown certificates with respect to motion picture films that were part of the Regent I slate, set forth at LEX-01 157876-77, LEX-01 157898-99, LEX-01 157900-01, LEX-01 157946-47.

I declare under penalty of perjury that the foregoing is true and correct, and that this Declaration was executed on February 7, 2005.

Edward P. Krugman

# EXHIBIT A

DATED 03 ~~July~~ *August* 1998

*Ince & Co.*

(1) LEXINGTON INSURANCE COMPANY
(2) FLASHPOINT LIMITED

---

**COLLATERAL AGREEMENT**
relating to the six films known as the Regent Project

---

Ince & Co
Corporate Insurance Group
Knollys House
11 Byward Street
London  EC3R 5EN

Tel:  0171 623 2011
Fax:  0171 623 3225
Ref:  DC/NA/224/629

#324496

LEX-01 180326

**THE AGREEMENT** is made the    *03*    day of July 1998    *August*

**BETWEEN:**

(1)    **LEXINGTON INSURANCE COMPANY** whose registered office is at 1 Alico Plaza, 6 Kings Street, Wilmington, Delaware 19801, USA ("Lexington"); and

(2)    **FLASHPOINT LIMITED** of Second Floor, Elizabeth House, 11 Castle Street, St. Helier Jersey, JE2 3RT ("Flashpoint").

## RECITALS

(A)    Words and expressions used in these Recitals shall bear the meaning set out in Clause 1 below.

(B)    Flashpoint is in the process of investment in the six (6) films known as the Regent Project). Flashpoint will enter into the Purchase Agreement with Hollywood Funding No. 5 Limited whereby, in consideration of Hollywood Funding No. 5 Limited providing funds in the sum of at least US$16,220,000 to Flashpoint in connection with the Regent Project, Flashpoint has agreed to make a payment of the Collection Amount on the last day of the Policy Period.

(C)    Lexington has agreed to issue the Policy in favour of Law Debenture Trust Corporation (Channel Islands) Limited as collateral for certain risks arising in relation to the Regent Project upon certain assurances made by Flashpoint, and has agreed to appoint Flashpoint (UK) Limited ("Flashpoint UK") as its agent for the purposes of managing the risks contained within the Policy upon the terms of this agreement.

**IT IS AGREED** as follows-

1.    **DEFINITIONS**

(1)    Except as expressly provided otherwise in this agreement, the following words and expressions shall bear the following meanings:-

| Word or Expression | Meaning |
|---|---|
| "Business Day" | a day (other than a Saturday or Sunday) on which the banks are generally open for |

#324496

**LEX-01 180327**

business in both Guernsey and New York City;

"Claim"    any claim paid by Lexington under the Policy;

"Collection Account"    the trust account opened by Flashpoint (Account No. 15099) with the Guernsey branch of Credit Suisse First Boston

"Collection Amount"    the US Dollar amount being equal to the lesser of :-

(i)    US $26,000,000 ; and

(ii)    the balance (if any) standing to the credit of the Collection Account as at the close of business on the second business day immediately prior to the last day of the Policy Period;

"Completion Bond"    the benefit of the completion guarantee(s) taken out with The Motion Picture Bond Company Inc. and/or any insurance policy relating to such completion guarantee;

"Escrow Account"    the trust account opened by Flashpoint (Account No. 15103 ) for the benefit of Law Debenture Trust Corporation (Channel Islands) Limited with the Guernsey branch of Credit Suisse First Boston;

"Exploitation"    any exploitation of any of the Film Materials or any Film Rights, including, without limitation, any merchandising, marketing, sales, showings, licences, distributions or any form of Film or other media performances of the Films ;

"Films"    includes the Regent state of Films as a whole and any and all of the Films, excerpts and episodes therein;

"Film Materials"    in respect of the Films , including all literary, dramatic, artistic and musical material (including any commentary), in all or any media (incorporated or synchronised with or otherwise forming part of such

#324496#324332#324332

- 2 -

LEX-01 180328

|  | Films  or produced for the purposes thereof), and any and all sound recordings included in the soundtrack of the Films , and any or all excerpts from sound recordings or other films/television incorporated in the Film , and all negative and positive materials produced in connection with the Films ; |
|---|---|
| "Film Rights" | any and all rights of copyright and design right, and all other intellectual or industrial property rights wherever situated, and howsoever and whenever arising in relation to the Films  and Films  Materials in whatever state they may be in from time to time, together with the sole and exclusive rights to distribute, exhibit, broadcast and otherwise howsoever turn any of them to account; |
| "Flashpoint UK Collateral Agreement" | the Collateral Agreement of today's date between Flashpoint UK (1) and Lexington (2) relating to the Regent Project |
| "Flashpoint UK Collection Account" | the trust account to be opened by Flashpoint UK (Account No. 41538002) with Leopold Joseph; |
| "Flashpoint Jersey Holding Account" | the account to be opened by Flashpoint (Account No. 41539001) with Leopold Joseph; |
| "Flashpoint UK Purchase Agreement" | an agreement to be entered into between Flashpoint and Flashpoint (UK) Limited in relation to the Regent Project; |
| "Insurance Policies" | including, but not limited to (a) those policies which are being taken out by Regent and referenced in The California Charge; (b) those policies which are being taken out by Flashpoint or Flashpoint UK in relation to any or all the Films and (c) those policies which are subject to the Flashpoint Charge; |
| "Net Receivables" | the Revenues less only those amounts properly payable to the Producer in accordance with Clause 7.2; |

- 3 -

#324496#324332#324332

LEX-01 180329

| | |
|---|---|
| "Policy" | the pecuniary loss indemnity policy to be issued by Lexington in favour of Law Debenture Trust Corporation (Channel Islands) Limited; |
| "Policy Period" | the policy period stated in the Policy; |
| "Producer" | the producer of the Film being Regent Entertainment Partnership L.P. |
| "Purchase Agreement" | an agreement of today's date entered into between Flashpoint and Hollywood Funding No. 5 Limited; |
| "Revenues" | all Film, television and box-office receipts or takings, or other monies, profits, gains, receivables, and choses in action for each of them, arising from any Exploitation; and |
| "Tarlo Lyons" | Tarlo Lyons, solicitors, of Watchmaker Court, 33 St John's Lane, London EC1M 4DB. |

(2)    In this agreement, unless the context otherwise requires:-

(a)    words importing the singular shall include the plural (and vice versa);

(b)    references to a person includes a company, corporation or unincorporated body of persons; and

(c)    clause headings are for ease of reference only, and shall not affect the interpretation of this agreement.

(3)    The Schedules shall be a part of this agreement.

## 2.    COMMENCEMENT AND TERM

(1)    This agreement shall become effective on the date of this agreement.

(2)    Subject to the provisions of Clause 15 entitling early termination of this agreement, this agreement shall terminate on the later of:-

(a)    the extinction of all risks under the Policy; and

a324486a324332a324332

- 4 -

LEX-01 180330

(b)    the fulfilment of all of its obligations to Lexington under this agreement, and by Flashpoint UK to Lexington under the Flashpoint UK Collateral Agreement.

3.    **CONTROL OF FUNDS**

Holding Account

(1)    Flashpoint undertakes to Lexington that the Film budget portion of the funds (being (US$16,220,000)) provided by Hollywood Funding (No. 5) Limited under the Purchase Agreement to Flashpoint shall be immediately deposited in the Flashpoint Jersey Holding Account and in turn be paid by Flashpoint under the Flashpoint UK Purchase Agreement to Flashpoint UK.

Collection Account

(2)    Flashpoint undertakes to Lexington to procure that Tarlo Lyons will procure that there is opened and maintained a specially designated trust account with the Guernsey branch of Credit Suisse First Boston for the purposes of receiving from Flashpoint UK all Net Receivables (the "Collection Account") in the name of Flashpoint.

(3)    The amount standing to the credit of the Collection Account shall be held on the following trusts:-

(a)    FIRST an amount in the sum of the Collection Amount to Flashpoint to enable Flashpoint to pay the Collection Amount into the Escrow Account for the benefit of Hollywood Funding No. 5 Limited in accordance with the terms of the Purchase Agreement;

(b)    SECOND to Lexington to enable Lexington to recover monies due to Lexington under the terms of this agreement generally (including without limitation, amounts due to Lexington under Clauses 9 and 10 below), and under the Flashpoint UK Collateral Agreement;

#324496#324332#324332

- 5 -

LEX-01 180331

(c)  THIRD, upon extinction of all liabilities and obligations under the Policy and this agreement (other than the obligation in Clause 10 hereof) to Flashpoint UK absolutely.

(4)  Flashpoint undertakes to Lexington to procure that Tarlo Lyons will confirm in writing to the reasonable satisfaction of Lexington that Tarlo Lyons acknowledges its obligations under Clause 3(2) and confirms its intention to comply with same.

(5)  Lexington acknowledges Flashpoint's obligations to pay the Collection Amount from the Collection Account to the Escrow Account in accordance with Clause 4.1 of the Purchase Agreement, and Lexington confirms that Flashpoint shall be entitled to make withdrawals for such purpose only. Subject to this entitlement only, Flashpoint undertakes to ensure that no payments shall be made from the Collection Account without Lexington's prior written consent.

Management of Accounts

(6)  Flashpoint agrees to provide to Lexington (on a monthly basis) copies of all bank statements in relation to the Collection Account, Flashpoint Jersey Holding Account and the Escrow Account, together with a breakdown and reconciliation of monies paid and received, the payee/payer (as the case may be), and brief details of the reason for the payment or receipt, and agrees to provide such other information in relation to the accounts as Lexington may reasonably require.

4.  **INVESTMENT IN THE FILMS**

Flashpoint undertakes to Lexington to use the finance provided by Hollywood Funding No. 5 Limited for the provision of funds to Flashpoint UK in accordance with the Flashpoint UK Purchase Agreement only for funding the production of the Films by the Producer, and for no other purpose.

- 6 -

LEX-01 180332

5.    **COLLECTION OF REVENUES AND NET RECEIVABLES**

(1)    Subject to the terms of this agreement, Lexington acknowledges that Flashpoint shall be responsible for holding the Net Receivables in respect of the Exploitation as trustee upon the trusts set out in Clause 3(3) above, which appointment Flashpoint accepts.

(2)    In relation to the conduct and management of the collection of Revenues:-

 (a)    Flashpoint shall keep Lexington advised of the progress and handling of the collection of Revenues, and shall provide Lexington with sufficient details to enable Lexington to evaluate its exposure and liability under the Policy from time to time; and

 (b)    if at any stage either litigation or other dispute shall arise in relation to the Revenues, or part of the Revenues, or the amount of any withholding or deduction from the Revenues, Flashpoint shall immediately inform Lexington, and Flashpoint shall not embark upon any course of action to be followed in relation thereto without the prior written consent of Lexington (such consent not to be unreasonably withheld); and

 (c)    Flashpoint shall not agree any compromise or settlement of any litigation or dispute in relation to the Revenues or the amount of any withholding or deduction from the Revenues without the prior written consent of Lexington (such consent not to be unreasonably withheld).

(3)    Flashpoint will, free of charge, furnish Lexington promptly with such information, correspondence, reports, data and other papers and documentation as Lexington may reasonably request in relation to the collection of Revenues and Net Receivables.

(4)    To the extent monies are received or receivable by Flashpoint, Flashpoint shall issue irrevocable instructions and authorisations to all distributors and sales agents to pay all Revenues arising from the Exploitation of the Films and Films Rights (net only of fees properly due to the distributors or sales agents in accordance with their relevant agreements in relation to the distribution of the Films , but without other deduction withholding or set-off except for lawfully deducted withholding tax) into the Collection Account.

#324496#324332#324332

- 7 -

**LEX-01 180333**

(5)    Flashpoint shall pay immediately on receipt from Flashpoint UK or otherwise all Revenues arising from the Exploitation of the Films into the Collection Account (net only of such amounts as shall be agreed in writing by Lexington from time to time, but without other deduction, withholding or set-off except for lawfully deducted withholding tax).

6.    **REPRESENTATIONS AND WARRANTIES OF FLASHPOINT**

Flashpoint makes the representations and warranties set out in paragraphs (a) to (j) below, and acknowledges that Lexington has entered into this agreement and the Policy in reliance on those representations and warranties:

(a)    it is a company duly incorporated under the laws of Jersey with power to enter into this agreement, the Purchase Agreement and the Flashpoint Purchase Agreement and to exercise its rights and perform its obligations under each of them, and all corporate and other action required to authorise its execution of this agreement, the Purchase Agreement and the Flashpoint UK Purchase Agreement and its performance and its obligations under them has been or will be duly taken;

(b)    the obligations expressed to be assumed by it in this agreement, the Purchase Agreement and the Flashpoint UK Purchase Agreement are or will be legal and valid obligations binding on it in accordance with their respective terms;

(c)    its execution of this agreement, the Purchase Agreement and the Flashpoint UK Purchase Agreement and its exercise of its rights and performance of its obligations under such agreement(s), do not and will not:-

(i)    conflict with any agreement, mortgage, bond or other instrument or treaty to which it is a party or which is binding upon it or any of its assets;

(ii)    conflict with its constitutive documents and rules and regulations; or

(iii)    conflict with any applicable law, regulation or official or judicial order;

a324496a324332a324332

- 8 -

JLT 7          124

LEX-01 180334

(d) all acts, licences, consents, exemptions, registrations, conditions and things required to be done, fulfilled and performed in order:-

    (i) to enable it lawfully to enter into, exercise its rights under and perform and comply with the obligations expressed to be assumed by it in this agreement, the Purchase Agreement and the Flashpoint UK Purchase Agreement; and

    (ii) to ensure that the obligations expressed to be assumed by it in this agreement, the Purchase Agreement and the Flashpoint UK Purchase Agreement are or will be legal, valid and binding; and

    (iii) to make this agreement, and the Purchase Agreement admissible in evidence in Jersey and England,

have been or will be done, fulfilled and performed;

(e) there are no charges, debentures, mortgages, pledges, liens, encumbrances or other agreements or arrangements creating a security interest over or in respect of the whole or any part of the assets, property or undertaking of Flashpoint;

(f) in any proceedings taken in Jersey or England in relation to this agreement, the Purchase Agreement and the Flashpoint UK Purchase Agreement, it will not be entitled to claim for itself or any of its assets immunity from suit, execution, attachment or other legal process;

(g) under the laws of Jersey or England in force at today's date, it is not necessary that this agreement, the Purchase Agreement or the Flashpoint UK Purchase Agreement, be recorded or enrolled with any court or other authority in such jurisdiction or that any stamp, registration or similar tax be paid on or in relation to this agreement;

(h) it has fully and accurately disclosed to Lexington in respect of the Policy all information which is material to the consideration of the risks forming the Policy, or to the terms, conditions and exclusions contained in the Policy;

a324496a324332a324332

- 9 -

LEX-01 180335

(i)    it has not taken any corporate action nor have any other steps been taken or legal proceedings been started or (to the best of its knowledge and belief) threatened against it for its winding-up, dissolution, administration or re-organisation or for the appointment of the Viscount or a receiver, administrator, administrative receiver, trustee or similar officer of it or of any or all of its assets or revenues; and

(j)    it will have no outstanding obligations or liabilities to Regent Entertainment Partnership L.P. or Regent Entertainment Inc. after execution of the Production and Finance Agreement between Flashpoint UK and Regent Entertainment Partnership L.P.

## 7.    COVENANTS OF FLASHPOINT

(1)    Flashpoint covenants and undertakes with Lexington that until Flashpoint shall have discharged its obligations and duties under this agreement and the Flashpoint UK Collateral Agreement it will:-

(a)    furnish to Lexington:-

(i)    within 90 days of the end of Flashpoint's financial year, copies of its yearly audited consolidated financial statements prepared in accordance with general accepted accounting principles and bases consistently applied (save to the extent of changes in those generally accepted accounting principles and bases) together with explanations of any significant variances between the budgets and forecasts referred to in sub-paragraph (ii) below and the position and the results shown in such financial statements;

(ii)    copies of annual budgets and forecasts for Flashpoint as soon as the same shall become available and in any event no later than 30 days prior to the commencement of each financial year of Flashpoint;

(iii)    such other financial or other information concerning Flashpoint as Lexington may from time to time reasonably require;

JLT 7            126            LEX-01 180336

(b)    not without the prior written consent of Lexington, create or extend or permit to arise or subsist any security interest of any kind (including any debenture, charge, mortgage, pledge or encumbrance) over the whole or any part of its undertaking, property, assets or revenues in respect of the Regent Project and Flashpoint warrants to Lexington that no such prior security interest(s) subsist;

(c)    not:-

    (i)    without the prior written consent of Lexington, sell, transfer, assign, lease, lend or otherwise dispose of or part with possession or the ownership of the whole or any part of its present or future business or undertaking or its property or assets (whether in a single transaction or in a Film of transactions whether related or not) other than in the ordinary course of its business;

    (ii)    make or permit (without the prior written consent of Lexington) any substantial change in the scope or nature of its business;

(d)    do anything which could prejudice Flashpoint's or Lexington's interest under either the Insurance Policies or the Completion Bond;

(e)    fully comply with and hereby agrees to bound by the terms of Purchase Agreement and the Flashpoint UK Purchase Agreement;

(f)    obtain a legal opinion from its Jersey Lawyers wherein such lawyers opine that this agreement, the Purchase Agreement and the Flashpoint UK Purchase Agreement are enforceable and valid substantially in the form attached in Schedule 1;

(g)    not without the prior written consent of Lexington, amend its memorandum and articles of association or other constitutional documentation in any way which might adversely affect the ability of Flashpoint to perform its obligations under this agreement, the Purchase Agreement and the Flashpoint Jersey Purchase Agreement;

(h)    not (without the prior written consent of Lexington) deal with its Revenues otherwise than in the ordinary course of getting in and realising the same in

#324496#324332#324332

- 11 -

accordance with the terms of this agreement, which expression shall not include or extend to the selling or assigning or in any other way factoring or discounting of any of such Revenues or otherwise;

(i)    not enter into or maintain any guarantee or indemnity or assume any contingent liability in respect of the obligations of any other company or person; and

(j)    not to permit, procure or cause any interim dealing with the Collection Account monies that stand from time to time to the credit of the Collection Account or interest (if any) accrued thereon without the prior written consent of Lexington.

(2)    Flashpoint undertakes that it will forthwith assign to Flashpoint UK the benefit of all completion bonds issued in favour of and other insurances taken out by Flashpoint in relation to all or any of the Films.

## 8.   UNDERTAKINGS OF FLASHPOINT

Flashpoint, for itself and each of its officers and employees, undertakes that it will not:-

(a)    pledge, or purport to pledge Lexington's credit in any way;

(b)    misrepresent expressly or by implication, the meaning, application or effect of the Policy;

(c)    undertake or perform any wrongful or unlawful act or omission when carrying out or purporting to carry out its duties and obligations under this agreement;

(d)    waive or exercise, or purport to waive or exercise, any rights Lexington may have in respect of the Policy or in relation to a Claim, or any rights of subrogation or recovery arising from such Policy, this agreement, the Purchase Agreement and Flashpoint Jersey Purchase Agreement.

- 12 -

LEX-01 180338

9.    **RECOUPMENT**

(1)    Flashpoint acknowledges that under Clause 11 of the Flashpoint UK Collateral Agreement ("Recoupment"), if there is a Claim, Lexington shall receive from Flashpoint UK out of Net Receivables received from time to time after the end of the Policy Period an amount in aggregate equal to such Claim and that payment of such amount shall be made by Flashpoint UK to Lexington immediately upon receipt of the Net Receivables on a reducing balance basis.

(2)    Notwithstanding sub-clause (1), if there is a breach by Flashpoint of any of its obligations or duties under this agreement, the Purchase Agreement and the Flashpoint UK Purchase Agreement and such breach gives rise to a Claim under the Policy, then Flashpoint shall indemnify and hold harmless Lexington from all losses, liabilities, costs, claims and expenses (including reasonable legal costs and expenses) Lexington may suffer directly as a result of such breach.

(3)    The rights and remedies provided in this agreement are cumulative and not exclusive of any rights or remedies otherwise provided by law unless expressly stated.

10.    **ADDITIONAL PREMIUM**

Flashpoint acknowledges Flashpoint UK's obligations under Clause 12 ("Additional Premium") of the Flashpoint UK Collateral Agreement and undertakes to perform honour, observe and fulfil to the extent necessary such Clause and procure that Flashpoint UK performs honours, observes and fulfils in full the terms of such Clause.

11.    **GOOD FAITH**

Flashpoint and Lexington acknowledge that this agreement, the Purchase Agreement and the Flashpoint UK Purchase Agreement have been entered into for the purposes of managing the risks contained in the Policy and it is the parties' intention that utmost good faith shall be the essence of the relationship between them, and in the interpretation and effect of this agreement and in the negotiation and placement of the Policy.

#324496#324332#324332

- 13 -

LEX-01 180339

12.    **AUDITS**

(1)    Lexington may at its expense undertake an audit of Flashpoint in connection with this agreement at any time on reasonable prior notice, and its representatives may attend at any office of Flashpoint for this purpose.

(2)    Flashpoint will co-operate fully with an audit and supply such reasonable information, data and records as may be requested by Lexington or its representatives.

(3)    Flashpoint shall provide Lexington, and any regulatory body governing Lexington (including HM Treasury) with reasonable access to the records and data of Flashpoint including, inter alia, facilitating entry to computer systems.

13.    **NOTIFICATION**

Flashpoint shall notify Lexington immediately by telephone or facsimile, and in writing on the occurrence of any of the following coming within its knowledge:-

(a)    change of business address or senior management of Flashpoint;

(b)    Flashpoint or Flashpoint UK becomes insolvent, ceases or threatens to cease to trade, has an administrator, administrative receiver or receiver (or any analogous person) appointed, goes into liquidation, or provisional liquidation or is otherwise unable to pay its debts within the meaning of Section 223 of the Insolvency Act 1986 (or analogous legislation in relation to each of them);

(c)    a meeting of creditors is convened or any composition or arrangement for the benefit of creditors is proposed or entered into by Flashpoint or Flashpoint UK, or a petition is presented or a meeting is convened for the purpose of considering a resolution, or analogous proceedings are taken, for its winding up save in the course of a reconstruction, amalgamation or reorganisation;

(d)    if any judgment is entered against Flashpoint or Flashpoint UK and is not satisfied or discharged within 14 days;

(e)    if a distress or execution shall be levied or enforced upon or sued out against the whole or any part of the property of Flashpoint or Flashpoint UK and shall not be paid within 48 hours.

- 14 -

LEX-01 180340

14.    **EVENTS OF DEFAULT**

The following shall constitute Events of Default for the purposes of this agreement:-

(a)    Flashpoint shall commit a material breach of any of its obligations under this agreement, the Purchase Agreement or the Flashpoint UK Purchase Agreement and shall fail to remedy the same within twenty-eight (28) days after notice in writing specifying the breach or requiring the same to be remedied; or

(b)    Flashpoint shall suspend or cease to carry on business, or suspend payment of its debts or fail to pay, upon execution being levied therefor, any judgment debt in full; or

(c)    Flashpoint shall suffer the appointment of the Viscount or a receiver, administrator, liquidator, provisional liquidator or administrative receiver (or any comparative appointee anywhere in the world); or

(d)    an order shall be made, or an effective resolution passed for the winding-up of Flashpoint; or

(e)    any of the senior management of Flashpoint shall become subject to material disciplinary proceedings instituted by any disciplinary, professional or regulatory organisation or body; or

(f)    Flashpoint shall be in breach of its obligations to pay the Net Receivables into the Collection Account, and Flashpoint shall fail to remedy such breach after Lexington shall, serve notice in writing upon Flashpoint specifying the breach and requiring the same to be remedied; or

(g)    Flashpoint UK shall be in breach of any of its obligations under the Flashpoint UK Purchase Agreement or the Flashpoint UK Collateral Agreement.

15.    **EFFECT OF DEFAULT**

(1)    If an Event of Default shall occur, and subject to the rights of any guarantor of completion of the Films and without prejudice to all or any other rights and remedies

a324496a324332a324332

- 15 -

LEX-01 180341

of Lexington under this agreement, Lexington may either itself or through its duly appointed agent:-

(a)    be entitled to take over the collection of the Revenues and Net Receivables and the functions and obligations of Flashpoint provided for in this agreement as agent for Flashpoint and to pay the Revenues and Net Receivables into the Collection Account; and/or

(b)    be entitled to take over the collection of the Revenues and Net Receivables and the functions and obligations of Flashpoint provided for in Clause 5 of this agreement; and/or

(c)    be entitled to take over Flashpoint's rights in respect of the collection, adjustment, settlement and payment of the Revenues and Net Receivables; and/or

(d)    be entitled make payments of the Revenues and Net Receivables into and out of the Collection Account and Escrow Account in accordance with the terms of this Agreement; and/or

(e)    require Flashpoint not to draw on or allow withdrawals from the Flashpoint Jersey Holding Account, the Collection Account, and Lexington shall be entitled to write to the bankers of such accounts notifying them accordingly; and/or

(f)    approve or prescribe in the name of Flashpoint for action to be taken by Flashpoint to minimise any loss or delay caused by such event; and/or

(g)    terminate this agreement.

(2)    If an Event of Default occurs, written notice will be given to Flashpoint whereupon Flashpoint will, do such acts and things, and execute such deeds and documents, as Lexington may reasonably require for agreeing, adjusting, settling, litigating and collecting the Revenues and Net Receivables, either in the name of Flashpoint or its own name PROVIDED that any Revenues or Net Receivables collected in such manner shall be paid into the Collection Account without deduction or withholding;

n324496n324332n324332

- 16 -

LEX-01 180342

(3) Termination of this agreement shall be without prejudice to any rights that may have accrued or arisen prior to termination.

(4) Lexington shall first apply any monies it may receive pursuant to this Clause 15 in or towards repayment of Claims and payment of all other amounts owing to it under this agreement or the Flashpoint UK Collateral Agreement. Should there remain any sum of money after Lexington has been reimbursed in full for these amounts, this sum shall be remitted to Flashpoint UK or to such other person entitled.

(5) Flashpoint irrevocably appoints Lexington or its duly appointed representative (including any receiver) as its attorney and in its name, and on its behalf, to sign, seal and deliver and otherwise perfect any deed assurance agreement or instrument required to give effect to the terms of this agreement and any of the documents referred to in it.

## 16.  NOTICES

The address of each party at the head of this agreement shall be its address for the service of notice until it notifies the other of a new address. A notice shall be presumed to have been served by one party five (5) days (Saturdays, Sundays and public holidays excluded) after it has been handed in at a Post Office properly addressed to the other party prepaid for transmission by first class post, or the actual date of delivery if served personally, or the date of transmission if sent by telex or facsimile (provided a correct answer-back code is received at a sender's telex or facsimile machine and in the case of a facsimile, the "hard copy" of the notice is sent by first class post the day the facsimile is transmitted).

## 17.  NO PARTNERSHIP

Nothing in this agreement shall be deemed to constitute a partnership between the parties and neither of the parties shall do of suffer to be done anything whereby it may be represented as a partner of the other of them.

## 18.  ASSIGNMENT

(1) Flashpoint may not assign its rights and/or obligations under this agreement except with the prior written consent of Lexington.

#324496#324332#324332

- 17 -

LEX-01 180343

(2)   Lexington may assign all or any of the benefit of its rights under this agreement to reinsurers connected with the Regent Project without the consent of Flashpoint.

19.   **WAIVER**

The waiver by Lexington of any right or breach, default or omission by Flashpoint of any of the terms of this agreement shall not take effect unless in writing and shall not constitute a continuing waiver of the right waived or apply to, or operate as a waiver of, any other breach, default or omission and any forbearance in enforcing any right shall not constitute a waiver.

20.   **GOVERNING LAW**

(1)   This agreement shall be governed by and construed in accordance with English law.

(2)   The courts of England are to have jurisdiction to settle any disputes which may arise out of or in connection with this agreement and accordingly any legal action or proceedings arising out of or in connection with this agreement ("**Proceedings**") may be brought in such courts. Each of Lexington and Flashpoint irrevocably submits to the jurisdiction of such courts and waives any objection to Proceedings in such courts whether on the ground of venue or on the ground that the Proceedings have been brought in an inconvenient forum. These submissions are made for the benefit of each party and shall not limit the right of either of them to take Proceedings in any other court of competent jurisdiction nor shall the taking of proceedings in one or more jurisdictions preclude the taking of Proceedings in any other jurisdiction (whether concurrently or not).

(3)   Flashpoint irrevocably appoints Tarlo Lyons of Watchmaker Court, 33 St. John's Lane, London EC1 4DB as its authorised agent for service of process in England, Lexington irrevocably appoints Ince & Co. of Knollys House, 11 Byward Street, London EC3R 5EN as its authorised agent for service of process in England. Nothing in this agreement shall affect the right to service process in any other manner permitted by law.

(4)   The submission to the jurisdiction of the courts referred to in this Clause 20 shall not (and shall not be construed so as to) limit the right of either party to take Proceedings

- 18 -

LEX-01 180344

against the other party in any other court of competent jurisdiction nor shall the taking of Proceedings in any one or more jurisdictions preclude the taking of Proceedings in any other jurisdiction (whether concurrently or not) if and to the extent permitted by applicable law.

(5)     Lexington and Flashpoint each consent generally in respect of any Proceedings to the giving of any relief or the issue of any process in connection with such Proceedings including the making, enforcement or execution against any property whatsoever (irrespective of its use or intended use) of any other or judgment which may be made or given in such Proceedings.

21.     **INVALIDITY**

If at any time any one or more of the provisions in this agreement is or becomes invalid, illegal or unenforceable in any respect under any law or regulation, the validity, legality and enforceability of the remaining provisions of this agreement shall not as a result be in any way affected or impaired.

22.     **SEVERABILITY**

If any clause or condition or part thereof is found to be invalid, ineffective or unenforceable, the invalidity, ineffectiveness or unenforceability shall not affect or prejudice the remainder of such clause or other clause.

This agreement has been duly entered into the day and year first above written.

#324496#324332#324332

- 19 -

JLT 7        135

**LEX-01 180345**

## SCHEDULE 1

To:      Lexington Insurance Company                1998
             1 Alico Plaza
             6 Kings Street
             Wilmington
             Delaware 19801
             USA

Dear Sirs,

### Flashpoint Jersey Collateral Agreement
### and the Flashpoint Jersey Purchase Agreement
### Regent Project

In accordance with your instructions, I have examined the Flashpoint Jersey Collateral Agreement and the Flashpoint Jersey Purchase Agreement, each dated     July 1998 relating to Flashpoint Limited of 2nd Floor, Elizabeth House, 11 Castle Street, St. Helier, Jersey, Channel Island, JE2 3RT ("Flashpoint Jersey"), copies of which are annexed hereto.

Based upon the foregoing and after examining all documents and making all enquiries which I consider necessary, and having regard to the laws of Jersey, which I consider relevant, I am of the opinion that :-

(1)    The Flashpoint Jersey Collateral Agreement and the Flashpoint Jersey Purchase Agreement constitute legally valid and binding obligations of Flashpoint Jersey, enforceable in accordance with their terms.

(2)    The entry into and performance/execution, delivery and performance by Flashpoint Jersey of the Flashpoint Jersey Collateral Agreement and the Flashpoint Jersey Purchase Agreement respectively will not violate or be in breach of any existing law, ordinance, decree, order, regulation or similar enactment binding upon Flashpoint Jersey.

(3)    No recording, filing, registration, notice or other similar action is required in Jersey to ensure the legality, validity, binding effect or enforceability in accordance with its

#324496a324332a324332

- 20 -

LEX-01 180346

terms of the Flashpoint Jersey Collateral Agreement and the Flashpoint Jersey Purchase Agreement as against Flashpoint Jersey.

(4)    Flashpoint Jersey is subject to the jurisdiction of the Courts of England and it is not entitled to claim any immunity of suit or execution on a judgment of the Courts of England.

(5)    Any judgment obtained against Flashpoint Jersey in respect of the Flashpoint Jersey Collateral Agreement and the Flashpoint Jersey Purchase Agreement in the High Court of Justice of England should be enforceable against Flashpoint Jersey in the Courts of Jersey.

(6)    The choice of English law to govern the Flashpoint Jersey Collateral Agreement and the Flashpoint Jersey Purchase Agreement is a valid choice of law under the law of Jersey.

Except as otherwise stated, this opinion is confined to matters relating to the laws of Jersey. The opinion expressed above is qualified to the extent that the enforceability of the rights and remedies set forth in Flashpoint Jersey Collateral Agreement and the Flashpoint Jersey Purchase Agreement may be limited by bankruptcy, insolvency and other similar laws of general application relating to or affecting enforcement of creditors' right.

Yours faithfully,

**Legal Counsel**

- 21 -

LEX-01 180347

**SIGNED** by                                      )
duly authorised for and on behalf                 )
of **LEXINGTON INSURANCE COMPANY**                )
in the presence of:-                              )


**SIGNED** by    IAN DAVID MOORE                   )
duly authorised for and on behalf                 )
of **FLASHPOINT LIMITED**                          )
in the presence of:-                              )

NICOLA MARIE LANGFORD

- 22 -

LEX-01 180348

# EXHIBIT B

St Helier
Jersey JE4 2YQ

3 May 1998

**Leopold Joseph & Sons Limited**
29 Gresham Street
LONDON EC2V 7EA          **Attention: Paul Thornhill**

Dear Sirs

Re:     **Flashpoint Limited**
        **US$ Acccount : No. 41528005**

Please take this letter as authority and instruction for you to pay immediately the following sum from the above account to the following :

| | | |
|---|---|---|
| Amount | : | $544,464.00 |
| Method (cheque/transfer/draft) | : | Transfer |
| Concerning | : | "Sweet Lies" |
| Account Name | . | Regent Entertainment - Sweet Lies Funding Account |
| Bank | : | Comerica Bank |
| Address | : | 10900 Wilshire Boulevard Los Angeles, CA 90024 |
| Account Number | : | 189 056 3495 |
| Routing Number/Bank Code | : | 121137522 |

Yours faithfully


**DAVID FORREST**                    **STANLEY MUNSON**


**BEAU ROGERS**                      **ADAM DAVIES**

For and on behalf of Flashpoint Limited


H:\mak\leopold.doc


FP 0004062

**59/LB/AC -
00049**

**LEX-01 157876**

96 93  TUE 19:53 FAX 310 446 1599    REGENT ENT. INC.    4169680474    T-621  P 02/03  Job-342

## DRAWDOWN CERTIFICATE

Pursuant to the Production/Finance Agreement dated as of _____, 1998, between Sweet Lies Productions Inc. ("Company") and Flashpoint Ltd. ("Flashpoint") (which agreement as it may be modified, supplemented, extended, renewed or replaced is herein referred to as the "Agreement," and the defined terms therein being used herein with the same meanings), the undersigned hereby requests the advance set forth below to be deposited into the production account specified below. Capitalized terms used and not otherwise defined herein shall have the same meaning set forth in the agreement.

COMPANY:                        Sweet Lies Productions Inc.

PICTURE:                        "Sweet Lies"

COMPLETION GUARANTOR:           The Motion Picture Bond Company

REQUEST NUMBER:                 2

REQUESTED AMOUNT:               $  544,464.00

DRAWDOWN BALANCE:               $1,604,179.00

EFFECTIVE DATE:                 May 4, 1998

WIRING INSTRUCTIONS:            Regent Entertainment – Sweet Lies Funding Account
                                Account Number: 189 056 3495
                                Comerica Bank
                                ABA NUMBER: 121137522
                                10900 Wilshire Boulevard
                                Los Angeles, CA 90024
                                Attn: Carmen Carpenter
                                    (Phone - 310/824-5700  Ext. 270)

Company hereby represents and warrants to Flashpoint that:

1)  The requested advance shall be applied to the payment of expenses named in connection with the production of the picture specified in the approved budget and cashflow schedule.

2)  All representations and warranties contained in the Agreement or otherwise made in writing in connection with the budget of the picture are true and correct as of the date of this Drawdown Certificate.

3)  No event of default remains uncured, and no event, condition or act has occurred which, with the giving of notice or the passage of time, or both, would constitute an event of default under the Agreement.

---

DESIGNATED REPRESENTATIVE OF COMPANY              DATE

DESIGNATED REPRESENTATIVE OF GUARANTOR            DATE  May 15/98

DESIGNATED REPRESENTATIVE OF FLASHPOINT, LTD.     DATE  5/28/95

05/15/98  FRI 16.55  [TX/RX NO 9592]

FP  0004063

59/LB/AC -
00050

LEX-01 157877



Flashpoint Limited
Elizabeth House
11 Castle Street
St Helier
Jersey JE4 2YQ
CHANNEL ISLANDS

16th April 1998

Leopold Joseph & Sons Limited
28 Gresham Street
LONDON EC2V 7EA

**Attention: Paul Thornhill**

Dear Sirs

re:    Flashpoint Limited
       US$ Account : No:41528005

Please take this letter as authority and instruction for you to pay immediately the
following sum from the above account to the following:

| | | |
|---|---|---|
| Amount | : | US$734,182.00 |
| Method (cheque/transfer/draft) | : | Transfer |
| Concerning | : | "Monster" |
| Account Name | : | Regent Entertainment - "Monster" - Production Account |
| Bank | : | Comerica Bank |
| Address | : | 10800 Wilshire Blvd LA, California 90024 |
| Account Number | : | 1890562901 |
| Routing Number/Bank Code | : | 121  137522 |

Yours faithfully

**DAVID FORREST**          **STANLEY MUNSON**

**BEAU ROGERS**          **ADAM DAVIES**

For and on behalf of Flashpoint Limited

FP 0004090

59/LB/AC -
00077

LEX-01 157898

## DRAWDOWN CERTIFICATE

Pursuant to the Production/Finance Agreement dated as of March ___, 1998, between Monster Performance Productions Inc. ("Company") and Flashpoint Limited ("Flashpoint") (which agreement as it may be modified, supplemented, extended, renewed or replaced is herein referred to as the "Agreement," and the defined terms herein being used herein with the same meanings), the undersigned hereby requests the advance set forth below to be deposited into the production account specified below. Capitalized terms used and not otherwise defined herein shall have the same meaning set forth in the agreement.

COMPANY:                          Monster Performance Productions Inc.

PICTURE:                          "Monster"

COMPLETION GUARANTOR:             The Motion Picture Bond Company

REQUEST NUMBER:                   1

REQUESTED AMOUNT:                 $ 734,182.00

DRAWDOWN BALANCE:                 $1,315,954.00

EFFECTIVE DATE:                   March 23, 1998

WIRING INSTRUCTIONS:              Regent Entertainment - Monster Production Account
                                  Account Number: 1890562901
                                  Comerica Bank
                                  ABA NUMBER: 121137522
                                  10900 Wilshire Boulevard
                                  Los Angeles, CA 90024
                                  Attn: Carmen Carpenter
                                      (Phone - 310/824-5700  Ext. 270)

Company hereby represents and warrants to Flashpoint that:

1)  The requested advance shall be applied to the payment of expenses named in connection with the production of the picture specified in the approved budget and cashflow schedule.

2)  All representations and warranties contained in the Agreement or otherwise made in writing in connection with the budget of the picture are true and correct as of the date of this Drawdown Certificate.

3)  No event of default remains uncured, and no event, condition or act has occurred which, with the giving of notice or the passage of time, or both, would constitute an event of default under the Agreement.

_____                    3/26/98
DESIGNATED REPRESENTATIVE OF COMPANY               DATE

Albert J. Dickinson III                            3/27/98
DESIGNATED REPRESENTATIVE OF GUARANTOR             DATE

_____                    4/7/98
DESIGNATED REPRESENTATIVE OF FLASHPOINT, LTD.      DATE

FP 0004091

59/LB/AC-
00078

LEX-01 157899



14-May-98 11:04  David Forrest                      01778 562992        P.O

SENT BY:Xerox Telecopier 7020 ;13- 5-98 ; 16:52 ;     01718149423- 44 01778 582992    ;# 3

Flashpoint Limited
Elizabeth House
11 Castle Street
St Helier
Jersey JE4 2YQ
CHANNEL ISLANDS

1st May 1998

Leopold Joseph & Sons Limited
29 Gresham Street
LONDON EC2V 7EA

**Attention: Paul Thornhill**

Dear Sirs

re.    Flashpoint Limited
       US$ Account : No:41828005

Please take this letter as authority and instruction for you to pay immediately the
following sum from the above account to the following:

Amount                              :   US$397,818.00

Method (cheque/transfer/draft)      :   Transfer

Concerning                          :   "Monster"

Account Name                        :   Regent Entertainment - "Monster" -
                                        Production Account

Bank                                :   Comerica Bank

Address                             :   10900 Wilshire Blvd
                                        LA, California 90024

                                        F.A.O. Carmen Carpenter

Account Number                      :   1890562901

Routing Number/Bank Code            :   121 1137522

Yours faithfully

DAVID FORREST                          STANLEY MUNSON

BEAU ROGERS                            ADAM DAVIES

For and on behalf of Flashpoint Limited

FP  0004092

59/LB/AC -
00079

LEX-01 157900

## DRAWDOWN CERTIFICATE

Pursuant to the Production/Finance Agreement dated as of March ____, 1998, between Monster Performance Productions Inc. ("Company") and Flashpoint Limited ("Flashpoint") (which agreement as it may be modified, supplemented, extended, renewed or replaced is herein referred to as the "Agreement," and the defined terms being used herein with the same meanings), the undersigned hereby requests the advance set forth below to be deposited into the production account specified below. Capitalized terms used and not otherwise defined herein shall have the same meaning set forth in the agreement.

COMPANY:                         Monster Performance Productions Inc.

PICTURE:                         "Monster"

COMPLETION GUARANTOR:            The Motion Picture Bond Company

REQUEST NUMBER:                  2

REQUESTED AMOUNT:                $ 397,818.00

DRAWDOWN BALANCE:                $1,116,136.00

EFFECTIVE DATE:                  March 30, 1998

WIRING INSTRUCTIONS:             Regent Entertainment - Monster Production Account
                                 Account Number: 1890562901
                                 Comerica Bank
                                 ABA NUMBER: 121137522
                                 10900 Wilshire Boulevard
                                 Los Angeles, CA 90024
                                 Attn: Carmen Carpenter
                                    (Phone - 310/824-5700  Ext. 270)

Company hereby represents and warrants to Flashpoint that:

1)  The requested advance shall be applied to the payment of expenses named in connection with the production of the picture specified in the approved budget and cashflow schedule.

2)  All representations and warranties contained in the Agreement or otherwise made in writing in connection with the budget of the picture are true and correct as of the date of this Drawdown Certificate.

3)  No event of default remains uncured, and no event, condition or act has occurred which, with the giving of notice or the passage of time, or both, would constitute an event of default under the Agreement.


_____                    _____
DESIGNATED REPRESENTATIVE OF COMPANY                 DATE  3/25/0

_____                    _____
DESIGNATED REPRESENTATIVE OF GUARANTOR               DATE  4-27-98

_____                    _____
DESIGNATED REPRESENTATIVE OF FLASHPOINT, LTD.        DATE  4/28/98


04/24/98  FRI 13:14  [TX/RX NO 8912]


FP  0004093


59/LB/AC -
00080

LEX-01 157901

16-Apr-98 16:50  David Forrest          01778 562992          P.
    SENT BY:Xerox Telecopier 7020 :16- 4-98 : 15:14 :    01718140423- 44 01778 562992    :# 3

Flashpoint Limited
Elizabeth House
11 Castle Street
St Helier
Jersey JE4 2YQ
CHANNEL ISLANDS

16th April 1998

Leopold Joseph & Sons Limited
29 Gresham Street
LONDON EC2V 7EA          **Attention: Paul Thornhill**

Dear Sirs

re:    **Flashpoint Limited**
       **US$ Account : No:41528005**

Please take this letter as authority and instruction for you to pay immediately the
following sum from the above account to the following:

| | | |
|---|---|---|
| Amount | : | US$874,498.00 |
| Method (cheque/transfer/draft) | : | Transfer |
| Concerning | : | "Silent Storms" |
| Account Name | : | Regent Entertainment - "Silent Storms" - Production Account |
| Bank | : | Comerica Bank |
| Address | : | 10900 Wilshire Blvd LA, California 90024 |
| Account Number | : | 1890562620 |
| Routing Number/Bank Code | : | 121  137522 |

Yours faithfully

**DAVID FORREST**          **STANLEY MUNSON**


**BEAU ROGERS**          **ADAM DAVIES**

For and on behalf of Flashpoint Limited


FP 0004138

59/LB/AC -
00125

LEX-01 157946

## DRAWDOWN CERTIFICATE

Pursuant to the Production/Finance Agreement dated as of March 3, 1998, between Silent Storms Productions Inc. ("Company") and Flashpoint Ltd. ("Flashpoint") (which agreement as it may be modified, supplemented, extended, renewed or replaced is herein referred to as the "Agreement," and the defined terms therein being used herein with the same meanings), the undersigned hereby requests the advance set forth below to be deposited into the production account specified below. Capitalized terms used and not otherwise defined herein shall have the same meaning set forth in the agreement.

| | |
|---|---|
| COMPANY: | Silent Storms Productions Inc. |
| PICTURE: | "Silent Storms" |
| COMPLETION GUARANTOR: | The Motion Picture Bond Company |
| REQUEST NUMBER: | 4 |
| REQUESTED AMOUNT: | ~~$906,215.00~~   $874,498 |
| DRAWDOWN BALANCE: | $343,337.00 |
| EFFECTIVE DATE: | March 23, 1998 |
| WIRING INSTRUCTIONS: | Regent Entertainment - Silent Storms Production Account |
| | Account Number: 1890582620 |
| | Camerica Bank |
| | ABA NUMBER: 121137522 |
| | 10900 Wilshire Boulevard |
| | Los Angeles, CA 90024 |
| | Attn: Carmen Carpenter |
| | (Phone - 310/824-5700  Ext. 270) |

Company hereby represents and warrants to Flashpoint that:

1) The requested advance shall be applied to the payment of expenses named in connection with the production of the picture specified in the approved budget and cashflow schedule.

2) All representations and warranties contained in the Agreement or otherwise made in writing in connection with the budget of the picture are true and correct as of the date of this Drawdown Certificate.

3) No event of default remains uncured, and no event, condition or act has occurred which, with the giving of notice or the passage of time, or both, would constitute an event of default under the Agreement.

_____                    3/27/98
DESIGNATED REPRESENTATIVE OF COMPANY          DATE

_____                    3/27/98
DESIGNATED REPRESENTATIVE OF GUARANTOR        DATE

_____                    4/6/98
DESIGNATED REPRESENTATIVE OF FLASHPOINT, LTD.  DATE

FP  0004139

59/LB/AC -
00126

LEX-01 157947