UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY,<br><br>Plaintiff,<br><br>- against -<br><br>DAVID FORREST, T. BEAUCLERC ROGERS IV, STANLEY MUNSON, MARTIN FINK, all individually, and NEW BEGINNINGS ENTERPRISES LLC, a California Limited Liability Company, and TARLO LYONS, a partnership,<br><br>Defendants. | Civil Action No. 02-CV-4435<br>(Hon. Anita B. Brody) |

### AFFIDAVIT OF JOHN D. GORDAN, III
### IN SUPPORT OF MOTION OF DEFENDANT
### TARLO LYONS TO COMPEL PRODUCTION OF DOCUMENTS

STATE OF NEW YORK   )
COUNTY OF NEW YORK ) ss.:

JOHN D. GORDAN, III, being duly sworn, deposes and says;

1. I am admitted to practice before this Court in this matter pro hac vice and a member of the firm of Morgan, Lewis & Bockius LLP, 101 Park Avenue, New York, NY 10178. I make this affidavit of personal knowledge or, as indicated, based on the record of this and other cases in support of the motion of defendant Tarlo Lyons to compel production of documents sought by two document subpoenas issued from this Court and served on December 29, 2004 on American International Group, Inc. ("AIG") and New Hampshire Insurance Co.

2. Annexed hereto as Exhibits 1 through 4 are:

1-NY/1868435.1

1. Tarlo Lyons subpoena to American International Group, Inc., served December 29, 2004;

2. Tarlo Lyons subpoena to New Hampshire Insurance Co., served December 29, 2004;

3. Objections served on behalf of AIG and New Hampshire, dated January 12, 2005; and

4. "Responses" served on behalf of AIG and New Hampshire, served January 14, 2005;

3. In response to the subpoenas, on January 14, 2005 some 1598 pages of documents were produced, with "AIG" bates prefixes, constituting the witness statements and exhibits thereto of Steven Mitchell, Keith Peacock, Robert Brace and John Iannucci in <u>Law Debenture Trust Corp. v. Lexington Insurance Co., et al</u>, in the High Court in London, evidently the so-called Hollywood Funding 4 and 5 litigation.

4. On January 19, 2005, Edward P. Krugman, Esq., counsel for plaintiff Lexington, AIG and New Hampshire and I held a meet-and-confer by telephone lasting between one and two hours. We discussed the classes of documents requested in the subpoenas. We were able to reach agreements on a number of issues, although Lexington has yet to comply with many of them. See Exhibit 5 hereto. However, with respect to Requests 3, 6 and 7, Mr. Krugman stood on his objections. Mr. Krugman also advised that he had misunderstood Request 4 and would be serving objections to it. He, however, has not done so.

## FLASHPOINT AND AIG

5. According to paragraph 4 of the Second Amended and Supplemental Complaint (the "complaint"), the Flashpoint financings closed as follows:

| | | |
|---|---|---|
| Hollywood Funding 4 | July 3, 1998 | $33,600,000 |
| Hollywood Funding 5 | July 28, 1998 | $48,400,000 |
| Hollywood Funding 6 | December 23, 1998 | $100,700,000 |

2

The same paragraph of the complaint identifies three earlier Flashpoint transactions in which the insurer issuing the policy was HIH Casualty & General Insurance Ltd., rather than Lexington:

| | | |
|---|---|---|
| Hollywood Funding 1 | August 13, 1997 | $16,400,000 |
| Hollywood Funding 2 | December 4, 1997 | $15,500,000 |
| Hollywood Funding 3 | December 17, 1997 | $25,600,000 |

The complaint includes allegations concerning the use of funds borrowed on the earlier slates for the benefit of films on those insured by Lexington, which Lexington attacks as a "misappropriation". (E.g., Complaint ¶¶ 33(a) and (b)).

6.  Neither HIH nor Lexington kept 100% of the exposures they insured. It appears that HIH retained 20% of the exposure for its own account and "fronted" the remaining 80%, mostly with a French company, AXA Reassurances, S.A. ("AXA"), and with New Hampshire.[1] Like Lexington itself, New Hampshire is a subsidiary of AIG, a prominent and successful international insurance company headquartered in New York.

7.  The documents produced by Lexington thus far show that Hollywood Funding 4 was initially going to be "fronted" – insured 100% and then reinsured – by New Hampshire. Although New Hampshire was later replaced by Lexington as the direct insurer, New Hampshire continued to lead the reinsurance on Hollywood Funding 4 and 5, although again AXA was the most prominent of the reinsurers. New Hampshire did not participate on Hollywood Funding 6 at all, and its place was taken by General Star Indemnity International Indemnity Ltd. ("GenStar").

---

[1] See paragraph 20 of the opinion of Lord Justice Rix in the HIH Casualty and General Ins. Ltd. v. New Hampshire Ins. Co., et al., [2001] EWCA 735 (2001). This opinion is annexed as Exhibit B to Tarlo Lyons's Memorandum of Law in Support of its Motion for Judgment on the Pleadings, filed January 27, 2005.

1-NY/1868435.1

8. The Lexington documents and the annexed deposition transcript of Thomas Murphy (Exhibit 6) show Hollywood Funding financing insurance coverages were placed with and bound by underwriters at Lexington's and New Hampshire's London offices, but their headquarters are in Boston and New York City, respectively. Similarly, underwriting for those companies was supervised, again from their headquarters cities, by separate underwriting agencies, also subsidiaries of AIG, AI Entertainment for Lexington and AIU – American International Underwriters – for New Hampshire in London, where AIU traded under the name "AIG Europe UK Ltd." It is clear, however, that the two underwriting companies collaborated and that Lexington and New Hampshire shared capacity on particular risks: one of the documents produced by Lexington reflects confirmation by Robert Brace, the head of AI Entertainment, with his opposite number at AIU (Tom Murphy) that Murphy's subordinate at New Hampshire had bound its participation in the reinsurance of Lexington on Hollywood Funding 4 (Exhibit 7). In addition, Lexington documents show and Mr. Murphy testified in his deposition in another case that the chief credit officer of AIG had been consulted about Lexington's and New Hampshire's participation in the Hollywood Funding 4 risk. (Exhibit 6 at Tr. 152-53; Exhibit 8).

Insurance Backed Motion Picture Financing
<u>Litigation Involving Lexington and New Hampshire</u>

9. The history of the early Flashpoint litigation in London is set out on page 12 of the brief in support of this motion, relying on the opinion of Mr. Justice Langley annexed hereto as Exhibit 9. There were other financings and subsequent litigations involving Lexington and New Hampshire other than Flashpoint. Among the documents produced by Lexington is a listing of the planned initial slates in the insurance-backed loan portfolio of the Chase Manhattan Bank (LEX-01 128724) (Exhibit 10 hereto):

| Client Name | Film | Inception | S[um] I[nsured] |
|---|---|---|---|
| Phoenix (1) | Mirror Has Two Faces | 1-Jun-96 | 24,356,702 |
| | People vs. Larry Flynt | 1-Jun-96 | 23,660,377 |
| | Swept from the Sea | 2-Sep-96 | 9,508,650 |
| | U-Turn | 12-Dec-96 | 14,048,457 |
| | Apt Pupil | 10-Feb-97 | 10,141,350 |
| Paramount (1) | Phantom | 23-Sep-96 | 8,848,908 |
| | Beautician and The Beast | 23-Sep-96 | 7,653,220 |
| | In N Out | 23-Sep-96 | 6,371,657 |
| | Truman Show | 27-Mar-97 | 26,466,430 |
| Paramount (2) | The Saint | 3-Apr-97 | 13,972,477 |
| | Event Horizon | 11-Aug-97 | 20,019,689 |
| | Face Off | 16-Aug-97 | 18,485,150 |
| | Magic Hour | 16-May-97 | 15,041,210 |
| Paramount (3) | Kiss the Girls | 3-Oct-97 | 5,837,178 |
| | A Night at the Roxbury | 17-Dec-97 | 7,214,125 |
| | Odd Couple II | 17-Dec-97 | 14,492,607 |
| | Snake Eyes | 17-Dec-97 | 15,435,349 |

Lexington Insurance Co. participated in the direct insurance of the film financing loans in the Phoenix slate, and both New Hampshire and Lexington participated on the direct insurance in the film financing loans on Paramount 1, 2 and 3. On November 25, 1999, the Phoenix insurers, including Lexington, represented by the London law firm of Cameron McKenna, brought a declaratory judgment in the High Court to void the coverage on the Phoenix slate on the grounds of fraud in the placement by the broker, not Chase. A preliminary issue was heard in the spring of 2000 and decided in June. (Exhibit 11). In 2001, that decision was substantially modified in Chase's favor by the Court of Appeal, [2001] EWCA Civ. 1250, and in February, 2003, the House of Lords affirmed the Court of Appeal. 2003 UKHL 6.

1-NY/1868435.1

10. Shortly after the Phoenix declaratory judgment action was filed, Chase's claims on the underlying insurance on the loans for the Paramount 1 slate began to mature, followed gradually by the Paramount 2 and 3. The Paramount 1, 2 and 3 slates all went into litigation in London with New Hampshire and Lexington, just as Phoenix did.

11. In the United States the first litigation brought on the Chase portfolio was, again, a declaratory judgment action against Chase commenced by AXA on October 19, 1999 in the Supreme Court for New York County (the "Litto litigation"). New Hampshire subsequently intervened as a plaintiff. The case was tried before Justice Ira Gammerman and a jury from October 29 to December 6, 2001. The fraud claims against Chase were dismissed before trial, and the jury's verdict exonerated the brokers of fraud. Annexed hereto as Exhibit 12 is Justice Gammerman's post-trial opinion in the Litto litigation, reported in part as Chase Manhattan Bank v. New Hampshire Ins. Co., 193 Misc. 2d. 580 (N.Y.County 2002). The judgment was affirmed by the Appellate Division, First Department, 304 A.D. 2d. 423 (2003), and the Court of Appeals denied leave to appeal. 100 N.Y. 2d. 504 (2003).

12. On March 7, 2000, Chase filed an action against New Hampshire in the Supreme Court for New York County to recover as the policy New Hampshire had issued as the loan for "Looking for an Echo." On April 4, 2000, New Hampshire served its answer, alleging fraud in the placement. (Exhibit 13 hereto).

13. On March 10, 2000, Chase filed a complaint against New Hampshire and other insurers on its insurance claim for the shortfall on the repayment of its loan for "Texas Funeral," a J&M film. On April 26, 2000, New Hampshire and the other insurers filed their answer and counterclaim for rescission asserting fraud. (Exhibit 14 hereto). The complaint in "Texas Funeral" was followed by complaints filed by Chase on other J&M films as Chase's claims

matured and the assertion of the same defenses by the insurers. Annexed as Exhibit 15 is Justice Gammerman's opinion dated December 12, 2003, disposing of insurers' fraud and other defenses in all four J&M cases.

14. In December 2001, just days after the verdict in the Litto case, two of the insurers filed a declaratory judgment action in the United States District Court for the Southern District of New York to void Chase's coverage as the Paramount 4 and 5 slates as the grounds that Chase and the brokers had obtained the insurance coverage by a massive fraud. The case was stayed on abstention grounds in a lengthy opinion by the late Judge Allan G. Schwartz. General Star International Indemnity v. Chase Manhattan Bank, 01 Civ. 11379, 2002 WL 850012 (S.D.N.Y. 2002). The Court of Appeals affirmed in an unreported decision. 57 Fed.Appx. 892 (2d Cir. 2003). Meantime Chase filed an action in the Supreme Court for New York County against New Hampshire and the other insurer to recover on its existing claims as the Paramounts IV and V slates; the insurer propounded the usual fraud defenses, and Justice Gammerman overruled them. (Exhibit 16). The opinion contains a convenient summary of defenses by insurer and their disposition by the Court.

15. Annexed hereto are the following exhibits from the production to date by Lexington and other sources:

| | |
|---|---|
| Exhibit 17 | Memoranda from Keith Peacock Oct. 30 and Nov. 4, 1998 |
| Exhibit 18 | Memorandum from Thomas Tizzio dated July 19, 1999 |
| Exhibit 19 | Particulars of Claim in "The New Professionals". |
| Exhibit 20 | Typed and Original Notes of Meeting of Flashpoint Insurers November 2, 1999, with proposed agenda and list of attendees. |

| | |
|---|---|
| Exhibit 21 | November 5, 1999 fax from GenStar to other Flashpoint insurers regarding proposed meeting with John Hall of Cameron McKenna. |
| Exhibit 22 | November 18, 1999 fax from Flashpoint to JLT Risk Solutions (brokers) regarding New Hampshire refusal to honor Hollywood Funding 2 reinsurance obligations. |
| Exhibit 23 | February 21, 2000 letter from John Hall of Cameron McKenna to Flashpoint re: Hollywood Funding 2. |
| Exhibit 24 | June 12, 2000 letter from Cameron McKenna to Flashpoint re: Hollywood Funding 3. |
| Exhibit 25 | Affidavit of Edward P. Krugman, sworn to August 5, 2004, in New Hampshire Ins. Co. v. General Star Indemnity Ltd., 04 Civ. 5840 (SDNY), omitting Exhibits F-I. |
| Exhibit 26 | Complaint in New Hampshire v. JLT Risk Solutions Ltd., et al., 00-13207 (C.D. Cal.). |

JOHN D. GORDAN, III

Sworn to before me this
17th day of February, 2005

CHARLES M. CALVARUSO
Notary Public, State of New York
No. 31-4818473
Qualified in New York County
Commission Expires August 31, 2006

8

I-NY/1868435.1