# EXHIBIT 15

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:   PART 27
- - - - - - - - - - - - - - - - - - - - - - - -------------------------------------x
THE CHASE MANHATTAN BANK,

                   Plaintiff,

               Index No. 603080/00
               Index No.601068/00
               Index No. 604654/00

             -against-

               Part Nos. 16697
                     16696

AXA REASSURANCE UK PLC,
NEW HAMPSHIRE INSURANCE COMPANY, GREAT
LAKES REINSURANCE (UK) PLC, ODYSSEY RE
(LONDON) LTD. PER ODYSSEY MANAGEMENT LTD.,
GENERAL STAR INTERNATIONAL INDEMNITY
LTD., ROYAL AND SUN ALLIANCE INSURANCE,
PLC, and HIH CASUALTY & GENERAL INSURANCE
LIMITED,

                     17345

               Defendants.

------------------------------------------------------------------x
THE CHASE MANHATTAN BANK,

               Plaintiff,

               Index no.  600299/01
               Part no. 17952

             - against -

AXA REASSURANCE UK PLC, NEW HAMPSHIRE
INSURANCE COMPANY, GREAT LAKES
REINSURANCE (UK) PLC, ODYSSEY RE (LONDON)
LTD. PER ODYSSEY MANAGEMENT LTD.,
GENERAL STAR INTERNATIONAL
INDEMNITY LTD., ROYAL AND SUNALLIANCE
INSURANCE PLC. and MONEGASQUE DE
REASSURANCES S.A.M.,

             Defendants.

------------------------------------------------------------------x

1

**GAMMERMAN, J.:**

Motion sequence no. 018 in action bearing index no. 603080/2000 ("History is Made at Night"); motion sequence no. 021 in action bearing index no. 601068/2000 ("A Texas Funeral"); motion sequence no. 02 in action bearing index no. 604654/2000 ("Bruno"); and motion sequence no. 02 in action bearing index no. 600299/2001 ("The Guilty") are consolidated for disposition.

In each of these actions, plaintiff The Chase Manhattan Bank ("Chase") moves pursuant to CPLR 3211(a) and (b) for dismissal of the defendants' remaining affirmative defenses and counterclaims, and pursuant to CPLR 3212 for summary judgment. The defendants are the same in each of the four actions, except that in The Guilty, Monagasque de Reassurances S.A.M. ("Monde Re") is named as a party and HIH Casualty & General Insurance Ltd. ("HIH") is not. Monde Re was dismissed for lack of jurisdiction by order dated September 22, 2003.

The claims as between Chase and AXA, Great Lakes Reinsurance (UK) PLC, Royal and SunAlliance Insurance PLC have been settled, and the motions are accordingly withdrawn as to those defendants.

Many of the issues relating to the affirmative defenses and counterclaims are addressed in my decisions and orders dated September 18, 2003 (the "Paramount orders") in JPMorgan Chase Bank v AXA Reassurance UK PLC, index no. 606096/01, (the "Paramount action") adjudicating motion sequences nos. 06, 014 and 016, familiarity with which is assumed. The present adjudication is based in substantial portion on the analysis set forth in those decisions as well as on the additional discussion contained herein.

2

**HISTORY IS MADE AT NIGHT**

**DELIVERY**

The policy[1] contains the following clauses relating to delivery:

a. The term "Delivery" is defined as follows:

> the date upon which Delivery (as defined in the Interparty Agreement) of the Film Production to Distributor is completed or deemed to be completed in accordance with the terms of the Completion Guaranty as modified by the Interparty Agreement, or in case of an arbitration under the Interparty Agreement, the date the arbitrator determines that Delivery has been effected; <u>provided, however, that in any event, the first commercial exploitation or exhibition of the Film Project by Distributor or any of its licensees shall be deemed the occurrence of Delivery for purposes of this Policy</u> [emphasis added].

For the purposes of the present motion, the key phrase is the underlined portion of the clause.

For present purposes, this clause is unambiguous. Neither commercial exploitation nor exhibition is required for delivery to occur. If neither commercial exploitation nor exhibition occur, then delivery is defined by the first (not underscored) portion of the clause. However, once commercial exploitation or exhibition occur, it is the first date of such commercial exploitation or exhibition that constitutes the delivery date for purposes of the policy, and the first portion of the clause is moot. Nor does anything in the policy support the contention that the failure of such commercial exploitation to occur by the date established for delivery by the Interparty Agreement or any other contract, constitutes a per se defense to a claim under the policy.

---

[1]For purposes of simplicity, I refer to a single "policy" without differentiating between the primary layer policy and the excess layer policy.

b. The Completion clause provides:

> This insurance shall apply only if Delivery of the Film Production occurs.

Thus, delivery is a condition precedent.

c. The term "Post Delivery Interest and Expense Reserve" is defined as follows:

> The aggregate amount of the reserve under the Loan Agreement for interest, costs or other financing charges which might accrue after Delivery has occurred.

d. The term "First Claim Determination Date" is defined as follows:

> Nine (9) months after Delivery.

e. The term "First Ascertained Net Loss" is defined as follows:

> The amount by which (x) the sum of Contingent Expenses outstanding and unpaid on the First Claim Determination Date plus the Insured's out-of-pocket costs incurred but unpaid under "General Conditions - Due Diligence" and "Claims Procedure" (which to the extent such costs exceed $50,000 in the aggregate for all claims presented under this Policy shall be subject to the approval of the Lead Insurers, such approval not to be unreasonably withheld or delayed) exceeds (y) the sum of the aggregate amount of minimum guarantees agreed to be paid (but not yet paid) by licensees pursuant to binding distribution licenses (exclusive of amounts paid by Sogedasa for Spain and Lusomundo for Portugal) concluded by the Sales Agent on behalf of Distributor on or before the First Claim Determination Date (the "Aggregated Guarantees") plus the Post Delivery Interest and Expenses Reserve on the First Claim Date (but not exceeding the Sum Insured).

f. The term "Second Claim Determination Date" is defined as follows:

> Twenty-four (24) months after Delivery.

g. The term "Second Ascertained Net Loss" is defined as follows:

> All Contingent Expenses outstanding and unpaid on the Second Claim Determination Date after application of all Revenue (after

4

first being used to pay out-of-pocket costs incurred under "General Conditions - Due Diligence" and "Claims Procedure" which to the extent such costs exceed US$50,000 in the aggregate for all claims presented under this Policy shall be subject to the approval of the Lead Insurers, such approval not to be unreasonably withheld or delayed), but not more than the amount by which the Sum Insured exceeds the amount paid as the First Ascertained Net Loss.

h. A page entitled "THE SCHEDULE" annexed to the first layer, defines the "Period of Insurance" as follows:

In respect of the Film Production "HISTORY IS MADE AT NIGHT" attaching at 23rd October 1998 or later date to be agreed AXA Reinsurance (UK) and AIG Europe (UK) only until the date which is 24 months from Delivery as defined in the Policy and for such further period or periods as may be mutually agreed.

Other provisions contain a like description of the policy period.

Thus, "delivery" plays two crucial roles in Chase's claim, which is based on the first claim determination date:

a. To establish that coverage under the policy was triggered, Chase must establish that delivery occurred; and

b. To establish that Chase sustained a "first ascertained net loss" so as to entitle it to benefits of the policy, Chase must establish that it sustained such a loss as of the date calculated by the policies, measured from the date of delivery.

The insurers' defenses regarding delivery are as follows:

1. GS's ninth affirmative defense asserts:

To the extent that "Delivery" of the film, as defined in the relevant agreement, may not have occurred, plaintiff's claims are barred, limited and/or premature.

I construe the term "relevant agreement" as referring to the policy itself, and to that extent the motion is denied. However, to the extent that the defense relies on definition by another

5

agreement, the defense is dismissed.

2. New Hampshire/Odyssey, and HIH generally assert as affirmative defenses, the failure to comply with conditions precedent. Delivery is a condition precedent.

The insurers contend that Chase has not met its burden, as movant, to establish through admissible evidence, that delivery occurred.

To the extent that Chase seeks to rely on delivery other than by marketing of the film on DVD through retail outlets, the insurers argue persuasively that Chase has not established such delivery through admissible, non-hearsay, evidence.

However, Chase also supplies a web page from BarnesandNoble.com, advertising the DVD. To the extent that it is offered to establish that on the date it was downloaded and printed from the internet, the film was being offered for sale by Barnes and Noble, the web page is not hearsay. The web page constitutes, itself, the offering for sale. Its existence, which is established through competent evidence, is competent evidence that the film was thus offered for sale to the general public and, hence, that, for purposes of the policy, delivery occurred.[2]

————————————————

[2]The policy does not define the term "commercial exploitation." However, the insurers have supplied an expert affidavit stating:

> Commercial exploitation generally is understood in the industry to mean that a film has been delivered to an exhibitor or distributor (theatrical, television or video) who has paid a License Fee and/or will remit proceeds received from its exploitation of the film, this would include theatrical release of the film before the paying general public in the United States or other territories throughout the world, or availability of the film for purchase or rental on video or DVD in video/DVD outlets or retail stores open to such general public, or exhibition of the film on television (either pay, basic cable or free) viewable by such general public [emphasis added].

By this standard, proof that Barnes and Noble offered the film for sale on DVD to the

6

While the Barnes and Noble web page establishes that commercial exploitation occurred, and thus establishes that delivery occurred, it does not establish when the first commercial exploitation or exhibition occurred, and therefore does not establish the date of delivery.

The passage of time has cured any possible prematurity of the claim. However, in order to demonstrate its entitlement to summary judgment on its prima facie case, Chase must demonstrate that it suffered a loss as defined by the policy, on the first claim determination date. Since Chase has not demonstrated when delivery occurred, ipso facto it has not demonstrated when the claim determination date occurred. Since the policy defines first ascertained net loss with reference to the defined claim date, Chase has not met its burden as movant, seeking the drastic remedy of summary judgment, to establish, through admissible, nonhearsay evidence, that there is no triable issue of fact as to whether it sustained a first ascertained net loss as defined by the policy.[3]

The policy contains no support for the contention that a film cannot be deemed to be "delivered" unless it is delivered by the date set forth in the Interparty Agreement, and I decline to graft such a requirement onto the policy language.[4]

---

general public, establishes that commercial exploitation occurred. Under the policy provision, this constituted delivery.

[3]Since the film may continue to generate revenues after a given date, whether there has been an "ascertained net loss" requires ascertainment of the claim date.

[4]In this connection, I note that space 9 in the Questionnaires refer to delivery dates only as estimates.

The space following that space 9 recites, in pertinent part:

> the only change in the Estimated Principal Dates which must be
> notified is any change to a delivery date later than that required

Thus, while it may well be that Chase will have no difficulty establishing at trial that Chase experienced an ascertained net loss as of the first claim determination date as defined in the policy, Chase has failed to meet its burden as movant to establish this through admissible evidence on these motions. This failure, standing alone, mandates the denial of Chase's motions on its prima facie case.

Nevertheless, I conclude that Chase is entitled to partial relief regarding some of the affirmative defenses and counterclaims.

### DUE DILIGENCE/AUDIT CLAUSES - CONDITIONS PRECEDENT

Here, as in the Paramount action, a breach of these clauses would provide a defense only to the extent that its breach prejudiced the insurers, for example, by increasing the amount of the loss sustained. The Due Diligence and Audit clauses are ordinary contractual promises. They are neither conditions precedent nor conditions subsequent.[5]

------

under the Bank loan agreement.

This confirms that the delivery date is subject to change. Even, assuming arguendo, that this notification was not supplied, nothing in the policy or otherwise supports the contention that the effectiveness of a change of the delivery date is conditioned on notification of such change being given to the insurers, or on the consent of the insurers.

[5] "A condition precedent is one whose existence is necessary for the obligation to come into being. A condition subsequent is one that, if it arises, will defeat an existing obligation." Hershey v Carter, 137 NYS2d 207 (Sup Ct, NY County 1954) (citing Wood & Selick v Ball, 190 NY 217 [1907]); see also, Mereminsky v Mereminsky, 20 Misc 2d 21 (App Term 2d Dept 1959).

Conditions precedent include the following three types:

1. Conditions precedent to the existence of the contract itself;
2. Conditions precedent to the attachment of coverage;
3. Conditions precedent to the assertion of specified rights or the attachment of specified obligations.

8

As stated by CJS § 355:

> To make the performance of a contract specifically conditional, a
> term such as "if," "provided that," "on condition that," or some
> similar phrase of conditional language must normally be included,
> and the absence of such language is probative of the parties'
> intention that a promise be made, rather than a condition imposed.
> If no conditional language is used in a contract, the terms are to be
> construed as a covenant in order to prevent a forfeiture.
>
> Whether a clause in a contract is a condition or a covenant is a
> question of intent to be gathered from the whole instrument.
> Where the parties' intentions are in doubt regarding whether a
> stipulation in a contract is a condition or a promise, the courts
> resolve any doubt in favor of finding a promise rather than a
> condition [footnote omitted].

As the court explained in <u>Ginett v Computer Task Group, Inc.</u>, 962 F2d 1085 (2d Cir

1992):

> our review of the contract reveals no "conditional" language or any
> other indication that the signing of the non-compete agreement was
> a condition precedent to anything.  A "condition" is "an event that
> must occur before performance of a contractual duty becomes
> due."  Conditions are not favored under New York law, and in the
> absence of unambiguous language, a condition will not be read into
> the agreement. "Parties often use language such as 'if,' 'on condition
> that,' 'provided that,' 'in the event that,' and 'subject to' to make an
> event a condition, but other words may suffice."  In contrast, here,
> there is no such language which, even straining, we could read as
> imposing a condition [internal citations omitted].

In <u>Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co.</u>, 86 NY2d 685 (1995), the

Court of Appeals explained:

> In determining whether a particular agreement makes an event a
> condition courts will interpret doubtful language as embodying a
> promise or constructive condition rather than an express condition.

---

The insurers do not characterize any of the policy provisions as conditions subsequent.

9

> This interpretive preference is especially strong when a finding of express condition would increase the risk of forfeiture by the obligee.

**"General Conditions"**

The policy contains a section called CONDITIONS PRECEDENT. The Due Diligence clause is not in that section. It is in a section entitled "GENERAL CONDITIONS." I conclude that the mere titling of this section as "GENERAL CONDITIONS" does not mean that the clauses contained within it are conditions precedent or conditions subsequent. In this context, the term "conditions" is synonymous with "terms."

As stated by Corbin:

> In contract writing, condition is often used as synonymous with "term," "provision" or clause", a list of such provisions often being headed as "conditions of the contract."
>
> ***
>
> The terms of a contract are all of its words, taken individually and also in phrases, clauses, sentences, paragraphs, and the rules of law affecting the operation of the language used. Anyone can use the word "conditions" to mean exactly this and nothing more.

3 Corbin on Contracts, ¶ 30.6. See also, Reynolds-Fitzgerald v Journal Pub. Co., 15 FRD 403 (SD NY 1954) (Weinfeld, J.) ("In contract writing [condition] * * * is often used as synonymous with 'term,' 'provision,' or 'clause,'"citing Corbin).[6]

---

[6]British usage is in accord. As stated further by Corbin, at ¶ 30.6 n 13:

> The Roman law of conditions ... distinguishes a condition from the terms of a contract so that a condition is "not part of the obligations itself, but an external fact upon which the existence of the obligation depends." Similarly, John W. Carter, Conditions and Conditions Precedent, 4 J. Cont. L. 90, 116 (1991) notes that condition once meant a "contingency, an event not certain to occur, not a term of the contract." English law, however, added other uses for conditions "to denote, not an external event by which the

Thus, while a clause contained in the "CONDITIONS PRECEDENT" section is, at least

presumably, a condition precedent, a clause contained in the "GENERAL CONDITIONS"

section operates as a condition precedent or condition subsequent only if the clause itself

contains language making it a true "condition."  That this is in accordance with common practice

is demonstrated by the routine placement in "General Conditions" sections in policies of clauses

having no conceivable "condition precedent" or "condition subsequent" effect.  The cases cited in

the margin describe such policies.[7]

---

obligation is suspended or canceled, but a term in the contract
which may be enforced against one or other of the parties" [citing
Cheshire, Fifoot and Furmston's Law of Contract 145 (13th Ed.
1996].  A common example of this use of "condition" appears in
the phrase, "condition of sale."

[7]

In re North River Ins. Co., 291 AD2d 230 (1st Dept 2002) (clause
defining "coverage territory");

Shorey v Merchants Mut. Ins. Co., 72 AD2d 558 (2d Dept 1979)
(clause defining "insured");

Munch Brewery v Grief, 169 Misc 382 (Sup Ct, Kings County
1938), reversed on other grounds 256 App Div 1075 (2d Dept
1939) (subrogation clause);

Warner v Nationwide Mut. Ins. Co., 16 Misc 2d 604 (Sup Ct,
Oneida County 1959) (clause providing that any schedule forming
a part of the policy shall apply as respects accidents occurring
within the initial or succeeding periods and prior to expiration,
lapse or cancellation);

Partial Fire Ins. Co. of Pittsburgh, Pa.. v Stroh Companies, Inc.,
265 F3d 97 (2d Cir 2001) (clause providing that deductibles apply
separately to each loss);

11

This common practice is reflected in the present policies themselves. The "GENERAL CONDITIONS" section of the policy contains other provisions that are clearly not conditions precedent or subsequent.[8]  Case law suggests that the use of the term "General Conditions" has its genesis in a distinction between "general conditions" and "special conditions," the former

---

National Union Fire Ins. Co. of Pittsburgh, Pa. v Belco Petroleum Corp., 1995 WL 571444 (SD NY 1995), affd  88 F3d 129 (2d 1996) (clauses governing territorial limits, defining statute of limitations, and choice of law);

In re Port Everglades Towing Co., 454 F2d 276 (5th Cir 1972) (clause waiving subrogation);

New York & Cuba Mail S. S. Co. v Continental Ins. Co. of City of New York, 117 F2d 404 (2d Cir), cert denied 313 US 580 (1941) (exclusionary clause);

Weiss v La Suisse, 154 F Supp 2d 734 (SD NY 2001) (choice of law clause);

Matter of Arbitration Between Reading & Bates Corp. and All American Marine Slip, 930 F Supp 895 (SD NY 1996) (clause containing rules for construction of policy).

[8]These include the following:

a. "Absence of Revenue." This clause provides:

The absence of Revenue in circumstances which would not otherwise entitle Insurers to reject a claim will not give Insurers grounds to avoid this Policy or to reject that claim.

b. "Substitution of Essential Elements."  This clause provides:

Notwithstanding any references to members of the cast and crew of the Film Production in the Questionnaire and/or in any existing license or distribution agreements, there are no Essential Elements with respect to the Film Production.

c. The Jurisdiction and Choice of Law clause.

12

referring to what might today be termed boilerplate, and the latter referring to clauses specific to

the individual risk insured.[9]

_____

[9]This is reflected in cases such as <u>Providence Washington Ins. Co. v Bowring</u>, 50 F 613 (2d Cir 1892); and <u>In re Port Everglades Towing Co.</u>, 454 F2d 276 (5th Cir 1972).

This use of the terms is seen in policies construed by British courts in a number of cases. It is demonstrated in the following discussion in <u>Jan de Nul (UK) Ltd v AXA Royale Belge SA (formerly NV Royale Belge)</u>, Court of Appeal (Civil Division), [2002] EWCA Civ 209, [2002] 1 All ER (Comm) 767, 20 February 2002, involving an AXA entity:

> The contract of insurance is contained in three documents - the general conditions, the brokers' clauses and the special conditions.
> 
> \*\*\*
>
> The general conditions are a standard form document. They form the basis of the contract in the sense that they contain the primary insuring clause, definitions, exclusions, and other fundamental terms of cover, but they also contain whole sections which have no application to the present contract. The brokers' clauses appear to be a set of standard clauses devised by J Van Breda Co and approved by Royale Belge for use in policies effected through them. They state that they take precedence over the general conditions, except where those are more favourable to the insured. The brokers' clauses also provide that the special conditions shall take precedence over all others. The special conditions have clearly been drawn up to embody terms which relate to this specific contract. They include, for example, the identity of the insured, a description of the insured activities and the dates of cover, as well as clauses relating to the nature and extent of the cover provided.

The clauses in that case are set forth in the appendix to the decision. Neither the "General Conditions" nor the "Special Conditions" clauses are limited to clauses that operate as conditions precedent or conditions subsequent.

See also <u>James v CGU Insurance plc</u>, Queen's Bench Division (Commercial Court), [2002] Lloyd's Rep IR 206, (Transcript), 17 OCTOBER 2001; <u>Credit Lyonnais v New Hampshire Insurance Co.</u>, Court of Appeal (Civil Division), [1997] 2 Lloyd's Rep 1, 12 March 1997 (involving New Hampshire Insurance Co); <u>Homburg Houtimport BV v Agrosin Private Ltd and Others (The "Starsin")</u>, Court of Appeal (Civil Division), [2001] EWCA Civ 55, [2001] 1 Lloyd's Rep 437, 23 January 2001 at par. 59 ("To apply the general principle that type should prevail over print seems to me to contradict the express provision of clause 12 that the reverse is to be true of this particular contract: the special conditions in type are to give way to the general

Where the parties intended that a clause, or a portion of a clause, within the "GENERAL

CONDITIONS" section, operate as a condition precedent or subsequent, the clause itself contains

appropriate language.[10]

---

conditions in print"); <u>Assicurazioni Generali SpA v CGU International Insurance PLC</u>, Queen's Bench Division (Commercial Court), [2003] EWHC 1073 (Comm) at par. 5; <u>Evialis Sa v Siat</u>, Queen's Bench Division (Commercial Court), [2003] EWHC 863 (Comm), [2003] 2 Lloyd's Rep 377, 16 April 2003 at par 32; <u>Toomey (of Syndicate 2021) v Banco Vitalicio de Espana SA de Seguros y Reaseguros</u>, Queen's Bench Division (Commercial Court), [2003] EWHC 1102 (Comm), [2003] All ER (D) 259 (May), at par. 6; <u>Tradigrain Sa v Siat Spa and Others</u>, Queen's Bench Division (Commercial Court), [2002] EWHC 106 (Comm), [2002] 2 Lloyd's Rep 553, 23 January 2002. at par 34; <u>R (on the application of Monarch Assurance plc) v Inland Revenue Commissioners</u>, Court of Appeal (Civil Division), [2001] EWCA Civ 1681, [2001] STC 1639, 74 Tax Cas 346, 9 November 2001, at par. 19.

[10]For example:

a. the "Completion" clause, contained in the GENERAL CONDITIONS section, provides:

> This insurance shall apply only if Delivery of the Film Production occurs,

thus indicating that delivery is a condition precedent.

b. the Reimbursement clause specifies that certain rights and obligations accrue upon the happening of certain events.

c. In the Jurisdiction and Choice of Law clause, the insurers consent to jurisdiction of the United States District Court, Southern District of New York. The consent to the jurisdiction of the federal court is not itself a condition precedent or condition subsequent. However, the clause provides that "IN THE EVENT THE DISTRICT COURT DOES NOT HAVE JURISDICTION OR DOES NOT EXERCISE JURISDICTION FOR ANY REASON WHATSOEVER," the insurers submit to the personal jurisdiction of the New York state courts.

The lack of jurisdiction, or non-exercise of jurisdiction, by the District Court, is thus a condition precedent to the effectiveness of the consent to personal jurisdiction in the state court.

In marked contrast, nothing in either the Due Diligence clause or the Audit clause provides that the existence of the policy, the existence of coverage, or the insurers' obligations under the policy, are conditioned on Chase's performance of its obligations under those clauses.[11] Their provisions are therefore ordinary contractual promises, the breach of which can affect damages, but not liability per se.

This conclusion is supported by the Appellate Division's holding in Kramnicz v First Nat. Bank of Greene, 32 AD2d 1009 (3d Dept 1969), where the court addressed a clause likewise requiring the insured to act in such a way as to minimize loss. The court held:

> We agree with the trial court that respondents failed to take adequate measures to protect the property from further damage and to separate the damaged and undamaged property. However, since the appellants offered no proof of any damages other than those caused by the fire and the water used to put out the fire, respondents are still entitled to recover. A policy of insurance should be liberally construed to uphold the contract wherever possible. Since forfeiture is a drastic remedy, failure to comply with the preservation clause should not destroy the insured's right of action when no damage is proven.

A similar issue was addressed in Auto-Owners Ins. Co. v Hansen Housing, Inc., 2000 SD 13, 604 NW2d 504 (SD 2000), where the clause was included in a section called "Property Loss

---

[11]The Audit clause in History is Made at Night, Texas Funeral and The Guilty provides that "inadvertent failure by the Insured to provide such written items [which failure does not materially adversely affect the right of the Lead Insurers] shall not constitute grounds for avoidance of the Lead Insurers' obligations under, or cancellation of, this Policy." In the absence of express conditional language in the main portion of the clause, this precautionary language is insufficient to render the clause a condition precedent or subsequent. The principle "inclusio unius est exclusio alterius," does not compel a different result. The clause is phrased in the negative, not the positive. Moreover, this principle is merely a general principle of contract construction, and cannot override the specific principle applicable to conditions, requiring that in the absence of express conditional language, a provision may not properly be construed as creating a condition resulting in a forfeiture.

15

Conditions."  The court held as follows:

> Auto-Owners contends that Hansen Housing should not be allowed
> to recover for damages to the building resulting after the initial loss
> because of failure to take reasonable steps to prevent further
> damage.  The policy states that the insured must "[t]ake all
> reasonable steps to protect the Covered Property from further
> damage by a Covered Cause of Loss." The trial court viewed this
> as a damage issue for the jury to determine in the separate damages
> phase of the case.

> Did the trial court correctly determine this was a damages question
> rather than a condition barring recovery?  Construing the language
> of the policy most favorably to the insured, we conclude that the
> provision bears on the amount of recovery.  In the policy, this
> provision is under the heading "Property Loss Conditions" and
> under the sub-heading "Duties in the Event of Loss or Damage."
> Ten such "duties" are listed.  While a number of these "duties" are
> more properly classified as conditions, for example giving the
> insurer "complete inventories of the damaged and undamaged
> property," and permitting the insurer "to inspect the property and
> records proving the loss or damage," others are more in the nature
> of duties bearing on the amount of recovery;  for example;
> "[r]esume all or part of your 'operations' as quickly as possible."
> Requiring the insured to "[t]ake all reasonable steps to protect the
> Covered Property from further damage," we believe, falls more
> properly into the latter category.  Therefore, the trial court correctly
> determined that this provision did not bar Hansen Housing's
> recovery, and instead related to the amount of recovery and was for
> the jury to determine.

See also, Kyrimes v Standard Ins. Co. of New Jersey, 267 NY 602 (1935).

**Audit Clause**

The policy contains the following Audit clause:

> Notwithstanding any other provision of this Policy whenever
> requested in writing by any of the Lead Insurers to do so, the
> Insured will exercise its rights under the Loan Agreement, to the
> extent it is so entitled thereunder, to cause the Production
> Company to audit Distributor or to audit Distributor itself directly,
> and will provide Lead Insurers with copies of the results thereof
> provided to the Insured by the Production Company or the

16

independent accountant which conducts the audit on behalf of the Insured, as the case may be; provided, however, that inadvertent failure by the Insured to provide such written items (which failure does not materially adversely affect the right of the Lead Insurers) shall not constitute grounds for avoidance of the Lead Insurers' obligations under, or cancellation of, this Policy.

General Star's pleading for History is Made at Night contains only a conclusory reference to the Audit clause. New Hampshire/Odyssey/HIH's pleading does not allege breach of the Audit clause as an affirmative defense.

Chase has failed to meet its burden as movant to establish its entitlement to summary judgment regarding these defenses. The motion is granted solely to the extent of dismissing this defense to the extent that it is based on any contention that (absent a request therefor by the lead insurers), Chase breached the clause by failing to request an audit, or that Chase failed to request or obtain documents, or on the contention that noncompliance with the Audit clause is a per se bar to the claims; and the motion is otherwise denied.

**FORTUITY**

The issue of fortuity is discussed at some length in my May 23, 2002 decision and order in The Chase Manhattan Bank v New Hampshire Ins. Co., Index no. 602759/01,[12] and in my September 18, 2003 decision in the Paramount action, in motion sequence no. 06.

GS's answer in History is Made at Night pleads the following affirmative defenses regarding fortuity:

Plaintiff's claims are barred in whole or in part because the events that gave rise to the allegations in the Complaint do not arise from

---

[12]That decision and order is reported in edited form at 193 Misc 2d 580 (Sup Ct, NY County 2002). Appeal from that order was subsumed in the appeal from the judgment, affirmed at 304 AD2d 423 (1st Dept), lv denied 100 NY2d 509 (2003).

17

a fortuitous occurrence.

New Hampshire/Odyssey/HIH does not assert fortuity as an affirmative defense.

To the extent that the fortuity defense is based on the premise that the insufficiency of the revenues to repay the loan on the specified claim determination dates was inherently nonfortuitous, it is dismissed. To the extent that it is based on the contention that some action by Chase, outside the scope of Chase's rights under the policies, and other than the structuring of the terms, intentionally caused the event/loss, the motion is denied.

**FRAUD DEFENSES/COUNTERCLAIMS**

In my decision and order dated September 9, 2002, adjudicating Chase's motion in this action to dismiss GS' counterclaims and certain affirmative defenses, I held:

> By order dated July 26, 2001, familiarity with which is assumed, I granted the motions of J&M to dismiss the third-party complaints of defendant AXA Reassurance UK PLC (AXA) and the cross claims of GS for lack of personal jurisdiction. I held that because of express disclaimers in the policies, Chase's conduct could not be deemed tortious, and therefore AXA and GS could not rely on the acts of Chase as an alleged co-conspirator in New York to support personal jurisdiction over J&M. That order, which was based on the same pleading that is at issue on this motion, was affirmed for the reasons there stated, at 294 AD2d 245 (1st Dept 2002).[13]

Affirming the September 9, 2002 dismissal, the First Department held:

> The disclaimer provision in defendant-appellant's policy is the same as the one we have already held effective to bar the same tort claims against another party in this action and similar to one held to preclude like claims in a related action [citing both the affirmance of the J&M order and the Litto affirmance]. The motion court correctly determined that aider and abettor liability was not viable absent liability for the substantive torts claimed.

---

[13]Leave to appeal from that affirmance was subsequently denied, reported at 98 NY2d 612 (2002).

18

<u>Chase Manhattan Bank v AXA Reinsurance UK PLC.</u>, 309 AD2d 613 (1st Dept 2003).

The First Department's holding is, of course, binding authority.

**QUESTIONNAIRE SECTION 1**

Referring to the Questionnaire, GS asserts in its opposition papers that

> the signature as to Section I (whose accuracy Chase warranted)
> recites that "ICE Media hereby confirms that it has analyzed the
> budget of the above production and in its opinion the proposed
> Bank Loan is an appropriate amount to be insured under the
> policy." This was false because ICE did not honestly analyze the
> loans, the amounts insured were not appropriate because of inflated
> budgets, there were insufficient contracted pre-sales, there was no
> likelihood of foreign sales...."

The Questionnaire is divided into three sections. Section I, captioned "GENERAL,"
does not contain any information claimed by GS to be untrue. Page 3 contains a signature space
that says "Signed as to Section 1 by:". It is signed by TF Productions, Inc. It does not contain the
statement quoted by GS.

Section II of the Questionnaire begins on page 4 and is captioned "CASH FLOW
INSURANCE COVER REQUIRED." Section II begins with the following disclaimer:

> The information set forth in Section II of this Questionnaire is
> provided without representation or warranty of any kind. All
> persons to which this information is provided acknowledge and
> agree that estimates and projections are inherently uncertain and
> that the undersigned shall have no liability of any nature for the
> accuracy of the estimates, projections and other information
> provided in Section II of this Questionnaire. The revenue estimates
> set forth in this Section II are based on the assumption that the
> Film Production is capable of performing at a level that will
> generate these revenues. The Insurers acknowledge that the
> estimates set forth in this Section II are purely informational, that
> they are not relying on these estimates in issuing the Policy, and
> the Insurers have relied upon their own analysis of revenue
> estimates. The Insurers under the Policy acknowledge and agree
> that they will be and remain obligated to pay any claim under the

19

Policy with respect to Film Production and will not be excused from paying any claim if for any reason the actual revenues are less than the estimates set forth in this Section II. The Chase Manhattan Bank shall not make or be deemed to make any representation or warranty, express or implied, to the Insurers (or their risk manager or the broker) that any amount or particular amount of revenues will be derived from exploitation of the film described above.

The signature page for Section II is on page 4 and is signed by TF Productions Inc. It does not contain the statement quoted by GS.

Section III begins on page 5 and is captioned "BANK FACILITY." It contains a signature space on page 6, and is signed "as to Section III Questions 16 and 21 (part one thereof)" by Chase. The insurers do not contend that anything in Section III is untrue.

Thus, each of the three sections contains its own signature space. Subsequent to the three sections, with their own signature spaces, the form recites "Signed as to Section I, II and III by" and is signed by ICE Media Limited. The quoted statement appears in this separate location directly over ICE's signature. This separate statement by ICE cannot be deemed part of Section I.

**CLAIMS PROCEDURE CLAUSE**

I conclude that Chase's conclusory assertions are insufficient to meet its burden to establish the lack of a triable issue of fact, prior to completion of discovery, as to whether Chase complied with the Claims Procedure clause. To the extent, however, that the insurers contend that a violation of the clause would stand as a per se bar to Chase's claims, or that the clause requires Chase to give notice based on experiences with other slates, other films, and/or the inherent structure of the transaction, the defense is dismissed.

The policy defines "Claim Payment Date" as "[a] date thirty (30) days after the date on which the Insured makes a claim hereunder for either of the First Ascertained Net Loss or the

Second Ascertained Net Loss." Nothing in the policy precludes Chase from filing its claim once the claim payment date has arrived and its demand for payment has not been satisfied. Accordingly, to the extent that the defense is based on that premise, the defense is dismissed.

To the extent that the insurers contend that the action was commenced prematurely, the defenses are dismissed. While Chase has not established through admissible evidence the date of delivery, the passage of time since the filing of the action has cured any potential prematurity, more than nine months having passed since the Barnes and Noble web page was obtained from the internet.

## MEDIATION CLAUSE[14]

To the extent that the insurers allege breach of the Mediation clause, the defenses are dismissed. Under certain circumstances, the Insurers had a contractual right, as defined in the policy, to nonbinding mediation. Assuming, without deciding, that the insurers would be entitled to specific performance or injunctive relief directing Chase to participate in the mediation process, nothing in the clause supports the contention that the failure to mediate is a defense to the insured's claims.[15]

## INSOLVENCY EXCLUSION CLAUSE[16]

The policy contains the following Exclusion clause:

---

[14]None of the remaining insurers expressly plead the mediation clause.

[15]I note that the mediation clause provides that the Lead Insurer may request mediation "[i]f a Lead Insurer anticipates disputing the amount of such claim...[emphasis added]." In view of the foregoing, it is unnecessary to reach the issue whether the mediation clause applies where the insurer does not merely dispute the amount of the claim, but also challenges the enforceability of the policy.

[16]None of the remaining insurers expressly plead the insolvency exclusion clause.

21

> This Insurance will not indemnify the Insured against any
> Ascertained Net Loss directly or indirectly arising out of,
> contributed by or resulting from:
>
> \*\*\*
>
> (7) With regard to the Distributor and the Insured, failure to pay,
> financial failure or default, insolvency, bankruptcy, liquidation,
> winding up, administration or arrangement with creditors.

In its moving papers, Chase does not dispute that the distributor was insolvent, but merely asserts that the defense fails because "the claims occurred due to insufficient pre-sales of the films, not from anything relating to the distributor." This conclusory assertion fails to meet Chase's burden as movant to establish its entitlement to dismissal of this defense.

The clause is not a condition precedent. Rather, it operates as an exclusion as to losses "arising out of, contributed by or resulting from" the Distributor's insolvency. This is a matter of coverage: losses within the scope of this clause are not within the coverage provided by the policy.[17] Therefore, to the extent that the insurers contend that the distributor's insolvency bars the claim per se, the defense is dismissed. The motion is otherwise denied.

## ATTORNEYS FEES

Chase's complaint seeks attorneys fees as part of its relief. The insurers assert affirmative defenses relating to relief not authorized by law. Chase's moving papers fail to demonstrate its entitlement to attorneys fees. The insurers' opposing papers argue persuasively that nothing in the policy entitles Chase to the attorneys fees that it seeks in its complaint.

Chase's sole response to this argument is set forth at p 30, n 34 of its reply memo of law:

> In the event that summary judgment is awarded to Chase, Chase

---

[17]The operation of an exclusion is discussed in my September 18, 2003 decision and order in the Paramount action adjudicating motion sequence no. 06, at pp. 55 et seq.

will demonstrate its entitlement to attorneys' fees and costs.

Chase placed the entirety of the insurers' remaining affirmative defenses in issue in its motion, and sought summary judgment. Nothing in its moving papers purports to exclude its claim for attorneys fees, or the affirmative defenses relating thereto, from the scope of its motion. Absent stipulation or order, Chase had no power to unilaterally grant itself an extension of time to respond to the insurers' arguments, or to unilaterally withdraw this branch of its motion without prejudice. Accordingly, searching the record, partial summary judgment is granted to the insurers dismissing Chase's claim for attorneys fees.

**ADDITIONAL DEFENSES**

1. To the extent that the affirmative defenses are based on the Fraud Exclusion clause, they are dismissed.

2. To the extent that the affirmative defenses are based on the Due Diligence clause, they are dismissed to the extent that the insurers assert that breach of the clause constitutes a per se bar to Chase's claims, and the motion is otherwise denied.

3. To the extent that the affirmative defenses are based on any alleged breach of the implied covenant of good faith and fair dealing, they are dismissed.

4. To the extent that the affirmative defenses are based on any alleged breach of conditions precedent or conditions subsequent, other than delivery, they are dismissed, and the motion is otherwise denied.

5. To the extent that any of the surviving defenses are based on the contention that any of the alleged breaches, other than delivery, would bar Chase's claims, rather than limit damages, they are dismissed; and the motion is otherwise denied.

23

6. To the extent that the defenses assert that the complaint seeks relief not authorized by law, the motion is denied to the extent that the complaint seeks attorneys fees. In addition, searching the record, partial summary judgment is granted to the insurers dismissing Chase's claim for attorneys fees. To the extent that such defenses relate to the other relief sought in the complaint, such defenses are dismissed.

## DISPOSITION OF AFFIRMATIVE DEFENSES AND COUNTERCLAIMS - HISTORY IS MADE AT NIGHT

### HISTORY IS MADE AT NIGHT - NEW HAMPSHIRE, ODYSSEY, HIH - AFFIRMATIVE DEFENSES

1 - conditions precedent - dismissed in part, motion denied in part, in accordance with the foregoing.

2 - claim barred for failure to comply with Due Diligence clause - dismissed.

3 - Fraud Exclusion clause - dismissed by order dated September 9, 2002.[18]

4 - fraud - dismissed by order dated September 9, 2002.

### HISTORY IS MADE AT NIGHT - NEW HAMPSHIRE, ODYSSEY, HIH - COUNTERCLAIM

1 - rescission - dismissed by order dated September 9, 2002.

### HISTORY IS MADE AT NIGHT - GS - AFFIRMATIVE DEFENSES

1 - failure to state a claim upon which relief can be granted - dismissed.

---

[18] I issued three separate orders dated September 9, 2002 in this action. One, affirmed at Chase Manhattan Bank v AXA Reinsurance UK PLC., supra, 309 AD2d 613 (1st Dept 2003), adjudicated Chase's motion relating to GS' pleading. The second, referred to here, adjudicated Chase's motion relating to the pleadings of, inter alia, New Hampshire, Odyssey and HIH. It appears that appeals were filed from that order, but subsequently withdrawn by stipulation. A third order dismissed, in their entirety, third party actions and cross claims (including GS' first, second, third, fourth and eighth causes of action) asserted against the broker. An appeal by GS from that order is presently pending.

24

2 - fraud in the inducement - dismissed.

3 - policy void ab initio under Insurance Law including section 3105 - dismissed.

4 - relief not available under applicable law - dismissed in part, motion denied in part, in accordance with the foregoing. Searching the record, partial summary judgment is granted dismissing Chase's demand for attorneys fees.

5 - unclean hands - dismissed.

6 - waiver and equitable estoppel - dismissed.

7 - terms, conditions, limitations, and exclusions in Due Diligence clause, Claims Procedure clause, Fraud Exclusion clause, Audit clause - dismissed in part, motion denied in part, in accordance with the foregoing.

8 - conditions precedent and subsequent - dismissed in part, motion denied in part, in accordance with the foregoing.

9 - delivery - dismissed in part, motion denied in part, in accordance with the foregoing.

10 - fortuity - dismissed in part, motion denied in part, in accordance with the foregoing.

11 - dual agent - dismissed.

### HISTORY IS MADE AT NIGHT - GS - COUNTERCLAIMS

GS' counterclaims were previously dismissed by order dated September 9, 2002.

### A TEXAS FUNERAL

#### GS' UNAUTHORIZED PLEADING

By order dated August 22, 2000, Chase's motion to dismiss the fraud counterclaim and certain affirmative defenses of New Hampshire, Odyssey, HIH, and GS (contained in a single joint pleading) was granted by Justice Freedman. A subsequent order, dated September 28, 2000 (denying resettlement), permitted those defendants to move for leave to replead on proper papers, including the proposed pleading. No such motion was made. Notwithstanding those orders, it appears that GS subsequently unilaterally served a purported amended pleading, asserting

25

affirmative defenses and counterclaims. That pleading, served without authority, and rejected by Chase, is ineffective as a pleading.

Therefore, the only GS pleading actually extant is the initial pleading. In addition to the fraud counterclaim and fraud affirmative defense dismissed by Justice Freedman, that pleading asserted the following affirmative defenses:

1 - conditions precedent;

2 - claim barred for failure to comply with Due Diligence clause;

3. Fraud Exclusion clause.

I do not construe that order as affecting the first (conditions precedent), second (due diligence) or third (fraud exclusion) affirmative defenses, and therefore those affirmative defenses remain asserted.[19]

However, on a motion for summary judgment, the pleadings are not dispositive, and an unpleaded defense can, under some circumstances, suffice to defeat summary judgment. Here,

_____

[19]Arguably, Justice Freedman's order dismissed the "Fraud Exclusion" defense. While the defense is based on the Fraud Exclusion clause, the allegations in the defense can be construed as sounding in fraud. However, the decretal paragraph in Justice Freedman's order states:

> plaintiff's motion to dismiss the counterclaim for fraud and the affirmative defense of fraud is granted and the counterclaim and affirmative defense are severed and dismissed [emphasis added].

While the body of Justice Freedman's decision and order contains references to fraud "defenses," I construe this as referring to the fact that each of the insurers asserts its own fraud defense in that single pleading; there are thus several, albeit identical, fraud "defenses."

As discussed in the Paramount action, a defense based on an exclusion, including a fraud exclusion, is conceptually distinct from a defense based on fraud. The former assumes a viable policy, but excludes from coverage losses caused by specified causes. The latter avoids the policy; absent a viable policy, exclusions from coverage are irrelevant.

Chase can claim no prejudice from the assertion, in response to its motion for summary judgment, of the unpleaded matters. This is especially pertinent because Justice Freedman's dismissal was based on the failure of the pleading to comply with the specificity requirements of CPLR 3016(b), and GS could have made a motion on proper papers to replead.

Therefore, for the limited purpose of this motion, I assume, arguendo, that had GS demonstrated any merit to its now-unpleaded defenses and counterclaims, they would be effective to defeat Chase's motion for summary judgment. I have evaluated them as such. I conclude that the defenses and counterclaims, as presently posited, fail for the substantive reasons previously addressed. Nothing herein is intended as a holding that GS' purported amended pleading has been properly interposed.

**FORTUITY**

The pleading of the fortuity affirmative defense by GS differs in this pleading from the pleading in History is Made at Night. Here, GS' defense is similar to those pleaded and addressed in the Paramount action.

**DISPOSITION OF AFFIRMATIVE DEFENSES AND COUNTERCLAIMS - TEXAS FUNERAL**

**TEXAS FUNERAL - NEW HAMPSHIRE, ODYSSEY AND HIH - AFFIRMATIVE DEFENSES**

1 - failure to satisfy conditions precedent - dismissed in part, motion denied in part, in accordance with the foregoing.

2 - claims barred due to breach of Due Diligence clause - dismissed.

3 - Fraud Exclusion clause - dismissed.

4 - fraud in the inducement - This defense was dismissed by order dated August 22, 2000 (Freedman, J.). In any event, it lacks substantive merit.

27

## TEXAS FUNERAL - NEW HAMPSHIRE, ODYSSEY, HIH - COUNTERCLAIM

This counterclaim was dismissed by order dated August 22, 2000 (Freedman, J.).  In any event, it lacks substantive merit.

## TEXAS FUNERAL - GS - AFFIRMATIVE DEFENSES[20]

1 - failure to state claim on which relief can be granted - dismissed.

2 - claims barred because the insured failed to provide GS with timely notice that it had reason to believe that losses had occurred or were likely to occur - dismissed.

3 - fraudulent inducement - This defense was dismissed by order dated August 22, 2000 (Freedman, J.).  In any event, it lacks substantive merit.

4 - policies void ab initio by New York Insurance Law, including section 3105, for reasons set forth in GS' counterclaim and claims against the third-party defendants - dismissed.

5 - relief not allowed under applicable law - dismissed in part, motion denied in part, in accordance with the foregoing.  Searching the record, partial summary judgment is granted dismissing Chase's demand for attorneys fees.

6 - unclean hands - dismissed.

7 - waiver - dismissed.

8 - claims barred or limited by terms, conditions, limitations and exclusions - dismissed in part, motion denied in part, in accordance with the foregoing.

9 - failure to comply with conditions precedent or subsequent - dismissed in part, motion denied in part, in accordance with the foregoing.

---

[20]As noted above, GS' purported amended pleading was served without authorization. Nevertheless, for the reasons discussed above, I have considered the merits of the additional affirmative defenses and counterclaims asserted in GS' unauthorized amended pleading.  For the purposes of simplicity, I have referred to GS' purported affirmative defenses and counterclaims numerically as per the purported amended pleading, and have indicated below that certain of those affirmative defenses have been "dismissed"; and that as to others, the motion is "denied in part." This should be deemed to mean merely that for purposes of defeating Chase's motion for summary judgment, those defenses lack or do not lack potential merit.  It should not be construed as a holding that GS has effectively amended its pleading, or that matters not pleaded in the first pleading have been properly interposed.

28

10 - fortuity - dismissed.

11 - equitable estoppel - dismissed.

12 - contract a financial guaranty but marketed as a policy of contingency insurance - dismissed.

13 - dual agent - dismissed.

14 - delivery - dismissed in part, motion denied in part, in accordance with the foregoing.

### TEXAS FUNERAL - GS - COUNTERCLAIMS

1 - fraud - This counterclaim was dismissed by order dated August 22, 2000 (Freedman, J.).  In any event, it lacks substantive merit.

2 - aiding and abetting breach of fiduciary duty of the Risk Managers ("RMs") - dismissed.

3 - aiding and abetting fraud of the RMs - dismissed.

4 - conspiracy to commit fraud - dismissed.[21]

5 - breach of implied covenant of good faith and fair dealing - dismissed.

(6, 7, 8 - n/a)

### BRUNO

At a conference held on the record on December 6, 2000, Justice Freedman ruled that answers that had been filed in History is Made at Night would be deemed filed, in substance, in Bruno.  At that time, there were pending in History is Made at Night two motions made by Chase relating to affirmative defenses and counterclaims, as follows:

> a. motion sequence no. 05, to dismiss the amended counterclaim and the third and fourth affirmative defenses of New Hampshire,

---

[21]American Baptist Churches of Metropolitan New York v Galloway, 271 AD2d 92 (1st Dept 2000) and Alexander & Alexander of New York  v Fritzen, 68 NY2d 968 (1986), cited by GS for the proposition that New York law recognizes a separate cause of action for conspiracy to commit fraud, hold to the contrary.

29

Lakes, Odyssey, Royal/SunAlliance, and HIH; and

b. motion sequence no. 09, to dismiss GS's counterclaims and
certain affirmative defenses.

At that conference Justice Freedman ruled that "the court's decision in History will apply

equally to the deemed answers."

I construe this ruling as meaning that the decision to be rendered in motion sequence no.

05 would be deemed applicable to the "deemed" pleading in Bruno by New Hampshire, Lakes,

Odyssey, Royal/SunAlliance, and HIH; and that the decision to be rendered in motion sequence

no. 09 would be applied to the "deemed" pleading in Bruno by GS.

Those two History is Made at Night motions, addressed to the answers and counterclaims,

were adjudicated by me in two separate orders, both dated September 9, 2002. By virtue of

Justice Freedman's ruling, the adjudication of motion sequence no. 05 is applicable to the

pleading in Bruno deemed interposed by New Hampshire, Lakes, Odyssey, Royal/SunAlliance,

and HIH. Likewise, by virtue of Justice Freedman's ruling, the adjudication of motion sequence

no. 09, is applicable to the pleading deemed interposed in Bruno by GS.[22]

At that conference, Justice Freedman ruled that

[l]eave to amend will be granted to amend the answers, the deemed
answers, based on my decisions and based on the wishes of the
parties after my decisions on the motions are rendered.

_____

[22]Even if they were not, the affirmance, reported at Chase Manhattan Bank v AXA
Reinsurance UK PLC., 309 AD2d 613 (1st Dept 2003), of my September 9, 2002 order
adjudicating motion sequence no. 09, would constitute binding appellate authority as to GS'
pleading; and my September 9, 2002 order adjudicating motion sequence no. 05 would constitute
stare decisis directly on point as to pleadings of New Hampshire, Odyssey and HIH.

It does not appear that any order embodying these "deemed" adjudications in Bruno was
issued. The present order shall constitute the formal adjudication.

Subsequent to the issuance of the September 9, 2002 orders, GS, New

Hampshire/Odyssey (one pleading), and HIH served answers in Bruno.[23]  Some of the affirmative

defenses and counterclaims are identical or akin to those dismissed in History is Made at Night.

In view of Justice Freedman's ruling, to the extent that their counterparts in History is Made at

Night were dismissed, these present defenses and counterclaims must be deemed to be barred.

Were they not barred, they would be dismissed on substantive grounds.

**DELIVERY**

Chase's moving papers in Bruno establish that on December 1, 2000, Bruno was

exhibited on cable television.  Therefore, Chase has established that as of that date, delivery of

Bruno had occurred for purposes of the policy.  However, Chase's moving papers do not establish

its net ascertained loss as of the claim date.

**DISPOSITION OF AFFIRMATIVE DEFENSES AND COUNTERCLAIMS - BRUNO**

**BRUNO - GS - AFFIRMATIVE DEFENSES**

1 - failure to state a claim upon which relief can be granted - dismissed.

2 - claims barred for failure to provide timely notice to GS that Chase had reason to believe that losses had occurred or were likely to occur - dismissed in part, motion denied in part, in accordance with the foregoing.

3 - fraud in the inducement - dismissed as per Justice Freedman's order dated December 6, 2000 and my order dated September 9, 2002, affirmed at Chase Manhattan Bank v AXA Reinsurance UK PLC, supra, 309 AD2d 613 (1st Dept 2003).

4 - policies void ab initio under New York Insurance Law, including section 3105 - dismissed.

5 - relief not allowed under applicable law - dismissed in part, motion denied in part, in

---

[23]These pleadings are not designated on their face as amended.  In view of Justice Freedman's ruling, however, they must be deemed to be amended pleadings.

accordance with the foregoing.  Searching the record, partial summary judgment is granted dismissing Chase's demand for attorneys fees.

6 - unclean hands - dismissed.

7 - waiver - dismissed.

8 - claims barred or limited by terms, conditions, limitations and exclusions - dismissed in part, motion denied in part, in accordance with the foregoing.

9 - conditions precedent/subsequent - dismissed in part, motion denied in part, in accordance with the foregoing.

10 - fortuity - dismissed.

11 - equitable estoppel - dismissed.

12 - contracts financial guarantees but marketed as policies of contingency insurance - dismissed.

13 - dual agent - dismissed.

14 - delivery - dismissed in part, motion denied in part, in accordance with the foregoing.

## BRUNO - GS - COUNTERCLAIMS

1 - fraud - deemed dismissed/barred as per id.

2 - aiding and abetting breach of fiduciary duty of RMs - deemed dismissed/barred as per id.

3 - aiding and abetting fraud of the RMs - deemed dismissed/barred as per id.

4 - conspiracy to commit fraud - deemed dismissed/barred as per id.

5 - breach of implied covenant of good faith and fair dealing - dismissed.

(6,7,8 - n/a)

## BRUNO - NEW HAMPSHIRE/ODYSSEY - AFFIRMATIVE DEFENSES

1 - conditions precedent - dismissed in part, motion denied in part, in accordance with the foregoing.

2 - claim barred for failure to comply with Due Diligence clause - dismissed.

32

3 - Fraud Exclusion clause - deemed dismissed/barred as per id.

4 - delivery - dismissed.

5 - fraudulent inducement - deemed dismissed/barred as per id.

### BRUNO - NEW HAMPSHIRE/ODYSSEY - COUNTERCLAIMS

1 - rescission - deemed dismissed/barred as per id.

### BRUNO - HIH - AFFIRMATIVE DEFENSES[24]

1 - conditions precedent - dismissed in part, motion denied in part, in accordance with the foregoing.

2 - claim barred due to failure to comply with Due Diligence clause - dismissed.

3 - Fraud Exclusion clause - deemed dismissed/barred as per id.

4 - fraudulent inducement - deemed dismissed/barred as per id.

### BRUNO - HIH - COUNTERCLAIM

1 - rescission - deemed dismissed/barred as per id.

## THE GUILTY / 600299/01

### THE GUILTY - DISPOSITION OF AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

### THE GUILTY - GS - AFFIRMATIVE DEFENSES

1 - failure to state a claim upon which relief can be granted - dismissed.

2 - claims barred because insured failed to provide GS with timely notice that it had reason to believe that losses had occurred or were likely to occur - dismissed.

3 - fraudulent inducement - dismissed.

4 - policies void ab initio under New York Insurance Law including section 3105 - dismissed.

---

[24]HIH asserts its own, separate pleading in Bruno.

33

5 - relief not allowed under applicable law - dismissed in part, motion denied in part, in accordance with the foregoing. Searching the record, partial summary judgment is granted dismissing Chase's demand for attorneys fees.

6 - unclean hands - dismissed.

7 - waiver - dismissed.

8 - terms, conditions, limitations and exclusions - dismissed in part, motion denied in part, in accordance with the foregoing.

9 - conditions precedent/subsequent - dismissed in part, motion denied in part, in accordance with the foregoing.

10 - fortuity - dismissed.

11 - equitable estoppel - dismissed.

12 - contracts financial guarantees but marketed as policies of contingency insurance - dismissed.

13 - dual agent - dismissed.

14 - delivery - dismissed in part, motion denied in part, in accordance with the foregoing.

## THE GUILTY - GS - COUNTERCLAIMS

1 - (none asserted in the pleading).

2 - aiding and abetting breach of fiduciary of the RMs - dismissed.

3 - aiding and abetting fraud of the RMs - dismissed.

4 - conspiracy to commit fraud - dismissed.

5 - implied covenant of good faith and fair dealing - dismissed.

(6, 7, 8 - n/a).

## NEW HAMPSHIRE/ODYSSEY - AFFIRMATIVE DEFENSES - THE GUILTY

1 - conditions precedent - dismissed in part, motion denied in part, in accordance with the foregoing.

34

2 - claim barred for failure to comply with Due Diligence clause - dismissed.

3 - Fraud Exclusion clause - dismissed.

4 - delivery - dismissed.

5 - fraudulent inducement - dismissed.

### THE GUILTY - NEW HAMPSHIRE/ODYSSEY - COUNTERCLAIM

1 - rescission - dismissed.

2 - aiding and abetting breach of fiduciary duty of RMs - dismissed.

Chase's motion is granted to the extent indicated above, and is otherwise denied.

The Clerk is directed to file a copy of this decision and order in each of the four files referenced above.

This constitutes the decision and order of the court.

Dated:  12/12/03

ENTER:

IRA GAMMERMAN
J.S.G.

35